# EXHIBIT 1

**CABARRUS COUNTY CLERK OF SUPERIOR COURT**
**CIVIL**
**FILING FEES:**
**NO PERSONAL CHECKS**

File Number(s) _21 CVS 3755_

Plaintiff (Payor) _Hill, Arthur_
(Last name, first name, middle name)

Defendant _Carvana LLC_

TO BE FLAGGED "Y"

| | | |
|---|---|---|
| **CVSC SUPERIOR** | $200.00 | $_____ |
| *CTCL OR CROSS* | | |
| **CVDC DISTRICT** | $150.00 | $_____ |
| *CTCL OR CROSS* | | |
| *CVAC APPEAL* | $146.00 | $_____ |
| **CVMC MAGISTRATE** | $96.00 | $_____ |
| *CTCL OR CROSS* | | |
| **CVD TRANSFER #22220** | $16.00 | $_____ |
| **CVS TRANSER #22120** | $16.00 | $_____ |
| **CAB CO SHERIFF #22515** | $30.00 ea | $_____ |
| **MOTIONS #21450** | $20.00 | $_____ |
| **"M" # (LIENS, IRS, NC TAX REV) #21435** | $6.00+ | $_____ |
| **OSA – OUT OF STATE ATTY FEE** (#24626 $25, #24625 $200) | $225.00 | $ _225.00_ x2 |

TO BE FLAGGED "N"

| | | |
|---|---|---|
| **CDDC (DIVORCE)** | $225.00 | $_____ |
| **RESUMPTION OF MAIDEN NAME** #21400 | $10.00 | $_____ |
| **VSA, APPLICATIONS #21400** | $6.00+ | $_____ |
| **REGISTRATIONS #21400** | $6.00+ | $_____ |
| **CONF. OF JUDGMENT #21400** | $25.00 | $_____ |
| **COPIES # 21410** | $2.00+/$3.00+ | $_____ |

TOTAL $ _450.00_

DATE _12-10-21_

CLERK _MA_

11/2017

mm

## CABARRUS COUNTY CLERK OF SUPERIOR COURT
## CIVIL RECEIPTING

File Number __21 CVS 3755__

**RECEIVED OF:**_____

PLAINTIFF __Hill, Arthur__

DEFENDANT __Carvana LLC__

### TO BE FLAGGED "Y"

| | | | |
|---|---|---|---|
| *JA* WRIT | #21430 | $_____ |
| *JA* CAB CO SHRF | #22515 | $_____ |
| *JA* TRANSCRIPT | #21440 | $_____ |
| SUPPLMNT PROC | #21400 | $_____ |

### TO BE FLAGGED"Y"

*MOTIONS*      #21450 $ 20.00
     $20.00
A&P SUMMONS      #21455 $_____
     $15.00
*JA* JUDGMENTS      #26115 $_____
(payments on judgments, forfeitures, atty fees)

TOTAL $ 20.00

DATE __12/9/21__

CLERK __no__

## NO PERSONAL CHECKS

PO BOX 70
CONCORD, NC 28026

2/9/2021

---

### TO BE FLAGGED "N"
#### SUMMARY EJECTMENT RENT BOND

| | | |
|---|---|---|
| PRORATED RENT | #26220 | $_____ |
| UNDISPUTED RENT | #26120 | $_____ |
| CURRENT RENT | #26220 | $_____ |

### TO BE FLAGGED "N"

| | | |
|---|---|---|
| Minor Settlement | #26120 $_____ |
| WRIT | #21430 $_____ |
| BONDS - SPECIFY | |
| Ie: restraining order, etc #26210 $_____ |
| FINE FOR CONTEMPT | #22700 $_____ |
| ARBITRATION FEE | #24311 $_____ |
| ARBITRATION APPEAL #24310 $_____ |

### TO BE FLAGGED "N"

| | | |
|---|---|---|
| MISC | #21400 $_____ |
| DEPOSIT UNTIL JD #26600 $_____ |
| CONDEMNATIONS #26130 $_____ |
| UP-SET BID | #26700 $_____ |
| COPIES | #21410 $_____ |
| FINES-(school fund) #22700 $_____ |
| LIMITED DRIV. PRIV#24335$_____ |
| PARTIAL PAYMENT#20100 $_____ |
| BUSINESS CT($1100) #21120 $_____ |

*Support/Purge to be pd Direct #26110*

REFUND      #29100$_____

*Mail to-Name* _____

*Address* _____

File Number 21 CVS 3755

RECEIVED OF: _____

PLAINTIFF Hill, Arthur _____

DEFENDANT Cavana, LLC _____

### TO BE FLAGGED "Y"

| | | |
|---|---|---|
| *JA* WRIT | #21430 | $_____ |
| *JA* CAB CO SHRF | #22515 | $_____ |
| *JA* TRANSCRIPT | #21440 | $_____ |
| SUPPLMNT PROC | #21400 | $_____ |

### TO BE FLAGGED "Y"

| | | |
|---|---|---|
| *MOTIONS* | #21450 | $ 20.00 |
| | $20.00 | |
| *A&P SUMMONS* | #21455 | $_____ |
| | $15.00 | |
| *JA* JUDGMENTS | #26115 | $_____ |
| (payments on judgments, forfeitures, atty fees) | | |

TOTAL $ 20.00 _____

DATE 12-3-21 _____

CLERK _____

## NO PERSONAL CHECKS

̶ ̶BOX 70
̶ONCORD, NC 28026

̶7/2018

### TO BE FLAGGED "N"
#### SUMMARY EJECTMENT RENT BOND

| | | |
|---|---|---|
| PRORATED RENT | #26220 | $_____ |
| UNDISPUTED RENT | #26120 | $_____ |
| CURRENT RENT | #26220 | $_____ |

### TO BE FLAGGED "N"

| | | |
|---|---|---|
| Minor Settlement | #26120 | $_____ |
| WRIT | #21430 | $_____ |
| BONDS - SPECIFY | | |
| ̶ie̶ ̶restraining order, etc | | |
| | #26210 | $_____ |
| FINE FOR CONTEMPT | #22700 | $_____ |

### TO BE FLAGGED "N"

| | | |
|---|---|---|
| MISC | #21400 | $_____ |
| DEPOSIT UNTIL JD | #26600 | $_____ |
| CONDEMNATIONS | #26130 | $_____ |
| UP-SET BID | #26700 | $_____ |
| COPIES | #21410 | $_____ |
| FINES (school fund) | #22700 | $_____ |
| LIMITED DRIV. PRIV | #24335 | $_____ |
| PARTIAL PAYMENT | #20100 | $_____ |
| BUSINESS CT ($1000) | #21120 | $_____ |
| Support/Purge to be pd Direct #26110 | | |
| REFUND | #29100 | $_____ |
| Mail to Name | | |
| Address | | |

MT         21 CV 003755

**CABARRUS COUNTY CLERK OF SUPERIOR COURT**
**CIVIL**
**FILING FEES:**
<u>**NO PERSONAL CHECKS**</u>

File Number(s) _____

Plaintiff (Payor) <u>Hill, Arthur</u>
               (Last name, first name, middle name)

Defendant  <u>Carvana LLC</u>

### TO BE FLAGGED "Y"

| | | |
|---|---|---|
| CVSC SUPERIOR<br>    *CTCL OR CROSS* | $200.00 | $ 200.00 |
| CVDC DISTRICT<br>    *CTCL OR CROSS* | $150.00 | $_____ |
| *CVAC APPEAL* | $146.00 | $_____ |
| CVMC MAGISTRATE<br>    *CTCL OR CROSS* | $96.00 | $_____ |
| CVD TRANSFER #22220 | $16.00 | $_____ |
| CVS TRANSER #22120 | $16.00 | $_____ |
| CAB CO SHERIFF #22515 | $30.00 ea | $_____ |
| MOTIONS #21450 | $20.00 | $_____ |
| "M" # (LIENS, IRS, NC TAX REV)<br>    #21435 | $6.00+ | $_____ |
| OSA – OUT OF STATE ATTY FEE<br>    (#24626 $25, #24625 $200) | $225.00 | $_____ |

### TO BE FLAGGED "N"

| | | |
|---|---|---|
| CDDC (DIVORCE) | $225.00 | $_____ |
| RESUMPTION OF MAIDEN NAME<br>#21400 | $10.00 | $_____ |
| VSA, APPLICATIONS #21400 | $6.00+ | $_____ |
| REGISTRATIONS #21400 | $6.00+ | $_____ |
| CONF. OF JUDGMENT #21400 | $25.00 | $_____ |
| COPIES #21410 | $2.00+/$3.00+ | $_____ |

TOTAL $ <u>200.00</u>

DATE <u>10-28-21</u>

CLERK <u>MT</u>

CABARRUS COUNTY CLERK OF COURT

10/28/21 11:43:48

PAYOR: HILL, ARTHUR
PAYEE: CARVANA LLC
CASE#: 21CV003755 VCAP=Y
CTT#:

L185946

21120 SC-CIVIL FEES    179.05
21129 SC-G9) L/A FEES      .95
24601 JUD TECH & FAC     4.00
22120 CO FAC FEE S CV   16.00

5320    ID CLAIMG

***CREDIT CARD FEES NOT INCLUDED.****
%SEE CREDIT CARD RECEIPT FOR FEES.***

TOTAL PAID   200.00
CC TENDERED  200.00
CHANGE       .00

11/2017

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

ARTHUR HILL,

       Plaintiff, pro se,

    vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**VERIFIED FIRST AMENDED
COMPLAINT**

     In accordance with Rule 15(a) of the North Carolina Rules of Civil Procedure and with the consent of the party Defendants, Plaintiff Arthur Hill ("Plaintiff" or "Hill") files this verified first amended complaint and complains of the Defendants Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest") (collectively "Defendants") for violations state and federal law and states the following:

## PARTIES

    1.    Plaintiff is a natural person and at all times relevant to this complaint here was a resident of Cabarrus County in North Carolina.

    2.    Carvana, a spin-off of Tempe Arizona based DriveTime Automotive Group Inc., is a used car dealership that conducts business in or affecting commerce and does so exclusively via the internet at carvana.com with its principal place of business located at 1930 W. Rio Salado Pkwy Tempe, AZ 85281. Carvana is a "seller" as defined under N.C.G.S. § 25A-6. Carvana is a licensed dealer within this state with locations in Concord, Charlotte, Greensboro and Raleigh.

    3.    Carvana may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue Suite 550. Raleigh, NC 27608.

    4.    Bridgecrest is an affiliate of Carvana by common ownership, incorporated under the laws of Arizona and generally services retail installment contracts entered into by Carvana with consumers. Bridgecrest is also a "seller" as defined under N.C.G.S. § 25A-6 to the extent that it involves events arising after assignment to receive payments on behalf of Carvana. Bridgecrest's business is in or affecting commerce in this state.

    5.    Bridgecrest may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue

1

Suite 550. Raleigh, NC 27608.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over civil cases involving amounts over $25,000.

7.      Venue is proper because Plaintiff resides in Cabarrus County, Carvana conducts business in and maintains a registered agent in this state and Bridgecrest maintains a registered agent in this state and services installment contracts for residents in this state.

## STATEMENT OF FACTS

8.      On August 15, 2019, Plaintiff entered into a retail installment contract with Carvana to pay for a 2016 BMW 3 ("BMW") he purchased at a sale price of $23,900. The BMW was delivered on August 17, 2019 at Carvana's South Blvd location in Charlotte, NC. A copy of the Retail Purchase Agreement ("Purchase Agreement") and Retail Installment Contract and Security Agreement ("Contract") that Plaintiff purportedly signed via DocuSign are attached hereto as "Exhibit 1" and "Exhibit 2" respectively. An Arbitration Agreement that was also provided on August 17, 2019 and purportedly signed by the Plaintiff was opted out of on August 21, 2019. All 3 of the forementioned documents were purportedly signed electronically via the internet on August 15, 2019. The documents were provided to the Plaintiff on August 17, 2019 upon vehicle delivery. The documents bear a signature date of August 17, 2019 even though the documents that Plaintiff signed should have a signature date of August 15, 2019.

9.      During delivery of the BMW on August 17, 2019, Carvana did not provide the Plaintiff with any documents evidencing a registration plate transfer was to take place or a title application. Plaintiff was provided a copy of (1) Retail Purchase Agreement, (2) Retail Installment Contract and Security Agreement, (3) Arbitration Agreement, (4) Odometer Disclosure, (5) Carvana Limited Warranty, (6) Credit Reporting Notice, (7) a certification that Plaintiff was not filing for Bankruptcy and (8) Buyers Guide. Each of these documents were purportly signed by the Plaintiff using DocuSign.

10.     On the morning of August 17, 2019 at approximately 3:34AM EST, Carvana sent Plaintiff an email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V). The file name from the link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the evening of August 15, 2019 at approximately 7:26PM.

11.     On the morning of August 19, 2019 at approximately 4:38AM EST, Carvana sent Plaintiff another email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V). The file name from the link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the night of August 17, 2019 at approximately 11:19PM.

2

12.     On information and belief, a risk-based pricing notice was due prior to consummation of the transaction on August 15, 2019 instead of 2 days later on August 17, 2019 or 2 days after delivery on August 19, 2019.  Carvana, on information and belief, was in violation of the timing provision for providing a risk-based pricing notice so they changed the dates on the documents the Plaintiff signed to create the appearance that the transaction was consummated in person on August 17, 2019.  Plaintiff discovered this violation between August 17 and August 21 of 2019 but after researching the law, he determined he could not assert a cause of action for any violation because a risk-based pricing violation can't be privately enforced.  Plaintiff then opted out of an arbitration agreement he signed in the event Carvana had violated other laws so that he rights would not be limited.

13.     On information and belief, Carvana and Bridgecrest have servicing agreements whereby Bridgecrest is not explicitly assigned in the Contract but they are pre-designated as the servicer of the Contract through separate agreements.  *See* Exhibit 2, page 5 of 5 showing no assignment.

14.     As part of the BMW purchase, Plaintiff put $10,000 cash down and was credited $200 for trade-in of a 2005 Suzuki XL-7.  The TILA disclosures provided for **a)** amount financed of $14,515, **b)** for a term of 72 months, **c)** 3.90% APR and **d)** finance charge over the term of $1,783.23.  The monthly payment for the first 71 months was fixed at $227 and a final payment of $181.23 for month 72.  Per the Contract, if the Plaintiff paid off the Contract early, he would not have to pay a penalty.

15.     Plaintiff's first payment was due and paid on September 17, 2019 and scheduled payments of $227 were made up to and including September 17, 2021 for a total of $5,675.

16.     On September 22, 2021, Plaintiff logged into his profile with Bridgecrest at bridgecrest.com and requested a payoff quote which returned an amount of $9,845.62.  Plaintiff then submitted a payment for that amount on the same day at bridgecrest.com.  On the following day, when Plaintiff logged into bridecrest.com, the site indicated there was no longer an account for the Plaintiff because the account had been paid in full.  The total amount paid in finance charges as of the date of payoff was $1,005.62 which represents 56% of the total finance charges with 47 of the 72 months still remaining in the original term.

17.     On information and belief, on or around August 2, 2021, Carvana was banned from conducting business in Wake County until January 2022 for, among other things, issuing out-of-state temporary tags/plates for a vehicle sold to a person in NC and offering vehicles for sale without state inspections.

18.     On October 13, 2021, after researching the reasons for Carvana being banned in Wake County, Plaintiff sought to determine if there were issues involving a Temporary Plate Fee that Carvana charged the Plaintiff.  Plaintiff researched communications at that time of purchased and found an email he sent to registration@carvana.com of which he had attached the registration for his trade-in vehicle in order to have his plates transferred to the newly purchased BMW.  *See* email which includes a response from Carvana attached hereto as "**Exhibit 3**".  A copy of the registration for the trade-in is also attached hereto as "**Exhibit 4**".

3

19.     Based on the response from Carvana regarding the preceding paragraph, Plaintiff was informed that "*At the time of delivery, you will receive a temporary operating plate which you will have to keep on your vehicle until you receive the updated paper registration in the mail.*". *See* Exhibit 3.

20.     Plaintiff was not provided any temporary plate at the time of delivery because the plate from his trade-in was transferred to the BMW. Instead, Plaintiff was informed that a 30-DAY TEMPORARY MARKER RECEIPT ("30-day marker receipt") was placed in the glove box of the BMW and should remain there until he received his updated registration which should then list the BMW with the same tag number as the trade-in. That if he happened to be stopped and was asked for the registration, that he should provide the 30-day marker receipt document as evidence of registration. Plaintiff never had a need to refer to or use the 30-day marker receipt as proof of registration.

21.     On information and belief, the assertions made by Carvana in the preceding two (2) paragraphs were misleading and false. Upon recovering and inspecting the 30-day marker receipt from the BMW glove box, Plaintiff observed it was not fully completed or signed and it left the following items blank: **a)** Name of company affording liability insurance, **b)** Policy number, **c)** Title and License Fees Collected by Dealer $, **d)** Check Plate Classification and **e)** By (certifying signature). Item **e)** was preceded by "I, the undersigned, do hereby certify that the rules and regulations governing the issuance of 30-day Temporary Markers have been fully complied with.". As can be observed, no one signed the receipt. Furthermore, the 30-day marker receipt stated at the bottom that "This copy must be given to purchaser with corresponding 30-day temporary marker.". *See* 30-day marker receipt attached hereto as "**Exhibit 5**". Likewise, On September 5, 2019, Carvana sent an email to the Plaintiff with the following message suggesting the Plaintiff would be receiving new plates even when they knew the Plaintiff's plates were being transferred:

> *"We've got great news! Your registration for your 2016 BMW 3 Series has been processed! You should receive your plates within 5-7 business days. If you do not receive your plates within this time period, please reach out to our Customer Advocate team at 1.844.507.3599."*

22.     On October 13, 2021, when Plaintiff retrieved the 30-day temporary marker from the glove box of the BMW, he also found a state inspection receipt and statement showing an inspection took place on August 17, 2019, the day the Plaintiff would pick up the BMW. On information and belief, the BMW should have been inspected prior to being offered for sale on August 15, 2019. See G.S. § 20-183.4C(2) which states: "A used vehicle must be inspected before it is offered for sale at retail in this State by a dealer. Upon purchase, a receipt approved by the Division must be provided to the new owner certifying compliance.". A violation of this statute was part of the reason Carvana's dealer license was suspended in Wake County as part of Superior Court case no. 21 CVS 8116.

23.     Upon researching the law regarding the issuance of temporary markers in the state, Plaintiff learned that under the circumstances, a dealer such as Carvana could not issue a temporary plate when a registration plate was being transferred. Furthermore, a receipt should be accompanied by a temporary marker to be attached to the vehicle until a new or replacement plate

was received.  As mentioned, Plaintiff already had a registration plate which was transferred from his trade-in, a 2005 Suzuki XL-7 to the BMW.

24.     On October 13, 2021, after making the discovery regarding the 30-day marker receipt and the law regarding issuance by a dealer, Plaintiff filed a complaint with the License and Theft Bureau of the North Carolina Division of Motor Vehicles ("Theft Bureau"), informing them that he was charged for a Temporary plate that he didn't believe should have been charged because his plates were transferred and further that he never received a temporary plate.  Plaintiff was called within one hour of submitting the complaint by a lieutenant of the Theft Bureau who requested that Plaintiff send her a copy of the document showing the line item where he was charged a temporary plate fee.  Plaintiff immediately sent a copy of page 1 from the Purchase agreement along with emails between Plaintiff and Carvana regarding the plate transfer.  *See* page 1 of Exhibit 1 at line item 3b.  Plaintiff also emailed a copy of the 30-day temporary marker seen in Exhibit 5.

25.     Realizing the Temporary Plate fee may not be valid, Plaintiff looked into whether other fees he was charged by Carvana could be unlawful or potentially overstated.  On information and belief, as can be seen on Exhibit 1, the following, including the temporary plate fee, were charged but were either over-charged or bogus with suspected reasons:

| Line Item | Charged | Overage | Reason |
|---|---|---|---|
| 3a - NC Registration Fee | 36.00 | (16.00) | Over charge: due to registration transfer. Should be a registration transfer fee of $20.00 |
| 3b - Temporary Plate Fee | 1.00 | (1.00) | Unlawful: Not valid with registration transfer |
| 3c - County Registration Fee | 15.00 | (15.00) | Unlawful: Not valid with registration transfer |

Plaintiff renewed registration for his trade-in vehicle on October 31, 2018 and paid a $36.00 annual registration renewal fee at that time so line item 3a was not due again until October 31, 2019.  Line item 3a – NC Registration Fee, based on fee schedule, should be a Registration Transfer Fee and equal to $20.00 since this involved a plate/registration transfer and was not a renewal given there was still time remaining on the pre-existing registration being transferred.  The registration Plaintiff did receive for the BMW expired on October 31, 2019 as expected.  Plaintiff renewed registration again on October 18, 2019 and paid a $36.00 annual registration renewal fee, less than 2 months after he was charged $36.00 by Carvana.

26.     As a licensed dealer in this State, Carvana knew and understood the laws and regulations regarding the collection of fees or other amounts that were due to the state or local government but ignored those laws or regulations.  N.C.G.S. § 105-330.6 (b) states:

> "*Transfer of Plates. – If the owner of a classified motor vehicle listed pursuant to G.S. 105-330.3(a)(1) transfers the registration plates from the listed vehicle to another classified motor vehicle pursuant to G.S. 20-64 during the listed vehicle's tax year, the vehicle to which the plates are transferred is not required to be listed or taxed until the current registration expires or is renewed*"

27.     Although the law is clear and Carvana knew the Plaintiff's plates were being

5

transferred, they still charged the Plaintiff a County Registration Fee of $15.00 even though Plaintiff had already paid this same fee when he renewed his registration in October of 2018. *See* 2018 renewal receipt attached hereto "**Exhibit 6**". On information and belief, this $15 fee is a vehicle property tax charged annually with registration renewals.

28.     Although the law is also clear regarding when a dealer can issue a temporary marker, Carvana still charged the Plaintiff a Temporary Plate fee even when they knew that no temporary plate was provided and they knew it was forbidden by law. 19A N.C. Admin. Code 3D.0221(b)(6) states in relevant part that "… If a plate is to be transferred, a 30-day temporary marker shall not be issued.". As mentioned, Carvana merely tucked a partially completed 30-temporary marker receipt in the Plaintiff's glove box and asked that he only use it if he was stopped and asked to show registration for the BMW.

29.     Carvana could be penalized through an enforcement action if they improperly issued a 30-day temporary marker. *See* 19A N.C. Admin. Code 3D.0235 which states in relevant part that: "The Division of Motor Vehicles shall apply the Civil Penalty Schedule for Type II Violations against a licensed automobile dealer for any of the following: . . . (5) Improperly issuing or using 30-day temporary markers as addressed in G.S. 20-79.1".

30.     Considering Carvana knew that Plaintiff's license plate from his trade-in was being transferred, they knew that the cost for registration transfer was not $36.00 as charged. Yet they still charged the Plaintiff that amount instead of the registration transfer amount per the DMV fee schedule for 2019 which should have been $20.00. *See* fee changes found at https://www.ncdot.gov/news/press-releases/Documents/2020-06-29-dmv-fees-increasing.pdf. *See* Exhibit 6 showing the Plaintiff paid a registration renewal fee of $36.00 on October 31, 2018 which would not expire or come due again until October 31, 2019. Also *see* receipt attached hereto as "**Exhibit 7**" showing the Plaintiff paid another registration renewal fee of $36.00 on October 18, 2019, two months after the BMW purchase.

31.     As a result of Carvana either charging unlawful fees which were not due by law or for over charging the Plaintiff using a different purpose fee such as using a registration renewal fee instead of a registration transfer fee, Plaintiff paid additional amounts in finance charges on top of the unlawful fees under the Contract. Plaintiff had no reason to suspect that any of the fees charged regarding registration or plates were unlawful.

32.     Carvana could be penalized through an enforcement action for their wrongful actions. *See* N.C.G.S. § 20-294 which states in relevant part that "The Division may deny, suspend, place on probation, or revoke a license issued under this Article for any one or more of the following grounds: . . . (14) Willfully defrauding any retail buyer, to the buyer's damage, or any other person in the conduct of the licensee's business. ... (16) Using unfair methods of competition or unfair deceptive acts or practices as addressed in G.S. 20-294(6)". Also *see* 19A N.C. Admin. Code 3D.0234. See also Wake County Superior Court case no. 21 CVS 8116.

33.     The Plaintiff was purposely mislead and deceived by Carvana regarding the official fees. None of the three fees mentioned were sent to the DMV for the stated purpose. Instead, Carvana took those fees for themselves under the pretense that they would be paid to the DMV.

6

In doing so, Carvana misrepresented the amount financed, the finance charge and the APR.

34. In order to conceal their deception, Carvana removed the receipt portion of the registration prior to mailing it to the Plaintiff. The receipt would have shown that Carvana paid $20 Transfer Plate Fee to the DMV, a fee which was not disclosed on the Sales Agreement or Contract. It would have also revealed that Carvana did NOT pay a $36 Registration Fee or $15 County Registration Fee to the DMV. In an apparent attempt to escape or otherwise avoid liability for this deception after the fact, Carvana sent the Plaintiff a check for $31 on December 1, 2021, the day in which their answer was due to the original complaint. However, Plaintiff rejected and sent the check back to Carvana by certified mail.

## FACTS REGARDING REQUEST FOR STATEMENT OF ACCOUNT AND REBATE

35. On October 14, 2021 at approximately 7:56AM EST, the Plaintiff logged into bridgecrest.com and sent the following message to Bridgecrest:

> "This is a formal written request that you provide a statement of account in accordance with North Carolina General Statute § 25A-35. This is regarding the retail installment contract for VIN # WBA8E9G54GNT46394.
>
> Please include an accounting of any earned and unearned finance charges that were paid."

36. Additionally, on October 14, 2021 at approximately 8:14AM EST, the Plaintiff logged into bridgecrest.com and using the [Contact Us] feature of Bridgecrest's website and sent the following message to Bridgecrest:

> "Regarding the installment contract involving VIN # WBA8E9G54GNT46394, please accept this as a formal written demand for refund or rebate of any 1) unearned amounts of finance charges due to prepayment of the installment contract prior to its maturity and 2) refund of any amounts that were included on page 1 of the Retail Purchase Agreement (3a through 3c) if those amounts were not valid official fees for the state, not required for the transaction or that were required but the amount was in excess of the amount required.
> As for item 2) above, please include any finance charges that were paid on those amounts.
>
> Item 1) above is made in accordance with North Carolina General Statute § 25A-32."

37. As of the filing of this Complaint, Plaintiff had not received any statement of account in accordance with N.C.G.S. § 25A-35 from Bridgecrest or Carvana.

38. As of the filing of this Complaint, Plaintiff had not received any rebate as demanded in

accordance with N.C.G.S. § 25A-32.  On information and belief, Plaintiff believes the rebate due to him using the rule of 78 would come out to $764.98 provided the rebate was provided as requested within a 10-day period but it was not provided within that time frame.

## <u>FACTS REGARDING DOCUMENTS ALLGEDY SIGNED BY THE PLAINTIFF</u>

39.     DocuSign, Inc ("DocuSign") is a company used to electronically sign documents in compliance with the U.S. Electronic Signatures in Global and National Commerce Act (ESIGN), 15 U.S.C. § 7001 et seq. Under ESIGN, electronic records and signatures in compliance with ESIGN are legally binding.  DocuSign permits a company to send documents to a customer for their signature. The customer opens the document for review containing areas marked for the signatory to execute. The signer creates a signature and must click a button confirming their signature once they have completed all form fields and signed in all required places.

40.     DocuSign also provides a set of Application Programming Interfaces ("API") that can be used to programmatically interact with their e-signature services in addition to DocuSign PowerForms which allow clients to use DocuSign document e-signature products from their own website instead of a DocuSign website.

41.     DocuSign generally allows its clients to request a signature by sending an email to the user or customer on behalf of the client.  The email recipient would then click a "View Document" button or link in the email which takes them to the DocuSign website.  The email may also contain a unique security code that could be used before being provided access to the documents and signing. From the website, the user would create a signature and initials by selecting a pre-defined style or drawing their own.  That signature or initial would then be used to sign or initial one or more documents in pre-designated areas marked for execution using a click.  Once each pre-designated area for a signature or initial has been executed, the user can click "Finish" to complete the document signing process.  If there are other signatories, DocuSign generally sends the signed documents to the next signatories email address based on the sequence defined by the client.  All signatures or initials on the signed documents for a given user would be identical.  The user could also a) print documents, b) view, print or download a Certificate of Completion or c) view, print or download history of the envelope if desired or d) revoke a document if not already signed.  In this case, Carvana sent a custom email which makes no mention of DocuSign and directed the Plaintiff to a website location at carvana.com which may use DocuSign PowerForms or DocuSign's API.  Within the email, Carvana advised Plaintiff he did do not need to print the documents.

42.     A DocuSign Certificate of Completion provides identifying information about the envelope and complete details of the envelope events.  The signer events section provides details about each signer of the document, including the signer's IP address and other identifying information, a signature image and key event timestamps.  In its native PDF form, the Certificate of Completion include a digital signature embedded by DocuSign.  This digital signature serves as a non-repudiation tamper stamp which among other things, is used to verify a document has not been modified since the digital signature was applied.  If alterations are made to a digitally signed document, the digital signature will provide details about where alterations were made and depending on the document PDF viewing software being used, would also allow someone to view

8

the originally signed document without the alterations.

43.     Carvana has required documents to be signed electronically using DocuSign's e-signature product offerings since no later than 2017.

44.     Although DocuSign has security features to help verify the signature of the person who signs or initials a document, Carvana avoids use of those security features.  For example, DocuSign has a security feature for the signature that, once signed, the term "DocuSigned By:" appears above the signature and a 15-digit alphanumeric characters appear below the signature as a unique signature id.  Additionally, for initials, the letters "DS" would appear above the initials.  Examples of both are seen in Figure 1 below using one of the pre-defined styles provided by DocuSign.



Figure 1 - Sample DocuSign signatures available for selection

45.     Although DocuSign has features to notify users when a document has been signed and provide copies of the signed documents automatically, Carvana did not use of those features in as far as providing copies to the Plaintiff.  As mentioned, Carvana also advised the Plaintiff he didn't need to print the documents in an email.

46.     DocuSign also provides a field that allows Carvana to capture the date a document was signed which is populated automatically when a user clicks a pre-designated area to sign using the signature that he/she created.  However, in this case, Carvana avoided use of this feature and instead, placed a future date where a date of signature should appear creating the appearance that the Plaintiff electronically signed and dated documents on August 17, 2019 instead of August 15, 2019.  G.S. § 25A-28 requires that a document be dated and signed by the buyer.  The use of an auto-populated date field could have sufficed for a Plaintiff's signature date if it had been implemented as it would have reflected the actual date or the actual date and time of the Plaintiff, but that was not the case.

47.     All of the signatures on the documents that were provided to the Plaintiff and appear to be Plaintiff's signature look strikingly similar to the Plaintiff's actual signatures.  But in the case of the Contract and the Sales Agreement that were provided to the Plaintiff, the signatures and initials that appear on the documents couldn't have been made by the Plaintiff because, upon closer inspection, the signatures are different, even within the same document.  If the signatures appearing on documents provided to the Plaintiff were made by the Plaintiff, they would be identical across all of the documents.

48.     Plaintiff did not sign any document position that required a signature using his signature plus his initials ("Signature+Initials") as seen twice on page 5 of the Contract in Exhibit 2 and once on page 1 of the Sales Agreement in Exhibit 1.

49.     Plaintiff did not sign any document position that required an initial using his signature

9

as seen on the bottom right corner of every page of the Contract as seen in Exhibit 2. Likewise, Plaintiff did not sign any document position that required an initial with Signature+Initials as seen on page 1 of the Sales Agreement as seen in Exhibit 1.

50.	On information and belief, both the Contract and Sales Agreement that were provided to the Plaintiff on August 17, 2019 are not documents that Plaintiff electronically signed on August 15, 2019. The documents are instead good forgeries which had what appears to be different versions of signatures from the Plaintiff. In particular, the Sales Agreement, Exhibit 1, has two different sets of Signature+Initials, one where "Buyer's Initials" should appear and a different one where Plaintiff's signature should appear as demonstrated in Figure 2 and 3 below.



Figure 2 – Version 1 – Signature+Initials on Sales Agreement where initials are expected



Figure 3 - Version 2 – Signature+Initials on Sales Agreement where signature is expected

The Contract, Exhibit 2, has a signature plus initials while the signature appearing on the bottom right corner of every page is not the same as the signature that appears with initials. A signature from the Plaintiff would not change during a signing session between separate documents and certainly not on the same document.



Figure 4 - Version 1 – Signature+Initials on page 5 of Contact where signature is expected



Figure 5 - Version 2 - Signature on bottom of all Contract pages where initials are expected

51.	There are at least three (3) distinctly different signatures across the Contract and the Sales Agreement. The signature seen above in Figure 2 is different from the signatures seen above in Figure 3, 4 & 5. The signatures seen above in Figure 3 & 4 are the same but different from the signature seen above in Figure 5. And the signature seen above in Figure 5 is different from the signatures seen above in Figure 2, 3 & 4.

52.	Whomever created the signatures seen above in Figure 2 and 5 did a good job at creating nearly indistinguishable versions of the Plaintiff's signature. The Plaintiff signed documents in a single session on August 15, 2019 and there should only be one unique signature, regardless of the number of signatures, across all of the documents if signed by the Plaintiff using DocuSign.

53. Although the Plaintiff had the Contract and Sales Agreement in his possession for over two years, reviewed the documents between August 15 and August 21 of 2019 after the transaction, reviewed the documents again prior to filing suit and attached both documents to his original complaint as Exhibits, he never suspected or had any reason to suspect any of the signatures could be forgeries because they looked like his signatures.

54. Although the Plaintiff filed a different lawsuit against Carvana and that case was removed from this Court's District division and amended at least once in federal court, Plaintiff still never suspected or had any reason to suspect any of the signatures could be forgeries because they looked like his signatures. As such, Plaintiff made no allegations regarding forgery in his original or amended complaint that is now pending in federal court.

55. Plaintiff didn't focus any attention to any signatures until he reviewed documents filed by Carvana in *Saddler v. Carvana, LLC*, CASE NO 4:20CV105 HEA (E.D. Mo. Aug. 11, 2020). A declaration in that case revealed that Carvana used DocuSign. Consistent with how DocuSign works, the signed documents filed in that case show the exact same signature in places requiring a signature and the same initials in places requiring initials. The Certificate of Completion filed in that case also show the signature image associated with the Plaintiff in *Saddler* matched the signature on each document that was allegedly signed by him. Notably, the Sales Agreement in that case does not have any initials or signatures in the bottom right corner of each page.

56. Plaintiff also didn't recognize there should be no differences in signatures on a document until he learned that Carvana had used DocuSign since 2017 based on researching the *Saddler* case and conducting his own investigation of the DocuSign e-signature software.

57. Plaintiff never would have made any payments, cancelled the Contract with Carvana and demanded a full refund if he had known, among other things, that his signature had been forged on documents that were given to him on August 17, 2019. Furthermore, Plaintiff would have likely reported the forgeries at the time to authorities like the North Carolina Attorney General and/or the Consumer Finance Protection Bureau.

58. The documents that were provided to the Plaintiff on August 17, 2019 appear as though someone recreated the originals or created new documents for some unknown reason. It appears as though someone then signed the new documents using a new signature but the signature was created with initials appended to the end. It then appears as if someone added additional areas for signatures or initials to the documents, created yet another signature and/or initials and then used that signature or initials on certain areas of new or revised documents.

59. Carvana never contacted Plaintiff to ask him to sign or re-sign any additional, revised or new documents after he signed documents on August 15, 2019.

60. Carvana, having knowledge of when the Plaintiff actually signed documents and having discreet knowledge of the DocuSign Certificates of Completion, Envelope history and audit trails, knew at all times that the documents provided to the Plaintiff had been altered and were not the original documents the Plaintiff had signed on August 15, 2019.

11

61.     On information and belief, of the individuals at Carvana who knew or should have known that the documents were forged is Paul Breaux, the General Counsel at Carvana who himself signed one or more of the documents in question.

62.     Under North Carolina law, a person may be charged with a felony for forging a document with the intent to injure or defraud a person.  They may also be charged with a felony for uttering any false or forged document in accordance with N.C. Gen. Stat. § §14-119-120.  They may be charged with a felony whether they uttered a false or forged document directly or indirectly.

63.     On information and belief, discovery would reveal that an employee or agent of Carvana forged the Plaintiff's signature on versions of the Contract and Sales Agreement that were provided to the Plaintiff on August 17, 2019.

64.     On information and belief, discovery may also reveal that Carvana made material changes regarding terms between what Plaintiff actually signed on August 15, 2019 and the documents he was provided on August 17, 2019.  For example, the APR may have been increased from the original documents or the official fees that Plaintiff alleged were the result of fraud may not have been present on the documents he signed.  There is no reasonable basis for Carvana to forge documents unless material changes were made between the original and the forged versions.

65.     Due to Carvana forging one of more signatures of the Plaintiff on the Contract, the Sales Agreement and possibly other documents, all of which are considered felonies under the laws of this state, the Contract was voidable and Plaintiff would have sought rescission if he had knowledge of, among other things, the forgeries at the time the documents were provided to him or before he paid off the BMW.

## CLAIMS FOR RELIEF

## COUNT 1
## FRAUD AGAINST CARVANA

66.     The preceding paragraphs are incorporated here as though stated word for word.

67.     Carvana has engaged in a common scheme of fraud, through which they unlawfully charged official fees that were not due and collected interest on those unlawful fees.

68.     Carvana has also engaged in a common scheme of fraud, through which they seamlessly and convincingly forged signatures of the Plaintiff onto documents without consent or knowledge of the Plaintiff.

69.     Carvana intentionally perpetrated the common scheme of fraud complained of herein as an unlawful means to cause Plaintiff to pay additional fees, additional finance charges and avoid cancelling a voidable contract.

70.     Plaintiff justifiably relied on the Carvana's failures to disclose both their scheme of

12

unlawfully charging additional fees and forgery of his signature on one or more documents.

71.    As mentioned herein, Carvana made false representations or concealed material facts involving the following:

a.  Falsely representing that the Plaintiff required a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

b.  Falsely representing that the Plaintiff was required to pay a fee for a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

c.  Falsely representing that the Plaintiff was required to pay a County Registration fee which was not warranted by law due to a registration plate transfer and existing registration that would not expire until a future date;

d.  Falsely representing that the Plaintiff was required to pay the costs of a registration renewal when there was a registration plate transfer.

e.  Falsely representing that the Plaintiff could use a partially completed and unsigned 30-day temporary marker receipt as proof of registration if stopped by law enforcement.

f.  Falsely representing that they were offering the BMW for sale in compliance with the law when they knew the requirement for an inspection prior to offering the vehicle for sale had not been met on August 15, 2019 considering they did not have the vehicle inspected until after the Plaintiff arrived to pick up the vehicle.

g.  Forging the Plaintiff's signature on one or more documents without his knowledge or permission, passing those forged documents to the Plaintiff and falsely representing that the documents provided to the Plaintiff were true, accurate and authentic copies of documents the Plaintiff had signed electronically on August 15, 2019.

72.    The misrepresentations or concealment of material facts by Carvana were reasonably calculated to deceive, made with the intent to deceive and did in fact deceive the Plaintiff resulting in damage.

73.    As a direct and proximate result of Carvana's common fraud scheme, Plaintiff was caused and sustained damages in the form of the unauthorized fees paid in connection with the purchase of a motor vehicle and denied an opportunity to avoid a voidable Contract.  As a result, Carvana is liable to the Plaintiff for compensatory and punitive damages to be determined by a trier of fact.

13

## COUNT 2
## VIOLATION OF RETAIL INSTALLMENT SALES ACT ("RISA")
## AGAINST CARVANA AND BRIDGECREST

74.     The preceding paragraphs are incorporated here as though stated word for word.

75.     N.C.G.S. § 25A-35 states that in relevant part that:

(a) One time during each 12-month period following execution of a consumer credit installment sale contract and when the buyer repays the debt early, the buyer shall be entitled upon request and without charge to a statement of account from the seller. The statement of account shall contain the following information identified as such in the statement:

(1) The itemized amounts paid by or on behalf of the buyer to the date of the statement of account, except that upon early termination of the contract by prepayment or otherwise, the statement shall include itemized charges for expenses of repossession, storage and legal expenses.

76.     As mentioned above, Plaintiff had not received a response from Defendants regarding a statement of account.

77.     N.C.G.S. § 25A-32 states in relevant part that:

Notwithstanding any provision in a consumer credit installment sale contract to the contrary, any buyer may satisfy the debt in full at any time before maturity, and in so satisfying such debt, shall receive a rebate, the amount of which shall be computed under the "rule of 78's," as follows:

The amount of such rebate shall represent as great a proportion of the finance charge (less a prepayment charge of ten percent (10%) of the unpaid balance, not to exceed twenty-five dollars ($25.00)) as the sum of the periodical time balances after the date of prepayment in full bears to the sum of all the periodical time balances under the schedule of payments in the original contract." No rebate is required if the amount thereof is less than one dollar ($1.00).

If the prepayment is made otherwise than on the due date of an installment, it shall be deemed to have been made on the installment due date nearest in time to the actual date of payment.

78.     As mentioned above, Plaintiff had not received a response from the Defendants regarding a rebate or refund.

79.     N.C.G.S. § 25A-44 states in relevant part that:

14

In addition to remedies hereinbefore provided, the following remedies shall apply to consumer credit sales:

. . .

(3) In the event the seller or an assignee of the seller (i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter, the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges. Ten days after receiving written request therefor, the seller shall be liable to the buyer for an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period.

(4) The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1.

80. The actions or inactions of Defendants regarding a statement of account and rebate were knowing and willful making them liable to the Plaintiff for three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period of Plaintiff's demand.

81. As a result of Defendants actions or inactions, they are in violation of RISA and liable to the Plaintiff for damages pursuant to N.C.G.S. § 25A-44(4) to be determined by a trier of fact. Plaintiff is due three times the amount of rebate or refund along with any unauthorized charges.

**COUNT 3**
**VIOLATION OF NCUDTPA AGAINST CARVANA AND BRIDGECREST**

82. The preceding paragraphs are incorporated here as though stated word for word.

83. Pursuant to N.C.G.S. § 75-1.1, unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

84. As mentioned herein and in COUNT 1 and COUNT 2, Defendants engaged in acts which were unfair or deceptive and those acts or practices were in or affecting commerce. Fraud has long been recognized as an unfair and deceptive practice. Likewise, N.C.G.S. § 25A-44(4) states that "The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1".

85. As mentioned above, Carvana also violated the risk-based pricing timing disclosure which, if prosecuted by the proper authority, could amount to an unfair or deceptive practice under federal law although no such cause of action is made here and Plaintiff would not have standing to state such a claim in this instance.

86. As mentioned herein, Carvana offered the BMW for sale with knowledge that there had not been a state inspection in violation of § 20-183.4C(2).

15

87.     As mentioned herein, Carvana forged the Plaintiff's signature on one of more documents as part of a common scheme of fraud and deceptive acts or practices.

88.     As a result of Defendants actions or inactions involving their unfair or deceptive acts or practices, they are liable to the Plaintiff for treble damages pursuant to N.C.G.S. § 75-16.

## COUNT 4
## VIOLATION OF THE TRUTH IN LENDING ACT ("TILA")

89.     The preceding paragraphs are incorporated here as though stated word for word.

90.     TILA requires written disclosures in a form that the Plaintiff could keep be provided prior to the consummation of the transaction at issue in this case. In this case, Carvana did not provide any disclosures until 2 days after Plaintiff had signed agreements online consummating the transaction and even then, the documents were not the documents the Plaintiff signed.

91.     Carvana did not provide a statement of Plaintiff's right to obtain, upon a written request, a written itemization of the amount financed in accordance with 15 U.S.C. § 1638(a)(2)(B). This was so prior to and after consummation of the transaction.

92.     As alleged herein, Carvana failed to disclose there was a $20 Plate Transfer Fee which they knew was due from the Plaintiff and actually paid to the DMV.

93.     As alleged herein, Carvana disclosed but materially misrepresented that Plaintiff owed certain official fees that were part of the transaction including a $36 Registration Fee, $15 County Registration Fee and $1 Temporary Plate Fee. These fees were collected but not paid to the DMV or other government or state body for their intended purposes.

94.     Carvana fraudulently concealed their mispresentations by withholding documents that would have revealed that they had not paid certain fees that were disclosed and paid another undisclosed fee. In this case, Carvana removed the receipt from the vehicle registration prior to sending it to the Plaintiff, effectively concealing which fees were paid or not paid.

95.     As a result of Carvana not disclosing a $20 Plate Transfer Fee that was due and paid to the DMV while at the same time disclosing, collecting and pocketing fees that were not due to the DMV, Carvana collected additional amounts as a finance charge. And as a result of collection additional amounts which were not due and should not have been part of the amount financed, Carvana misrepresented the APR in the TILA disclosures.

96.     As a result of Carvana's actions or inactions, they are liable to the Plaintiff for violating the Truth in Lending Act ("TILA"). As such, Plaintiff is entitled to twice the amount of the finance charge in the amount of $3566.46 in accordance with 15 U.S. Code § 1640(a)(2)(A)(i).

**WHEREFORE**, Plaintiff prays that the Court grant the following relief:

      a.     That costs of this action be taxed to Defendants jointly and severally;

b. That the Court enter judgement for Plaintiff and award compensatory and punitive damages in excess of $50,000 for COUNT 1 against Carvana for fraud and forgery.

c. That the Court enter judgement for the Plaintiff awarding three times the rebate amount that was due for COUNT 2;

d. That the Court enter judgement for the Plaintiff and against Defendants awarding treble damages for COUNT 3.

e. The the Court enter judgment for the Plaintiff and against Carvana awarding twice the finance charge for COUNT 4.

f. That the Court award Plaintiff pre and post judgement interest on pre-trebled damages;

g. That the Court enter an order declaring that the Contract was voidable at the time the BMW was delivered on August 17, 2019 due to forgery by Carvana's employees or agents;

h. That the Court award any other relief it deems just and proper.

Submitted this the _14th_ day of _January_, _2022_

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com

17

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

ARTHUR HILL,                                      )
                                                  )
            Plaintiff, pro se,                    )
                                                  )
    vs.                                           )
                                                  )          **VERIFICATION**
Carvana, LLC. and                                 )
Bridgecrest Credit Company, LLC.                  )
                                                  )
            Defendants.                           )
                                                  )

        I, Arthur Hill, being first duly sworn, deposes and says that he is the Plaintiff in this
matter, that he has read and understood this VERIFIED FIRST AMENDED COMPLAINT and
knows the contents to be true of his own personal knowledge, except for those matters and things
set forth upon information and belief, and as to those matters and things, he believes them to be
true.

_____
(Sign in the Presence of the Notary Public)

Sworn to and subscribed before me this 14th day of January , 2022 .

_____
Notary Public

My commission expires: May 10, 2026

18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **VERIFIED FIRST AMENDED**

**COMPLAINT** along with exhibits 1 through 7 and certification were served upon the following

attorneys for Defendants by e-mail:

| | |
|---|---|
| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17th Street, 17th Floor<br>Atlanta, GA 30363<br>Email: kadeisha.west@nelsonmullins.com<br>Phone: 404.322.6000 | |

This the 14th day of January, 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

19

THIS IS A COPY
This is a copy view of
by the designated cus

EXHIBIT
1

## Retail Purchase Agreement
### – North Carolina –

| BUYER | ARTHUR B HILL | | |
|---|---|---|---|
| ADDRESS | 2849 TRESTLE CT SW | | |
| CITY, STATE, ZIP | CONCORD NC 28025 | | |
| PHONE(S) | RES. 9805211819 | | BUS. |

| Year 2016 | Make BMW | Model 3 Series | | Body 328i 4dr Sedan SULEV |
|---|---|---|---|---|
| Lic. Plate # | License Tab # | Expires | Mileage 35447 | Color Black |

VIN # WBA8E9G54GNT46394

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.

Buyer(s) ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

### TRADE-IN VEHICLE 1

| Year 2005 | Make Suzuki | Model XL-7 | | Body |
|---|---|---|---|---|
| Lic. Plate # | License Tab # | Expires | Mileage 172715 | Color BLACK |

VIN # JS3TY92V754106319

### TRADE-IN VEHICLE 2

| Year N/A | Make N/A | Model N/A | | Body N/A |
|---|---|---|---|---|
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |

VIN # N/A

Buyer's Initials AH

---

Date 08/17/19  Phone 1-800-333-4554

Dealership CARVANA, LLC

Address 3631 SOUTH BLVD

City, State, Zip CHARLOTTE NC -2338

Stock Number 2000342348

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.

| | | |
|---|---|---|
| 1 | Selling price | $23,900.00 |
| 2 | Sales Tax | $711.00 |
| 3a | NC Registration Fee | $36.00 |
| 3b | Temporary Plate Fee | $1.00 |
| 3c | County Registration Fee | $15.00 |
| 3d | Title Fee | $52.00 |
| 4 | Subtotal (Selling Price + Delivery Fee + Fees + Taxes) | $24,715.00 |
| 5 | Trade-In Allowance | $200.00 |
| 6 | Estimated Pay-off | $0.00 |
| 7 | Net Trade Allowance (Allowance - Payoff) (If negative, enter $0 here and enter amount on Trade-In Balance Line) | $200.00 |
| 8 | Trade-In Balance (If applicable, this is the negative equity amount from your trade-in) | $0.00 |
| 9 | Cash Down Payment | $10,000.00 |
| 10 | Total Down Payment (Cash Down Payment + Net Trade Allowance) | $10,200.00 |
| 11 | Balance Due (Subtotal - Total Down Payment) | $14,515.00 |
| | | $14,515.00 |

### FINANCE CHARGE
The dollar amount the credit will cost you

$ 1,783.23

If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

THIS IS A COPY
This is a copy view of the Authoritative Copy
by the designated custodian

---

**NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

---

**Carvana Vehicle Return Program**

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:

1. You have not returned, exchanged, or swapped more than two (2) prior Vehicles to Carvana in connection with any Retail Purchase Agreements or Retail Installment Contracts associated with this transaction.
   i. If you have returned, exchanged, or swapped two (2) prior Vehicles in connection with this transaction, you will be given a one-time opportunity to decline or accept the third and final Vehicle either during the delivery or pick-up appointment unless otherwise approved by Carvana.

2. You alert Carvana by phone, text, email, or chat prior to 8pm EST on the 7th calendar day after you take delivery of the Vehicle. The day your Vehicle is delivered, regardless of delivery time, will count as the first day of your seven (7) day test own;

3. You return the Vehicle in one of two ways:
   i. Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pickup will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.
   ii. Outside of a Carvana service area: Carvana will arrange for transport of the Vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.

4. The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract executed between you and Carvana;

5. The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the Vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;

6. You have not driven it more than 400 miles;

7. The Vehicle is without damage or having been in an accident that occurred after you took delivery of the Vehicle;

8. If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/ or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

9. Any Trade-In vehicles with current liens which are involved in this transaction will be paid off once sale is complete and after the test own period ends. You should continue to make payments on liens if payment is due within your test own period. The lien holder of the Trade-In vehicle will reimburse you for any over-payment after the transaction is complete.

**Trade in Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

DocuSign Envelope ID: B2716B2B-C969-46D0-8617-749CED2DE1AC

THIS IS A COPY
This is a copy view of the Authoritative Copy
by the designated custodian

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages:** Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the Carfax Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

**Liability Insurance:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer acknowledges receipt of a copy of this Agreement. This agreement supersedes any oral agreements or understandings. The agreement cannot be modified except by a written agreement signed by all of the parties. This agreement is not binding until accepted by an authorized representative of Carvana.**

Buyer _____ *Arthur Hill*  AH

ARTHUR B HILL

Accepted By _____

Carvana

This is a copy view
by the designated c
EXHIBIT
2

NC-102

# Retail Installment Contract and Security Agreement
### (Consumer Credit Document)

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | ARTHUR B HILL | No. | 2000342348 |
| 3631 SOUTH BLVD | 2849 Trestle Ct Sw | Date | 08/17/19 |
| CHARLOTTE NC -2338 | CONCORD NC 28025 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 10,200.00 |
|---|---|---|---|---|
| 3.90 % | $ 1,783.23 | $ 14,515.00 | $ 16,298.23 | $ 26,498.23 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 227.00 | monthly beginning 09/17/19 |
| 1 | $ 181.23 | 08/17/25 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due. If you purchase the Vehicle for personal, family, household, or agricultural purposes the late charge will not exceed $6.00.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2016 | BMW | 3 Series | 328i 4dr Sedan SULEV | WBA8E9G54GNT46394 | 35447 |

☐ New
☒ Used
☐ Demo

Other:
N/A

## Description of Trade-In

| 2005 | Suzuki | XL-7 | JS3TY92V754106319 |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

## Conditional Delivery

☒ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: ___N/A___
___N/A___. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ ___14,515.00___ plus finance charges accruing on the unpaid balance at the rate of ___3.90___ % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at ___3.90___ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

THIS IS A COPY
This is a copy view of the Authoritative Copy
by the designated custodian

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | **Cash Price** of Vehicle, etc. (incl. sales tax of $ 711.00 ) | $ | 24,611.00 |
| b. | Trade-in allowance | $ | 200.00 |
| c. | Less: Amount owing, paid to (includes k): N/A | $ | N/A |
| d. | Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ | 200.00 |
| e. | Cash payment | $ | 10,000.00 |
| f. | Manufacturer's rebate | $ | 0.00 |
| g. | Deferred down payment | $ | 0.00 |
| h. | Other down payment (describe) N/A | $ | N/A |
| i. | **Down Payment** (d+e+f+g+h) | $ | 10,200.00 |
| j. | **Unpaid balance of Cash Price** (a-i) | $ | 14,411.00 |
| k. | Financed trade-in balance (see line d) | $ | 0.00 |
| l. | Paid to public officials, including filing fees | $ | 104.00 |
| m. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| n. | Service Contract, paid to: N/A | $ | 0.00 |
| o. | To: N/A | $ | N/A |
| p. | To: N/A | $ | N/A |
| q. | To: N/A | $ | N/A |
| r. | To: N/A | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | **Total Other Charges/Amts Paid** (k thru x) | $ | 104.00 |
| z. | **Prepaid Finance Charge** | $ | 0.00 |
| aa. | **Amount Financed** (j+y-z) | $ | 14,515.00 |

We may retain or receive a portion of any amounts paid to others.

*[This area intentionally left blank.]*

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☐ None

Premium $ N/A    Term N/A

Insured N/A

**Credit Disability**

☐ Single  ☐ Joint  ☐ None

Premium $ N/A    Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

| N/A | N/A |
|---|---|
| **By:** | **DOB** |
| **Date:** | |

| N/A | N/A |
|---|---|
| **By:** | **DOB** |
| **Date:** | |

| N/A | N/A |
|---|---|
| **By:** | **DOB** |
| **Date:** | |

**Property Insurance.** You must insure the Property. **You may purchase or provide the insurance through any insurance company reasonably acceptable to us.** The collision coverage deductible may not exceed $ 1,000 . If you get insurance from or through us you will pay $ N/A    for N/A of coverage.

This premium is calculated as follows:

| | | | |
|---|---|---|---|
| ☐ $ | N/A Deductible, Collision Cov. | $ | N/A |
| ☐ $ | N/A Deductible, Comprehensive | $ | N/A |
| ☐ | Fire-Theft and Combined Additional Cov. | $ | N/A |
| ☐ | N/A | $ | N/A |

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. **You may purchase the coverage from a company of your choice, reasonably acceptable to us.** If you buy the coverage from or through us, you will pay $ N/A    for N/A N/A of coverage.

Retail Installment Contract-NC Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

Page 2 of 5

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**

| | |
|---|---|
| Term | N/A months |
| Price | $ N/A |
| Coverage | N/A N/A |

☐ **Gap Waiver or Gap Coverage**

| | |
|---|---|
| Term | 72 months |
| Price | $ 0.00 |
| Coverage | |

☐ N/A

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

N/A        N/A

**By:** _____ **Date** _____

N/A        N/A

**By:** _____ **Date** _____

N/A        N/A

**By:** _____ **Date** _____

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration. You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25.00.

**Governing Law and Interpretation.** This Contract is governed by the law of North Carolina and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract (except as prohibited by law) if you fail to perform any obligation that you have undertaken in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the outstanding balance owing on the Contract at the time we begin a lawsuit to enforce and/or collect this Contract.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- ◆ You must pay this Contract even if someone else has also signed it.
- ◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- ◆ We may release any security and you will still be obligated to pay this Contract.
- ◆ If we give up any of our rights, it will not affect your duty to pay this Contract.
- ◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property, to the extent permitted by law. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- ◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- ◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- ◆ You agree not to remove the Property from the U.S. without our prior written consent.
- ◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- ◆ You will pay all taxes and assessments on the Property as they become due.
- ◆ You will notify us with reasonable promptness of any loss or damage to the Property.
- ◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note. If you purchased the Vehicle primarily for personal, family, household, or agricultural purposes, the following notice applies: NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| **By:** | **Date** |
| Signature of Third Party Owner (NOT the Buyer) | |

*[This area intentionally left blank.]*

This is a copy view of the Authoritative Copy
by the designated custodian

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

### Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

### Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

_Arthur Hill  AH_ _____ 08/17/19
By: ARTHUR B HILL                          Date

_____ N/A _____ N/A
By:                                              Date

_____ N/A _____ N/A
By:                                              Date

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

_Arthur Hill  AH_ _____ 08/17/19
By: ARTHUR B HILL                          Date

_____ N/A _____ N/A
By:                                              Date

_____ N/A _____ N/A
By:                                              Date

**Seller**

_Paul Fox_ _____ 08/17/19
By: CARVANA, LLC                            Date

**Assignment.** This Contract and Security Agreement is assigned to
_____ N/A _____

the Assignee, phone _____ N/A _____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐  This Assignment is made with recourse.

**Seller**

_____ N/A _____
By: _____ Date



**artbhill@hotmail.com**

| | |
|---|---|
| **From:** | ART HILL |
| **Sent:** | Thursday, August 15, 2019 7:01 PM |
| **To:** | Registration |
| **Subject:** | Re: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series |

Ok.  Thanks for the prompt response.

Get Outlook for Android

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of Registration <registration@carvana.com>
**Sent:** Thursday, August 15, 2019 6:56:56 PM
**To:** artbhill@hotmail.com <artbhill@hotmail.com>
**Subject:** RE: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series

Hi Arthur!

Thank you for taking the time to send in your registration card! I have updated your account to reflect your request to transfer of your license plates. At the time of delivery, you will receive a temporary operating plate which you will have to keep on your vehicle until you receive the updated paper registration in the mail.

Processing times can vary since our registration team has to process the transfer through the DMV. Once completed you will be able to move your old plate onto your new ride.

VERY IMPORTANT: In NC, it is required to keep the insurance active on the vehicle you are trading in until the registration transfer is complete, otherwise the DMV will not transfer the plate. If the registration is not active, you may obtain an FS1 form from your insurance company which needs to include the date the trade in vehicle was removed from the policy (this will ensure there were no lapses in insurance).

If you have any additional questions, please refer to our frequently asked questions section on our site! You can find that here: https://www.carvana.com/faq

Kind regards,

Alexa
Advocate II, Chat & Email
1930 W Rio Salado Pkwy /// Tempe AZ 85281
/// O: 800.333.4554 /// F: 866.221.3833

-------------- Original Message --------------
From: ART HILL [artbhill@hotmail.com]
Sent: 8/15/2019 3:39 PM
To: registration@carvana.com
Cc: artbhill@hotmail.com
Subject: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series

Hi, below states I can send a copy of my current registration to
registration@carvana.com<mailto:registration@carvana.com> if I want to transfer my license plate.  I am attaching my current registration and request that my plate be transferred.   Please let me know if there's any other action I need to

1

take.

Thank you..

Arthur

Sent from Mail<https://go.microsoft.com/fwlink/?LinkId=550986> for Windows 10

_____

From: Carvana <CustomerAdvocate@Carvana.com>
Sent: Thursday, August 15, 2019 4:47:37 PM
To: artbhill@hotmail.com <artbhill@hotmail.com>
Subject: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series


[Carvana - delivery to your door, 7 day test
own]<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv_7GpfwjIyi6T85hf4FS7jA7l7_2WxDlphhjZazPsIpg1XpPXAKPCltS
g-b0iEKnq79Xx25eyTraRnET4ygvZ0cF55Kr3TIYzBHeCIEf9b_4O-
bR07LibXLGnCx_ARdBL7Sjd1OiYfWAQkrgIsEUDb8rzKgb2RwWmwDp3WyybTsjCrSFc_jWxA089ZS7hM4LThyqhvvKT9fUR6
qgBdSPj8xn1JFg7HNgrNvc8UtaDTk9/Y06pJgT6s00fS064MQA0gXb>
1-800-333-4554<http://go.carvana.com/dc/Jt3HDPE9L5J_f6SUwpoLdGAfcXuo42BnBChDsIIex4KFasTvyAE-
WmAfC5zNhEz2Va8MqxVOaivUSw_wcsbkR8aOHFwvPT49EbYT20sPajixSQkl6YKGmYY53HX_gng1HtlpOGm48EkWewWw
AYXuiPMI2WIMagBR12eLwy706PmJDS-SN5i0levSASoBJ9MwVmkjJZm6cR1E529FHaXIkidRXRbnANvjT3-
fv2ANQmTJTnn2Pr2XuP_cIxf8TrNc0gO27Fc70dgYDSE2XMDN_iuTUnUIo0RBTxpEpr6lG8qPpNC3wSoBzS6MQmBqkv7ZV0
Kj7lwBBZgw6etDJhZyl24NC1qHABhqWT7X-gQZ0PzsO-
HEdxBR55EVATBVXFnRnYzFcarOvuUUSgyJWMKyjAL0hjucOtcgd9k7y7rFjUKZ4HD54qs7PsuH84BOyGlB4PFphcFOpjr2mVR
oShnvwcT_ph8Yyn0Rl1rzLVA4pTAI8rKRRpuYGRaK6Y9bvf-
WDXzYypKziuHic4Mm3DSggujvXo09b2vGg3fZe7QLRPYd0ZfhYFzBdjJSHJfsCo9R6vGovA7L4RzY_KqwKmEoqIDjcH_cifwAxx
urk6iXOKXI67n64zqyQqrcDqIfejAv2V_LYpYt1s8fVIvU2gUKp0xZQSFR1rEayFU1aC6O7Oo3S5s3mEanGnQhXO7_JdcYNCePY
pALf_bWzbMZHlDOurV7WivBsX2V6l1P3U0B_R0moQN9JM0B4dTRZ3Tf5f37zkWYheJ7c1g61T5w5vB0ZZ-L8iQ38Xn4-
b6NGx38TeHeV7092SveI1I_ZGWEM5k5P94vwBdzEq9Osbay8bj0qVZmiU8WFWG4T912ZigQof_vdFbDX7_KOlZUadxIoML
On2lwXuySpnRQAh_xM-
SScKKPNruBQrrcNEpBddS9kEUvSVpqQY_8OCpSfzdDXildTv0rwGP2OFafjr1F1oLnQAeUjezNxvt_6gHtERMGfN2HDBKzgZSO
u969srrtWQkKzdx1FjIFCINalwFfJTzwbXGfks-mQHesB3e_YD1QARJnZM2mYN5CrVSGVg1KGYxzUGJW2Dz3o-
LhGDTkKZDIG8tMkevQD57jYpULar2H9sduBT7nwzmcOdmvwA_m5c8tMHiAwQd4fh5JgGyEyecu6t7t6bjAwXtuaic-
VNNZ_nehzvghh7bRP5lJfp1dIpptnYsMtM3w4nDX4jgGKZcscLdENkAP54VpKZIlmjyhcTrvrWuxcZYWnTz5pP6aDhKveK-
Cin6ZHZWdnA99dLcaui22vrWQJIpwE3JEOc2E7Wf5N_5duUcYGc7csxf1KxC2frRZyZOuKjbQGM6_nn-
1BgqhdjiqW02AiIxH3FEVb6Xn6raJcFeGBs3vg7p6iZ7tW_zHbc-e4CYTZHvQKuawqzNPXh6kg_ddllLFGvL94PcSL-
WcHHNsiveft33lBDjSZBrCvNaapph6xCFDLVCVN8cWAO2rrs6l10M_dsy3ETFhPiw88gKHPNEYYNh66kozpjTlPIvNO0j3yhe-
fqVC9NcwzrmuGr-yWGNFelZGhIpP6KwMGfzCz6Y6h-W3oynXXNosuLkQygKbRijjDt3lSZymVZDe_sJ9bam4o-HUyrQTt-
oc9m85iYiHWfrkyiu-
hxu_IKrVrHLo0gUxPlgCYmUHaBDNjNeB6XIIxi5VrCR2BAi8nJxJC_nQlbDUE05strApZIZbBdw4CsWIu87i3oVJxJQ_kcM378A0
oWmIh6xxwj36XX68yieLWajPBzi4wPOTGODTtFaVqPZpy-
6Nf1WlkkHObmhhOVPIzM0225U4jX11mIv0hSFCkVtrMUucxtRo-C9v_GuNA-QidWaKJuR4bBP_H-
EuTftEVxrMIVgwh93VCtCJEE4rLAQX-4d3hYekf4VI-rltBthvyBl--knkwupky-
EbqGzFHVPZp0ahmqsBEoDVDvtV_80kGKDC7_jQz2yYVPwHCIQuHbClFlAXHMV7P1gohn4hPZymcVo4Dd6Ac-
S98Qu6BY3DlXr8I55nT2lVgU_At9s7rn9FLghwZ780ZGGxDK0kNGiMVbeVwsb-
384jD1XoJj5qzsqkbmZcYCfcd_XxSPx3RyUa4hdS8ieOMoOxR2Xqa0D_H8Tm7n_Q0Ds-C-
CnwfZwHIQAkQdt47LbnCcSSenCt7o9iXij8lOisqcHBW5P2ek8ywXqFWGL4HZB9WPVZ61KeeJfH_Abe4AO1URfp1e1BOt1uk
DBYj9P1D1o_CV4lh_kc6ghz-
NWYc17uY2wpmdb7HidZRBQ_yHPz7JBjlpWzgg0mhgkadUByQ86WfcFjlz1Mqvtrs6RY1oC5e9jYA4JessVf535ig3_cJq8aYCi0

2

Vz9TTIFRFq6BmzSbntEStOBrlRm1Z4XtHEtKgJLb7BIpWxNomOJKaBejPnbGksbCJuNkwVuSt7T6uiORFwza-5EsaQY9NEr6_RFKmp-dxbZb9ec5gu0sxPi--kD4DjRDKieyL2qMI3bOMlJuI2HmQ-rbqqxWXR8ojXvr2kMLkEf3PaZbPdo6GCZi0EIjXoj0tiI9toTlfOWQkFsF7qjiYddi-9BkhqP2viAd5f6b9jvQuMjpXb7JsPGpfXaLXpdNulkb0Jg4v5P39JFZif6C8z0gMm0XQL_4qzOHJxZzm637fHkEu1Py6jtju91zeJd_tfbiLEjB5b88syv0ZZZqqHFSLqNabOmlT3T4Pu5LsiAkEICU8OCXABg8uJF7pw64svKS8KUztUAqkOeP29GcJlTfSWJ5JqLnfosGuW2Z6M3R_EBJRJ-yMmjkvpIPeIoNR_VY2d7AS136l2LvF8f1pvQ0ZB05iOIqOJk_IYE5Ow_DEKPxA2TpmP3BIs9pgsJnhTNX5F1lTpq1XEyIqk7V1KauIaNILh3tkdrsuJiWMS8-q8flZFLI7tlwtYBEjvpmcPKtQoqcXdi4E_6mG4u5IK8p8YQFxkIOofgiUlbGghqQV5u2yuCYvIK7VE0UTqlSCQCUzQ7ZRfaGtyDdoo-2lB68173HiCk0eo-oA-DQjiklVxJoakadJw40ufZQD84OqzKgrUusKrF5q3D3IzMN9pir6yV2LJqjLtS8mf922B5yr4AE0YmxEInOXw2RDef4PNlAxCaOpLZDPLlDQfzpfpL49WSkkgjE8nxHjNIjZGZyknWf5tERlfgmpT45mHXcMYEI5ViuWpZzp7kC2DBBpX9h04grNoV3ac4r4RW4gLpoUqMxoE8Gowy68xydmwk0gsLHMVeWzD9UmoTO7RkKQJEUYF_yKAC37zgh4gHEy6S2loYWENLtuX3UsrwDfJ77KP4oKDc8tnrjhzhxlpFbFYICxCR46GCxgPI_mYg1nq7rwoPKJLvs_34ANtcgBZcTGH6QWmsfrqtJ-39biQmdXklgrKPvg6OoE3TB-j0HkiBOcP-grmdt9tzcTlV8r5boZUE1NzWA6rfWnfNkUSr7nXlQMgSq24rVW6zyv98QY7pjOvPtL143gtOuSD3-H5iIpsCW99ktF4YwA3Uj3AY0XiuxZIIsWjunQK3EseMtzdPLJp6f--qvEYBK3sqKuoNPsV_IngmbafKTlXPDzy90bMVTy5NMQ2cQnQwDJ0TaKRucISMtNzsqOcYJ3_nW1AW_e06MkZQG50o1bhLwbcpbqMfloHekw-_zM3vSlzT4LwAk2fYEBfLkSS59jX5EYhGcvx0hJqItI7Is04_aoXMlqimV2UGUHiWuG0JSXH_ZJIn-AQA7c0c45ggEVF9U6iQ2NGwixd_V4pwmpZZ-J99-2Ggthxhx3K8sPqp57AY7lXp6Ea8dFyN5K8B-IyNrbmaC86j4sjihxniqtxhB8Se_kgr6Zhced7Zw53nCwfX5vka0uZ_nPOwpFU_HgMabRk_onX9rt9Cn0tf-xNru968kbCMNJW27hqsKJNTPSHR9H0oxt-UEWaJagyBN1tlKHJT-dUMaYSYKQUkZfUquHyj-MQItsJg2zz9w3ER1P3NRafZ-eql7iA9NSelyfIQP1yxlLORlPX-0zgcyBT8v7uLgs6>
Available 8am–9pm EST

Congratulations ARTHUR!
This is your official confirmation to let you know your vehicle is on it's way. Your purchase information and documents have been reviewed and approved!

Please see below for your order details and requirements for pickup.

Thank you for choosing Carvana—the new way to buy a car!

Your confirmation number is: 2820057

[2016 BMW 3 Series]<http://go.carvana.com/dc/Sj1fy5d9Ien95c5PURLHvxAuXoIzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApXQoQL4b9TXhfR-Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7QI8R5GCZdI1heevq1gLjKrq8hMfzfzANKuWzHPwvdl9HX2MEJMNrrBgKc6D8i02wo4eANYInbFXh25y1CrO-AEvNIGiIa_68bUI_EA7M1iBM7wnCeacRh4dEEsMEfhX-BAeJV21LCVXT8DUUL6Ngvn672yLOLe6rGGgA==/Y06pJgT6s00fS064MQA0gXb>
2016 BMW 3 Series
$24,515
VIEW YOUR ORDER
PAGE<http://go.carvana.com/dc/Sj1fy5d9Ien95c5PURLHvxAuXoIzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApXQoQL4b9TXhfR-Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7QI8R5GCZdI1heevq1gLjKrq8hMfzfzANKuWzHPwvdl9HX2MEJMNrrBgKc6D8i02wo4eANYInbFXh25y1CrO-AEvNIGiIa_68bUI_EA7M1iBM7wnCeacRh4dEEsMEfhX-BAeJV21LCVXT8DUUL6Ngvn672yLOLe6rGGgA==/Y06pJgT6s00fS064MQA0gXb>

Pickup Address
3631 South Blvd Charlotte NC, 28209<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-OPci38Azt9xgCRUZV0o8F4WdSoZTxdHLDkzsiRbK08-F52mL5hiBR5fIGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-

lvrp0Hsi2tbRdzKFxLzRFYnynCWvcCQ7A==/Y06pJgT6s00fS064MQA0gXb>

Get Directions<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-
OPci38Azt9xgCRUZV0o8F4WdSoZTxdHLDkzsiRbK08-F52mL5hiBR5fIGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-
lvrp0Hsi2tbRdzKFxLzRFYnynCWvcCQ7A==/Y06pJgT6s00fS064MQA0gXb>

Pickup Date / Time
Saturday, August 17, 2019
11:30 AM local time

[map]<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-OPci38Azt9xgCRUZV0o8F4WdSoZTxdHLDkzsiRbK08-
F52mL5hiBR5fIGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-
lvrp0Hsi2tbRdzKFxLzRFYnynCWvcCQ7A==/Y06pJgT6s00fS064MQA0gXb>

Important Requirements for Pickup

Please have the below items ready at pickup in order to take possession of your new vehicle

Contracts:

   *  Ensure you have Signed Contracts
Online<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxAuXolzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApX
QoQL4b9TXhfR-
Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7QI8R5GCZdI1heTaz_0_B38m85ChHsEOncPCXs4ZWDtGcYNjEywH30RatbWP5
LjmuHtEWOiURyi9ZPAXXswXjhTlmUSTbdR80EJeyFxKoTmGCE--nnwbvvxl0=/Y06pJgT6s00fS064MQA0gXb> prior to
delivery. You do not have to print anything, just be sure to sign electronically.

Other Required Items:

   *  Valid driver's license
   *  Updated proof of insurance for the new vehicle. Coverage must be active/effective on or before the date of delivery
and must last for at least 45 days. Digital copies of your insurance card are accepted.

Frequently Asked Questions

Can I examine the car before taking possession?
You will be able to go over the vehicle's features, ask any questions and take your purchase for a quick test spin.

When will funds withdraw?
After you sign the title and registration paperwork we will withdraw the funds for your down payment. It may take 4-6
days for funds to clear.

How do I transfer my license plate?
Please send a copy of your current registration to
registration@carvana.com<http://go.carvana.com/I0b6hAS0MpsU664f0J0QX0g>. See
additional  FAQ<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv402Y_J_eiojcqX7pYKpQ7Eucriyy7ED2vO2hSDV28z_3
XJKAuoZl86TkPyhLCy2552yZKoM8SkbK84yydUVqwQ18kEw1_rCCVElJvqcm9qRUMOBzN1VBL632NMRbEhMP4UHTF2blG
gqoRghhZcR-
z_z0StgfTlVXiKGw7p4qsb1jXYJ5m_mHSFlXtrtdLMDaR6tC58J8m3R5aXjhmYERRk=/Y06pJgT6s00fS064MQA0gXb>.

More FAQ
»<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxSRRuEjvZdTrETnQ65HqGkWq9RcQpd3loKIbnXFjT7buWEWt2TwCg
K3Pj9ywci4HAiqJrCvHCw179Ts16NJC5JwpkJRlDgnY1a8ZEoRqzvKONSlJkdMtGnupON8gn4ESzYFmiVqEDalFxvFyMls9ZLoj-

4

Qb77wCGrcxu0DC-DZYnGiCurq8xzLE-3lB87MIfA==/Y06pJgT6s00fS064MQA0gXb>

Disclaimer: Carvana makes every effort to fulfill our scheduled delivery / pickup dates to ensure that our customers receive the best car buying experience possible. However, there are times where unexpected transport delays or inclement weather can impact these timeframes. These instances are rare, and we do everything possible to avoid these situations. Should a delay arise, our Customer Advocates will promptly reach out to discuss alternate arrangements.

[Learn About Carvana Care]<http://go.carvana.com/wQSX6p6AM00g0sbS60f4f0J>

© 2019  Carvana.com<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv1kbUrBKp-aFbkC_jmJfS7TK1ePz04hxyx9GMGS341SVXu-xwKjnW7GGspRvXHJN53TpTc_4XmzXgbS36u0p0A6bL6w2wZLMxxt7ZdWeA7-OOg4RfNOhPtY_uqSr1GCND_gIOSbA6DKDIVso7rf0gLMwGv-W7YtdgZFxMvpox6E0QXrpoV79zjBfsuUwgW5fttRYTVYPbOVf2r80maXUaTJJXhz47JA-9w0QmSDkK0UX/Y06pJgT6s00fS064MQA0gXb>. All Rights Reserved.
1930 W Rio Salado Pkwy, Tempe, AZ 85281<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv1kbUrBKp-aFbkC_jmJfS7TK1ePz04hxyx9GMGS341SVXu-xwKjnW7GGspRvXHJN53TpTc_4XmzXgbS36u0p0A6bL6w2wZLMxxt7ZdWeA7-OOg4RfNOhPtY_uqSr1GCND_gIOSbA6DKDIVso7rf0gLMwGv-W7YtdgZFxMvpox6E0QXrpoV79zjBfsuUwgW5fttRYTVYPbOVf2r80maXUaTJJXhz47JA-9w0QmSDkK0UX/Y06pJgT6s00fS064MQA0gXb>. You received this email because you are registered on Carvana's mailing list with the email address artbhill@hotmail.com<http://go.carvana.com/dc/8UOiyWTS_7EImXYJ-4AAZRqNkEkZkT0iJvyvxPUK9oU=/Y06pJgT6s00fS064MQA0gXb>.
Privacy Policy<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv0sEWfB1rIkLsy1sc5HcnTdGppiSjyjDaQiV0oGZ0LGtv85uypPN2LKPw3N4S9NbogcPjQEQP3OHmdr7BDTnUdFxKULivE_s50wv5bvJ0l4DWYf5PlvRjYo_dzWtCyfedUO7SKuRSwmyn4c1HkF9A0zkdYbTQdGFR86tB1NAxX0g-YdM3pZJa6M8VWpBsLbM5AnZ8u-gtUBaAKNmXLapeSHbUWz6lH2bRP7rBwT1TXkeIZ1NdbZvxyjeXtt82zcQ9g==/Y06pJgT6s00fS064MQA0gXb> | Terms of Service<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvyV8OvvM8x9FyLIsjCkQoeLdE1G4WEYt4Sxebyzl4qW4He3fAEioU2qtRPRVCNEnoZvZTsSf2EC6-G3NNhJ2toJWXAQugDxCYN6rQRyU12wIo33p_Q0XjWyDGNUXYeQLUBcUFBSr8f3ltht_AYC9bcDuRgbs-uH_uBl_OKgb0zNSl3uQCtfr-Gnxky720uTz1NrxVNsLPyTohu8_dPxHkehK1ZqFO9nYSaSyXQ-R0iDMgJDZeG-iSPvFkvKi60E2Rg==/Y06pJgT6s00fS064MQA0gXb> | Unsubscribe<http://go.carvana.com/dc/QTNnB-185RKm3d24UEzMDsESEhrFHVVClHf2ZU3c1f8oRoKPvq4hGIz_VGY63KymHcNAh8C0mbbXeMHjKpOFDT_4aAef2aWYMoyOfGfuBCkpFDMfJZ_CwO4y8N21WoZ6lmEPXUJsgJVIgoVqqYn0HwZkP48zxu0277lsbGcKX13x1g5WJMIbhnost8zX8SNLatHTfFFxob75vPuUxS9h4M7zwb4jDplnAI-0lolWDRwXdxyH49LEx213Nv72DJH08T4Zh77HJTQu8sc_8QqNvCqOPTSBkbhmRmFww90jjUc=/Y06pJgT6s00fS064MQA0gXb>

<http://go.carvana.com/x0A00g0J4ib6M6Q0V6psSXf>
ref:_00DG0jqBp._5001M1P4hfm:ref

# STATE OF NORTH CAROLINA
## REGISTRATION CARD

| NC LIC NUMBER TZZ5120 | PLT EXP DATE 10/31/19 | | INSPECTION DUE 10/31/19 |
|---|---|---|---|
| VEHICLE ID # JS3TY92V754106319 | | | GROSS WT |
| MAKE/SERIES SUZI | TITLE 777338051787144 | | EQUIP # |
| SHIPPING WEIGHT | STYLE MP | YEAR 2005 | FUEL G |
| | | | TOTAL FEE 36.00 |
| CLASSIFICATION PRIVATE PASS VEH | | | VEHICLE BRAND |
| CUSTOMER ID # OWNER 1 000028684552 | CUSTOMER ID # OWNER 2 | | COUNTY CABAR |

ARTHUR BERNARD HILL

2849 TRESTLE CT SW
CONCORD NC 28025-6038

FOLD HERE - DO NOT TEAR

S23 - STANDARD FIRE INSURANCE CO
INSURANCE COMPANY AUTHORIZED IN NC

9899385211011
POLICY NUMBER

JS3TY92V754106319

EXHIBIT
tabbies
4

Form 38
(Rev 01/14)

NORTH CAROLINA DEPARTMENT OF MOTOR VEHICLES    DEALER # 0077122

**30-DAY TEMPORARY MARKER RECEIPT**

NUMBER   25235691

EXHIBIT

5

| DATE OF SALE 8-7-19 | VOID IF ALTERED | RECEIPT EXPIRES 30 DAYS AFTER SALE DATE |
|---|---|---|

PURCHASER
Arthur Hill

| STREET, RFD 2849 Trestle Ct SW | CITY Concord |
|---|---|

| NAME OF COMPANY AFFORDING LIABILITY INSURANCE | POLICY NUMBER |
|---|---|

| MAKE, YEAR, STYLE BMW 2016 Sedan | SERIAL NO. WBA8E9G54GNT46394 |
|---|---|

| TITLE AND LICENSE FEES COLLECTED BY DEALER: $ | GROSS WEIGHT FOR WHICH TRUCK OR TRACTOR IS TO BE LICENSED |
|---|---|

| CHECK PLATE CLASSIFICATION | ☐ PRIVATE CARRIER ☐ FOR HIRE CARRIER | ☐ FARM TRUCK ☐ SPECIAL MOBILE EQUIPMENT | ☐ OTHER, SPECIFY |
|---|---|---|---|

I, the undersigned, do hereby certify that the rules and regulations governing the issuance of 30-day Temporary Markers have been fully complied with.

DEALER   CARVANA LLC                        By:

ADDRESS   3631 south blvd charlotte NC 28214

**This copy must be given to purchaser with corresponding 30-day temporary marker.**



# Receipt

**NC DMV Registration Renewal & Property Tax**

# Total Paid: $92.40

**Payment Date:** 10/31/2018 5:55:10 PM

Thank you for your payment. Please retain this receipt for your records. This confirmation is not a registration document.
Your new registration card will be mailed within 7 days.

## Questions

### Vehicle Property Tax Questions

Property tax questions can be addressed to CABARRUS County.

### Registration Renewal Questions

Registration questions can be addressed to NC DMV.

- Call 919-715-7000

## Your Info.

**Name:** ARTHUR BERNARD HILL
**Address:**
    **Residence:** 2849 TRESTLE CT SW
    **Mailing:** 2849 TRESTLE CT SW
    **Vehicle Location:** 2849 TRESTLE CT SW

**Total Owed:** $92.40
**Vehicle:**
    **Desc:** SUZI
    **VIN:** JS3TY92V754106319
    **License Plate:** TZZ5120
    **Title:** 777338051787144
**Note:**

## Fees

### Registration
1 Itemized Details:

| Description | Fee |
| --- | --- |
| PLT: TZZ5120 | $36.00 |
| **Total Registration Fee:** | **$36.00** |

### Vehicle Property Tax
3 Itemized Details: Appraised Value $3,450.00

| Taxing Districts | Tax Rate per $100 Value | Fee |
| --- | --- | --- |
| CABARRUS COUNTY TAX | | $24.84 |
| CONCORD CITY TAX | | $16.56 |
| CONCORD CITY TAX VFEE | | $15.00 |
| | **Total Property Tax:** | **$56.40** |



**artbhill@hotmail.com**

| | |
|---|---|
| **From:** | myNCDMV <admin@payitgov.com> |
| **Sent:** | Friday, October 18, 2019 11:34 AM |
| **To:** | artbhill@hotmail.com |
| **Subject:** | Thanks for your payment |



## Your Receipt

Thanks for your payment with **myNCDMV**.

## Payment Summary

| | |
|---|---|
| Vehicle Renewal | **$324.15** |
| 2016 Bmw 328 I Sulev | |

| | |
|---|---|
| Vehicle Information | BMW |
| Title Number | 77386919247075Y |
| VIN | WBA8E9G54GNT46394 |
| Make | BMW |
| Model | 328 I SULEV |
| Year | 2016 |
| License Plate | TZZ5120 |
| Plate Background | First in Flight |
| Plate Code | PVA |
| Plate Category | PRIVATE AUTO |
| Mailing Address | 2849 TRESTLE CT SW CONCORD, NC 280256038 |
| Situs County | Cabarrus |
| Appraised Value | $21,160.00 |
| Property Tax Fees | |
| CABARRUS COUNTY TAX | $156.58 |
| CONCORD CITY TAX | $101.57 |

1

|                        |          |
|------------------------|----------|
| CONCORD CITY TAX VFEE  | $30.00   |
| Registration Fees      | $36.00   |

ARTHUR

MasterCard ending in 2710

Paid on October 18, 2019 11:34 AM

Confirmation Number f4e2b371-fdd4-4319-bea6-868da480b055

| Subtotal        | $324.15 |
|-----------------|---------|
| Transaction Fee | $3.00   |

**Payment Total**                                **$327.15**

## Vehicle Renewal

Please retain this receipt for your records. This confirmation is not a registration document. Your new registration card will be mailed within 7 to 10 days. For property tax questions, please contact your county tax office.

Official Receipt State of North Carolina. For more information, please visit the North Carolina Division of Motor Vehicles site at ncdot.gov/dmv. Or email North Carolina Division of Motor Vehicles at https://apps.ncdot.gov/contactus/Home/PostComment?unit=DMV_VR

Get help from PayIt Support

© 2019 myNCDMV

STATE OF NORTH CAROLINA    ~~FILED~~    IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

COUNTY OF CABARRUS           Civ No: 21 CV 3755

2022 JAN -6 A 8: 04

CABARRUS CO., C.S.C.

ARTHUR HILL,

        Plaintiff, pro se,   BY   MT

     vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

## PLAINTIFF'S REPLY TO CARVANA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

     Plaintiff Arthur Hill ("Plaintiff"), hereby files this reply to Defendant Carvana, LLC's

("Carvana") response in opposition to Plaintiff's motion to amend.

     Carvana's opposition has nothing to do with Plaintiff attempting to state any cognizable

fraud claim. Rather, it has everything to do with keeping any allegations or evidence of

document forgery out of the record.

     In light of Carvana's response in opposition to Plaintiff's motion to amend, Plaintiff has

revised the proposed first amended complaint. A redlined version of the revised first amended

complaint ("Proposed Amendment") is attached hereto as Attachment 1.

     Changes were made to paragraphs 8-9 to better conform to Plaintiff's newly added

allegations regarding forged documents, making it clear that the documents provided to the

Plaintiff by Carvana were "purportedly" signed by the Plaintiff. Although there should have

already been a strong inference that something must have changed between what the Plaintiff

signed versus the alleged forged documents, Plaintiff now includes an allegation that he believes

there were material changes made between the documents he actually signed versus the

1

documents he was provided by Carvana because there would be no reasonable basis to forge new documents unless there was some material change such as higher APR or the addition of fees that were not part of the documents the Plaintiff actually signed.  Plaintiff also now includes a new federal claim as COUNT 4 for violation of the Truth In Lending Act.

For these reasons, Plaintiff requests that the Court consider the attached redlined proposed first amended complaint as part of his motion to amend and grant Plaintiff leave to file a fully signed and verified version of the same.

Respectfully submitted this the 6th day of January 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon the following attorneys by e-mail:

| | |
|---|---|
| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17th Street, 17th Floor<br>Atlanta, GA 30363<br>Email: kadeisha.west@nelsonmullins.com<br>Phone: 404.322.6000 | |

This the 6th day of January, 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

3

# ATTACHMENT 1

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

ARTHUR HILL,

        Plaintiff, pro se,

        vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**VERIFIED FIRST AMENDED
COMPLAINT (PROPOSED)**

In accordance with Rule 15(a) of the North Carolina Rules of Civil Procedure, Plaintiff Arthur Hill ("Plaintiff" or "Hill") files this verified first amended complaint and complains of the Defendants Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest") (collectively "Defendants") for violations state law and states the following:

## PARTIES

1.     Plaintiff is a natural person and at all times relevant to this complaint here was a resident of Cabarrus County in North Carolina.

2.     Carvana, a spin-off of Tempe Arizona based DriveTime Automotive Group Inc., is a used car dealership that conducts business in or affecting commerce and does so exclusively via the internet at carvana.com with its principal place of business located at 1930 W. Rio Salado Pkwy Tempe, AZ 85281. Carvana is a "seller" as defined under N.C.G.S. § 25A-6. Carvana is a licensed dealer within this state with locations in Concord, Charlotte, Greensboro and Raleigh.

3.     Carvana may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue Suite 550. Raleigh, NC 27608.

4.     Bridgecrest is an affiliate of Carvana by common ownership, incorporated under the laws of Arizona and generally services retail installment contracts entered into by Carvana with consumers. Bridgecrest is also a "seller" as defined under N.C.G.S. § 25A-6 to the extent that it involves events arising after assignment to receive payments on behalf of Carvana. Bridgecrest's business is in or affecting commerce in this state.

5.     Bridgecrest may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue Suite 550. Raleigh, NC 27608.

1

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over civil cases involving amounts over $25,000.

7.      Venue is proper because Plaintiff resides in Cabarrus County, Carvana conducts business in and maintains a registered agent in this state and Bridgecrest maintains a registered agent in this state and services installment contracts for residents in this state.

## STATEMENT OF FACTS

8.      On August 15, 2019, Plaintiff entered into a retail installment contract with Carvana to pay for a 2016 BMW 3 ("BMW") he purchased at a sale price of $23,900. The BMW was delivered on August 17, 2019 at Carvana's South Blvd location in Charlotte, NC. A copy of the Retail Purchase Agreement ("Purchase Agreement") and Retail Installment Contract and Security Agreement ("Contract") that Plaintiff purportedly signed via DocuSign are attached hereto as "Exhibit 1" and "Exhibit 2" respectively. An Arbitration Agreement that was also provided on August 17, 2019 and purportedly was also signed by the Plaintiff but he was opted out of that agreement on August 21, 2019. All 3 of the forementioned documents were purportedly signed electronically via the internet on August 15, 2019. The documents were provided to the Plaintiff on August 17, 2019 upon vehicle delivery. The documents all bear a signature date of August 17, 2019 even though the documents that Plaintiff signed should have a signature date of August 15, 2019. were signed online by the Plaintiff on August 15, 2019.

9.      During delivery of the BMW on August 17, 2019, Carvana did not provide the Plaintiff with any documents that were supposedly being sent to the North Carolina Department of Motor Vehicles ("DMV") such as a document evidencing a registration plate transfer was to take place or a title application. Plaintiff was provided a copy of (1) Retail Purchase Agreement, (2) Retail Installment Contract and Security Agreement, (3) Arbitration Agreement, (4) Odometer Disclosure, (5) Carvana Limited Warranty, (6) Credit Reporting Notice, (7) a certification that Plaintiff was not filing for Bankruptcy and (8) Buyers Guide. Each of these documents were purportly signed by the Plaintiff using DocuSign.

10.     On the morning of August 17, 2019 at approximately 3:34AM EST, Carvana sent Plaintiff an email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V). The file name from the link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the evening of August 15, 2019 at approximately 7:26PM.

11.     On the morning of August 19, 2019 at approximately 4:38AM EST, Carvana sent Plaintiff another email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V). The file name from the link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the night of August 17, 2019 at approximately 11:19PM.

2

12.     On information and belief, a risk-based pricing notice was due prior to consummation of the transaction on August 15, 2019 instead of 2 days later on August 17, 2019 or 2 days after delivery on August 19, 2019. Carvana, on information and belief, was in violation of the timing provision for providing a risk-based pricing notice so they changed the dates on the documents the Plaintiff signed to create the appearance that the transaction was consummated in person on August 17, 2019. Plaintiff discovered this violation between August 17 and August 21 of 2019 but after researching the law, he determined he could not assert a cause of action for any violation because a risk-based pricing violation can't be privately enforced. Plaintiff then opted out of an arbitration agreement he signed in the event Carvana had violated other laws so that he rights would not be limited.

13.     On information and belief, Carvana and Bridgecrest have servicing agreements whereby Bridgecrest is not explicitly assigned in the Contract but they are pre-designated as the servicer of the Contract through separate agreements. *See* Exhibit 2, page 5 of 5 showing no assignment.

14.     As part of the BMW purchase, Plaintiff put $10,000 cash down and was credited $200 for trade-in of a 2005 Suzuki XL-7. The TILA disclosures provided for **a)** amount financed of $14,515, **b)** for a term of 72 months, **c)** 3.90% APR and **d)** finance charge over the term of $1,783.23. The monthly payment for the first 71 months was fixed at $227 and a final payment of $181.23 for month 72. Per the Contract, if the Plaintiff paid off the Contract early, he would not have to pay a penalty.

15.     Plaintiff's first payment was due and paid on September 17, 2019 and scheduled payments of $227 were made up to and including September 17, 2021 for a total of $5,675.

16.     On September 22, 2021, Plaintiff logged into his profile with Bridgecrest at bridgecrest.com and requested a payoff quote which returned an amount of $9,845.62. Plaintiff then submitted a payment for that amount on the same day at bridgecrest.com. On the following day, when Plaintiff logged into bridecrest.com, the site indicated there was no longer an account for the Plaintiff because the account had been paid in full. The total amount paid in finance charges as of the date of payoff was $1,005.62 which represents 56% of the total finance charges with 47 of the 72 months still remaining in the original term.

17.     On information and belief, on or around August 2, 2021, Carvana was banned from conducting business in Wake County until January 2022 for, among other things, issuing out-of-state temporary tags/plates for a vehicle sold to a person in NC and offering vehicles for sale without state inspections.

18.     On October 13, 2021, after researching the reasons for Carvana being banned in Wake County, Plaintiff sought to determine if there were issues involving a Temporary Plate Fee that Carvana charged the Plaintiff. Plaintiff researched communications at that time of purchased and found an email he sent to registration@carvana.com of which he had attached the registration for his trade-in vehicle in order to have his plates transferred to the newly purchased BMW. *See* email which includes a response from Carvana attached hereto as "**Exhibit 3**". A copy of the registration for the trade-in is also attached hereto as "**Exhibit 4**".

3

19.     Based on the response from Carvana regarding the preceding paragraph, Plaintiff was informed that "*At the time of delivery, you will receive a temporary operating plate which you will have to keep on your vehicle until you receive the updated paper registration in the mail.*". *See* Exhibit 3.

20.     Plaintiff was not provided any temporary plate at the time of delivery because the plate from his trade-in was transferred to the BMW. Instead, Plaintiff was informed that a 30-DAY TEMPORARY MARKER RECEIPT ("30-day marker receipt") was placed in the glove box of the BMW and should remain there until he received his updated registration which should then list the BMW with the same tag number as the trade-in. That if he happened to be stopped and was asked for the registration, that he should provide the 30-day marker receipt document as evidence of registration. Plaintiff never had a need to refer to or use the 30-day marker receipt as proof of registration.

21.     On information and belief, the assertions made by Carvana in the preceding two (2) paragraphs were misleading and false. Upon recovering and inspecting the 30-day marker receipt from the BMW glove box, Plaintiff observed it was not fully completed or signed and it left the following items blank: **a)** Name of company affording liability insurance, **b)** Policy number, **c)** Title and License Fees Collected by Dealer $, **d)** Check Plate Classification and **e)** By (certifying signature). Item **e)** was preceded by "I, the undersigned, do hereby certify that the rules and regulations governing the issuance of 30-day Temporary Markers have been fully complied with.". As can be observed, no one signed the receipt. Furthermore, the 30-day marker receipt stated at the bottom that "This copy must be given to purchaser with corresponding 30-day temporary marker.". *See* 30-day marker receipt attached hereto as **"Exhibit 5"**. Likewise, On September 5, 2019, Carvana sent an email to the Plaintiff with the following message suggesting the Plaintiff would be receiving new plates even when they knew the Plaintiff's plates were being transferred:

> "*We've got great news! Your registration for your 2016 BMW 3 Series has been processed! You should receive your plates within 5-7 business days. If you do not receive your plates within this time period, please reach out to our Customer Advocate team at 1.844.507.3599.*"

22.     On October 13, 2021, when Plaintiff retrieved the 30-day temporary marker from the glove box of the BMW, he also found a state inspection receipt and statement showing an inspection took place on August 17, 2019, the day the Plaintiff would pick up the BMW. On information and belief, the BMW should have been inspected prior to being offered for sale on August 15, 2019. See G.S. § 20-183.4C(2) which states: "A used vehicle must be inspected before it is offered for sale at retail in this State by a dealer. Upon purchase, a receipt approved by the Division must be provided to the new owner certifying compliance.". A violation of this statute was part of the reason Carvana's dealer license was suspended in Wake County as part of Superior Court case no. 21 CVS 8116.

23.     Upon researching the law regarding the issuance of temporary markers in the state, Plaintiff learned that under the circumstances, a dealer such as Carvana could not issue a temporary plate when a registration plate was being transferred. Furthermore, a receipt should be

4

accompanied by a temporary marker to be attached to the vehicle until a new or replacement plate was received. As mentioned, Plaintiff already had a registration plate which was transferred from his trade-in, a 2005 Suzuki XL-7 to the BMW.

24.     On October 13, 2021, after making the discovery regarding the 30-day marker receipt and the law regarding issuance by a dealer, Plaintiff filed a complaint with the License and Theft Bureau of the North Carolina Division of Motor Vehicles ("Theft Bureau"), informing them that he was charged for a Temporary plate that he didn't believe should have been charged because his plates were transferred and further that he never received a temporary plate. Plaintiff was called within one hour of submitting the complaint by a lieutenant of the Theft Bureau who requested that Plaintiff send her a copy of the document showing the line item where he was charged a temporary plate fee. Plaintiff immediately sent a copy of page 1 from the Purchase agreement along with emails between Plaintiff and Carvana regarding the plate transfer. *See* page 1 of Exhibit 1 at line item 3b. Plaintiff also emailed a copy of the 30-day temporary marker seen in Exhibit 5.

25.     Realizing the Temporary Plate fee may not be valid, Plaintiff looked into whether other fees he was charged by Carvana could be unlawful or potentially overstated. On information and belief, as can be seen on Exhibit 1, the following, including the temporary plate fee, were charged but were either over-charged or bogus with suspected reasons:

| Line Item | Charged | Overage | Reason |
|---|---|---|---|
| 3a - NC Registration Fee | 36.00 | (16.00) | Over charge: due to registration transfer. Should be a registration transfer fee of $20.00 |
| 3b - Temporary Plate Fee | 1.00 | (1.00) | Unlawful: Not valid with registration transfer |
| 3c - County Registration Fee | 15.00 | (15.00) | Unlawful: Not valid with registration transfer |

Plaintiff renewed registration for his trade-in vehicle on October 31, 2018 and paid a $36.00 annual registration renewal fee at that time so line item 3a was not due again until October 31, 2019. Line item 3a – NC Registration Fee, based on fee schedule, should be a Registration Transfer Fee and equal to $20.00 since this involved a plate/registration transfer and was not a renewal given there was still time remaining on the pre-existing registration being transferred. The registration Plaintiff did receive for the BMW expired on October 31, 2019 as expected. Plaintiff renewed registration again on October 18, 2019 and paid a $36.00 annual registration renewal fee, less than 2 months after he was charged $36.00 by Carvana.

26.     As a licensed dealer in this State, Carvana knew and understood the laws and regulations regarding the collection of fees or other amounts that were due to the state or local government but ignored those laws or regulations. N.C.G.S. § 105-330.6 (b) states:

> "*Transfer of Plates. – If the owner of a classified motor vehicle listed pursuant to G.S. 105-330.3(a)(1) transfers the registration plates from the listed vehicle to another classified motor vehicle pursuant to G.S. 20-64 during the listed vehicle's tax year, the vehicle to which the plates are transferred is not required to be listed or taxed until the current registration expires or is renewed*"

27.     Although the law is clear and Carvana knew the Plaintiff's plates were being

5

transferred, they still charged the Plaintiff a County Registration Fee of $15.00 even though Plaintiff had already paid this same fee when he renewed his registration in October of 2018. *See* 2018 renewal receipt attached hereto "**Exhibit 6**". On information and belief, this $15 fee is a vehicle property tax charged annually with registration renewals.

28.     Although the law is also clear regarding when a dealer can issue a temporary marker, Carvana still charged the Plaintiff a Temporary Plate fee even when they knew that no temporary plate was provided and they knew it was forbidden by law. 19A N.C. Admin. Code 3D.0221(b)(6) states in relevant part that "... If a plate is to be transferred, a 30-day temporary marker shall not be issued.". As mentioned, Carvana merely tucked a partially completed 30-temporary marker receipt in the Plaintiff's glove box and asked that he only use it if he was stopped and asked to show registration for the BMW.

29.     Carvana could be penalized through an enforcement action if they improperly issued a 30-day temporary marker. *See* 19A N.C. Admin. Code 3D.0235 which states in relevant part that: "The Division of Motor Vehicles shall apply the Civil Penalty Schedule for Type II Violations against a licensed automobile dealer for any of the following: . . . (5) Improperly issuing or using 30-day temporary markers as addressed in G.S. 20-79.1".

30.     Considering Carvana knew that Plaintiff's license plate from his trade-in was being transferred, they knew that the cost for registration transfer was not $36.00 as charged. Yet they still charged the Plaintiff that amount instead of the registration transfer amount per the DMV fee schedule for 2019 which should have been $20.00. *See* fee changes found at https://www.ncdot.gov/news/press-releases/Documents/2020-06-29-dmv-fees-increasing.pdf. *See* Exhibit 6 showing the Plaintiff paid a registration renewal fee of $36.00 on October 31, 2018 which would not expire or come due again until October 31, 2019. Also *see* receipt attached hereto as "**Exhibit 7**" showing the Plaintiff paid another registration renewal fee of $36.00 on October 18, 2019, two months after the BMW purchase.

31.     As a result of Carvana either charging unlawful fees which were not due by law or for over charging the Plaintiff using a different purpose fee such as using a registration renewal fee instead of a registration transfer fee, Plaintiff paid additional amounts in finance charges on top of the unlawful fees under the Contract. Plaintiff had no reason to suspect that any of the fees charged regarding registration or plates were unlawful.

32.     Carvana could be penalized through an enforcement action for their wrongful actions. *See* N.C.G.S. § 20-294 which states in relevant part that "The Division may deny, suspend, place on probation, or revoke a license issued under this Article for any one or more of the following grounds: . . . (14) Willfully defrauding any retail buyer, to the buyer's damage, or any other person in the conduct of the licensee's business. ... (16) Using unfair methods of competition or unfair deceptive acts or practices as addressed in G.S. 20-294(6)". Also *see* 19A N.C. Admin. Code 3D.0234. See also Wake County Superior Court case no. 21 CVS 8116.

33.     The Plaintiff was purposely mislead and deceived by Carvana regarding the official

6

fees. None of the three fees mentioned were sent to the DMV for the stated purpose. Instead, Carvana took those fees for themselves under the pretense that they would be paid to the DMV. In doing so, Carvana misrepresented the amount financed, the finance charge and the APR.

34.    In order to conceal their deception, Carvana removed the receipt portion of the registration prior to mailing it to the Plaintiff. The receipt would have shown that Carvana paid $20 Transfer Plate Fee to the DMV, a fee which was not disclosed on the Sales Agreement or Contract. It would have also revealed that Carvana did NOT pay a $36 Registration Fee or $15 County Registration Fee to the DMV. In an apparent attempt to escape or otherwise avoid liability for this deception after the fact, Carvana sent the Plaintiff a check for $31 on December 1, 2021, the day in which their answer was due to the original complaint. However, Plaintiff rejected and sent the check back to Carvana by certified mail.

## FACTS REGARDING REQUEST FOR STATEMENT OF ACCOUNT AND REBATE

~~33.~~35.  On October 14, 2021 at approximately 7:56AM EST, the Plaintiff logged into bridgecrest.com and sent the following message to Bridgecrest:

> "This is a formal written request that you provide a statement of account in accordance with North Carolina General Statute § 25A-35. This is regarding the retail installment contract for VIN # WBA8E9G54GNT46394.
>
> Please include an accounting of any earned and unearned finance charges that were paid."

~~34.~~36.  Additionally, on October 14, 2021 at approximately 8:14AM EST, the Plaintiff logged into bridgecrest.com and using the [Contact Us] feature of Bridgecrest's website and sent the following message to Bridgecrest:

> "Regarding the installment contract involving VIN # WBA8E9G54GNT46394, please accept this as a formal written demand for refund or rebate of any 1) unearned amounts of finance charges due to prepayment of the installment contract prior to its maturity and 2) refund of any amounts that were included on page 1 of the Retail Purchase Agreement (3a through 3c) if those amounts were not valid official fees for the state, not required for the transaction or that were required but the amount was in excess of the amount required.
> As for item 2) above, please include any finance charges that were paid on those amounts.
>
> Item 1) above is made in accordance with North Carolina General Statute § 25A-32."

~~35.~~37.  As of the filing of this Complaint, Plaintiff had not received any statement of account in accordance with N.C.G.S. § 25A-35 from Bridgecrest or Carvana.

7

~~36.~~38.  As of the filing of this Complaint, Plaintiff had not received any rebate as demanded in accordance with N.C.G.S. § 25A-32.  On information and belief, Plaintiff believes the rebate due to him using the rule of 78 would come out to $764.98 provided the rebate was provided as requested within a 10-day period but it was not provided within that time frame.

## FACTS REGARDING DOCUMENTS ALLGEDY SIGNED BY THE PLAINTIFF

~~37.~~39.  DocuSign, Inc ("DocuSign") is a company used to electronically sign documents in compliance with the U.S. Electronic Signatures in Global and National Commerce Act (ESIGN), 15 U.S.C. § 7001 et seq. Under ESIGN, electronic records and signatures in compliance with ESIGN are legally binding.  DocuSign permits a company to send documents to a customer for their signature. The customer opens the document for review containing areas marked for the signatory to execute. The signer creates a signature and must click a button confirming their signature once they have completed all form fields and signed in all required places.

~~38.~~40.  DocuSign also provides a set of Application Programming Interfaces ("API") that can be used to programmatically interact with their e-signature services in addition to DocuSign PowerForms which allow clients to use DocuSign document e-signature products from their own website instead of a DocuSign website.

~~39.~~41.  DocuSign generally allows its clients to request a signature by sending an email to the user or customer on behalf of the client.  The email recipient would then click a "View Document" button or link in the email which takes them to the DocuSign website.  The email may also contain a unique security code that could be used before being provided access to the documents and signing.  From the website, the user would create a signature and initials by selecting a pre-defined style or drawing their own.  That signature or initial would then be used to sign or initial one or more documents in pre-designated areas marked for execution using a click.  Once each pre-designated area for a signature or initial has been executed, the user can click "Finish" to complete the document signing process.  If there are other signatories, DocuSign generally sends the signed documents to the next signatories email address based on the sequence defined by the client.  All signatures or initials on the signed documents for a given user would be identical.  The user could also a) print documents, b) view, print or download a Certificate of Completion or c) view, print or download history of the envelope if desired or d) revoke a document if not already signed.  In this case, Carvana sent a custom email which makes no mention of DocuSign and directed the Plaintiff to a website location at carvana.com which may use DocuSign PowerForms or DocuSign's API.  Within the email, Carvana advised Plaintiff he did do not need to print the documents.

~~40.~~42.  A DocuSign Certificate of Completion provides identifying information about the envelope and complete details of the envelope events.  The signer events section provides details about each signer of the document, including the signer's IP address and other identifying information, a signature image and key event timestamps.  In its native PDF form, the Certificate of Completion include a digital signature embedded by DocuSign.  This digital signature serves as a non-repudiation tamper stamp which among other things, is used to verify a document has not been modified since the digital signature was applied.  If alterations are made to a digitally signed

8

document, the digital signature will provide details about where alterations were made and depending on the document PDF viewing software being used, would also allow someone to view the originally signed document without the alterations.

41.43.  Carvana has required documents to be signed electronically using DocuSign's e-signature product offerings since no later than 2017.

42.44.  Although DocuSign has security features to help verify the signature of the person who signs or initials a document, Carvana avoids use of those security features.  For example, DocuSign has a security feature for the signature that, once signed, the term "DocuSigned By:" appears above the signature and a 15-digit alphanumeric characters appear below the signature as a unique signature id.  Additionally, for initials, the letters "DS" would appear above the initials.  Examples of both are seen in Figure 1 below using one of the pre-defined styles provided by DocuSign.



Figure 1 - Sample DocuSign signatures available for selection

43.45.  Although DocuSign has features to notify users when a document has been signed and provide copies of the signed documents automatically, Carvana did not use of those features in as far as providing copies to the Plaintiff.  As mentioned, Carvana also advised the Plaintiff he didn't need to print the documents in an email.

44.46.  DocuSign also provides a field that allows Carvana to capture the date a document was signed which is populated automatically when a user clicks a pre-designated area to sign using the signature that he/she created.  However, in this case, Carvana avoided use of this feature and instead, placed a future date where a date of signature should appear creating the appearance that the Plaintiff electronically signed and dated documents on August 17, 2019 instead of August 15, 2019.  G.S. § 25A-28 requires that a document be dated and signed by the buyer.  The use of an auto-populated date field could have sufficed for a Plaintiff's signature date if it had been implemented as it would have reflected the actual date or the actual date and time of the Plaintiff, but that was not the case.

45.47.  All of the signatures on the documents that were provided to the Plaintiff and appear to be Plaintiff's signature look strikingly similar to the Plaintiff's actual signatures.  But in the case of the Contract and the Sales Agreement that were provided to the Plaintiff, the signatures and initials that appear on the documents couldn't have been made by the Plaintiff because, upon closer inspection, the signatures are different, even within the same document.  If the signatures appearing on documents provided to the Plaintiff were made by the Plaintiff, they would be identical across all of the documents.

46.48.  Plaintiff did not sign any document position that required a signature using his signature plus his initials ("Signature+Initials") as seen twice on page 5 of the Contract in Exhibit 2 and once on page 1 of the Sales Agreement in Exhibit 1.

9

~~47.~~49.  Plaintiff did not sign any document position that required an initial using his signature as seen on the bottom right corner of every page of the Contract as seen in Exhibit 2.  Likewise, Plaintiff did not sign any document position that required an initial with Signature+Initials as seen on page 1 of the Sales Agreement as seen in Exhibit 1.

~~48.~~50.  On information and belief, both the Contract and Sales Agreement that were provided to the Plaintiff on August 17, 2019 are not documents that Plaintiff electronically signed on August 15, 2019.  The documents are instead good forgeries which had what appears to be different versions of signatures from the Plaintiff.  In particular, the Sales Agreement, Exhibit 1, has two different sets of Signature+Initials, one where "Buyer's Initials" should appear and a different one where Plaintiff's signature should appear as demonstrated in Figure 2 and 3 below.



Figure 2 – Version 1 – Signature+Initials on Sales Agreement where initials are expected



Figure 3 - Version 2 – Signature+Initials on Sales Agreement where signature is expected

The Contract, Exhibit 2, has a signature plus initials while the signature appearing on the bottom right corner of every page is not the same as the signature that appears with initials.  A signature from the Plaintiff would not change during a signing session between separate documents and certainly not on the same document.



Figure 4 - Version 1 – Signature+Initials on page 5 of Contact where signature is expected



Figure 5 - Version 2 - Signature on bottom of all Contract pages where initials are expected

~~49.~~51.  There are at least three (3) distinctly different signatures across the Contract and the Sales Agreement.  The signature seen above in Figure 2 is different from the signatures seen above in Figure 3, 4 & 5.  The signatures seen above in Figure 3 & 4 are the same but different from the signature seen above in Figure 5.  And the signature seen above in Figure 5 is different from the signatures seen above in Figure 2, 3 & 4.

~~50.~~52.  Whomever created the signatures seen above in Figure 2 and 5 did a good job at creating nearly indistinguishable versions of the Plaintiff's signature.  The Plaintiff signed documents in a single session on August 15, 2019 and there should only be one unique signature,

10

regardless of the number of signatures, across all of the documents if signed by the Plaintiff using DocuSign.

~~51.~~53.  Although the Plaintiff had the Contract and Sales Agreement in his possession for over two years, reviewed the documents between August 15 and August 21 of 2019 after the transaction, reviewed the documents again prior to filing suit and attached both documents to his original complaint as Exhibits, he never suspected or had any reason to suspect any of the signatures could be forgeries because they looked like his signatures.

~~52.~~54.  Although the Plaintiff filed a different lawsuit against Carvana and that case was removed from this Court's District division and amended at least once in federal court, Plaintiff still never suspected or had any reason to suspect any of the signatures could be forgeries because they looked like his signatures.  As such, Plaintiff made no allegations regarding forgery in his original or amended complaint that is now pending in federal court.

~~53.~~55.  Plaintiff didn't focus any attention to any signatures until he reviewed documents filed by Carvana in *Saddler v. Carvana, LLC*, CASE NO 4:20CV105 HEA (E.D. Mo. Aug. 11, 2020).  A declaration in that case revealed that Carvana used DocuSign.  Consistent with how DocuSign works, the signed documents filed in that case show the exact same signature in places requiring a signature and the same initials in places requiring initials.  The Certificate of Completion filed in that case also show the signature image associated with the Plaintiff in *Saddler* matched the signature on each document that was allegedly signed by him.  Notably, the Sales Agreement in that case does not have any initials or signatures in the bottom right corner of each page.

~~54.~~56.  Plaintiff also didn't recognize there should be no differences in signatures on a document until he learned that Carvana had used DocuSign since 2017 based on researching the *Saddler* case and conducting his own investigation of the DocuSign e-signature software.

~~55.~~57.  Plaintiff never would have made any payments, cancelled the Contract with Carvana and demanded a full refund if he had known, among other things, that his signature had been forged on documents that were given to him on August 17, 2019.  Furthermore, Plaintiff would have likely reported the forgeries at the time to authorities like the North Carolina Attorney General and/or the Consumer Finance Protection Bureau.

~~56.~~58.  The documents that were provided to the Plaintiff on August 17, 2019 appear as though someone recreated the originals or created new documents for some unknown reason.  It appears as though someone then signed the new documents using a new signature but the signature was created with initials appended to the end.  It then appears as if someone added additional areas for signatures or initials to the documents, created yet another signature and/or initials and then used that signature or initials on certain areas of new or revised documents.

~~57.~~59.  Carvana never contacted Plaintiff to ask him to sign or re-sign any additional, revised or new documents after he signed documents on August 15, 2019.

~~58.~~60.  Carvana, having knowledge of when the Plaintiff actually signed documents and

11

having discreet knowledge of the DocuSign Certificates of Completion, Envelope history and audit trails, knew at all times that the documents provided to the Plaintiff had been altered and were not the original documents the Plaintiff had signed on August 15, 2019.

59. 61. On information and belief, of the individuals at Carvana who knew or should have known that the documents were forged is Paul Breaux, the General Counsel at Carvana who himself signed one or more of the documents in question.

60. 62. Under North Carolina law, a person may be charged with a felony for forging a document with the intent to injure or defraud a person. They may also be charged with a felony for uttering any false or forged document in accordance with N.C. Gen. Stat. § §14-119-120. They may be charged with a felony whether they uttered a false or forged document directly or indirectly.

61. 63. On information and belief, discovery would reveal that an employee or agent of Carvana forged the Plaintiff's signature on versions of the Contract and Sales Agreement that were provided to the Plaintiff on August 17, 2019.

64. On information and belief, discovery may also reveal that Carvana made material changes regarding terms between what Plaintiff actually signed on August 15, 2019 and the documents he was provided on August 17, 2019. For example, the APR may have been increased from the original documents or the official fees that Plaintiff alleged were the result of fraud may not have been present on the documents he signed. There is no reasonable basis for Carvana to forge documents unless material changes were made between the original and the forged versions.

62. 65. Due to Carvana forging one of more signatures of the Plaintiff on the Contract, the Sales Agreement and possibly other documents, all of which are considered felonies under the laws of this state, the Contract was voidable and Plaintiff would have sought rescission if he had knowledge of, among other things, the forgeries at the time the documents were provided to him or before he paid off the BMW.

## CLAIMS FOR RELIEF

## COUNT 1
## FRAUD AGAINST CARVANA

63. 66. The preceding paragraphs are incorporated here as though stated word for word.

64. 67. Carvana has engaged in a common scheme of fraud, through which they unlawfully charged official fees that were not due and collected interest on those unlawful fees.

65. 68. Carvana has also engaged in a common scheme of fraud, through which they seamlessly and convincingly forged signatures of the Plaintiff onto documents without consent or knowledge of the Plaintiff.

66. 69. Carvana intentionally perpetrated the common scheme of fraud complained of herein

12

as an unlawful means to cause Plaintiff to pay additional fees, additional finance charges and avoid cancelling a voidable contract.

~~67.~~70.  Plaintiff justifiably relied on the Carvana's failures to disclose both their scheme of unlawfully charging additional fees and forgery of his signature on one or more documents.

~~68.~~71.  As mentioned herein, Carvana made false representations or concealed material facts involving the following:

a. Falsely representing that the Plaintiff required a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

b. Falsely representing that the Plaintiff was required to pay a fee for a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

c. Falsely representing that the Plaintiff was required to pay a County Registration fee which was not warranted by law due to a registration plate transfer and existing registration that would not expire until a future date;

d. Falsely representing that the Plaintiff was required to pay the costs of a registration renewal when there was a registration plate transfer.

e. Falsely representing that the Plaintiff could use a partially completed and unsigned 30-day temporary marker receipt as proof of registration if stopped by law enforcement.

f. Falsely representing that they were offering the BMW for sale in compliance with the law when they knew the requirement for an inspection prior to offering the vehicle for sale had not been met on August 15, 2019 considering they did not have the vehicle inspected until after the Plaintiff arrived to pick up the vehicle.

g. Forging the Plaintiff's signature on one or more documents without his knowledge or permission, passing those forged documents to the Plaintiff and falsely representing that the documents provided to the Plaintiff were true, accurate and authentic copies of documents the Plaintiff had signed electronically on August 15, 2019.

~~69.~~72.  The misrepresentations or concealment of material facts by Carvana were reasonably calculated to deceive, made with the intent to deceive and did in fact deceive the Plaintiff resulting in damage.

~~70.~~73.  As a direct and proximate result of Carvana's common fraud scheme, Plaintiff was caused and sustained damages in the form of the unauthorized fees paid in connection with the purchase of a motor vehicle and denied an opportunity to avoid a voidable Contract.  As a result,

Carvana is liable to the Plaintiff for compensatory and punitive damages to be determined by a trier of fact.

## COUNT 2
## VIOLATION OF RETAIL INSTALLMENT SALES ACT ("RISA")
## AGAINST CARVANA AND BRIDGECREST

~~71.~~74.  The preceding paragraphs are incorporated here as though stated word for word.

~~72.~~75.  N.C.G.S. § 25A-35 states that in relevant part that:

> (a) One time during each 12-month period following execution of a consumer credit installment sale contract and when the buyer repays the debt early, the buyer shall be entitled upon request and without charge to a statement of account from the seller. The statement of account shall contain the following information identified as such in the statement:

>> (1) The itemized amounts paid by or on behalf of the buyer to the date of the statement of account, except that upon early termination of the contract by prepayment or otherwise, the statement shall include itemized charges for expenses of repossession, storage and legal expenses.

~~73.~~76.  As mentioned above, Plaintiff had not received a response from Defendants regarding a statement of account.

~~74.~~77.  N.C.G.S. § 25A-32 states in relevant part that:

> Notwithstanding any provision in a consumer credit installment sale contract to the contrary, any buyer may satisfy the debt in full at any time before maturity, and in so satisfying such debt, shall receive a rebate, the amount of which shall be computed under the "rule of 78's," as follows:

> The amount of such rebate shall represent as great a proportion of the finance charge (less a prepayment charge of ten percent (10%) of the unpaid balance, not to exceed twenty-five dollars ($25.00)) as the sum of the periodical time balances after the date of prepayment in full bears to the sum of all the periodical time balances under the schedule of payments in the original contract." No rebate is required if the amount thereof is less than one dollar ($1.00).

> If the prepayment is made otherwise than on the due date of an installment, it shall be deemed to have been made on the installment due date nearest in time to the actual date of payment.

~~75.~~78.  As mentioned above, Plaintiff had not received a response from the Defendants regarding a rebate or refund.

14

76.79. N.C.G.S. § 25A-44 states in relevant part that:

> In addition to remedies hereinbefore provided, the following remedies shall apply to consumer credit sales:
>
> . . .
>
> > (3) In the event the seller or an assignee of the seller (i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter, the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges. Ten days after receiving written request therefor, the seller shall be liable to the buyer for an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period.
>
> > (4) The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1.

77.80. The actions or inactions of Defendants regarding a statement of account and rebate were knowing and willful making them liable to the Plaintiff for three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period of Plaintiff's demand.

78.81. As a result of Defendants actions or inactions, they are in violation of RISA and liable to the Plaintiff for damages pursuant to N.C.G.S. § 25A-44(4) to be determined by a trier of fact. Plaintiff is due three times the amount of rebate or refund along with any unauthorized charges.

## COUNT 3
## VIOLATION OF NCUDTPA AGAINST CARVANA AND BRIDGECREST

79.82. The preceding paragraphs are incorporated here as though stated word for word.

80.83. Pursuant to N.C.G.S. § 75-1.1, unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

81.84. As mentioned herein and in COUNT 1 and COUNT 2, Defendants engaged in acts which were unfair or deceptive and those acts or practices were in or affecting commerce. Fraud has long been recognized as an unfair and deceptive practice. Likewise, N.C.G.S. § 25A-44(4) states that "The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1".

82.85. As mentioned above, Carvana also violated the risk-based pricing timing disclosure which, if prosecuted by the proper authority, could amount to an unfair or deceptive practice under federal law although no such cause of action is made here and Plaintiff would not have standing to state such a claim in this instance.

83.86. As mentioned herein, Carvana offered the BMW for sale with knowledge that there

15

had not been a state inspection in violation of § 20-183.4C(2).

~~84.~~87.  As mentioned herein, Carvana forged the Plaintiff's signature on one of more documents as part of a common scheme of fraud and deceptive acts or practices.

~~85.~~88.  As a result of Defendants actions or inactions involving their unfair or deceptive acts or practices, they are liable to the Plaintiff for treble damages pursuant to N.C.G.S. § 75-16.

### COUNT 4
### VIOLATION OF THE TRUTH IN LENDING ACT ("TILA")

89.     The preceding paragraphs are incorporated here as though stated word for word.

90.     TILA requires written disclosures in a form that the Plaintiff could keep be provided prior to the consummation of the transaction at issue in this case. In this case, Carvana did not provide any disclosures until 2 days after Plaintiff had signed agreements online consummating the transaction and even then, the documents were not the documents the Plaintiff signed.

91.     Carvana did not provide a statement of Plaintiff's right to obtain, upon a written request, a written itemization of the amount financed in accordance with 15 U.S.C. § 1638(a)(2)(B). This was so prior to and after consummation of the transaction.

92.     As alleged herein, Carvana failed to disclose there was a $20 Plate Transfer Fee which they knew was due from the Plaintiff and actually paid to the DMV.

93.     As alleged herein, Carvana disclosed but materially misrepresented that Plaintiff owed certain official fees that were part of the transaction including a $36 Registration Fee, $15 County Registration Fee and $1 Temporary Plate Fee. These fees were collected but not paid to the DMV or other government or state body for their intended purposes.

94.     Carvana fraudulently concealed their misprestations by withholding documents that would have revealed their they had not paid certain fees that were disclosed and paid another undisclosed fee. In this case, Carvana removed the receipt from the vehicle registration prior to sending it to the Plaintiff, effectively concealing which fees were paid or not paid.

95.     As a result of Carvana not disclosing a $20 Plate Transfer Fee that was due and paid to the DMV while at the same time disclosing, collecting and pocketing fees that were not due to the DMV, Carvana collected additional amounts as a finance charge. And as a result of collection additional amounts which were not due and should not have been part of the amount financed, Carvana misrepresented the APR in the TILA disclosures.

96.     As a result of Carvana's actions or inactions, they are liable to the Plaintiff for violating the Truth in Lending Act ("TILA"). As such, Plaintiff is entitled to twice the amount of the finance charge in the amount of $3566.46 in accordance with 15 U.S. Code § 1640(a)(2)(A)(i).

16

**WHEREFORE**, Plaintiff prays that the Court grant the following relief:

a. That costs of this action be taxed to Defendants jointly and severally;

b. That the Court enter judgement for Plaintiff and award compensatory and punitive damages in excess of $2̶5̶0̶,000 for COUNT 1 against Carvana for fraud and forgery.

c. That the Court enter judgement for the Plaintiff awarding three times the rebate amount that was due for COUNT 2;

d. That the Court enter judgement for the Plaintiff and against Defendants awarding treble damages for COUNT 3.

e. <u>The the Court enter judgment for the Plaintiff and against Carvana awarding twice the finance charge for COUNT 4.</u>

e̶.f̲. That the Court award Plaintiff pre and post judgement interest on pre-trebled damages;

f̶.g̲. That the Court enter an order declaring that the Contract was voidable at the time the BMW was delivered on August 17, 2019 due to forgery by Carvana's employees or agents;

g̶.h̲. That the Court award any other relief it deems just and proper.

Submitted this the _____ day of _____, _____.


_____
Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com

17

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

ARTHUR HILL,                                    )
                                                )
            Plaintiff, pro se,                  )
                                                )
    vs.                                         )
                                                )     **VERIFICATION**
Carvana, LLC. and                               )
Bridgecrest Credit Company, LLC.                )
                                                )
            Defendants.                         )
                                                )

     I, Arthur Hill, being first duly sworn, deposes and says that he is the Plaintiff in this matter, that he has read and understood this VERIFIED FIRST AMENDED COMPLAINT and knows the contents to be true of his own personal knowledge, except for those matters and things set forth upon information and belief, and as to those matters and things, he believes them to be true.

_____

(Sign in the Presence of the Notary Public)

Sworn to and subscribed before me this _____ day of _____, _____.

_____

Notary Public

My commission expires: _____.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **VERIFIED FIRST AMENDED COMPLAINT** along with exhibits 1 through 7 and certification were served upon the following attorneys for Defendants by e-mail:

| | |
|---|---|
| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17th Street, 17th Floor<br>Atlanta, GA 30363<br>Email: kadeisha.west@nelsonmullins.com<br>Phone: 404.322.6000 | |

This the ~~9th~~____day of ~~December~~_____, 202~~1~~2.

_____
Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

19

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CVS 3755

ARTHUR HILL,

Plaintiff, pro se,

vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF WITHDRAWAL
OF NOTICE OF HEARING
WITHOUT PREJUDICE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that the Plaintiff hereby withdrawal his Notice of Hearing For

Motion to Amend that was filed in the above-captioned case on December 9th, 2021 and requests

that any calendaring of the motion be terminated. Of withdrawal

Respectfully submitted this the 3rd day of January, 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
980.521.1819
artbhill@hotmail.com
Plaintiff, *pro se*

1

## CERTIFICATE OF SERVICE

I hereby certify that on January 3ʳᵈ, 2022, I served the foregoing **NOTICE OF**

**WITHDRAWAL OF NOTICE OF HEARING WITHOUT PREJUDICE** on Counsel of

record for the Defendant via emails listed below:

| | |
|---|---|
| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17ᵗʰ Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17ᵗʰ Street, 17ᵗʰ Floor<br>Atlanta, GA 30363<br>Email: kadeisha.west@nelsonmullins.com<br>Phone: 404.322.6000 | |

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
E-mail: artbhill@hotmail.com
*Pro Se Plaintiff*

2

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF CABARRUS     FILE NO. 21-cv-003755

Arthur Hill,

         Plaintiff, pro se,      )

vs.

Carvana, LLC. and Bridgecrest Credit Company, LLC,

         Defendants.

## JOINT MOTION FOR ADMISSION *PRO HAC VICE* OF PAUL T. COLLINS AND KADEISHA WEST

**NOW COMES** Defendant Carvana, LLC ("Carvana") and Defendant Bridgecrest Credit Company, LLC ("Bridgecrest", together with Carvana, "Defendants"), by and through undersigned counsel and pursuant to N.C.G.S. § 84-4.1, and moves this Honorable Court for an order permitting the admission of Paul T. Collins and Kadeisha West of the law firm of Nelson Mullins Riley & Scarborough LLP to appear on behalf of Defendants in the above case. In support of this Motion, Defendants shows unto the Court the following:

1.     The affidavits of Paul T. Collins and Kadeisha West setting forth their qualifications to serve in this case pursuant to N.C.G.S. § 84-4.1 are attached hereto as Exhibits A and B, respectively.

2.     The representation of Defendants by Mr. Collins and Ms. West will be in conjunction with that of the undersigned Ashia Crooms-Carpenter. The affirmation of Ms. Crooms-Carpenter that she will comply with Rules 5.5(c)(4) and 5.5(e)(5) of the Revised Rules of Professional Conduct of the North Carolina State Bar as local counsel is attached hereto as Exhibit C.

3.     Mr. Collins and Ms. West are the counsel of choice for Defendants.   Client statements from an authorized representative of Carvana and Bridgecrest identifying Mr. Collins and Ms. West as Defendants' counsel of choice are attached hereto as Exhibits D and E, respectively.

WHEREFORE, for the reasons set forth herein, Ashia Crooms-Carpenter respectfully requests the Court to allow this Motion for admission pursuant to N.C.G.S. § 84-4.1.


This the ___9th___ day of December 2021.

                                        NELSON MULLINS RILEY & SCARBOROUGH LLP

                                        _____
                                        Ashia Crooms-Carpenter
                                        NC Bar No. 54342
                                        E-mail: ashia.carpenter@nelsonmullins.com
                                        301 South College Street, Suite 2300
                                        Charlotte, NC 28202
                                        Phone: (704) 417-3000
                                        Fax: (704) 377-4814

                                        *Attorney for Carvana, LLC and*
                                        *Bridgecrest Credit Company, LLC*

**CERTIFICATE OF SERVICE**

I, Ashia Crooms-Carpenter, hereby certify that, on December 9, 2021, a true and correct copy of the foregoing was served via U.S. mail, postage prepaid, and has been emailed as follows:

Arthur Hill
2849 Trestle Court SW
Concord, NC 28025
artbhill@hotmail.com
*Pro Se Plaintiff*

*Attorney for Carvana, LLC and Bridgecrest Credit Company, LLC*

3

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 21-cv-003755

Arthur Hill,
      Plaintiff, pro se,

  vs.

Carvana, LLC. and Bridgecrest Credit Company,
LLC,
      Defendants.

)
)
)
)
)
)
)
)
)
)

## **AFFIDAVIT OF PAUL T. COLLINS**

Paul T. Collins, being duly sworn, deposes and says:

1.  I have been retained by Defendant Carvana, LLC and Defendant Bridgecrest Credit Company, LLC ("Defendants") to represent them in the above matter.

2.  I am an attorney and partner with the law firm of Nelson Mullins Riley & Scarborough LLP, 1320 Main Street, 17th Floor, Columbia, SC 29201. My work telephone number is (803) 799-2000.

3.  Since November 2002, I have been, and presently am, a member of good standing of the bar of the highest court of the State of South Carolina where I regularly practice law. My South Carolina Bar Number is 70336.

4.  Unless required to withdraw sooner by order of the court, I will continue to Defendants in the above-captioned proceeding until the final determination of this matter. With reference to all matters incident to the proceeding, I agree to be subject to the orders and amenable to the disciplinary action and the civil jurisdiction of the General Court of Justice of North Carolina and the North Carolina State Bar in all respects as if I were regularly admitted and licensed member of the Bar of North Carolina in good standing.



EXHIBIT

A

tabbies®

5.     The State of South Carolina grants like privileges to members of the Bar of North Carolina in good standing.

6.     I have associated and am personally appearing in this proceeding with Ashia Crooms-Carpenter, a member of the firm of Nelson Mullins Riley & Scarborough LLP in Charlotte, North Carolina who is a resident of North Carolina and is duly and legally admitted to practice in the General Court of Justice of North Carolina.

7.     Ms. Crooms-Carpenter has agreed to be responsible for filing a registration statement with the North Carolina State Bar, and service may be had upon Ms. Crooms-Carpenter in all matters connected with the legal proceedings in this case, or any disciplinary matter, with the same effect as if personally on me within North Carolina.

8.     I have never been subject to any public discipline by any court or lawyer regulatory organization. I have never had any *pro hac vice* admission revoked. I am not the subject of any pending disciplinary proceedings.

This the __8__ day of December 2021.

_Paul T. Collins_ (signature)

Paul T. Collins

STATE OF SOUTH CAROLINA
RICHLAND COUNTY:

The foregoing instrument was sworn to and subscribed before me this the __8th__ day of __December__ 2021.

_____
Notary Public

My commission expires: __7/5/28__

2

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 21-cv-003755

Arthur Hill,                                )
             Plaintiff, pro se,        )
                                 )
      vs.                                    )
                                 )
Carvana, LLC. and Bridgecrest Credit Company,   )
LLC,                                        )
               Defendants.            )
                                 )

### AFFIDAVIT OF KADEISHA WEST

      Kadeisha West, being duly sworn, deposes and says:

      1.      I have been retained by Defendant Carvana, LLC and Defendant Bridgecrest Credit

Company, LLC ("Defendants") to represent them in the above matter.

      2.      I am an attorney and member of the law firm of Nelson Mullins Riley &

Scarborough LLP, 201 17th Street, 17th Floor, Atlanta, Georgia 30363. My work telephone number

is (404) 322-6000.

      3.      Since November 2017, I have been, and presently am, a member in good standing

of the bar of the highest court of the State of Georgia where I regularly practice law. My Georgia

Bar Number is 640699.

      4.      Since November 30, 2021, I have been, and presently am, a member in good

standing of the bar of the highest court of the State of South Carolina. My South Carolina Bar

Number is 105397.

      5.      Unless required to withdraw sooner by order of the court, I will continue to

represent Defendants in the above-captioned proceeding until the final determination of this

matter. With reference to all matters incident to the proceeding, I agree to be subject to the orders



EXHIBIT

B

and amenable to the disciplinary action and the civil jurisdiction of the General Court of Justice of North Carolina and the North Carolina State Bar in all respects as if I were regularly admitted and licensed member of the Bar of North Carolina in good standing.

6.  Georgia and South Carolina grant like privileges to members of the Bar of North Carolina in good standing.

7.  I have associated and am personally appearing in this proceeding with Ashia Crooms-Carpenter, a member of the firm of Nelson Mullins Riley & Scarborough LLP in Charlotte, North Carolina who is a resident of North Carolina and is duly and legally admitted to practice in the General Court of Justice of North Carolina.

8.  Ms. Crooms-Carpenter has agreed to be responsible for filing a registration statement with the North Carolina State Bar, and service may be had upon Ms. Crooms-Carpenter in all matters connected with the legal proceedings in this case, or any disciplinary matter, with the same effect as if personally on me within North Carolina.

9.  I have never been subject to any public discipline by any court or lawyer regulatory organization. I have never had any *pro hac vice* admission revoked. I am not the subject of any pending disciplinary proceedings.

This the ___8th___ day of December 2021.

_____
Kadeisha West

STATE OF GEORGIA
FULTON COUNTY:

The foregoing instrument was sworn to and subscribed before me this the _8th_ day of ___December___ 2021.

_____
Notary Public

My commission expires: ___7/1/2024___

2

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 21-cv-003755

Arthur Hill,

     Plaintiff, pro se,

  vs.

Carvana, LLC. and Bridgecrest Credit Company,
LLC,

     Defendants.

)
)
)
)
)
)
)
)
)
)

## **LOCAL RULE 12.2 AFFIRMATION**

   Pursuant to Rule 12.2 of the Civil Local Rules of Practice for Cabarrus County Superior

Court, the undersigned counsel hereby affirms that she will comply with Rules 5.5(c)(4) and 5.5(e)(5)

of the Revised Rules of Professional Conduct of the North Carolina State Bar.

This the ___9th___ day of December 2021.

     **NELSON MULLINS RILEY & SCARBOROUGH LLP**

     _____

     Ashia Crooms-Carpenter
     NC Bar No. 54342
     E-mail: ashia.carpenter@nelsonmullins.com
     301 South College Street, Suite 2300
     Charlotte, NC 28202
     Phone: (704) 417-3000
     Fax: (704) 377-4814

     *Attorney for Carvana, LLC and*
     *Bridgecrest Credit Company, LLC*



**EXHIBIT**

*C*

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 21-cv-003755

Arthur Hill,
                    Plaintiff, pro se,

        vs.

Carvana, LLC. and Bridgecrest Credit Company,
LLC,
                    Defendants.

)
)
)
)
)
)
)
)
)
)
)

## **CLIENT STATEMENT OF CARVANA, LLC**

Defendant Carvana, LLC has retained Paul T. Collins and Kadeisha West of the law firm

of Nelson Mullins Riley & Scarborough LLP to represent it in this action.  Defendant's address is

1930 W. Rio Salado Parkway, Tempe, Arizona 85281.

CARVANA, LLC

By: _Courtney R. Beller_

Date: _12/08/2021_

EXHIBIT
D

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 21-cv-003755

Arthur Hill,                          )
                    Plaintiff, pro se,  )
                                      )
        vs.                           )
                                      )
Carvana, LLC. and Bridgecrest Credit Company,  )
LLC.                                  )
                    Defendants.        )
                                      )
_____ )

### CLIENT STATEMENT OF BRIDGECREST CREDIT COMPANY, LLC

Defendant Bridgecrest Credit Company, LLC has retained Paul T. Collins and Kadeisha

West of the law firm of Nelson Mullins Riley & Scarborough LLP to represent it in this action.

Defendant's address is 1720 W. Rio Salado Parkway, Tempe, Arizona 85281.

BRIDGECREST CREDIT COMPANY, LLC

By: _____

Date: ____12. 8. 21____





# NELSON MULLINS

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW

Ashia Crooms-Carpenter
T: (704) 417-3235
ashia.carpenter@nelsonmullins.com

301 South College Street / 23rd Floor
Charlotte, NC 28202-6041
T: 704.417.3000  F: 704.377.4814
nelsonmullins.com

December 9, 2021

**Via FedEx**

Cabarrus County Clerk of Court
Cabarrus County Courthouse
77 Union Street South
Concord, NC 28025

RE:    Hill v. Carvana, LLC, et al.
       Cabarrus County File No. 21-cv-003755

Dear Sir or Madam:

Enclosed for filing in the above matter, please find an original and two (2) copies of a Joint Motion for Admission *Pro Hac Vice* of Paul T. Collins and Kadeisha West with attached exhibits containing the Affidavits in Support of the Motion, Local Rule 12.2 Affirmation, and Client Statements.

Also enclosed is a check in the amount of $450.00 for the costs associated with the pro hac vice admissions. Upon filing, please return the file-stamped copies using the self-addressed pre-paid envelope provided. By copy of this correspondence, all parties of record are being served with the same.

Thank you for your assistance.  If you have any questions, please contact at me the above-listed number.

Sincerely,

Ashia Crooms-Carpenter

ACC:khf
Enclosure
cc:    Arthur Hill (w/encl.)

CALIFORNIA | COLORADO | DISTRICT OF COLUMBIA | FLORIDA | GEORGIA | MARYLAND | MASSACHUSETTS | NEW YORK
NORTH CAROLINA | SOUTH CAROLINA | TENNESSEE | WEST VIRGINIA

STATE OF NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
CABARRUS COUNTY          FILED            SUPERIOR COURT DIVISION
                                                    Civ No: 21 CV 3755

                              2021 DEC -9 P 12: 51
ARTHUR HILL,                                      )
                              CABARRUS CO., C.S.C.
            Plaintiff, pro se,                    )
                              BY ____ √Ɓ          )        **CALENDAR REQUEST**
     vs.                                          )
                                                  )
Carvana, LLC. and                                )
Bridgecrest Credit Company, LLC.                 )
                                                  )
            Defendants.                           )
_____)

        Please place the above captioned matter on the Cabarrus County civil superior court
calendar for the **January 3, 2022** session for:

_X_ **Motion**        **Type of Motion** <u>MOTION TO AMEND COMPLAINT</u>

____ **Trial**        **Jury** _____        **Non-Jury** _X_____

Estimated Length of Hearing: <u>10 minutes</u>
Nature of Case <u>Fraud, Retail Installment Sales Act and Unfair Trade Practice</u>

                              _Arthur Hill_____
                              Plaintiff pro se
                              Address:       2849 Trestle CT SW
                                             Concord, NC 28025
                                             Phone: (980) 521-1819
                                             E-mail: artbhill@hotmail.com

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

ARTHUR HILL,

        Plaintiff, pro se,

    vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFF'S MOTION TO
AMEND COMPLAINT**

The Plaintiff Arthur Hill ("Plaintiff"), in accordance with Rule 15(a) of the North Carolina

Rules of Civil Procedure, requests leave to amend his complaint. In support of this Motion,

Plaintiff attaches a fully signed and verified amended complaint as "Attachment 1". The purpose

of the amended pleading is to include additional allegations based upon subsequently discovered

information relating back to the same series of transactions.

    1.  The original complaint was filed on October 28, 2021, service of process was completed

on November 1, 2021 and both Defendants filed their Answers and Defenses on December 1,

2021.

    2.  Plaintiff filed a motion for partial summary judgment on December 3, 2021 but withdrew

that motion on December 8, 2021. When Plaintiff decided he would be withdrawing the motion,

he informed the attorneys for Defendants that he would instead file an amended complaint. In

response, on December 9, 2021, Defendants through Counsel indicated they did not consent to

the amendment but provided no reason for not consenting.

    3.  Rule 15(a) states that "a party may amend his pleading only by leave of court or by

written consent of the adverse party; and leave shall be freely given when justice so requires.".

1

As mentioned, Defendants have not consented and Plaintiff is required to seek leave of Court.

4.  Defendants would not be prejudiced by an amendment to the Complaint:

    a.  There is no undue delay, bad faith or dilatory motive on part of the Plaintiff;

    b.  Plaintiff has not made any prior amendments, sought leave to amend before or repeatedly failed to cure deficiencies by amendments previously allowed;

    c.  The amendments would result in no delay of these proceedings;

    d.  No new claims or parties are being added to the complaint;

    e.  Statement of facts 1 through 36 from the original complaint are unchanged in the amended complaint;

    f.  Additional statements of facts relate back to the original complaint and involve the same series of transactions already alleged in the original complaint.

    g.  The case is not yet on the trial calendar;

    h.  Defendants have not yet served the Plaintiff with any discover requests or responded to Plaintiff's first set of discover requests;

    i.  Plaintiff first set of discovery requests include requests for information needed to uncover the truth regarding the newly added allegations;

Wherefore, Plaintiff respectfully prays that Plaintiff's Motion to Amend Complaint be

ALLOWED and that service be considered complete as of the date the Court grants the motion.

Respectfully submitted, this the 9th day of December, 2021.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

2

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **PLAINTIFF'S MOTION TO**

**AMEND COMPLAINT** along with a copy of the signed and verified complaint attached as "Attachment

1" upon the following attorneys for Defendants by e-mail:

| | |
|---|---|
| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17th Street, 17th Floor<br>Atlanta, GA 30363<br>Email: kadeisha.west@nelsonmullins.com<br>Phone: 404.322.6000 | |

This the 9th day of December, 2021.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

3

# ATTACHMENT 1

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

ARTHUR HILL,                                  )
                                              )
            Plaintiff, pro se,                )
                                              )          **VERIFIED FIRST AMENDED**
      vs.                                     )          **COMPLAINT**
                                              )
Carvana, LLC. and                            )
Bridgecrest Credit Company, LLC.             )
                                              )
            Defendants.                       )
_____)

In accordance with Rule 15(a) of the North Carolina Rules of Civil Procedure, Plaintiff Arthur Hill ("Plaintiff" or "Hill") files this verified first amended complaint and complains of the Defendants Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest") (collectively "Defendants") for violations state law and states the following:

## PARTIES

1.     Plaintiff is a natural person and at all times relevant to this complaint here was a resident of Cabarrus County in North Carolina.

2.     Carvana, a spin-off of Tempe Arizona based DriveTime Automotive Group Inc., is a used car dealership that conducts business in or affecting commerce and does so exclusively via the internet at carvana.com with its principal place of business located at 1930 W. Rio Salado Pkwy Tempe, AZ 85281. Carvana is a "seller" as defined under N.C.G.S. § 25A-6. Carvana is a licensed dealer within this state with locations in Concord, Charlotte, Greensboro and Raleigh.

3.     Carvana may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue Suite 550. Raleigh, NC 27608.

4.     Bridgecrest is an affiliate of Carvana by common ownership, incorporated under the laws of Arizona and generally services retail installment contracts entered into by Carvana with consumers. Bridgecrest is also a "seller" as defined under N.C.G.S. § 25A-6 to the extent that it involves events arising after assignment to receive payments on behalf of Carvana. Bridgecrest's business is in or affecting commerce in this state.

5.     Bridgecrest may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue Suite 550. Raleigh, NC 27608.

1

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over civil cases involving amounts over $25,000.

7.      Venue is proper because Plaintiff resides in Cabarrus County, Carvana conducts business in and maintains a registered agent in this state and Bridgecrest maintains a registered agent in this state and services installment contracts for residents in this state.

## STATEMENT OF FACTS

8.      On August 15, 2019, Plaintiff entered into a retail installment contract with Carvana to pay for a 2016 BMW 3 ("BMW") he purchased at a sale price of $23,900. The BMW was delivered on August 17, 2019 at Carvana's South Blvd location in Charlotte, NC. A copy of the Retail Purchase Agreement ("Purchase Agreement") and Retail Installment Contract and Security Agreement ("Contract") are attached hereto as "Exhibit 1" and "Exhibit 2" respectively. An Arbitration Agreement was also signed by the Plaintiff but he opted out of that agreement on August 21, 2019. All 3 of the forementioned documents were signed electronically via the internet on August 15, 2019. The documents were provided to the Plaintiff on August 17, 2019 upon vehicle delivery. The documents all bear a date of August 17, 2019 even though the documents were signed online by the Plaintiff on August 15, 2019.

9.      During delivery of the BMW on August 17, 2019, Carvana did not provide the Plaintiff with any documents that were supposedly being sent to the North Carolina Department of Motor Vehicles ("DMV") such as a document evidencing a registration plate transfer was to take place or a title application.

10.     On the morning of August 17, 2019 at approximately 3:34AM EST, Carvana sent Plaintiff an email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V). The file name from the link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the evening of August 15, 2019 at approximately 7:26PM.

11.     On the morning of August 19, 2019 at approximately 4:38AM EST, Carvana sent Plaintiff another email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V). The file name from the link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the night of August 17, 2019 at approximately 11:19PM.

12.     On information and belief, a risk-based pricing notice was due prior to consummation of the transaction on August 15, 2019 instead of 2 days later on August 17, 2019 or 2 days after delivery on August 19, 2019. Carvana, on information and belief, was in violation of the timing provision for providing a risk-based pricing notice so they changed the dates on the documents the Plaintiff signed to create the appearance that the transaction was consummated in person on August 17, 2019. Plaintiff discovered this violation between August 17 and August 21 of 2019 but after

2

researching the law, he determined he could not assert a cause of action for any violation because a risk-based pricing violation can't be privately enforced. Plaintiff then opted out of an arbitration agreement he signed in the event Carvana had violated other laws so that he rights would not be limited.

13.     On information and belief, Carvana and Bridgecrest have servicing agreements whereby Bridgecrest is not explicitly assigned in the Contract but they are pre-designated as the servicer of the Contract through separate agreements. *See* Exhibit 2, page 5 of 5 showing no assignment.

14.     As part of the BMW purchase, Plaintiff put $10,000 cash down and was credited $200 for trade-in of a 2005 Suzuki XL-7. The TILA disclosures provided for **a)** amount financed of $14,515, **b)** for a term of 72 months, **c)** 3.90% APR and **d)** finance charge over the term of $1,783.23. The monthly payment for the first 71 months was fixed at $227 and a final payment of $181.23 for month 72. Per the Contract, if the Plaintiff paid off the Contract early, he would not have to pay a penalty.

15.     Plaintiff's first payment was due and paid on September 17, 2019 and scheduled payments of $227 were made up to and including September 17, 2021 for a total of $5,675.

16.     On September 22, 2021, Plaintiff logged into his profile with Bridgecrest at bridgecrest.com and requested a payoff quote which returned an amount of $9,845.62. Plaintiff then submitted a payment for that amount on the same day at bridgecrest.com. On the following day, when Plaintiff logged into bridecrest.com, the site indicated there was no longer an account for the Plaintiff because the account had been paid in full. The total amount paid in finance charges as of the date of payoff was $1,005.62 which represents 56% of the total finance charges with 47 of the 72 months still remaining in the original term.

17.     On information and belief, on or around August 2, 2021, Carvana was banned from conducting business in Wake County until January 2022 for, among other things, issuing out-of-state temporary tags/plates for a vehicle sold to a person in NC and offering vehicles for sale without state inspections.

18.     On October 13, 2021, after researching the reasons for Carvana being banned in Wake County, Plaintiff sought to determine if there were issues involving a Temporary Plate Fee that Carvana charged the Plaintiff. Plaintiff researched communications at that time of purchased and found an email he sent to registration@carvana.com of which he had attached the registration for his trade-in vehicle in order to have his plates transferred to the newly purchased BMW. *See* email which includes a response from Carvana attached hereto as "**Exhibit 3**". A copy of the registration for the trade-in is also attached hereto as "**Exhibit 4**".

19.     Based on the response from Carvana regarding the preceding paragraph, Plaintiff was informed that "*At the time of delivery, you will receive a temporary operating plate which you will have to keep on your vehicle until you receive the updated paper registration in the mail.*". *See* Exhibit 3.

3

20.     Plaintiff was not provided any temporary plate at the time of delivery because the plate from his trade-in was transferred to the BMW. Instead, Plaintiff was informed that a 30-DAY TEMPORARY MARKER RECEIPT ("30-day marker receipt") was placed in the glove box of the BMW and should remain there until he received his updated registration which should then list the BMW with the same tag number as the trade-in. That if he happened to be stopped and was asked for the registration, that he should provide the 30-day marker receipt document as evidence of registration. Plaintiff never had a need to refer to or use the 30-day marker receipt as proof of registration.

21.     On information and belief, the assertions made by Carvana in the preceding two (2) paragraphs were misleading and false. Upon recovering and inspecting the 30-day marker receipt from the BMW glove box, Plaintiff observed it was not fully completed or signed and it left the following items blank: **a)** Name of company affording liability insurance, **b)** Policy number, **c)** Title and License Fees Collected by Dealer $, **d)** Check Plate Classification and **e)** By (certifying signature). Item **e)** was preceded by "I, the undersigned, do hereby certify that the rules and regulations governing the issuance of 30-day Temporary Markers have been fully complied with.". As can be observed, no one signed the receipt. Furthermore, the 30-day marker receipt stated at the bottom that "This copy must be given to purchaser with corresponding 30-day temporary marker.". *See* 30-day marker receipt attached hereto as "**Exhibit 5**". Likewise, On September 5, 2019, Carvana sent an email to the Plaintiff with the following message suggesting the Plaintiff would be receiving new plates even when they knew the Plaintiff's plates were being transferred:

> *"We've got great news! Your registration for your 2016 BMW 3 Series has been processed! You should receive your plates within 5-7 business days. If you do not receive your plates within this time period, please reach out to our Customer Advocate team at 1.844.507.3599."*

22.     On October 13, 2021, when Plaintiff retrieved the 30-day temporary marker from the glove box of the BMW, he also found a state inspection receipt and statement showing an inspection took place on August 17, 2019, the day the Plaintiff would pick up the BMW. On information and belief, the BMW should have been inspected prior to being offered for sale on August 15, 2019. See G.S. § 20-183.4C(2) which states: "A used vehicle must be inspected before it is offered for sale at retail in this State by a dealer. Upon purchase, a receipt approved by the Division must be provided to the new owner certifying compliance.". A violation of this statute was part of the reason Carvana's dealer license was suspended in Wake County as part of Superior Court case no. 21 CVS 8116.

23.     Upon researching the law regarding the issuance of temporary markers in the state, Plaintiff learned that under the circumstances, a dealer such as Carvana could not issue a temporary plate when a registration plate was being transferred. Furthermore, a receipt should be accompanied by a temporary marker to be attached to the vehicle until a new or replacement plate was received. As mentioned, Plaintiff already had a registration plate which was transferred from his trade-in, a 2005 Suzuki XL-7 to the BMW.

24.     On October 13, 2021, after making the discovery regarding the 30-day marker receipt and the law regarding issuance by a dealer, Plaintiff filed a complaint with the License and Theft

4

Bureau of the North Carolina Division of Motor Vehicles ("Theft Bureau"), informing them that he was charged for a Temporary plate that he didn't believe should have been charged because his plates were transferred and further that he never received a temporary plate. Plaintiff was called within one hour of submitting the complaint by a lieutenant of the Theft Bureau who requested that Plaintiff send her a copy of the document showing the line item where he was charged a temporary plate fee. Plaintiff immediately sent a copy of page 1 from the Purchase agreement along with emails between Plaintiff and Carvana regarding the plate transfer. *See* page 1 of Exhibit 1 at line item 3b. Plaintiff also emailed a copy of the 30-day temporary marker seen in Exhibit 5.

25.     Realizing the Temporary Plate fee may not be valid, Plaintiff looked into whether other fees he was charged by Carvana could be unlawful or potentially overstated. On information and belief, as can be seen on Exhibit 1, the following, including the temporary plate fee, were charged but were either over-charged or bogus with suspected reasons:

| Line Item | Charged | Overage | Reason |
|---|---|---|---|
| 3a - NC Registration Fee | 36.00 | (16.00) | Over charge: due to registration transfer. Should be a registration transfer fee of $20.00 |
| 3b - Temporary Plate Fee | 1.00 | (1.00) | Unlawful: Not valid with registration transfer |
| 3c - County Registration Fee | 15.00 | (15.00) | Unlawful: Not valid with registration transfer |

Plaintiff renewed registration for his trade-in vehicle on October 31, 2018 and paid a $36.00 annual registration renewal fee at that time so line item 3a was not due again until October 31, 2019. Line item 3a – NC Registration Fee, based on fee schedule, should be a Registration Transfer Fee and equal to $20.00 since this involved a plate/registration transfer and was not a renewal given there was still time remaining on the pre-existing registration being transferred. The registration Plaintiff did receive for the BMW expired on October 31, 2019 as expected. Plaintiff renewed registration again on October 18, 2019 and paid a $36.00 annual registration renewal fee, less than 2 months after he was charged $36.00 by Carvana.

26.     As a licensed dealer in this State, Carvana knew and understood the laws and regulations regarding the collection of fees or other amounts that were due to the state or local government but ignored those laws or regulations. N.C.G.S. § 105-330.6 (b) states:

> *"Transfer of Plates. – If the owner of a classified motor vehicle listed pursuant to G.S. 105-330.3(a)(1) transfers the registration plates from the listed vehicle to another classified motor vehicle pursuant to G.S. 20-64 during the listed vehicle's tax year, the vehicle to which the plates are transferred is not required to be listed or taxed until the current registration expires or is renewed"*

27.     Although the law is clear and Carvana knew the Plaintiff's plates were being transferred, they still charged the Plaintiff a County Registration Fee of $15.00 even though Plaintiff had already paid this same fee when he renewed his registration in October of 2018. *See* 2018 renewal receipt attached hereto "**Exhibit 6**". On information and belief, this $15 fee is a vehicle property tax charged annually with registration renewals.

28.     Although the law is also clear regarding when a dealer can issue a temporary marker,

5

Carvana still charged the Plaintiff a Temporary Plate fee even when they knew that no temporary plate was provided and they knew it was forbidden by law. 19A N.C. Admin. Code 3D.0221(b)(6) states in relevant part that "... If a plate is to be transferred, a 30-day temporary marker shall not be issued.". As mentioned, Carvana merely tucked a partially completed 30-temporary marker receipt in the Plaintiff's glove box and asked that he only use it if he was stopped and asked to show registration for the BMW.

29.   Carvana could be penalized through an enforcement action if they improperly issued a 30-day temporary marker. *See* 19A N.C. Admin. Code 3D.0235 which states in relevant part that: "The Division of Motor Vehicles shall apply the Civil Penalty Schedule for Type II Violations against a licensed automobile dealer for any of the following: . . . (5) Improperly issuing or using 30-day temporary markers as addressed in G.S. 20-79.1".

30.   Considering Carvana knew that Plaintiff's license plate from his trade-in was being transferred, they knew that the cost for registration transfer was not $36.00 as charged. Yet they still charged the Plaintiff that amount instead of the registration transfer amount per the DMV fee schedule for 2019 which should have been $20.00. *See* fee changes found at https://www.ncdot.gov/news/press-releases/Documents/2020-06-29-dmv-fees-increasing.pdf. *See* Exhibit 6 showing the Plaintiff paid a registration renewal fee of $36.00 on October 31, 2018 which would not expire or come due again until October 31, 2019. Also *see* receipt attached hereto as "**Exhibit 7**" showing the Plaintiff paid another registration renewal fee of $36.00 on October 18, 2019, two months after the BMW purchase.

31.   As a result of Carvana either charging unlawful fees which were not due by law or for over charging the Plaintiff using a different purpose fee such as using a registration renewal fee instead of a registration transfer fee, Plaintiff paid additional amounts in finance charges on top of the unlawful fees under the Contract. Plaintiff had no reason to suspect that any of the fees charged regarding registration or plates were unlawful.

32.   Carvana could be penalized through an enforcement action for their wrongful actions. *See* N.C.G.S. § 20-294 which states in relevant part that "The Division may deny, suspend, place on probation, or revoke a license issued under this Article for any one or more of the following grounds: . . . (14) Willfully defrauding any retail buyer, to the buyer's damage, or any other person in the conduct of the licensee's business. ... (16) Using unfair methods of competition or unfair deceptive acts or practices as addressed in G.S. 20-294(6)". Also *see* 19A N.C. Admin. Code 3D.0234. See also Wake County Superior Court case no. 21 CVS 8116.

## FACTS REGARDING REQUEST FOR STATEMENT OF ACCOUNT AND REBATE

33.   On October 14, 2021 at approximately 7:56AM EST, the Plaintiff logged into bridgecrest.com and sent the following message to Bridgecrest:

> "This is a formal written request that you provide a statement of account in accordance with North Carolina General Statute § 25A-35. This is regarding the retail installment contract for VIN # WBA8E9G54GNT46394.

6

Please include an accounting of any earned and unearned finance charges that were paid."

34.     Additionally, on October 14, 2021 at approximately 8:14AM EST, the Plaintiff logged into bridgecrest.com and using the [Contact Us] feature of Bridgecrest's website and sent the following message to Bridgecrest:

"Regarding the installment contract involving VIN # WBA8E9G54GNT46394, please accept this as a formal written demand for refund or rebate of any 1) unearned amounts of finance charges due to prepayment of the installment contract prior to its maturity and 2) refund of any amounts that were included on page 1 of the Retail Purchase Agreement (3a through 3c) if those amounts were not valid official fees for the state, not required for the transaction or that were required but the amount was in excess of the amount required.
As for item 2) above, please include any finance charges that were paid on those amounts.

Item 1) above is made in accordance with North Carolina General Statute § 25A-32."

35.     As of the filing of this Complaint, Plaintiff had not received any statement of account in accordance with N.C.G.S. § 25A-35 from Bridgecrest or Carvana.

36.     As of the filing of this Complaint, Plaintiff had not received any rebate as demanded in accordance with N.C.G.S. § 25A-32. On information and belief, Plaintiff believes the rebate due to him using the rule of 78 would come out to $764.98 provided the rebate was provided as requested within a 10-day period but it was not provided within that time frame.

## FACTS REGARDING DOCUMENTS ALLGEDY SIGNED BY THE PLAINTIFF

37.     DocuSign, Inc ("DocuSign") is a company used to electronically sign documents in compliance with the U.S. Electronic Signatures in Global and National Commerce Act (ESIGN), 15 U.S.C. § 7001 et seq. Under ESIGN, electronic records and signatures in compliance with ESIGN are legally binding. DocuSign permits a company to send documents to a customer for their signature. The customer opens the document for review containing areas marked for the signatory to execute. The signer creates a signature and must click a button confirming their signature once they have completed all form fields and signed in all required places.

38.     DocuSign also provides a set of Application Programming Interfaces ("API") that can be used to programmatically interact with their e-signature services in addition to DocuSign PowerForms which allow clients to use DocuSign document e-signature products from their own website instead of a DocuSign website.

39.     DocuSign generally allows its clients to request a signature by sending an email to the

7

user or customer on behalf of the client. The email recipient would then click a "View Document" button or link in the email which takes them to the DocuSign website. The email may also contain a unique security code that could be used before being provided access to the documents and signing. From the website, the user would create a signature and initials by selecting a pre-defined style or drawing their own. That signature or initial would then be used to sign or initial one or more documents in pre-designated areas marked for execution using a click. Once each pre-designated area for a signature or initial has been executed, the user can click "Finish" to complete the document signing process. If there are other signatories, DocuSign generally sends the signed documents to the next signatories email address based on the sequence defined by the client. All signatures or initials on the signed documents for a given user would be identical. The user could also a) print documents, b) view, print or download a Certificate of Completion or c) view, print or download history of the envelope if desired or d) revoke a document if not already signed. In this case, Carvana sent a custom email which makes no mention of DocuSign and directed the Plaintiff to a website location at carvana.com which may use DocuSign PowerForms or DocuSign's API. Within the email, Carvana advised Plaintiff he did do not need to print the documents.

40.     A DocuSign Certificate of Completion provides identifying information about the envelope and complete details of the envelope events. The signer events section provides details about each signer of the document, including the signer's IP address and other identifying information, a signature image and key event timestamps. In its native PDF form, the Certificate of Completion include a digital signature embedded by DocuSign. This digital signature serves as a non-repudiation tamper stamp which among other things, is used to verify a document has not been modified since the digital signature was applied. If alterations are made to a digitally signed document, the digital signature will provide details about where alterations were made and depending on the document PDF viewing software being used, would also allow someone to view the originally signed document without the alterations.

41.     Carvana has required documents to be signed electronically using DocuSign's e-signature product offerings since no later than 2017.

42.     Although DocuSign has security features to help verify the signature of the person who signs or initials a document, Carvana avoids use of those security features. For example, DocuSign has a security feature for the signature that, once signed, the term "DocuSigned By:" appears above the signature and a 15-digit alphanumeric characters appear below the signature as a unique signature id. Additionally, for initials, the letters "DS" would appear above the initials. Examples of both are seen in Figure 1 below using one of the pre-defined styles provided by DocuSign.



Figure 1 - Sample DocuSign signatures available for selection

43.     Although DocuSign has features to notify users when a document has been signed and

Case 1:22-cv-00037-CCE-LPA   Document 1-1   Filed 01/18/22   Page 91 of 191

provide copies of the signed documents automatically, Carvana did not use of those features in as far as providing copies to the Plaintiff. As mentioned, Carvana also advised the Plaintiff he didn't need to print the documents in an email.

44. DocuSign also provides a field that allows Carvana to capture the date a document was signed which is populated automatically when a user clicks a pre-designated area to sign using the signature that he/she created. However, in this case, Carvana avoided use of this feature and instead, placed a future date where a date of signature should appear creating the appearance that the Plaintiff electronically signed and dated documents on August 17, 2019 instead of August 15, 2019. G.S. § 25A-28 requires that a document be dated and signed by the buyer. The use of an auto-populated date field could have sufficed for a Plaintiff's signature date if it had been implemented as it would have reflected the actual date or the actual date and time of the Plaintiff, but that was not the case.

45. All of the signatures on the documents that were provided to the Plaintiff and appear to be Plaintiff's signature look strikingly similar to the Plaintiff's actual signatures. But in the case of the Contract and the Sales Agreement that were provided to the Plaintiff, the signatures and initials that appear on the documents couldn't have been made by the Plaintiff because, upon closer inspection, the signatures are different, even within the same document. If the signatures appearing on documents provided to the Plaintiff were made by the Plaintiff, they would be identical across all of the documents.

46. Plaintiff did not sign any document position that required a signature using his signature plus his initials ("Signature+Initials") as seen twice on page 5 of the Contract in Exhibit 2 and once on page 1 of the Sales Agreement in Exhibit 1.

47. Plaintiff did not sign any document position that required an initial using his signature as seen on the bottom right corner of every page of the Contract as seen in Exhibit 2. Likewise, Plaintiff did not sign any document position that required an initial with Signature+Initials as seen on page 1 of the Sales Agreement as seen in Exhibit 1.

48. On information and belief, both the Contract and Sales Agreement that were provided to the Plaintiff on August 17, 2019 are not documents that Plaintiff electronically signed on August 15, 2019. The documents are instead good forgeries which had what appears to be different versions of signatures from the Plaintiff. In particular, the Sales Agreement, Exhibit 1, has two different sets of Signature+Initials, one where "Buyer's Initials" should appear and a different one where Plaintiff's signature should appear as demonstrated in Figure 2 and 3 below.


Figure 2 – Version 1 – Signature+Initials on Sales Agreement where initials are expected


Figure 3 - Version 2 – Signature+Initials on Sales Agreement where signature is expected

9

The Contract, Exhibit 2, has a signature plus initials while the signature appearing on the bottom right corner of every page is not the same as the signature that appears with initials. A signature from the Plaintiff would not change during a signing session between separate documents and certainly not on the same document.


By: ARTHUR B HILL

Figure 4 - Version 1 – Signature+Initials on page 5 of Contact where signature is expected


Page 5 of 5

Figure 5 - Version 2 - Signature on bottom of all Contract pages where initials are expected

49.     There are at least three (3) distinctly different signatures across the Contract and the Sales Agreement. The signature seen above in Figure 2 is different from the signatures seen above in Figure 3, 4 & 5. The signatures seen above in Figure 3 & 4 are the same but different from the signature seen above in Figure 5. And the signature seen above in Figure 5 is different from the signatures seen above in Figure 2, 3 & 4.

50.     Whomever created the signatures seen above in Figure 2 and 5 did a good job at creating nearly indistinguishable versions of the Plaintiff's signature. The Plaintiff signed documents in a single session on August 15, 2019 and there should only be one unique signature, regardless of the number of signatures, across all of the documents if signed by the Plaintiff using DocuSign.

51.     Although the Plaintiff had the Contract and Sales Agreement in his possession for over two years, reviewed the documents between August 15 and August 21 of 2019 after the transaction, reviewed the documents again prior to filing suit and attached both documents to his original complaint as Exhibits, he never suspected or had any reason to suspect any of the signatures could be forgeries because they looked like his signatures.

52.     Although the Plaintiff filed a different lawsuit against Carvana and that case was removed from this Court's District division and amended at least once in federal court, Plaintiff still never suspected or had any reason to suspect any of the signatures could be forgeries because they looked like his signatures. As such, Plaintiff made no allegations regarding forgery in his original or amended complaint that is now pending in federal court.

53.     Plaintiff didn't focus any attention to any signatures until he reviewed documents filed by Carvana in *Saddler v. Carvana, LLC*, CASE NO 4:20CV105 HEA (E.D. Mo. Aug. 11, 2020). A declaration in that case revealed that Carvana used DocuSign. Consistent with how DocuSign works, the signed documents filed in that case show the exact same signature in places requiring a signature and the same initials in places requiring initials. The Certificate of Completion filed in that case also show the signature image associated with the Plaintiff in *Saddler* matched the signature on each document that was allegedly signed by him. Notably, the Sales

10

Agreement in that case does not have any initials or signatures in the bottom right corner of each page.

54.     Plaintiff also didn't recognize there should be no differences in signatures on a document until he learned that Carvana had used DocuSign since 2017 based on researching the *Saddler* case and conducting his own investigation of the DocuSign e-signature software.

55.     Plaintiff never would have made any payments, cancelled the Contract with Carvana and demanded a full refund if he had known, among other things, that his signature had been forged on documents that were given to him on August 17, 2019.  Furthermore, Plaintiff would have likely reported the forgeries at the time to authorities like the North Carolina Attorney General and/or the Consumer Finance Protection Bureau.

56.     The documents that were provided to the Plaintiff on August 17, 2019 appear as though someone recreated the originals or created new documents for some unknown reason.  It appears as though someone then signed the new documents using a new signature but the signature was created with initials appended to the end.  It then appears as if someone added additional areas for signatures or initials to the documents, created yet another signature and/or initials and then used that signature or initials on certain areas of new or revised documents.

57.     Carvana never contacted Plaintiff to ask him to sign or re-sign any additional, revised or new documents after he signed documents on August 15, 2019.

58.     Carvana, having knowledge of when the Plaintiff actually signed documents and having discreet knowledge of the DocuSign Certificates of Completion, Envelope history and audit trails, knew at all times that the documents provided to the Plaintiff had been altered and were not the original documents the Plaintiff had signed on August 15, 2019.

59.     On information and belief, of the individuals at Carvana who knew or should have known that the documents were forged is Paul Breaux, the General Counsel at Carvana who himself signed one or more of the documents in question.

60.     Under North Carolina law, a person may be charged with a felony for forging a document with the intent to injure or defraud a person.  They may also be charged with a felony for uttering any false or forged document in accordance with N.C. Gen. Stat. § §14-119-120.  They may be charged with a felony whether they uttered a false or forged document directly or indirectly.

61.     On information and belief, discovery would reveal that an employee or agent of Carvana forged the Plaintiff's signature on versions of the Contract and Sales Agreement that were provided to the Plaintiff on August 17, 2019.

62.     Due to Carvana forging one of more signatures of the Plaintiff on the Contract, the Sales Agreement and possibly other documents, all of which are considered felonies under the laws of this state, the Contract was voidable and Plaintiff would have sought rescission if he had knowledge of, among other things, the forgeries at the time the documents were provided to him

11

or before he paid off the BMW.

## CLAIMS FOR RELIEF

## COUNT 1
## FRAUD AGAINST CARVANA

63.     The preceding paragraphs are incorporated here as though stated word for word.

64.     Carvana has engaged in a common scheme of fraud, through which they unlawfully charged official fees that were not due and collected interest on those unlawful fees.

65.     Carvana has also engaged in a common scheme of fraud, through which they seamlessly and convincingly forged signatures of the Plaintiff onto documents without consent or knowledge of the Plaintiff.

66.     Carvana intentionally perpetrated the common scheme of fraud complained of herein as an unlawful means to cause Plaintiff to pay additional fees, additional finance charges and avoid cancelling a voidable contract.

67.     Plaintiff justifiably relied on the Carvana's failures to disclose both their scheme of unlawfully charging additional fees and forgery of his signature on one or more documents.

68.     As mentioned herein, Carvana made false representations or concealed material facts involving the following:

    a.  Falsely representing that the Plaintiff required a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

    b.  Falsely representing that the Plaintiff was required to pay a fee for a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

    c.  Falsely representing that the Plaintiff was required to pay a County Registration fee which was not warranted by law due to a registration plate transfer and existing registration that would not expire until a future date;

    d.  Falsely representing that the Plaintiff was required to pay the costs of a registration renewal when there was a registration plate transfer.

    e.  Falsely representing that the Plaintiff could use a partially completed and unsigned 30-day temporary marker receipt as proof of registration if stopped by law enforcement.

    f.  Falsely representing that they were offering the BMW for sale in compliance with the law when they knew the requirement for an inspection prior to offering the vehicle

12

for sale had not been met on August 15, 2019 considering they did not have the vehicle inspected until after the Plaintiff arrived to pick up the vehicle.

g. Forging the Plaintiff's signature on one or more documents without his knowledge or permission, passing those forged documents to the Plaintiff and falsely representing that the documents provided to the Plaintiff were true, accurate and authentic copies of documents the Plaintiff had signed electronically on August 15, 2019.

69.     The misrepresentations or concealment of material facts by Carvana were reasonably calculated to deceive, made with the intent to deceive and did in fact deceive the Plaintiff resulting in damage.

70.     As a direct and proximate result of Carvana's common fraud scheme, Plaintiff was caused and sustained damages in the form of the unauthorized fees paid in connection with the purchase of a motor vehicle and denied an opportunity to avoid a voidable Contract.  As a result, Carvana is liable to the Plaintiff for compensatory and punitive damages to be determined by a trier of fact.

**COUNT 2**
**VIOLATION OF RETAIL INSTALLMENT SALES ACT ("RISA")**
**AGAINST CARVANA AND BRIDGECREST**

71.     The preceding paragraphs are incorporated here as though stated word for word.

72.     N.C.G.S. § 25A-35 states that in relevant part that:

(a) One time during each 12-month period following execution of a consumer credit installment sale contract and when the buyer repays the debt early, the buyer shall be entitled upon request and without charge to a statement of account from the seller. The statement of account shall contain the following information identified as such in the statement:

(1) The itemized amounts paid by or on behalf of the buyer to the date of the statement of account, except that upon early termination of the contract by prepayment or otherwise, the statement shall include itemized charges for expenses of repossession, storage and legal expenses.

73.     As mentioned above, Plaintiff had not received a response from Defendants regarding a statement of account.

74.     N.C.G.S. § 25A-32 states in relevant part that:

Notwithstanding any provision in a consumer credit installment sale contract to the contrary, any buyer may satisfy the debt in full at any time before maturity, and in so satisfying such debt, shall receive a rebate, the amount of which shall be computed

13

under the "rule of 78's," as follows:

The amount of such rebate shall represent as great a proportion of the finance charge (less a prepayment charge of ten percent (10%) of the unpaid balance, not to exceed twenty-five dollars ($25.00)) as the sum of the periodical time balances after the date of prepayment in full bears to the sum of all the periodical time balances under the schedule of payments in the original contract." No rebate is required if the amount thereof is less than one dollar ($1.00).

If the prepayment is made otherwise than on the due date of an installment, it shall be deemed to have been made on the installment due date nearest in time to the actual date of payment.

75.     As mentioned above, Plaintiff had not received a response from the Defendants regarding a rebate or refund.

76.     N.C.G.S. § 25A-44 states in relevant part that:

In addition to remedies hereinbefore provided, the following remedies shall apply to consumer credit sales:
. . .
(3) In the event the seller or an assignee of the seller (i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter, the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges. Ten days after receiving written request therefor, the seller shall be liable to the buyer for an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period.

(4) The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1.

77.     The actions or inactions of Defendants regarding a statement of account and rebate were knowing and willful making them liable to the Plaintiff for three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period of Plaintiff's demand.

78.     As a result of Defendants actions or inactions, they are in violation of RISA and liable to the Plaintiff for damages pursuant to N.C.G.S. § 25A-44(4) to be determined by a trier of fact. Plaintiff is due three times the amount of rebate or refund along with any unauthorized charges.

## COUNT 3
## VIOLATION OF NCUDTPA AGAINST CARVANA AND BRIDGECREST

79.     The preceding paragraphs are incorporated here as though stated word for word.

14

80. Pursuant to N.C.G.S. § 75-1.1, unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

81. As mentioned herein and in COUNT 1 and COUNT 2, Defendants engaged in acts which were unfair or deceptive and those acts or practices were in or affecting commerce. Fraud has long been recognized as an unfair and deceptive practice. Likewise, N.C.G.S. § 25A-44(4) states that "The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1".

82. As mentioned above, Carvana also violated the risk-based pricing timing disclosure which, if prosecuted by the proper authority, could amount to an unfair or deceptive practice under federal law although no such cause of action is made here and Plaintiff would not have standing to state such a claim in this instance.

83. As mentioned herein, Carvana offered the BMW for sale with knowledge that there had not been a state inspection in violation of § 20-183.4C(2).

84. As mentioned herein, Carvana forged the Plaintiff's signature on one of more documents as part of a common scheme of fraud and deceptive acts or practices.

85. As a result of Defendants actions or inactions involving their unfair or deceptive acts or practices, they are liable to the Plaintiff for treble damages pursuant to N.C.G.S. § 75-16.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

    a. That costs of this action be taxed to Defendants jointly and severally;

    b. That the Court enter judgement for Plaintiff and award compensatory and punitive damages in excess of $25,000 for COUNT 1 against Carvana for fraud and forgery.

    c. That the Court enter judgement for the Plaintiff awarding three times the rebate amount that was due for COUNT 2;

    d. That the Court enter judgement for the Plaintiff and against Defendants awarding treble damages for COUNT 3.

    e. That the Court award Plaintiff pre and post judgement interest on pre-trebled damages;

    f. That the Court enter an order declaring that the Contract was voidable at the time the BMW was delivered on August 17, 2019 due to forgery by Carvana's employees or agents;

    g. That the Court award any other relief it deems just and proper.

15

Submitted this the ___9th___ day of _December_ , _2021_.

_[signature]_

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com

16

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

ARTHUR HILL,

        Plaintiff, pro se,

  vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**VERIFICATION**

     I, Arthur Hill, being first duly sworn, deposes and says that he is the Plaintiff in this matter, that he has read and understood this VERIFIED FIRST AMENDED COMPLAINT and knows the contents to be true of his own personal knowledge, except for those matters and things set forth upon information and belief, and as to those matters and things, he believes them to be true.

_____
(Sign in the Presence of the Notary Public)

Sworn to and subscribed before me this 9th day of December , 2021 .

_____
Notary Public

My commission expires: May 10, 2026

*[Notary seal: SUGUEY PINEDA GOMEZ / NOTARY PUBLIC / CABARRUS COUNTY, NC]*

17

EXHIBIT

1

# Retail Purchase Agreement
## – North Carolina –

| BUYER | ARTHUR B HILL |
|---|---|
| ADDRESS | 2849 TRESTLE CT SW |
| CITY, STATE, ZIP | CONCORD NC 28025 |
| PHONE(S) | RES. 9805211819 | BUS. |

Date 08/17/19    Phone 1-800-333-4554

Dealership CARVANA, LLC

Address 3631 SOUTH BLVD

City, State, Zip CHARLOTTE NC -2338

Stock Number 2000342348

| Year 2016 | Make BMW | Model 3 Series | Body 328i 4dr Sedan SULEV |
|---|---|---|---|
| Lic. Plate # | License Tab # | Expires | Mileage 35447 | Color Black |

VIN # WBA8E9G54GNT46394

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.

Buyer(s) ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.

| # | | Amount |
|---|---|---|
| 1 | Selling price | $23,900.00 |
| 2 | Sales Tax | $711.00 |
| 3a | NC Registration Fee | $36.00 |
| 3b | Temporary Plate Fee | $1.00 |
| 3c | County Registration Fee | $15.00 |
| 3d | Title Fee | $52.00 |
| 4 | Subtotal (Selling Price + Delivery Fee + Fees + Taxes) | $24,715.00 |
| 5 | Trade-In Allowance | $200.00 |
| 6 | Estimated Pay-off | $0.00 |
| 7 | Net Trade Allowance (Allowance - Payoff) (If negative, enter $0 here and enter amount on Trade-In Balance Line) | $200.00 |
| 8 | Trade-In Balance (If applicable, this is the negative equity amount from your trade-in) | $0.00 |
| 9 | Cash Down Payment | $10,000.00 |
| 10 | Total Down Payment (Cash Down Payment + Net Trade Allowance) | $10,200.00 |
| 11 | Balance Due (Subtotal - Total Down Payment) | $14,515.00 |
| | | $14,515.00 |

### TRADE IN VEHICLE 1

| Year 2005 | Make Suzuki | Model XL-7 | Body |
|---|---|---|---|
| Lic. Plate # | License Tab # | Expires | Mileage 172715 | Color BLACK |

VIN # JS3TY92V754106319

### TRADE IN VEHICLE 2

| Year N/A | Make N/A | Model N/A | Body N/A |
|---|---|---|---|
| Lic. Plate # N/A | License Tab # N/A | Expires N/A | Mileage N/A | Color N/A |

VIN # N/A

Buyer's Initials

FINANCE CHARGE

The dollar amount the credit will cost you

$ 1,783.23

If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

3 is a copy view of the Authoritative Copy i
by the designated custodian

> **NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

**Carvana Vehicle Return Program**

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:

1. You have not returned, exchanged, or swapped more than two (2) prior Vehicles to Carvana in connection with any Retail Purchase Agreements or Retail Installment Contracts associated with this transaction.
    i. If you have returned, exchanged, or swapped two (2) prior Vehicles in connection with this transaction, you will be given a one-time opportunity to decline or accept the third and final Vehicle either during the delivery or pick-up appointment unless otherwise approved by Carvana.

2. You alert Carvana by phone, text, email, or chat prior to 8pm EST on the 7th calendar day after you take delivery of the Vehicle. The day your Vehicle is delivered, regardless of delivery time, will count as the first day of your seven (7) day test own;

3. You return the Vehicle in one of two ways:
    i. Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pickup will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.
    ii. Outside of a Carvana service area: Carvana will arrange for transport of the Vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.

4. The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract executed between you and Carvana;

5. The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the Vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;

6. You have not driven it more than 400 miles;

7. The Vehicle is without damage or having been in an accident that occurred after you took delivery of the Vehicle;

8. If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/ or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

9. Any Trade-In vehicles with current liens which are involved in this transaction will be paid off once sale is complete and after the test own period ends. You should continue to make payments on liens if payment is due within your test own period. The lien holder of the Trade-In vehicle will reimburse you for any over-payment after the transaction is complete.

**Trade-In Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

DocuSign Envelope ID: B2716B2B-C969-46D0-8617 ᵀ⁴ᵗ9CED2DE1AC

THIS IS A COPY
s is a copy view of the Authoritative Copy
⌐, the designated custodian

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages:** Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the Carfax Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

**Liability Insurance:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer acknowledges receipt of a copy of this Agreement. This agreement supersedes any oral agreements or understandings. The agreement cannot be modified except by a written agreement signed by all of the parties. This agreement is not binding until accepted by an authorized representative of Carvana.**

Buyer _____ *Arthur Hill* AH

ARTHUR B HILL

Accepted By _____

Carvana

Case 1:22-cv-00037-CCE-LPA   Document 1-1   Filed 01/18/22   Page 103 of 191

...IS A COPY VIEW...
by the designated c...
NC-102

**EXHIBIT**

**2**

# Retail Installment Contract and Security Agreement
## (Consumer Credit Document)

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| CARVANA, LLC | ARTHUR B HILL | No. 2000342348 |
| 3631 SOUTH BLVD | 2849 Trestle Ct Sw | Date 08/17/19 |
| CHARLOTTE NC -2338 | CONCORD NC 28025 | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of |
| 3.90 % | $ 1,783.23 | $ 14,515.00 | $ 16,298.23 | $ 10,200.00 |
| | | | | $ 26,498.23 |

**Payment Schedule. Your payment schedule is:**

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 227.00 | monthly beginning 09/17/19 |
| 1 | $ 181.23 | 08/17/25 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due. If you purchase the Vehicle for personal, family, household, or agricultural purposes the late charge will not exceed $6.00.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2016 | BMW | 3 Series | 328i 4dr Sedan SULEV | WBA8E9G54GNT46394 | 35447 |

☐ New   ☒ Used   ☐ Demo    Other: N/A

## Description of Trade-In

| 2005 | Suzuki | XL-7 | JS3TY92V754106319 |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

## Conditional Delivery

☒ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: ___N/A___

___N/A___ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ ___14,515.00___ plus finance charges accruing on the unpaid balance at the rate of ___3.90___ % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at ___3.90___ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

Retail Installment Contract-NC Not for use in transactions secured by a dwelling
Bankers Systems ™ VMP ®
Wolters Kluwer Financial Services © 2015

Page 1 of 5

THIS IS A COPY
s is a copy view of the Authoritative Copy
, the designated custodian

## Itemization of Amount Financed

a. **Cash Price** of Vehicle, etc. (incl. sales tax of
$ 711.00                    )  $  24,611.00
b. Trade-in allowance  $  200.00
c. Less: Amount owing, paid to (includes k):
N/A  $  N/A
d. Net trade-in (b-c; if negative, enter $0 here and enter
the amount on line k)  $  200.00
e. Cash payment  $  10,000.00
f. Manufacturer's rebate  $  0.00
g. Deferred down payment  $  0.00
h. Other down payment (describe)
N/A  $  N/A
i. **Down Payment** (d+e+f+g+h)  $  10,200.00
j. **Unpaid balance of Cash Price** (a-i)  $  14,411.00
k. Financed trade-in balance (see line d)  $  0.00
l. Paid to public officials, including filing fees  $  104.00
m. Insurance premiums paid to insurance company(ies)  $  0.00
n. Service Contract, paid to:
N/A  $  0.00
o. To: N/A  $  N/A
p. To: N/A  $  N/A
q. To: N/A  $  N/A
r. To: N/A  $  N/A
s. To: N/A  $  N/A
t. To: N/A  $  N/A
u. To: N/A  $  N/A
v. To: N/A  $  N/A
w. To: N/A  $  N/A
x. To: N/A  $  N/A
y. **Total Other Charges(Amts Paid** (k thru x)  $  104.00
z. **Prepaid Finance Charge**  $  0.00
aa. **Amount Financed** (j+y-z)  $  14,515.00
We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance. Credit life** and **credit disability** (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
☐ Single  ☐ Joint  ☐ None
Premium $ N/A      Term N/A
Insured      N/A

**Credit Disability**
☐ Single  ☐ Joint  ☐ None
Premium $ N/A      Term N/A
Insured      N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A                          N/A
By:                          DOB
Date:

N/A                          N/A
By:                          DOB
Date:

N/A                          N/A
By:                          DOB
Date:

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ 1,000 . If you get insurance from or through us you will pay $ N/A for N/A of coverage.
This premium is calculated as follows:
☐ $ N/A Deductible, Collision Cov. $ N/A
☐ $ N/A Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A
N/A      $ N/A

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A
N/A      of coverage.

Retail Installment Contract-NC Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

Page 2 of 5

THIS IS A COPY

s is a copy view of the Authoritative Copy
, the designated custodian

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ Service Contract

| | |
|---|---|
| Term | N/A   months |
| Price | $ N/A |
| Coverage | N/A   N/A |

☐ Gap Waiver or Gap Coverage

| | |
|---|---|
| Term | 72   months |
| Price | $ 0.00 |
| Coverage | |

☐ N/A

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

| N/A | N/A |
|---|---|
| By: | Date |

| N/A | N/A |
|---|---|
| By: | Date |

| N/A | N/A |
|---|---|
| By: | Date |

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid to us as commissions or other remuneration. You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25.00.

**Governing Law and Interpretation.** This Contract is governed by the law of North Carolina and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract (except as prohibited by law) if you fail to perform any obligation that you have undertaken in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the outstanding balance owing on the Contract at the time we begin a lawsuit to enforce and/or collect this Contract.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property, to the extent permitted by law. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note. If you purchased the Vehicle primarily for personal, family, household, or agricultural purposes, the following notice applies: NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| By: | Date |

Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

THIS IS A COPY

is a copy view of the Authoritative Copy
by the designated custodian

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

| | |
|---|---|
| *Arthur Hill* AH | 08/17/19 |
| By: ARTHUR B HILL | Date |

| | |
|---|---|
| N/A | N/A |
| By: | Date |

| | |
|---|---|
| N/A | N/A |
| By: | Date |

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

| | |
|---|---|
| *Arthur Hill* AH | 08/17/19 |
| By: ARTHUR B HILL | Date |

| | |
|---|---|
| N/A | N/A |
| By: | Date |

| | |
|---|---|
| N/A | N/A |
| By: | Date |

**Seller**

| | |
|---|---|
| *[signature]* | 08/17/19 |
| By: CARVANA, LLC | Date |

**Assignment.** This Contract and Security Agreement is assigned to

N/A

the Assignee, phone _____ N/A _____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

| | |
|---|---|
| N/A | |
| By: | Date |

Retail Installment Contract-NC Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services ℗ 2015

*[signature]* 01/18 *Hill*

Page 5 of 5



EXHIBIT
3

artbhill@hotmail.com

| From: | ART HILL |
|---|---|
| Sent: | Thursday, August 15, 2019 7:01 PM |
| To: | Registration |
| Subject: | Re: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series |

Ok. Thanks for the prompt response.

Get Outlook for Android

From: noreply@salesforce.com <noreply@salesforce.com> on behalf of Registration <registration@carvana.com>
Sent: Thursday, August 15, 2019 6:56:56 PM
To: artbhill@hotmail.com <artbhill@hotmail.com>
Subject: RE: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series

Hi Arthur!

Thank you for taking the time to send in your registration card! I have updated your account to reflect your request to transfer of your license plates. At the time of delivery, you will receive a temporary operating plate which you will have to keep on your vehicle until you receive the updated paper registration in the mail.

Processing times can vary since our registration team has to process the transfer through the DMV. Once completed you will be able to move your old plate onto your new ride.

VERY IMPORTANT: In NC, it is required to keep the insurance active on the vehicle you are trading in until the registration transfer is complete, otherwise the DMV will not transfer the plate. If the registration is not active, you may obtain an FS1 form from your insurance company which needs to include the date the trade in vehicle was removed from the policy (this will ensure there were no lapses in insurance).

If you have any additional questions, please refer to our frequently asked questions section on our site! You can find that here: https://www.carvana.com/faq

Kind regards,

Alexa
Advocate II, Chat & Email
1930 W Rio Salado Pkwy /// Tempe AZ 85281
/// O: 800.333.4554 /// F: 866.221.3833

-------------- Original Message --------------
From: ART HILL [artbhill@hotmail.com]
Sent: 8/15/2019 3:39 PM
To: registration@carvana.com
Cc: artbhill@hotmail.com
Subject: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series

Hi, below states I can send a copy of my current registration to
registration@carvana.com<mailto:registration@carvana.com> if I want to transfer my license plate. I am attaching my current registration and request that my plate be transferred. Please let me know if there's any other action I need to

1

take.

Thank you..

Arthur

Sent from Mail<https://go.microsoft.com/fwlink/?LinkId=550986> for Windows 10

_____

From: Carvana <CustomerAdvocate@Carvana.com>
Sent: Thursday, August 15, 2019 4:47:37 PM
To: artbhill@hotmail.com <artbhill@hotmail.com>
Subject: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series

[Carvana - delivery to your door, 7 day test
own]<http://go.carvana.com/dc/Sj1fv5d9len95c5PURLHv_7GpfwjIyi6T85hf4FS7jA7l7_2WxDlphhjZazPsIpg1XpPXAKPCltS
g-b0iEKnq79Xx25eyTraRnET4ygvZ0cF55Kr3TIYzBHeCIEf9b_4O-
bR07LibXLGnCx_ARdBL7Sjd1OiYfWAQkrgIsEUDb8rzKgb2RwWmwDp3WvybTsjCrSFc_jWxA089ZS7hM4LThyqhvvKT9fUR6
qgBdSPj8xn1JFg7HNgrNvc8UtaDTk9/Y06pJgT6s00fS064MQA0gXb>
1-800-333-4554<http://go.carvana.com/dc/Jt3HDPE9L5J_f6SUwpoLdGAfcXuo42BnBChDsIIex4KFasTvyAE-
WmAfC5zNhEz2Va8MqxVOaivUSw_wcsbkR8aOHFwvPT49EbYT20sPajixSQkI6YKGmYY53HX_gng1HtlpOGm48EkWewWw
AYXuiPMI2WIMagBR12eLwy706PmJDS-SN5i0IevSASoBJ9MwVmkjlZm6cR1E529FHaXIkidRXRbnANvjT3-
fv2ANQmTJTnn2Pr2XuP_clxf8TrNc0gO27Fc70dgYDSE2XMDN_iuTUnUIo0RBTxpEpr6lG8qPpNC3wSoBzS6MQmBqkv7ZV0
Kj7lwBBZgw6etDJhZyl24NC1qHABhqWT7X-gQZ0PzsO-
HEdxBR55EVATBVXFnRnYzFcarOvuUUSgyJWMKyjAL0hjucOtcgd9k7y7rFjUKZ4HD54qs7PsuH84BOyGlB4PFphcFOpjr2mVR
oShnvwcT_ph8Yyn0Rl1rzLVA4pTAI8rKRRpuYGRaK6Y9bvf-
WDXzYypKziuHic4Mm3DSggujvXo09b2vGg3fZe7QLRPYd0ZfhYFzBdjJSHJfsCo9R6vGovA7L4RzY_KqwKmEoqlDjcH_cifwAxx
urk6iXOKXl67n64zqyQqrcDqIfejAv2V_LYpYt1s8fVIvU2gUKp0xZQSFR1rEayFU1aC6O7Oo3S5s3mEanGnQhXO7_JdcYNCePY
pALf_bWzbMZHlDOurV7WivBsX2V6l1P3U0B_R0moQN9JM0B4dTRZ3Tf5f37zkWYheJ7c1g61T5w5vB0ZZ-L8iQ38Xn4-
b6NGx38TeHeV7092SveI1l_ZGWEM5k5P94vwBdzEq9Osbay8bj0qVZmiU8WFWG4T912ZigQof_vdFbDX7_KOlZUadxloML
On2lwXuySpnRQAh_xM-
SScKKPNruBQrrcNEpBddS9kEUvSVpqQY_8OCpSfzdDXildTv0rwGP2OFafjr1F1oLnQAeUjezNxvt_6gHtERMGfN2HDBKzgZSO
u969srrtWQkKzdx1FjIFCINalwFfJTzwbXGfks-mQHesB3e_YD1QARJnZM2mYN5CrVSGVg1KGYxzUGJW2Dz3o-
LhGDTkKZDIG8tMkevQD57jYpULar2H9sduBT7nwzmcOdmvwA_m5c8tMHiAwQd4fh5JgGyEyecu6t7t6bjAwXtuaic-
VNNZ_nehzvghh7bRP5jJfp1dIpptnYsMtM3w4nDX4jgGKZcscLdENkAP54VpKZlLmjyhcTrvrWuxcZYWnTz5pP6aDhKveK-
Cin6ZHZWdnA99dLcaui22vrWQJIpwE3JEOc2E7Wf5N_5duUcYGc7csxf1KxC2frRZyZOuKjbQGM6_nn-
1BgqhdjiqW02AilxH3FEVb6Xn6raJcFeGBs3vg7p6iZ7tW_zHbc-e4CYTZHvQKuawqzNPXh6kg_ddllLFGvL94PcSL-
WcHHNsiveft33lBDjSZBrCvNaapph6xCFDLVCVN8cWAO2rrs6l10M_dsy3ETFhPiw88gKHPNEYYNh66kozpjTlPIvNO0j3yhe-
fqVC9Ncwzrmu Gr-yWGNFelZGhlpP6KwMGfzCz6Y6h-W3oynXXNosuLkQygKbRijjDt3lSZymVZDe_sJ9bam4o-HUyrQTt-
oc9m85iYiHWfrkyiu-
hxu_IKrVrHLo0gUxPlgCYmUHaBDNjNeB6XIIxi5VrCR2BAi8nJxJC_nQlbDUE05strApZIZbBdw4CsWIu87i3oVJxJQ_kcM378A0
oWmlh6xxwj36XX68yieLWajPBzi4wPOTGODTtFaVqPZpy-
6Nf1WIkkHObmhhOVPIzM0225U4jX11mIv0hSFCkVtrMUucxtRo-C9v_GuNA-QidWaKJuR4bBP_H-
EuTftEVxrMIVgwh93VCtCJEE4rLAQX-4d3hYekf4VI-rItBthvyBl--knkwupky-
EbqGzFHVPZp0ahmqsBEoDVDvtV_80kGKDC7_jQz2yYVPwHCIQuHbClFlAXHMV7P1gohn4hPZymcVo4Dd6Ac-
S98Qu6BY3DlXr8I55nT2lVgU_At9s7rn9FLghwZ780ZGGxDK0kNGiMVbeVwsb-
384jD1XoJj5qzsqkbmZcYCfcd_XxSPx3RyUa4hdS8ieOMoOxR2Xqa0D_H8Tm7n_Q0Ds-C-
CnwfZwHIQAkQdt47LbnCcSSenCt7o9iXij8lOisqcHBW5P2ek8ywXqFWGL4HZB9WPVZ61KeeJfH_Abe4AO1URfp1e1BOt1uk
DBYj9P1D1o_CV4lh_kc6ghz-
NWYc17uY2wpmdb7HidZRBQ_yHPz7JBjlpWzgg0mhgkadUByQ86WfcFjlz1Mqvtrs6RY1oC5e9jYA4JessVf535ig3_cJq8aYCi0

Vz9TTIFRFq6BmzSbntEStOBrlRm1Z4XtHEtKgJLb7BlpWxNomOJKaBejPnbGksbCJuNkwVuSt7T6uiORFwza-
5EsaQY9NEr6_RFKmp-dxbZb9ec5gu0sxPi--kD4DjRDKieyL2qMI3bOMlJuI2HmQ-
rbqqxWXR8ojXvr2kMLkEf3PaZbPdo6GCZi0EIjXoj0tiI9toTIfOWQkFsF7qjiYddi-
9BkhqP2viAd5f6b9jvQuMjpXb7JsPGpfXaLXpdNulkb0Jg4v5P39JFZif6C8z0gMm0XQL_4qzOHJxZzm637fHkEu1Py6jtju91zeJ
d_tfbiLEjB5b88syV0ZZZqqHFSLqNabOmlT3T4Pu5LsiAkEICU8OCXABg8uJF7pw64svKS8KUztUAqkOeP29GcJlTfSWJ5JqLnfos
GuW2Z6M3R_EBJRJ-
yMmjkvpIPeloNR_VY2d7AS136l2LvF8f1pvQ0ZB05iOIqOJk_IYE5Ow_DEKPxA2TpmP3BIs9pgsJnhTNX5F1lTpq1XEyIqk7V1Ka
uIaNILh3tkdrsuJiWMS8-
q8fIZFLI7tlwtYBEjvpmcPKtQoqcXdi4E_6mG4u5IK8p8YQFxklOofgiUlbGghqQV5u2yuCYvIK7VE0UTqlSCQCUzQ7ZRfaGtyDd
oo-2IB68173HiCk0eo-oA-
DQjiklVxJoakadJw40ufZQD84OqzKgrUusKrF5q3D3IzMN9pir6yV2LJqjLtS8mf922B5yr4AE0YmxEInOXw2RDef4PNlAxCaOpL
ZDPLlDQfzpfpL49WSkkgjE8nxHjNIjZGZyknWf5tERlfgmpT45mHXcMYEl5ViuWpZzp7kC2DBBpX9h04grNoV3ac4r4RW4gLpo
UqMxoE8Gowy68xydmwk0gsLHMVeWzD9UmoTO7RkKQJEUYF_yKAC37zgh4gHEy6S2loYWENLtuX3UsrwDfJ77KP4oKDc8t
nrjhzhxlpFbFYICxCR46GCxgPI_mYg1nq7rwoPKJLvs_34ANtcgBZcTGH6QWmsfrqtJ-39biQmdXklgrKPvg6OoE3TB-
j0HkiBOcP-grmdt9tzcTIV8r5boZUE1NzWA6rfWnfNkUSr7nXlQMgSq24rVW6zyv98QY7pjOvPtL143gtOuSD3-
H5ilpsCW99ktF4YwA3Uj3AY0XiuxZIIsWjunQK3EseMtzdPLJp6f--
qvEYBK3sqKuoNPsV_IngmbafKTlXPDzy90bMVTy5NMQ2cQnQwDJ0TaKRuclSMtNzsqOcYJ3_nW1AW_e06MkZQG50o1bhL
wbcpbqMfloHekw-_zM3vSlzT4LwAk2fYEBfLkSS59jX5EYhGcvx0hJqltI7Is04_aoXMIqimV2UGUHiWuG0JSXH_ZJIn-
AQA7c0c45ggEVF9U6iQ2NGwixd_V4pwmpZZ-J99-2Ggthxhx3K8sPqp57AY7lXp6Ea8dFyN5K8B-
lyNrbmaC86j4sjihxniqtxhB8Se_kgr6Zhced7Zw53nCwfX5vka0uZ_nPOwpFU_HgMabRk_onX9rt9Cn0tf-
xNru968kbCMNJW27hqsKJNTPSHR9H0oxt-UEWaJagyBN1tlKHJT-dUMaYSYKQUkZfUquHyj-MQItsJg2zz9w3ER1P3NRafZ-
eql7iA9NSelyfIQP1yxlLORlPX-0zgcyBT8v7uLgs6>
Available 8am–9pm EST


Congratulations ARTHUR!
This is your official confirmation to let you know your vehicle is on it's way. Your purchase information and documents
have been reviewed and approved!

Please see below for your order details and requirements for pickup.

Thank you for choosing Carvana—the new way to buy a car!

Your confirmation number is: 2820057

[2016 BMW 3
Series]<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxAuXolzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApX
QoQL4b9TXhfR-
Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7Ql8R5GCZdI1heevq1gLjKrq8hMzfzANKuWzHPwvdl9HX2MEJMNrrBgKc6D8i0
2wo4eANYInbFXh25y1CrO-AEvNIGila_68bUI_EA7M1iBM7wnCeacRh4dEEsMEfhX-
BAeJV21LCVXT8DUUL6Ngvn672yLOLe6rGGgA==/Y06pJgT6s00fS064MQA0gXb>
2016 BMW 3 Series
$24,515
VIEW YOUR ORDER
PAGE<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxAuXolzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApX
QoQL4b9TXhfR-
Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7Ql8R5GCZdI1heevq1gLjKrq8hMzfzANKuWzHPwvdl9HX2MEJMNrrBgKc6D8i0
2wo4eANYInbFXh25y1CrO-AEvNIGila_68bUI_EA7M1iBM7wnCeacRh4dEEsMEfhX-
BAeJV21LCVXT8DUUL6Ngvn672yLOLe6rGGgA==/Y06pJgT6s00fS064MQA0gXb>


Pickup Address
3631 South Blvd Charlotte NC, 28209<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-
OPci38Azt9xgCRUZV0o8F4WdSoZTxdHLDkzsiRbK08-F52mL5hiBR5fIGo-VOtBxoOa5fBzHDNtBGkxbm1mjnNuAHEcRY-

Case 1:22-cv-00037-CCE-LPA   Document 1-1   Filed 01/18/22   Page 111 of 191

lvrp0Hsi2tbRdzKFxLzRFYnynCWvCQ7A==/Y06pJgT6s00fS064MQA0gXb>

Get Directions<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-
OPci38Azt9xgCRUZV0o8F4WdSoZTxdHLDkzsiRbK08-F52mL5hiBR5flGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-
lvrp0Hsi2tbRdzKFxLzRFYnynCWvCQ7A==/Y06pJgT6s00fS064MQA0gXb>

**Pickup Date / Time**
Saturday, August 17, 2019
11:30 AM local time

[map]<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-OPci38Azt9xgCRUZV0o8F4WdSoZTxdHLDkzsiRbK08-
F52mL5hiBR5flGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-
lvrp0Hsi2tbRdzKFxLzRFYnynCWvCQ7A==/Y06pJgT6s00fS064MQA0gXb>

**Important Requirements for Pickup**

Please have the below items ready at pickup in order to take possession of your new vehicle

**Contracts:**

* Ensure you have Signed Contracts
Online<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxAuXoIzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApX
QoQL4b9TXhfR-
Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7Ql8R5GCZdl1heTaz_0_B38m85ChHsEOncPCXs4ZWDtGcYNjEywH30RatbWP5
LjmuHtEWOiURyi9ZPAXXswXjhTlmUSTbdR80EJeyFxKoTmGCE--nnwbvvxl0=/Y06pJgT6s00fS064MQA0gXb> prior to
delivery. You do not have to print anything, just be sure to sign electronically.

**Other Required Items:**

* Valid driver's license
* Updated proof of insurance for the new vehicle. Coverage must be active/effective on or before the date of delivery
and must last for at least 45 days. Digital copies of your insurance card are accepted.


**Frequently Asked Questions**

Can I examine the car before taking possession?
You will be able to go over the vehicle's features, ask any questions and take your purchase for a quick test spin.

When will funds withdraw?
After you sign the title and registration paperwork we will withdraw the funds for your down payment. It may take 4-6
days for funds to clear.

How do I transfer my license plate?
Please send a copy of your current registration to
registration@carvana.com<http://go.carvana.com/l0b6hAS0MpsU664f0J0QX0g>. See
additional  FAQ<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv402Y_J_eiojcqX7pYKpQ7Eucriyy7ED2vO2hSDV28z_3
XJKAuoZl86TkPyhLCy2552yZKoM8SkbK84yydUVqwQ18kEw1_rCCVElJvqcm9qRUMOBzN1VBL632NMRbEhMP4UHTF2blG
gqoRghhZcR-
z_z0StgfTlVXiKGw7p4qsb1jXYJ5m_mHSFlXtrtdLMDaR6tC58J8m3R5aXjhmYERRk=/Y06pJgT6s00fS064MQA0gXb>.

More FAQ
»<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxSRRuEjvZdTrETnQ65HqGkWq9RcQpd3loKIbnXFjT7buWEWt2TwCg
K3Pj9ywci4HAiqJrCvHCw179Ts16NJC5JwpkJRlDgnY1a8ZEoRqzvKONSlJkdMtGnupON8gn4ESzYFmiVqEDalFxvFyMls9ZLoj-

Qb77wCGrcxu0DC-DZYnGiCurq8xzLE-3lB87MIfA==/Y06pJgT6s00fS064MQA0gXb>

Disclaimer: Carvana makes every effort to fulfill our scheduled delivery / pickup dates to ensure that our customers receive the best car buying experience possible. However, there are times where unexpected transport delays and inclement weather can impact these timeframes. These instances are rare, and we do everything possible to avoid these situations. Should a delay arise, our Customer Advocates will promptly reach out to discuss alternate arrangements.


[Learn About Carvana Care]<http://go.carvana.com/wQSX6p6AM00g0sbS60f4f0J>


© 2019 Carvana.com<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv1kbUrBKp-aFbkC_jmJfS7TK1ePz04hxyx9GMGS341SVXu-xwKjnW7GGspRvXHJN53TpTc_4XmzXgbS36u0p0A6bL6w2wZLMxxt7ZdWeA7-OOg4RfNOhPtY_uqSr1GCND_gIOSbA6DKDIVso7rf0gLMwGv-W7YtdgZFxMvpox6E0QXrpoV79zjBfsuUwgW5fttRYTVYPbOVf2r80maXUaTJJXhz47JA-9w0QmSDkK0UX/Y06pJgT6s00fS064MQA0gXb>. All Rights Reserved.
1930 W Rio Salado Pkwy, Tempe, AZ 85281<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv1kbUrBKp-aFbkC_jmJfS7TK1ePz04hxyx9GMGS341SVXu-xwKjnW7GGspRvXHJN53TpTc_4XmzXgbS36u0p0A6bL6w2wZLMxxt7ZdWeA7-OOg4RfNOhPtY_uqSr1GCND_gIOSbA6DKDIVso7rf0gLMwGv-W7YtdgZFxMvpox6E0QXrpoV79zjBfsuUwgW5fttRYTVYPbOVf2r80maXUaTJJXhz47JA-9w0QmSDkK0UX/Y06pJgT6s00fS064MQA0gXb>. You received this email because you are registered on Carvana's mailing list with the email address artbhill@hotmail.com<http://go.carvana.com/dc/8UOiyWTS_7EImXYJ-4AAZRqNkEKzkT0iJvyvxPUK9oU=/Y06pJgT6s00fS064MQA0gXb>.
Privacy Policy<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv0sEWfB1rlkLsy1sc5HcnTdGppiSjyjDaQiV0oGZ0LGtv85uypPN2LKPw3N4S9NbogcPjQEQP3OHmdr7BDTnUdFxKULivE_s50wv5bvJ0l4DWYf5PlvRjYo_dzWtCyfedUO7SKuRSwmyn4c1HkF9A0zkdYbTQdGFR86tB1NAxX0g-YdM3pZJa6M8VWpBsLbM5AnZ8u-gtUBaAKNmXLapeSHbUWz6lH2bRP7rBwT1TXkeIZ1NdbZvxyjeXtt82zcQ9g==/Y06pJgT6s00fS064MQA0gXb> | Terms of Service<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvyV8OvvM8x9FyLIsjCkQoeLdE1G4WEYt4SxebyzI4qW4He3fAEioU2qtRPRVCNEnoZvZTsSf2EC6-G3NNhJ2toJWXAQugDxCYN6rQRyU12wIo33p_Q0XjWyDGNUXYeQLUBcUFBSr8f3Itht_AYC9bcDuRgbs-uH_uBI_OKgb0zNSl3uQCtfr-Gnxky720uTz1NrxVNsLPyTohu8_dPxHkehK1ZqFO9nYSaSyXQ-R0iDMgJDZeG-iSPvFkvKi60E2Rg==/Y06pJgT6s00fS064MQA0gXb> | Unsubscribe<http://go.carvana.com/dc/QTNnB-185RKm3d24UEzMDsESEhrFHVVClHf2ZU3c1f8oRoKPvq4hGIz_VGY63KymHcNAh8C0mbbXeMHjKpOFDT_4aAef2aWYMoyOfGfuBCkpFDMfJZ_CwO4y8N21WoZ6lmEPXUJsgJVIgoVqqYn0HwZkP48zxu0277IsbGcKX13x1g5WJMIbhnost8zX8SNLatHTfFFxob75vPuUxS9h4M7zwb4jDpInAI-0lolWDRwXdxyH49LEx213Nv72DJH08T4Zh77HJTQu8sc_8QqNvCqOPTSBkbhmRmFww90jjUc=/Y06pJgT6s00fS064MQA0gXb>


<http://go.carvana.com/x0A00g0J4ib6M6Q0V6psSXf>
ref:_00DG0jqBp._5001M1P4hfm:ref

STATE OF NORTH CAROLINA
REGISTRATION CARD

EXHIBIT
4
tabbies

| NC LIC NUMBER | PLT EXP DATE | INSPECTION DUE |
|---|---|---|
| TZZ5120 | 10/31/19 | 10/31/19 |

| VEHICLE ID # | | GROSS WT |
|---|---|---|
| JS3TY92V754106319 | | |

| MAKE/SERIES | TITLE | EQUIP # |
|---|---|---|
| SUZI | 777338051787144 | |

| SHIPPING WEIGHT | STYLE | YEAR | FUEL | TOTAL FEE |
|---|---|---|---|---|
| | MP | 2005 | G | 36.00 |

| CLASSIFICATION | VEHICLE BRAND |
|---|---|
| PRIVATE PASS VEH | |

| CUSTOMER ID # OWNER 1 | CUSTOMER ID # OWNER 2 | COUNTY |
|---|---|---|
| 000028684552 | | CABAR |

ARTHUR BERNARD HILL

2849 TRESTLE CT SW
CONCORD NC 28025-6038

FOLD HERE - DO NOT TEAR

S23 - STANDARD FIRE INSURANCE CO
INSURANCE COMPANY AUTHORIZED IN NC

9899385211011
POLICY NUMBER

JS3TY92V754106319

Form 38
(Rev 01/14)

NORTH CAROLINA DEPARTMENT OF MOTOR VEHICLES          DEALER # 0077722
**30-DAY TEMPORARY MARKER RECEIPT**

NUMBER  25235691

EXHIBIT

5

| DATE OF SALE 8-17-19 | VOID IF ALTERED | RECEIPT EXPIRES 30 DAYS AFTER SALE DATE |

PURCHASER
Arthur Hill

| STREET, RFD 2849 Trestle Lt Sw | CITY Concord |

| NAME OF COMPANY AFFORDING LIABILITY INSURANCE | POLICY NUMBER |

| MAKE, YEAR, STYLE BMW 2016 Sedan | SERIAL NO. WBA8E9G54GNT46394 |

| TITLE AND LICENSE FEES COLLECTED BY DEALER: $ | GROSS WEIGHT FOR WHICH TRUCK OR TRACTOR IS TO BE LICENSED |

| CHECK PLATE CLASSIFICATION | ☐ PRIVATE CARRIER  ☐ FOR HIRE CARRIER | ☐ FARM TRUCK  ☐ SPECIAL MOBILE EQUIPMENT | ☐ OTHER, SPECIFY |

I, the undersigned, do hereby certify that the rules and regulations governing the issuance of 30-day Temporary Markers have been fully complied with.

DEALER  CARVANA  llc          By:

ADDRESS  3631 South Blvd Charlotte NC 28214

**This copy must be given to purchaser with corresponding 30-day temporary marker.**



EXHIBIT
6

# Receipt

NC DMV Registration Renewal & Property Tax

**Total Paid: $92.40**

Payment Date: 10/31/2018 5:55:10 PM

Thank you for your payment. Please retain this receipt for your records. This confirmation is not a registration document.
Your new registration card will be mailed within 7 days.

## Questions

**Vehicle Property Tax Questions**

Property tax questions can be addressed to CABARRUS County.

**Registration Renewal Questions**

Registration questions can be addressed to NC DMV.

- Call 919-715-7000

## Your Info.

**Name:** ARTHUR BERNARD HILL
**Address:**
    Residence: 2849 TRESTLE CT SW
    Mailing: 2849 TRESTLE CT SW
    Vehicle Location: 2849 TRESTLE CT SW

**Total Owed:** $92.40
**Vehicle:**
    Desc: SUZI
    VIN: JS3TY92V754106319
    License Plate: TZZ5120
    Title: 777338051787144
**Note:**

## Fees

### Registration
1 Itemized Details:

| Description | Fee |
| --- | --- |
| PLT: TZZ5120 | $36.00 |
| **Total Registration Fee:** | **$36.00** |

### Vehicle Property Tax
3 Itemized Details: Appraised Value $3,450.00

| Taxing Districts | Tax Rate per $100 Value | Fee |
| --- | --- | --- |
| CABARRUS COUNTY TAX | | $24.84 |
| CONCORD CITY TAX | | $16.56 |
| CONCORD CITY TAX VFEE | | $15.00 |
| | **Total Property Tax:** | **$56.40** |

EXHIBIT

7

artbhill@hotmail.com

| | |
|---|---|
| **From:** | myNCDMV <admin@payitgov.com> |
| **Sent:** | Friday, October 18, 2019 11:34 AM |
| **To:** | artbhill@hotmail.com |
| **Subject:** | Thanks for your payment |



## Your Receipt

Thanks for your payment with **myNCDMV**.

## Payment Summary

Vehicle Renewal                                 **$324.15**

2016 Bmw 328 I Sulev

| | |
|---|---|
| Vehicle Information | BMW |
| Title Number | 77386919247075Y |
| VIN | WBA8E9G54GNT46394 |
| Make | BMW |
| Model | 328 I SULEV |
| Year | 2016 |
| License Plate | TZZ5120 |
| Plate Background | First in Flight |
| Plate Code | PVA |
| Plate Category | PRIVATE AUTO |
| Mailing Address | 2849 TRESTLE CT SW CONCORD, NC 280256038 |
| Situs County | Cabarrus |
| Appraised Value | $21,160.00 |
| Property Tax Fees | |
| CABARRUS COUNTY TAX | $156.58 |
| CONCORD CITY TAX | $101.57 |

1

| | |
|---|---|
| CONCORD CITY TAX VFEE | $30.00 |
| Registration Fees | $36.00 |

---

ARTHUR

MasterCard ending in 2710

Paid on October 18, 2019 11:34 AM

Confirmation Number f4e2b371-fdd4-4319-bea6-868da480b055

---

| | |
|---|---|
| Subtotal | $324.15 |
| Transaction Fee | $3.00 |

---

| | |
|---|---|
| **Payment Total** | **$327.15** |

### Vehicle Renewal

Please retain this receipt for your records. This confirmation is not a registration document. Your new registration card will be mailed within 7 to 10 days. For property tax questions, please contact your county tax office.

Official Receipt State of North Carolina. For more information, please visit the North Carolina Division of Motor Vehicles site at ncdot.gov/dmv. Or email North Carolina Division of Motor Vehicles at https://apps.ncdot.gov/contactus/Home/PostComment?unit=DMV_VR

Get help from PayIt Support
© 2019 myNCDMV

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Civ No: 21 CV 3755

FILED

2021 DEC -8  A 11: 56

CABARRUS CO., C.S.C.

BY_____

ARTHUR HILL,

Plaintiff, pro se,

vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

Defendants.

)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF WITHDRAWL
OF MOTION FOR PARTIAL
SUMMARY JUDGMENT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      **PLEASE TAKE NOTICE** that the Plaintiff hereby withdraws his Motion For Partial

Summary Judgment that was filed in the above-captioned case on December 3rd, 2021 and requests

that any calendaring of the motion be terminated.

      Respectfully submitted this the 8th day of December, 2021.

                    Arthur Hill
                    2849 Trestle CT SW
                    Concord, NC 28025
                    980.521.1819
                    artbhill@hotmail.com
                    Plaintiff, *pro se*

1

## CERTIFICATE OF SERVICE

I hereby certify that on December, 8ᵗʰ, 2021, I served the foregoing **NOTICE OF**

**WITHDRAWL OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

on Counsel of record for the Defendant via emails listed below:

| | |
|---|---|
| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17ᵗʰ Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17ᵗʰ Street, 17ᵗʰ Floor<br>Atlanta, GA 30363<br>Email: kadeisha.west@nelsonmullins.com<br>Phone: 404.322.6000 | |

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
E-mail: artbhill@hotmail.com
*Pro Se Plaintiff*

2

STATE OF NORTH CAROLINA
JUDICIAL DISTRICT 19A
COUNTY OF CABARRUS

THE GENERAL COURT ‵ JUSTICE
DISTRICT COURT DIVISION
CASE NUMBER _21 CV 3755_
ASSIGNED JUDGE _____

ARTHUR HILL )
_____ )
Plaintiff )
-v- )
Carvana, LLC, and )
Bridgecrest Credit Company, LLG )
_____ )
Defendant )

FILED

2021 DEC - 3 A ___

CABARRUS CO., C.S.C.

BY _____ jw _____

**DOMESTIC CASE
REQUEST FOR SETTING**

The above case is rea

{ }ALIMONY  { }(

{ }EQUITABLE DIST

{ } ORDER TO SHOW

{ }PRE TRIAL CONF

{ }SCHEDULING CO

This matter will take

Has this matter had :

Has this matter previ

left message w/ A. Hill
for correct calendar
Request to be Submitted.
12/06/21

judgment

_____

____ heard in court? Yes( No) (circle one)    If yes, w/ Judge _____

This setting is requested by: ☒ Plaintiff    { }Defendant    { }Plaintiff's Attorney    { }Defendant's Attorney

**I HEREBY CERTIFY THAT A FILE STAMPED COPY OF THIS REQUEST FOR SETTING HAS BEEN SERVED IN
THE FOLLOWING MANNER: (please print legibly)**

[ ]  By depositing a copy in the United States mail in a properly addressed, postpaid envelope to:

[ ] Plaintiff at _____

☒ Defendant at Ashia.carpenter@nelsonmullins.com

[ ] Plaintiff's Attorney _____    [ ] Defendant's Attorney _____

[ ] By delivering a copy personally to: [ ] Plaintiff  [ ] Defendant  [ ] Plaintiff's Attorney  [ ] Defendant's Attorney

[ ] By Sheriff's service to:    [ ] Plaintiff  [ ] Defendant  [ ] Plaintiff's Attorney  [ ] Defendant's Attorney

**By signing this request, I agree that the only issues to be heard on the assigned date are those indicated above.**

This the _3rd_ day of _December_, 2021.

_Arthur Hill_
Attorney / Party

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

Civ No: 21 CV 3755

ARTHUR HILL,

        Plaintiff, pro se,

vs.

Carvana, LLC. and
Bridgecrest Credit Company, LLC.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, the Plaintiff in the above-captioned civil action, Arthur Hill, hereby moves this Court for the entry of an order granting partial summary judgement in favor of the Plaintiff as to liability regarding Court 2 and liability regarding Count 3 against Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest") (collectively referred to as the "Defendants") on the grounds that Plaintiff is entitled to judgment as a matter of law because there is no genuine issue as to any material fact as established by the pleadings, the Affidavit of Plaintiff and any other relevant materials in this case. Specifically, the Plaintiff seeks an order from the Court for the following relief:

1)     The Court should find as fact that the Plaintiff requested a statement of account by sending a message through Bridgecrest.com as alleged in the complaint and shown by competent evidence;

2)     The Court should find as fact that the Defendants failed to provide a statement of account;

3)     The Court should find as fact that the Plaintiff requested a rebate by sending a message through Bridgecrest.com as alleged in the complaint, admitted by Bridgecrest and shown by competent evidence;

4)     The Court should find as fact that the Defendants failed to provide a rebate within a 10-day period of time;

5)     The Court should find that Defendants are in violation of the Retail Installment Sales Act as a matter of law due to their failure to provide a statement of account or a rebate;

6)     The Court should find that Defendants engaged in unfair and deceptive practices under

1

G.S. 75-1.1 as a matter of law due to their knowing and willful violations of the Retail Installment Sales Act in accordance with G.S. § 25A-44(4);

A Brief, Affidavit and other materials in Support of the motion has been provided to Counsel for all parties via email and will not be filed with the Clerk unless ordered by the Court. A copy of the forementioned to be used in oral argument or submitted to the Court will be provided to the TCC no later than 5 business days prior to the hearing of the Motion for delivery to the presiding judge.

This the 3rd day of December , 2021.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

2

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **Motion for Partial Summary Judgment** was served upon the following attorneys by e-mail:

| | |
|---|---|
| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17th Street, 17th Floor<br>Atlanta, GA 30363<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 404.322.6000 | |

This the 3rd day of December 2021.

*Arthur Hill*

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

3

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 21-cv-003755

Arthur Hill,

Plaintiff, pro se,

vs.

Carvana, LLC. and Bridgecrest Credit Company,
LLC,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

## DEFENDANT CARVANA, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Carvana, LLC ("Carvana"), by and through counsel, hereby responds to Plaintiff Arthur Hill's Complaint (the "Complaint"). Carvana respectfully alleges and states the following:

### FIRST DEFENSE AND ANSWER
(General and Specific Denials)

Carvana hereby responds to the individual allegations of Plaintiff's Complaint generally by denying each and every allegation contained therein except as expressly admitted below, and specifically as follows:

### PARTIES

1.      Carvana admits, upon information and belief, the allegations contained in Paragraph 1 of the Complaint.

2.      Carvana admits that it sells used cars via the internet and that its principal place of business is located at 1930 W. Rio Salado Parkway Tempe, Arizona, 85281. Carvana also admits that it is a licensed dealer in the state of North Carolina with multiple locations in North Carolina. The remaining allegations in Paragraph 2 of the Complaint state a legal conclusion for which no

response is required. To the extent a response is required, Carvana denies the remaining allegations in Paragraph 2 of the Complaint.

3.      Carvana admits that it can be served through its registered agent for service of process in North Carolina, Corporation Service Company.

4.      Carvana denies the allegations contained in the first sentence of Paragraph 4 of the Complaint. The allegations contained in the second sentence of Paragraph 4 of the Complaint state a legal conclusion for which no response is required. To the extent a response is required, Carvana is without information sufficient to admit or deny the allegations contained in the second sentence of Paragraph 4 of the Complaint and, therefore, denies the same. Carvana is without information sufficient to admit or deny the allegations contained in the last sentence of Paragraph 4 of the Complaint and, therefore, denies the same.

5.      Carvana is without information sufficient to admit or deny the allegations contained in Paragraph 5 of the Complaint and, therefore, denies the same.

**JURISDICTION AND VENUE**

6.      The allegations in Paragraph 6 of the Complaint state a legal conclusion for which no response is required. To the extent a response is required, Carvana admits that this Court may preside over civil cases involving $25,000 or more.

7.      Carvana admits, upon information and belief, the allegations contained in Paragraph 7 of the Complaint that venue is proper in this Court.

**STATEMENT OF FACTS**

8.      Carvana admits the allegations contained in Paragraph 8 of the Complaint. Carvana affirmatively alleges that the Retail Purchase Agreement and Retail Installment Contract and Security Agreement were effective as of August 17, 2019, the date of delivery.

2

9.     Carvana denies the allegations contained in Paragraph 9 of the Complaint.

10.     The allegations contained in Paragraph 10 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Carvana admits the allegations contained in Paragraph 10 of the Complaint to the extent they allege that Carvana sent Plaintiff a risk-based pricing notice on August 17, 2019.  The remaining allegations contained in Paragraph 10 of the Complaint refer to a document, which speaks for itself.  To the extent that Plaintiff's allegations are inconsistent with the document, the allegations are expressly denied.

11.     The allegations contained in Paragraph 11 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Carvana admits the allegations contained in Paragraph 11 of the Complaint to the extent they allege that Carvana sent Plaintiff a risk-based pricing notice on August 19, 2019.  The remaining allegations contained in Paragraph 11 of the Complaint refer to a document, which speaks for itself.  To the extent that Plaintiff's allegations are inconsistent with the document, the allegations are expressly denied.

12.     In response to Paragraph 12 of the Complaint, Carvana admits only that Plaintiff opted out of the arbitration agreement contained in the Retail Purchase Agreement.  Carvana denies the remaining allegations contained in Paragraph 12 of the Complaint.

13.     Carvana admits the allegations contained in the first sentence of Paragraph 13 of the Complaint to the extent that it alleges that Bridgecrest is not explicitly assigned in the Retail Installment Contract and Security Agreement and that Bridgecrest is the servicer of the Retail Installment Contract and Security Agreement through a separate agreement between Carvana and Bridgecrest.  Except as expressly admitted herein, the allegations contained in the first sentence of Paragraph 13 of the Complaint are denied.  The remaining allegations contained in Paragraph 13

3

of the Complaint refer to a document, which speaks for itself. To the extent that Plaintiff's allegations are inconsistent with the document, the allegations are expressly denied.

14.     Carvana admits the allegations contained in the first, second, and third sentence of Paragraph 14 of the Complaint. The remaining allegations contained in the last sentence of Paragraph 14 of the Complaint refer to a document, which speaks for itself. To the extent that Plaintiff's allegations are inconsistent with the document, the allegations are expressly denied.

15.     Carvana admits the allegations contained in Paragraph 15 of the Complaint.

16.     Carvana admits the allegations contained in Paragraph 16 of the Complaint to the extent they allege that Plaintiff's account with Bridgecrest was paid in full on September 22, 2021. Carvana is without information sufficient to admit or deny the remaining allegations contained in Paragraph 16 of the Complaint and, therefore, denies the same.

17.     Carvana denies the allegations contained in Paragraph 17 of the Complaint.

18.     In response to Paragraph 18 of the Complaint, Carvana admits only that on October 13, 2021, Plaintiff replied to an email from registration@carvana.com wherein he attached his registration card and requested that his license plate be transferred from his trade-in vehicle to his newly purchased vehicle. Carvana is without information sufficient to admit or deny the remaining allegations contained in Paragraph 18 of the Complaint and, therefore, denies the same.

19.     Carvana admits the allegations contained in Paragraph 19 of the Complaint accurately quotes a portion of Carvana's response to Plaintiff's reply email sent on October 13, 2021. Except as expressly admitted herein, the allegations contained in Paragraph 19 of the Complaint are denied.

20.     In response to Paragraph 20 of the Complaint, Carvana admits only that a temporary tag receipt was placed in the glove box of the vehicle at the time of delivery. Carvana is without

4

information sufficient to admit or deny the allegations contained in last sentence of Paragraph 20 of the Complaint and, therefore, denies the same. Carvana denies the remaining allegations contained in Paragraph 20 of the Complaint.

21. Carvana denies the allegations contained in the first sentence of Paragraph 21 of the Complaint. Carvana is without information sufficient to admit or deny the remaining allegations contained in Paragraph 21 of the Complaint and, therefore, denies the same.

22. Carvana is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 22 of the Complaint and, therefore, denies the same. Carvana denies the allegations contained in the second and fourth sentences of Paragraph 22 of the Complaint. The allegations contained in the third sentence of Paragraph 22 of the Complaint purport to quote a statute, which speaks for itself and requires no response. To the extent that a response is required, Carvana denies the allegations contained in the third sentence of Paragraph 22 of the Complaint that are inconsistent with the cited statute.

23. Carvana is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 23 of the Complaint and, therefore, denies the same. The allegations contained in the second sentence of Paragraph 23 of the Complaint refer to a statute, which speaks for itself. To the extent that a response is required, Carvana denies the allegations contained in the second sentence of Paragraph 23 of the Complaint. Carvana admits the allegations contained in the last sentence of Paragraph 23 of the Complaint.

24. Carvana is without information sufficient to admit or deny the allegations contained in Paragraph 24 of the Complaint and, therefore, denies the same.

25. Carvana denies the allegations contained in Paragraph 25 of the Complaint.

26.     Carvana denies the allegations contained in the first sentence of Paragraph 26 of the Complaint.  The allegations contained in the second sentence of Paragraph 26 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Carvana denies the allegations contained in the second sentence of Paragraph 26 of the Complaint that are inconsistent with the cited statute.

27.     Carvana denies the allegations contained in Paragraph 27 of the Complaint.

28.     Carvana denies the allegations contained in the first and third sentences of Paragraph 28 of the Complaint.  The allegations contained in the second sentence of Paragraph 28 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Carvana denies the allegations contained in the second sentence of Paragraph 28 of the Complaint that are inconsistent with the cited statute.

29.     The allegations contained in the first sentence of Paragraph 29 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Carvana denies the allegations contained in the first sentence of Paragraph 29 of the Complaint.  The allegations contained in the second sentence of Paragraph 29 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Carvana denies the allegations contained in the second sentence of Paragraph 29 of the Complaint that are inconsistent with the cited statute.

30.     Carvana denies the allegations contained in the first and second sentences of Paragraph 30 of the Complaint.  The remaining allegations contained in Paragraph 30 of the Complaint refer to various documents, which speaks for themselves.  To the extent that Plaintiff's allegations are inconsistent with these documents, the allegations are expressly denied.

31.     Carvana denies the allegations contained in Paragraph 31 of the Complaint.

6

32.     The allegations contained in the first sentence of Paragraph 32 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Carvana denies the allegations contained in the first sentence of Paragraph 32 of the Complaint. The allegations contained in the second sentence of Paragraph 32 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Carvana denies the allegations contained in the second sentence of Paragraph 32 of the Complaint that are inconsistent with the cited statute.

33.     Carvana is without information sufficient to admit or deny the allegations contained in Paragraph 33 of the Complaint and, therefore, denies the same.

34.     Carvana is without information sufficient to admit or deny the allegations contained in Paragraph 34 of the Complaint and, therefore, denies the same.

35.     The allegations contained in Paragraph 35 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Carvana admits only that Carvana has not provided Plaintiff a statement of account.  Carvana is without information sufficient to admit or deny the remaining allegations contained in Paragraph 35 of the Complaint and, therefore, denies the same.  Except as expressly admitted herein, the allegations contained in Paragraph 35 of the Complaint are denied.

36.     The allegations contained in the first sentence of Paragraph 36 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Carvana admits only that Carvana has not provided Plaintiff with any rebate.  Carvana is without information sufficient to admit or deny the remaining allegations contained in Paragraph 36 of the Complaint and, therefore, denies the same.  Except as expressly admitted herein, the allegations contained in Paragraph 36 of the Complaint are denied.

7

## COUNT 1

### FRAUD AGAINST CARVANA

37.     Carvana reiterates and incorporates by reference each of the preceding paragraphs of this Answer.

38.     Carvana denies the allegations contained in Paragraph 38 of the Complaint.

39.     Carvana denies the allegations contained in Paragraph 39 of the Complaint.

40.     Carvana denies the allegations contained in Paragraph 40 of the Complaint.

## COUNT 2

### VIOLATION OF RETAIL INSTALLMENT SALES ACT ("RISA") AGAINST CARVANA AND BRIDGECREST

41.     Carvana reiterates and incorporates by reference each of the preceding paragraphs of this Answer.

42.     The allegations contained in Paragraph 42 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Carvana denies the allegations contained in Paragraph 42 of the Complaint that are inconsistent with the cited statute.

43.     Carvana denies the allegations directed towards Carvana contained in Paragraph 43 of the Complaint.  Carvana is without information sufficient to admit or deny the remaining allegations contained in Paragraph 43 of the Complaint and, therefore, denies the same.  Carvana affirmatively alleges that Plaintiff did not send Carvana any written request for a statement of account.

44.     The allegations contained in Paragraph 44 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required,

8

Carvana denies the allegations contained in Paragraph 44 of the Complaint that are inconsistent with the cited statute.

45.     Carvana denies the allegations directed towards Carvana contained in Paragraph 45 of the Complaint.  Carvana is without information sufficient to admit or deny the remaining allegations contained in Paragraph 45 of the Complaint and, therefore, denies the same.  Carvana affirmatively alleges that Plaintiff did not send Carvana any written request for a refund or rebate.

46.     The allegations contained in Paragraph 46 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Carvana denies the allegations contained in Paragraph 46 of the Complaint that are inconsistent with the cited statute.

47.     Carvana denies the allegations contained in Paragraph 47 of the Complaint.

48.     Carvana denies the allegations contained in Paragraph 48 of the Complaint.

COUNT 3

VIOLATION OF NCUDTPA AGAINST CARVANA AND BRIDGECREST

49.     Carvana reiterates and incorporates by reference each of the preceding paragraphs of this Answer.

50.     The allegations contained in Paragraph 50 of the Complaint refer to a statute, which speaks for itself.  To the extent that a response is required, Carvana denies the allegations contained in Paragraph 50 of the Complaint that are inconsistent with the statute.

51.     Carvana denies the allegations contained in the first sentence of Paragraph 51 of the Complaint.  The allegations contained the second sentence of Paragraph 51 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Carvana denies the allegations contained in the second sentence of Paragraph 51 of the Complaint.

9

The allegations contained in the last sentence of Paragraph 51 purport to quote a statute, which speaks for itself and requires no response. To the extent that a response is required, Carvana denies the allegations contained in the last sentence of Paragraph 51 of the Complaint that are inconsistent with the cited statute.

52.     Carvana denies the allegations contained in Paragraph 52 of the Complaint.

53.     Carvana denies the allegations contained in Paragraph 53 of the Complaint.

54.     Carvana denies the allegations contained in Paragraph 54 of the Complaint.

55.     Answering the unnumbered Paragraph immediately following Paragraph 54 of the Complaint beginning with "Wherefore," Carvana denies that Plaintiff is entitled to the relief requested and/or any relief whatsoever from Carvana.

**SECOND DEFENSE**
(Failure to State a Claim)

56.     The Complaint fails to state a claim for which relief can be granted against Carvana pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**THIRD DEFENSE**
(Limitations of Actions)

57.     Carvana hereby asserts all applicable statutes of repose and statutes of limitations pursuant to North Carolina law, in bar of Plaintiff's purported claims for relief as against Carvana.

**FOURTH DEFENSE**
(Failure to Plead Fraud with Particularity)

58.     The Complaint fails to state a claim for fraud with the particularity required pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

**FIFTH DEFENSE**
(Equitable Estoppel)

59.     Carvana hereby asserts that Plaintiff's claims are barred by the doctrine of equitable estoppel.

10

## SIXTH DEFENSE
### (No Violations)

60.     Plaintiff is barred from obtaining any recovery on the allegations in the Complaint because Carvana has abided by all applicable laws, regulations, and statutes.

## SEVENTH DEFENSE
### (Incorporation by Reference)

61.     Carvana adopts and incorporates by reference any affirmative defense asserted by any other party to this action to the extent such affirmative defense applies to Carvana, and hereby gives notice that it may rely upon any other defense that may become available during the discovery proceedings in this case, and hereby reserves its right to amend its Answer to assert any such defense.

## RESERVATION OF RIGHTS

62.     Carvana has not had an opportunity to conduct a sufficient investigation or to engage in adequate discovery touching on the circumstances of Plaintiff's allegations. Carvana intends to act as best it can to inform itself as to the pertinent facts and prevailing circumstances surrounding any reported damages as alleged in the Complaint, and gives notice of its intent to assert any further affirmative defenses that its information gathering process may indicate are supported by fact and law, including but not limited to, a defense that the action is barred in whole or in part by any applicable statute, contract, release, covenant, or the doctrine of laches. Carvana therefore reserves the right to amend its answer to assert any such defenses supported by evidence obtained through discovery, Carvana's complete investigation, or otherwise adduced at trial.

WHEREFORE, the Defendant Carvana having fully answered Plaintiff's Complaint, prays as follows:

1.     That Plaintiff have and recover nothing from Carvana;

2.    That Plaintiff's action against Carvana be dismissed, and that the costs of this action be taxed against Plaintiff and Carvana have and recover defense costs, attorneys' fees and any other consequential damages permissible under law;

3.    That there be a trial by jury; and

4.    That Carvana have and recover such other and further relief as the court may deem just and proper.

Respectfully submitted this the __1st__ day of December 2021.

Ashia Crooms-Carpenter
NC Bar No. 54342
Nelson Mullins Riley & Scarborough LLP
ashia.carpenter@nelsonmullins.com
301 South College Street, Suite 2300
Charlotte, NC 28202
Phone: (704) 417-3000
Fax: (704) 377-4814

Paul T. Collins
*(pro hac vice application forthcoming)*
E-mail: paul.collins@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Phone: (803) 799-2000
Fax: (803) 256-7500

Kadeisha West
*(pro hac vice application forthcoming)*
E-mail: kadeisha.west@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
201 17th Street, 17th Floor
Atlanta, Georgia 30363
Phone: (404) 322-6000
Fax: (404) 322-6050

***Attorneys for Carvana, LLC***

12

## CERTIFICATE OF SERVICE

I, Ashia Crooms-Carpenter, hereby certify that, on December 1, 2021, a true and correct copy of the foregoing was served upon the following via U.S. mail, postage prepaid as follows:

Arthur Hill
2849 Trestle Court SW
Concord, NC 28025
*Pro Se Plaintiff*

*Attorney for Carvana, LLC*

13

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 21-cv-003755

Arthur Hill,

                Plaintiff, pro se,

      vs.

Carvana, LLC. and Bridgecrest Credit Company,
LLC,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)

## DEFENDANT BRIDGECREST CREDIT COMPANY, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Bridgecrest Credit Company, LLC ("Bridgecrest"), by and through counsel, hereby responds to Plaintiff Arthur Hill's Complaint (the "Complaint"). Bridgecrest respectfully alleges and states the following:

### FIRST DEFENSE AND ANSWER
(General and Specific Denials)

Bridgecrest hereby responds to the individual allegations of Plaintiff's Complaint generally by denying each and every allegation contained therein except as expressly admitted below, and specifically as follows:

### PARTIES

1.      Bridgecrest admits, upon information and belief, the allegations contained in Paragraph 1 of the Complaint.

2.      Bridgecrest is without information sufficient to admit or deny the allegations contained in the first and third sentences of Paragraph 2 of the Complaint. The remaining allegations contained in Paragraph 2 of the Complaint state a legal conclusion for which no

response is required. To the extent a response is required, Bridgecrest denies the remaining allegations in Paragraph 2 of the Complaint.

3.      Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 3 of the Complaint and, therefore, denies the same.

4.      In response to Paragraph 4 of the Complaint, Bridgecrest admits that it conducts business within the state of North Carolina. The allegations contained in the second sentence of Paragraph 4 of the Complaint state a legal conclusion for which no response is required. To the extent a response is required, Bridgecrest denies the allegations contained in the second sentence of Paragraph 4 of the Complaint. Bridgecrest denies the remaining allegations contained in the Paragraph 4 of the Complaint.

5.      Bridgecrest admits that it can be served through its registered agent for service of process in North Carolina, Corporation Service Company. Bridgecrest denies the remaining allegations contained in Paragraph 5 of the Complaint.

## JURISDICTION AND VENUE

6.      The allegations in Paragraph 6 of the Complaint state a legal conclusion for which no response is required. To the extent a response is required, Bridgecrest admits that this Court may preside over civil cases involving $25,000 or more.

7.      Bridgecrest admits, upon information and belief, that venue is proper in this Court.

## STATEMENT OF FACTS

8.      Bridgecrest admits the allegations contained in the first sentence of Paragraph 8 of the Complaint. Bridgecrest is without information sufficient to admit or deny the remaining allegations contained in Paragraph 8 of the Complaint and, therefore, denies the same.

2

9.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 9 of the Complaint and, therefore, denies the same.

10.     The allegations contained in Paragraph 10 of the Complaint state a legal conclusion for which no response is required. To the extent a response is required, Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 10 of the Complaint and, therefore, denies the same.

11.     The allegations contained in Paragraph 11 of the Complaint state a legal conclusion for which no response is required. To the extent a response is required, Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 11 of the Complaint and, therefore, denies the same.

12.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 12 of the Complaint and, therefore, denies the same.

13.     Bridgecrest admits the allegations contained in the first sentence of Paragraph 13 of the Complaint to the extent that it alleges that Bridgecrest is not explicitly assigned in the Retail Installment Contract and Security Agreement and that Bridgecrest is the servicer of the Retail Installment Contract and Security Agreement through a separate agreement between Carvana and Bridgecrest. Except as expressly admitted herein, the allegations contained in the first sentence of Paragraph 13 of the Complaint are denied. The remaining allegations contained in Paragraph 13 of the Complaint refer to a document, which speaks for itself. To the extent that Plaintiff's allegations are inconsistent with the document, the allegations are expressly denied.

14.     Bridgecrest admits the allegations contained in the first, second, and third sentence of Paragraph 14 of the Complaint. The allegations contained in the last sentence of Paragraph 14

3

of the Complaint refer to a document, which speaks for itself. To the extent that Plaintiff's allegations are inconsistent with the document, the allegations are expressly denied.

15.     Bridgecrest admits the allegations contained in Paragraph 15 of the Complaint.

16.     Bridgecrest admits the allegations contained in Paragraph 16 of the Complaint to the extent they allege that Plaintiff's account with Bridgecrest was paid in full on September 22, 2021. Bridgecrest is without information sufficient to admit or deny the remaining allegations contained in Paragraph 16 of the Complaint and, therefore, denies the same.

17.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 17 of the Complaint and, therefore, denies the same.

18.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 18 of the Complaint and, therefore, denies the same.

19.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 19 of the Complaint and, therefore, denies the same.

20.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 20 of the Complaint and, therefore, denies the same.

21.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 21 of the Complaint and, therefore, denies the same.

22.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 22 of the Complaint and, therefore, denies the same.

23.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 23 of the Complaint and, therefore, denies the same.

24.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 24 of the Complaint and, therefore, denies the same.

4

25.     Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 25 of the Complaint and, therefore, denies the same.

26.     Bridgecrest is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 26 of the Complaint and, therefore, denies the same. The allegations contained in the second sentence of Paragraph 26 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Bridgecrest denies the allegations contained in the second sentence of Paragraph 26 of the Complaint that are inconsistent with the cited statute.

27.     Bridgecrest is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 27 of the Complaint and, therefore, denies the same.

28.     Bridgecrest is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 28 of the Complaint and, therefore, denies the same. The allegations contained in the second sentence of Paragraph 28 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Bridgecrest denies the allegations contained in the second sentence of Paragraph 28 of the Complaint that are inconsistent with the cited statute.

29.     The allegations contained in the first sentence of Paragraph 29 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Bridgecrest is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 29 of the Complaint and, therefore, denies the same.  The allegations contained in the second sentence of Paragraph 29 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required,

5

Bridgecrest denies the allegations contained in the second sentence of Paragraph 29 of the Complaint that are inconsistent with the cited statute.

30.     Bridgecrest is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 30 of the Complaint and, therefore, denies the same. The remaining allegations contained in Paragraph 30 of the Complaint refer to various documents, which speaks for themselves.  To the extent that Plaintiff's allegations are inconsistent with these documents, the allegations are expressly denied.

31.     Bridgecrest is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 31 of the Complaint and, therefore, denies the same.

32.     The allegations contained in the first sentence of Paragraph 32 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Bridgecrest is without information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 32 of the Complaint and, therefore, denies the same.  The allegations contained in the second sentence of Paragraph 32 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Bridgecrest denies the allegations contained in the second sentence of Paragraph 32 of the Complaint that are inconsistent with the cited statute.

33.     Upon information and belief, Bridgecrest denies the allegations contained in Paragraph 33 of the Complaint.

34.     Bridgecrest admits the allegations contained in Paragraph 34 of the Complaint accurately quotes Plaintiff's email sent to alerts@bridgecrest.com on October 14, 2021.  Except as expressly admitted herein, the allegations contained in Paragraph 34 of the Complaint are denied.

6

35.     The allegations contained in Paragraph 35 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Bridgecrest admits only that Bridgecrest has not provided Plaintiff a statement of account.  Bridgecrest is without information sufficient to admit or deny the remaining allegations contained in Paragraph 35 of the Complaint and, therefore, denies the same.  Except as expressly admitted herein, the allegations contained in Paragraph 35 of the Complaint are denied.  Bridgecrest affirmatively alleges that in response to Plaintiff's email discussed in Paragraph 34 of the Complaint, Bridgecrest advised Plaintiff to contact Bridgecrest by telephone to obtain information about his account due to privacy and security concerns.

36.     The allegations contained in the first sentence of Paragraph 36 of the Complaint state a legal conclusion for which no response is required.  To the extent a response is required, Bridgecrest admits only that Bridgecrest has not provided Plaintiff with any rebate.  Bridgecrest is without information sufficient to admit or deny the remaining allegations contained in Paragraph 36 of the Complaint and, therefore, denies the same.  Except as expressly admitted herein, the allegations contained in Paragraph 36 of the Complaint are denied.

## CLAIMS FOR RELIEF

## COUNT 1

## <u>FRAUD AGAINST CARVANA</u>

37.     Bridgecrest reiterates and incorporates by reference each of the preceding paragraphs of this Answer.

38.     Paragraph 38 asserts a cause of action against Carvana and is not directed towards Bridgecrest and, therefore, a response is not required.  To the extent Paragraph 38 alleges facts or claims against Bridgecrest or a response is otherwise required, Bridgecrest is without information

7

sufficient to admit or deny the allegations contained in Paragraph 38 of the Complaint and, therefore, denies the same.

39.     Paragraph 39 asserts a cause of action against Carvana and is not directed towards Bridgecrest and, therefore, a response is not required.  To the extent Paragraph 39 alleges facts or claims against Bridgecrest or a response is otherwise required, Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 39 of the Complaint and, therefore, denies the same.

40.     Paragraph 40 asserts a cause of action against Carvana and is not directed towards Bridgecrest and, therefore, a response is not required.  To the extent Paragraph 40 alleges facts or claims against Bridgecrest or a response is otherwise required, Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 40 of the Complaint and, therefore, denies the same.

**COUNT 2**

**VIOLATION OF RETAIL INSTALLMENT SALES ACT ("RISA")**
**AGAINST CARVANA AND BRIDGECREST**

41.     Bridgecrest reiterates and incorporates by reference each of the preceding paragraphs of this Answer.

42.     The allegations contained in Paragraph 42 of the Complaint purport to quote a statute, which speaks for itself and requires no response.  To the extent that a response is required, Bridgecrest denies the allegations contained in Paragraph 42 of the Complaint that are inconsistent with the cited statute.

43.     Bridgecrest denies the allegations directed towards Bridgecrest contained in Paragraph 43 of the Complaint.  Bridgecrest is without information sufficient to admit or deny the remaining allegations contained in Paragraph 43 of the Complaint and, therefore, denies the same.

8

44.     The allegations contained in Paragraph 44 of the Complaint purport to quote a statute, which speaks for itself and requires no response. To the extent that a response is required, Bridgecrest denies the allegations contained in Paragraph 44 of the Complaint that are inconsistent with the cited statute.

45.     Bridgecrest denies the allegations directed towards Bridgecrest contained in Paragraph 45 of the Complaint. Bridgecrest is without information sufficient to admit or deny the remaining allegations contained in Paragraph 45 of the Complaint and, therefore, denies the same.

46.     The allegations contained in Paragraph 46 of the Complaint purport to quote a statute, which speaks for itself and requires no response. To the extent that a response is required, Bridgecrest denies the allegations contained in Paragraph 46 of the Complaint that are inconsistent with the cited statute.

47.     Bridgecrest denies the allegations contained in Paragraph 47 of the Complaint.

48.     Bridgecrest denies the allegations contained in Paragraph 48 of the Complaint.

## COUNT 3

## VIOLATION OF NCUDTPA AGAINST CARVANA AND BRIDGECREST

49.     Bridgecrest reiterates and incorporates by reference each of the preceding paragraphs of this Answer.

50.     The allegations contained in Paragraph 50 of the Complaint refer to a statute, which speaks for itself. To the extent that Plaintiff alleges any allegations inconsistent with the statute, the allegations are expressly denied.

51.     Bridgecrest denies the allegations contained in the first sentence of Paragraph 51 of the Complaint. The allegations contained the second sentenced of Paragraph 51 of the Complaint state a legal conclusion for which no response is required. To the extent a response is required,

9

Bridgecrest denies the allegations contained in the second sentence of Paragraph 51 of the Complaint. The allegations contained in the last sentence of Paragraph 51 purport to quote a statute, which speaks for itself and requires no response. To the extent that a response is required, Bridgecrest denies the allegations contained in the last sentence of Paragraph 51 of the Complaint that are inconsistent with the cited statute

52.    Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 52 of the Complaint and, therefore, denies the same.

53.    Bridgecrest is without information sufficient to admit or deny the allegations contained in Paragraph 53 of the Complaint and, therefore, denies the same.

54.    Bridgecrest denies the allegations contained in Paragraph 54 of the Complaint.

55.    Answering the unnumbered Paragraph immediately following Paragraph 54 of the Complaint beginning with "Wherefore," Bridgecrest denies that Plaintiff is entitled to the relief requested and/or any relief whatsoever from Bridgecrest.

## SECOND DEFENSE
### (Failure to State a Claim)

56.    The Complaint fails to state a claim for which relief can be granted against Bridgecrest pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## THIRD DEFENSE
### (Limitations of Actions)

57.    Bridgecrest hereby asserts all applicable statutes of repose and statutes of limitations pursuant to North Carolina law, in bar of Plaintiff's purported claims for relief as against Bridgecrest.

## FOURTH DEFENSE
(Equitable Estoppel)

58. Bridgecrest hereby asserts that Plaintiff's claims are barred by the doctrine of equitable estoppel.

## FIFTH DEFENSE
(No Violations)

59. Plaintiff is barred from obtaining any recovery on the allegations in the Complaint because Bridgecrest has abided by all applicable laws, regulations, and statutes.

## SIXTH DEFENSE
(Incorporation by Reference)

60. Bridgecrest adopts and incorporates by reference any affirmative defense asserted by any other party to this action to the extent such affirmative defense applies to Bridgecrest, and hereby gives notice that it may rely upon any other defense that may become available during the discovery proceedings in this case, and hereby reserves its right to amend its Answer to assert any such defense.

## RESERVATION OF RIGHTS

61. Bridgecrest has not had an opportunity to conduct a sufficient investigation or to engage in adequate discovery touching on the circumstances of Plaintiff's allegations. Bridgecrest intends to act as best it can to inform itself as to the pertinent facts and prevailing circumstances surrounding any reported damages as alleged in the Complaint, and gives notice of its intent to assert any further affirmative defenses that its information gathering process may indicate are supported by fact and law, including but not limited to, a defense that the action is barred in whole or in part by any applicable statute, contract, release, covenant, or the doctrine of laches. Bridgecrest therefore reserves the right to amend its answer to assert any such defenses supported

11

by evidence obtained through discovery, Bridgecrest's complete investigation, or otherwise adduced at trial.

WHEREFORE, the Defendant Bridgecrest having fully answered Plaintiff's Complaint, prays as follows:

1. That Plaintiff have and recover nothing from Bridgecrest;

2. That Plaintiff's action against Bridgecrest be dismissed, and that the costs of this action be taxed against Plaintiff and Bridgecrest have and recover defense costs, attorneys' fees and any other consequential damages permissible under law;

3. That there be a trial by jury; and

4. That Bridgecrest have and recover such other and further relief as the court may deem just and proper.

Respectfully submitted this the __1st__ day of December 2021.

Ashia Crooms-Carpenter
NC Bar No. 54342
Nelson Mullins Riley & Scarborough LLP
ashia.carpenter@nelsonmullins.com
301 South College Street, Suite 2300
Charlotte, NC 28202
Phone: (704) 417-3000
Fax: (704) 377-4814

Paul T. Collins
*(pro hac vice application forthcoming)*
E-mail: paul.collins@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Phone: (803) 799-2000
Fax: (803) 256-7500

Kadeisha West
*(pro hac vice application forthcoming)*
E-mail: kadeisha.west@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP

12

201 17th Street, 17th Floor
Atlanta, Georgia 30363
Phone: (404) 322-6000
Fax: (404) 322-6050

***Attorneys for Bridgecrest Credit
Company, LLC***

13

## CERTIFICATE OF SERVICE

I, Ashia Crooms-Carpenter, hereby certify that, on December 1, 2021, a true and correct copy of the foregoing was served upon the following via U.S. mail, postage prepaid as follows:

Arthur Hill
2849 Trestle Court SW
Concord, NC 28025
*Pro Se Plaintiff*

*Attorney for Bridgecrest Credit Company, LLC*

14



# NELSON MULLINS

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AND COUNSELORS AT LAW

Debbie Cook
Administrative Assistant
T: 704.417.3119
debbie.cook@nelsonmullins.com

301 South College Street / 23rd Floor
Charlotte, NC 28202-6041
T: 704.417.3000  F: 704.377.4814
nelsonmullins.com

2021 DEC -2 P 2:49

CABARRUS COUNTY.C.S.C.

December 1, 2021

**Via FedEx**

Cabarrus County Clerk of Court
Cabarrus County Courthouse
77 Union Street South
Concord, NC  28025

RE:     Hill v. Carvana, LLC, et al.
          Cabarrus County File No. 21-cv-003755

Dear Sir or Madam:

Enclosed for filing in the above matter, please find the following documents:

- Defendant Carvana, LLC's Answer to Plaintiff's Complaint and Affirmative Defenses; and
- Defendant Bridgecrest Credit Company, LLC's Answer to Plaintiff's Complaint and Affirmative Defenses.

Please file these documents and return them to me in the enclosed return envelope.

Sincerely,

Debbie Cook

Debbie Cook
Administrative Assistant to
Ashia Crooms-Carpenter

/dac

Enclosures

cc:     Arthur Hill

CALIFORNIA | COLORADO | DISTRICT OF COLUMBIA | FLORIDA | GEORGIA | MARYLAND | MASSACHUSETTS | NEW YORK
NORTH CAROLINA | SOUTH CAROLINA | TENNESSEE | WEST VIRGINIA



STATE OF NORTH CAROLINA            IN THE GENERAL COURT OF JUSTICE
                                      SUPERIOR COURT DIVISION

COUNTY OF CABARRUS                     Civ No: 21 CV 3755

FILED

2021 NOV -2 P 12: 29

CABARRUS CO., C.S.C.

BY____

| | |
|---|---|
| Arthur Hill, *pro se* | ) |
| | ) |
| Plaintiff, | )   **AFFIDAVIT OF SERVICE OF PROCESS** |
| | )   **BY REGISTERED OR CERTIFIED MAIL** |
| vs. | ) |
| | ) |
| Carvana, LLC and | ) |
| Bridgecrest Credit Company, LLC | ) |
| | ) |
| Defendants. | ) |

       I, Arthur Hill, being first duly sworn, deposes and says that he is the Plaintiff in this matter and avers the following:

       1.  That on October 28, 2021, a copy of the summons and complaint was deposited at the post office for mailing by certified mail with tracking number **4202 7608 9514 8065 7001 1301 3447 96**, return receipt requested and addressed to Defendant Carvana, LLC c/o its registered agent, Corporation Service Company, 2626 Glenwood Avenue Suite 550, Raleigh, NC 27608.

       2.  That on October 28, 2021, a copy of the summons and complaint was deposited at the post office for mailing by certified mail with tracking number **9514 8065 7001 1301 3448 19**, return receipt requested and addressed to Defendant Bridgecrest Credit Company, LLC c/o its registered agent, Corporation Service Company, 2626 Glenwood Avenue Suite 550, Raleigh, NC 27608.

       3.  That on November 1, 2021, a copy of the summons and complaint was in fact received by the registered agents of both Defendants Carvana, LLC and Bridgecrest Credit Company, LLC as evidenced by return receipts attached hereto as "**Exhibit A**" and "**Exhibit B**" respectively.

*Arthur Hill*

Sworn to and subscribed before me this 2nd day of November, 2021.

*Suguey Pineda Gomez*
Notary Public

My commission expires: May 10, 2026

[Notary Seal: SUGUEY PINEDA GOMEZ, NOTARY PUBLIC, CABARRUS COUNTY NC]

 **UNITED STATES**
**POSTAL SERVICE**


EXHIBIT
A

November 1, 2021

Dear Arthur Hill:

The following is in response to your request for proof of delivery on your item with the tracking number:
**4202 7608 9514 8065 7001 1301 3447 96**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | November 1, 2021, 11:07 am |
| **Location:** | RALEIGH, NC 27608 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

## Shipment Details

| | |
|---|---|
| **Weight:** | 7.0oz |

## Destination Delivery Address

| | |
|---|---|
| **Street Address:** | 2626 GLENWOOD AVE |
| **City, State ZIP Code:** | RALEIGH, NC 27608-1043 |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *(signature)* |
| Address of Recipient: | *2626 Glenwood #550 ...* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

 **UNITED STATES**
**POSTAL SERVICE**

EXHIBIT

B

November 1, 2021

Dear Arthur Hill:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9514 8065 7001 1301 3448 19.**

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | November 1, 2021, 11:07 am |
| **Location:** | RALEIGH, NC 27608 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

## Shipment Details

| | |
|---|---|
| **Weight:** | 7.0oz |

## Destination Delivery Address

| | |
|---|---|
| **Street Address:** | 2626 GLENWOOD AVE |
| **City, State ZIP Code:** | RALEIGH, NC 27608-1043 |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *[handwritten signature]* |
| Address of Recipient: | *[handwritten: 2626 Glenwood #550 ...]* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                               SUPERIOR COURT DIVISION

COUNTY OF CABARRUS       FILED      Civ No:

                    2021 OCT 20 A 11: 33

ARTHUR HILL,            )
               CABARRUS COUNTY C.S.C    )
      Plaintiff, pro se,     )
                BY _____ )
                              )
   vs.                        )
                              )      **VERIFIED COMPLAINT**
Carvana, LLC. and          )
Bridgecrest Credit Company, LLC.   )
                              )
      Defendants.           )
                              )

Plaintiff Arthur Hill ("Plaintiff" or "Hill") complains of the Defendants Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest") (collectively "Defendants") for violations state law and states the following:

PARTIES

1. Plaintiff is a natural person and at all times relevant to this complaint here was a resident of Cabarrus County in North Carolina.

2. Carvana, a spin-off of Tempe Arizona based DriveTime Automotive Group Inc., is a used car dealership that conducts business in or affecting commerce and does so exclusively via the internet at carvana.com with its principal place of business located at 1930 W. Rio Salado Pkwy Tempe, AZ 85281. Carvana is a "seller" as defined under N.C.G.S. § 25A-6. Carvana is a licensed dealer within this state with locations in Concord, Charlotte, Greensboro and Raleigh.

3. Carvana may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue Suite 550. Raleigh, NC 27608.

4. Bridgecrest is an affiliate of Carvana by common ownership, incorporated under the laws of Arizona and generally services retail installment contracts entered into by Carvana with consumers. Bridgecrest is also a "seller" as defined under

1

N.C.G.S. § 25A-6 to the extent that it involves events arising after assignment to receive payments on behalf of Carvana. Bridgecrest's business is in or affecting commerce in this state.

5.   Bridgecrest may be serviced with process by delivering a copy of the summons and complaint to their registered agent, Corporation Service Company, at 2626 Glenwood Avenue Suite 550. Raleigh, NC 27608.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over civil cases involving amounts over $25,000.

7.   Venue is proper because Plaintiff resides in Cabarrus County, Carvana conducts business in and maintains a registered agent in this state and Bridgecrest maintains a registered agent in this state and services installment contracts for residents in this state.

## STATEMENT OF FACTS

8.   On August 15, 2019, Plaintiff entered into a retail installment contract with Carvana to pay for a 2016 BMW 3 ("**BMW**") he purchased at a sale price of $23,900.  The BMW was delivered on August 17, 2019 at Carvana's South Blvd location in Charlotte, NC. A copy of the Retail Purchase Agreement ("**Purchase Agreement**") and Retail Installment Contract and Security Agreement ("**Contract**") are attached hereto as "**Exhibit 1**" and "**Exhibit 2**" respectively. An Arbitration Agreement was also signed by the Plaintiff but he opted out of that agreement on August 21, 2019.  All 3 of the forementioned documents were signed electronically via the internet on August 15, 2019.  The documents were provided to the Plaintiff on August 17, 2019 upon vehicle delivery.  The documents all bear a date of August 17, 2019 even though the documents were signed online by the Plaintiff on August 15, 2019.

9.   During delivery of the BMW on August 17, 2019, Carvana did not provide the Plaintiff with any documents that were supposedly being sent to the North Carolina Department of Motor Vehicles ("**DMV**") such as a document evidencing a registration plate transfer was to take place or a title application.

10.  On the morning of August 17, 2019 at approximately 3:34AM EST, Carvana sent Plaintiff an email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V).  The file name from the

2

link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the evening of August 15, 2019 at approximately 7:26PM.

11. On the morning of August 19, 2019 at approximately 4:38AM EST, Carvana sent Plaintiff another email containing a link to a document online which was a risk-based pricing notice as defined under the 12 CFR Part 1022 (Regulation V). The file name from the link download was "riskbasedpricing-9662775.pdf". The document indicates that Carvana requested and received a credit score about the Plaintiff regarding risk-based pricing notice the night of August 17, 2019 at approximately 11:19PM.

12. On information and belief, a risk-based pricing notice was due prior to consummation of the transaction on August 15, 2019 instead of 2 days later on August 17, 2019 or 2 days after delivery on August 19, 2019. Carvana, on information and belief, was in violation of the timing provision for providing a risk-based pricing notice so they changed the dates on the documents the Plaintiff signed to create the appearance that the transaction was consummated in person on August 17, 2019. Plaintiff discovered this violation between August 17 and August 21 of 2019 but after researching the law, he determined he could not assert a cause of action for any violation because a risk-based pricing violation can't be privately enforced. Plaintiff then opted out of an arbitration agreement he signed in the event Carvana had violated other laws so that he rights would not be limited.

13. On information and belief, Carvana and Bridgecrest have servicing agreements whereby Bridgecrest is not explicitly assigned in the Contract but they are pre-designated as the servicer of the Contract through separate agreements. *See* Exhibit 2, page 5 of 5 showing no assignment.

14. As part of the BMW purchase, Plaintiff put $10,000 cash down and was credited $200 for trade-in of a 2005 Suzuki XL-7. The TILA disclosures provided for **a)** amount financed of $14,515, **b)** for a term of 72 months, **c)** 3.90% APR and **d)** finance charge over the term of $1,783.23. The monthly payment for the first 71 months was fixed at $227 and a final payment of $181.23 for month 72. Per the Contract, if the Plaintiff paid off the Contract early, he would not have to pay a penalty.

15. Plaintiff's first payment was due and paid on September 17, 2019 and scheduled payments of $227 were made up to and including September 17, 2021 for a total of $5,675.

3

16. On September 22, 2021, Plaintiff logged into his profile with Bridgecrest at bridgecrest.com and requested a payoff quote which returned an amount of $9,845.62. Plaintiff then submitted a payment for that amount on the same day at bridgecrest.com. On the following day, when Plaintiff logged into bridecrest.com, the site indicated there was no longer an account for the Plaintiff because the account had been paid in full. The total amount paid in finance charges as of the date of payoff was $1,005.62 which represents 56% of the total finance charges with 47 of the 72 months still remaining in the original term.

17. On information and belief, on or around August 2, 2021, Carvana was banned from conducting business in Wake County until January 2022 for, among other things, issuing out-of-state temporary tags/plates for a vehicle sold to a person in NC and offering vehicles for sale without state inspections.

18. On October 13, 2021, after researching the reasons for Carvana being banned in Wake County, Plaintiff sought to determine if there were issues involving a Temporary Plate Fee that Carvana charged the Plaintiff. Plaintiff researched communications at that time of purchased and found an email he sent to registration@carvana.com of which he had attached the registration for his trade-in vehicle in order to have his plates transferred to the newly purchased BMW. *See* email which includes a response from Carvana attached hereto as **"Exhibit 3"**. A copy of the registration for the trade-in is also attached hereto as **"Exhibit 4"**.

19. Based on the response from Carvana regarding the preceding paragraph, Plaintiff was informed that "*At the time of delivery, you will receive a temporary operating plate which you will have to keep on your vehicle until you receive the updated paper registration in the mail.*". *See* Exhibit 3.

20. Plaintiff was not provided any temporary plate at the time of delivery because the plate from his trade-in was transferred to the BMW. Instead, Plaintiff was informed that a 30-DAY TEMPORARY MARKER RECEIPT ("30-day marker receipt") was placed in the glove box of the BMW and should remain there until he received his updated registration which should then list the BMW with the same tag number as the trade-in. That if he happened to be stopped and was asked for the registration, that he should provide the 30-day marker receipt document as evidence of registration. Plaintiff never had a need to refer to or use the 30-day marker receipt as proof of registration.

4

21.   On information and belief, the assertions made by Carvana in the preceding two (2) paragraphs were misleading and false. Upon recovering and inspecting the 30-day marker receipt from the BMW glove box, Plaintiff observed it was not fully completed or signed and it left the following items blank:

   **a)** Name of company affording liability insurance
   **b)** Policy number
   **c)** Title and License Fees Collected by Dealer $
   **d)** Check Plate Classification and
   **e)** By (certifying signature)

Item **e)** above was preceded by "I, the undersigned, do hereby certify that the rules and regulations governing the issuance of 30-day Temporary Markers have been fully complied with.".  As can be observed, no one signed the receipt.

Furthermore, the 30-day marker receipt stated at the bottom that "This copy must be given to purchaser with corresponding 30-day temporary marker.".  *See* 30-day marker receipt attached hereto as **"Exhibit 5"**.

Likewise, On September 5, 2019, Carvana sent an email to the Plaintiff with the following message suggesting the Plaintiff would be receiving new plates even when they knew the Plaintiff's plates were being transferred:

> We've got great news! Your registration for your 2016 BMW 3 Series has been processed! You should receive your plates within 5-7 business days. If you do not receive your plates within this time period, please reach out to our Customer Advocate team at 1.844.507.3599.

22.   On October 13, 2021, when Plaintiff retrieved the 30-day temporary marker from the glove box of the BMW, he also found a state inspection receipt and statement showing an inspection took place on August 17, 2019, the day the Plaintiff would pick up the BMW.  On information and belief, the BMW should have been inspected prior to being offered for sale on August 15, 2019.  See G.S. § 20-183.4C(2) which states: "A used vehicle must be inspected before it is offered for sale at retail in this State by a dealer. Upon purchase, a receipt approved by the Division must be provided to the new owner certifying compliance.".  A violation of this statute was part of the reason Carvana's dealer license was suspended in Wake County as part of Superior Court case no. 21 CVS 8116.

5

23. Upon researching the law regarding the issuance of temporary markers in the state, Plaintiff learned that under the circumstances, a dealer such as Carvana could not issue a temporary plate when a registration plate was being transferred. Furthermore, a receipt should be accompanied by a temporary marker to be attached to the vehicle until a new or replacement plate was received. As mentioned, Plaintiff already had a registration plate which was transferred from his trade-in, a 2005 Suzuki XL-7 to the BMW.

24. On October 13, 2021, after making the discovery regarding the 30-day marker receipt and the law regarding issuance by a dealer, Plaintiff filed a complaint with the License and Theft Bureau of the North Carolina Division of Motor Vehicles ("Theft Bureau"), informing them that he was charged for a Temporary plate that he didn't believe should have been charged because his plates were transferred and further that he never received a temporary plate. Plaintiff was called within one hour of submitting the complaint by a lieutenant of the Theft Bureau who requested that Plaintiff send her a copy of the document showing the line item where he was charged a temporary plate fee. Plaintiff immediately sent a copy of page 1 from the Purchase agreement along with emails between Plaintiff and Carvana regarding the plate transfer. *See* page 1 of Exhibit 1 at line item 3b. Plaintiff also emailed a copy of the 30-day temporary marker seen in Exhibit 5.

25. Realizing the Temporary Plate fee may not be valid, Plaintiff looked into whether other fees he was charged by Carvana could be unlawful or potentially overstated. On information and belief, as can be seen on Exhibit 1, the following, including the temporary plate fee, were charged but were either over-charged or bogus with suspected reasons:

| Line Item | Charged | Overage | Reason |
|---|---|---|---|
| 3a - NC Registration Fee | 36.00 | (16.00) | Over charge: due to registration transfer. Should be a registration transfer fee of $20.00 |
| 3b - Temporary Plate Fee | 1.00 | (1.00) | Unlawful: Not valid with registration transfer |
| 3c - County Registration Fee | 15.00 | (15.00) | Unlawful: Not valid with registration transfer |

Plaintiff renewed registration for his trade-in vehicle on October 31, 2018 and paid a $36.00 annual registration renewal fee at that time so line item 3a was not due again until October 31, 2019. Line item 3a – NC Registration Fee, based on fee schedule, should be a Registration Transfer Fee and equal to $20.00 since this involved a plate/registration transfer and was not a renewal given there was still time remaining on the pre-existing registration being transferred. The registration Plaintiff did receive for the BMW expired on October 31, 2019 as expected. Plaintiff renewed

6

registration again on October 18, 2019 and paid a $36.00 annual registration renewal fee, less than 2 months after he was charged $36.00 by Carvana.

26.  As a licensed dealer in this State, Carvana knew and understood the laws and regulations regarding the collection of fees or other amounts that were due to the state or local government but ignored those laws or regulations. N.C.G.S. § 105-330.6 (b) states:

> "Transfer of Plates. – If the owner of a classified motor vehicle listed pursuant to G.S. 105-330.3(a)(1) transfers the registration plates from the listed vehicle to another classified motor vehicle pursuant to G.S. 20-64 during the listed vehicle's tax year, the vehicle to which the plates are transferred is not required to be listed or taxed until the current registration expires or is renewed"

27.  Although the law is clear and Carvana knew the Plaintiff's plates were being transferred, they still charged the Plaintiff a County Registration Fee of $15.00 even though Plaintiff had already paid this same fee when he renewed his registration in October of 2018.  *See* 2018 renewal receipt attached hereto **"Exhibit 6"**.  On information and belief, this $15 fee is a vehicle property tax charged annually with registration renewals.

28.  Although the law is also clear regarding when a dealer can issue a temporary marker, Carvana still charged the Plaintiff a Temporary Plate fee even when they knew that no temporary plate was provided and they knew it was forbidden by law.  19A N.C. Admin. Code 3D.0221(b)(6) states in relevant part that "… If a plate is to be transferred, a 30-day temporary marker shall not be issued.".  As mentioned, Carvana merely tucked a partially completed 30-temporary marker receipt in the Plaintiff's glove box and asked that he only use it if he was stopped and asked to show registration for the BMW.

29.  Carvana could be penalized through an enforcement action if they improperly issued a 30-day temporary marker.  *See* 19A N.C. Admin. Code 3D.0235 which states in relevant part that: "The Division of Motor Vehicles shall apply the Civil Penalty Schedule for Type II Violations against a licensed automobile dealer for any of the following: . . . (5) Improperly issuing or using 30-day temporary markers as addressed in G.S. 20-79.1".

30.  Considering Carvana knew that Plaintiff's license plate

7

from his trade-in was being transferred, they knew that the cost for registration transfer was not $36.00 as charged. Yet they still charged the Plaintiff that amount instead of the registration transfer amount per the DMV fee schedule for 2019 which should have been $20.00. *See* fee changes found at https://www.ncdot.gov/news/press-releases/Documents/2020-06-29-dmv-fees-increasing.pdf. *See* Exhibit 6 showing the Plaintiff paid a registration renewal fee of $36.00 on October 31, 2018 which would not expire or come due again until October 31, 2019. Also *see* receipt attached hereto as "**Exhibit 7**" showing the Plaintiff paid another registration renewal fee of $36.00 on October 18, 2019, two months after the BMW purchase.

31. As a result of Carvana either charging unlawful fees which were not due by law or for over charging the Plaintiff using a different purpose fee such as using a registration renewal fee instead of a registration transfer fee, Plaintiff paid additional amounts in finance charges on top of the unlawful fees under the Contract. Plaintiff had no reason to suspect that any of the fees charged regarding registration or plates were unlawful.

32. Carvana could be penalized through an enforcement action for their wrongful actions. *See* N.C.G.S. § 20-294 which states in relevant part that "The Division may deny, suspend, place on probation, or revoke a license issued under this Article for any one or more of the following grounds: . . . (14) Willfully defrauding any retail buyer, to the buyer's damage, or any other person in the conduct of the licensee's business. ... (16) Using unfair methods of competition or unfair deceptive acts or practices as addressed in G.S. 20-294(6)". Also *see* 19A N.C. Admin. Code 3D.0234. See also Wake County Superior Court case no. 21 CVS 8116.

## FACTS REGARDING REQUEST FOR STATEMENT OF ACCOUNT AND REBATE

33. On October 14, 2021 at approximately 7:56AM EST, the Plaintiff logged into bridgecrest.com and sent the following message to Bridgecrest:

> This is a formal written request that you provide a statement of account in accordance with North Carolina General Statute § 25A-35. This is regarding the retail installment contract for VIN # WBA8E9G54GNT46394.
>
> Please include an accounting of any earned and unearned finance charges that were paid.

34. Additionally, on October 14, 2021 at approximately 8:14AM

8

EST, the Plaintiff logged into bridgecrest.com and using the [Contact Us] feature of Bridgecrest's website and sent the following message to Bridgecrest:

> Regarding the installment contract involving VIN # WBA8E9G54GNT46394, please accept this as a formal written demand for refund or rebate of any 1) unearned amounts of finance charges due to prepayment of the installment contract prior to its maturity and 2) refund of any amounts that were included on page 1 of the Retail Purchase Agreement (3a through 3c) if those amounts were not valid official fees for the state, not required for the transaction or that were required but the amount was in excess of the amount required.
>
> As for item 2) above, please include any finance charges that were paid on those amounts.
>
> Item 1) above is made in accordance with North Carolina General Statute § 25A-32.

35. As of the filing of this Complaint, Plaintiff had not received any statement of account in accordance with N.C.G.S. § 25A-35 from Bridgecrest or Carvana.

36. As of the filing of this Complaint, Plaintiff had not received any rebate as demanded in accordance with N.C.G.S. § 25A-32. On information and belief, Plaintiff believes the rebate due to him using the rule of 78 would come out to $764.98 provided the rebate was provided as requested within a 10-day period but it was not provided within that time frame.

### CLAIMS FOR RELIEF

### COUNT 1
### FRAUD AGAINST CARVANA

37. The preceding paragraphs are incorporated here as though stated word for word.

38. As mentioned herein, Carvana made false representations or concealed material facts involving the following:

> a. Falsely representing that the Plaintiff required a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

9

b. Falsely representing that the Plaintiff was required to pay a fee for a temporary plate when no plate was provided or authorized to be issued by law due to a registration plate transfer;

c. Falsely representing that the Plaintiff was required to pay a County Registration fee which was not warranted by law due to a registration plate transfer and existing registration that would not expire until a future date;

d. Falsely representing that the Plaintiff was required to pay the costs of a registration renewal when there was a registration plate transfer.

e. Falsely representing that the Plaintiff could use a partially completed 30-day temporary marker as proof of registration if stopped by law enforcement.

f. Falsely representing that they were offering the BMW for sale in compliance with the law when they knew the requirement for an inspection prior to offering the vehicle for sale had not been met on August 15, 2019.

39.  The misrepresentations or concealment of material facts by Carvana were reasonably calculated to deceive, made with the intent to deceive and did in fact deceive the Plaintiff resulting in damage.  These misrepresentations resulted in Carvana collecting both unauthorized amounts and interest on those unauthorized amounts.

40.  As a result of Carvana's actions or inactions in deceiving the Plaintiff, they are liable to the Plaintiff for compensatory damages and punitive damages to be determined by a trier of fact.

## COUNT 2
### VIOLATION OF RETAIL INSTALLMENT SALES ACT ("RISA") AGAINST CARVANA AND BRIDGECREST

41.  The preceding paragraphs are incorporated here as though stated word for word.

42.  N.C.G.S. § 25A-35 states that in relevant part that:

(a)  One time during each 12-month period following execution of a consumer credit installment sale contract and when the buyer repays the debt early, the buyer shall be entitled upon request and without charge to a statement

10

of account from the seller. The statement of account shall contain the following information identified as such in the statement:

> (1) The itemized amounts paid by or on behalf of the buyer to the date of the statement of account, except that upon early termination of the contract by prepayment or otherwise, the statement shall include itemized charges for expenses of repossession, storage and legal expenses.

43. As mentioned above, Plaintiff had not received a response from Defendant regarding a statement of account.

44. N.C.G.S. § 25A-32 states in relevant part that:

> Notwithstanding any provision in a consumer credit installment sale contract to the contrary, any buyer may satisfy the debt in full at any time before maturity, and in so satisfying such debt, shall receive a rebate, the amount of which shall be computed under the "rule of 78's," as follows:

> The amount of such rebate shall represent as great a proportion of the finance charge (less a prepayment charge of ten percent (10%) of the unpaid balance, not to exceed twenty-five dollars ($25.00)) as the sum of the periodical time balances after the date of prepayment in full bears to the sum of all the periodical time balances under the schedule of payments in the original contract." No rebate is required if the amount thereof is less than one dollar ($1.00).

> If the prepayment is made otherwise than on the due date of an installment, it shall be deemed to have been made on the installment due date nearest in time to the actual date of payment.

45. As mentioned above, Plaintiff had not received a response from the Defendants regarding a rebate or refund.

46. N.C.G.S. § 25A-44 states in relevant part that:

> In addition to remedies hereinbefore provided, the following remedies shall apply to consumer credit sales:

> . . .

11

(3) In the event the seller or an assignee of the seller (i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter, the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges. Ten days after receiving written request therefor, the seller shall be liable to the buyer for an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period.

(4) The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1.

47. The actions or inactions of Defendants regarding a statement of account and rebate were knowing and willful making them liable to the Plaintiff for three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period of Plaintiff's demand.

48. As a result of Defendants actions or inactions, they are in violation of RISA and liable to the Plaintiff for damages pursuant to N.C.G.S. § 25A-44(4) to be determined by a trier of act. Plaintiff is due three times the amount of rebate or refund along with any unauthorized charges.

## COUNT 3
### VIOLATION OF NCUDTPA AGAINST CARVANA AND BRIDGECREST

49. The preceding paragraphs are incorporated here as though stated word for word.

50. Pursuant to N.C.G.S. § 75-1.1, unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

51. As mentioned herein and in COUNT 1 and COUNT 2, Defendants engaged in acts which were unfair or deceptive and those acts or practices that were in or affecting commerce. Fraud has long been recognized as an unfair and deceptive practice. Likewise, N.C.G.S. § 25A-44(4) states that "The knowing and willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1".

12

52. As mentioned above, Carvana also violated the risk-based pricing timing disclosure which, if prosecuted by the proper authority, could amount to an unfair or deceptive practice under federal law although no such cause of action is made here and Plaintiff would not have standing to state such a claim in this instance.

53. As mentioned herein, Carvana offered the BMW for sale with knowledge that there had not been a state inspection in violation of § 20-183.4C(2).

54. As a result of Defendants actions or inactions involving their unfair or deceptive acts or practices, they are liable to the Plaintiff for treble damages pursuant to N.C.G.S. § 75-16.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

 a. That costs of this action be taxed to Defendants jointly and severally;

 b. That the Court enter judgement for Plaintiff and award compensatory and punitive damages in excess of $25,000 for COUNT 1 against Carvana for fraud;

 c. That the Court enter judgement for the Plaintiff awarding treble damages in amounts to be determined by the Court for COUNT 2;

 d. That the Court enter judgement for the Plaintiff and against Defendants awarding treble damages for COUNT 3.

 e. That the Court award Plaintiff pre and post judgement interest on pre-trebled damages;

 f. That the Court award any other relief it deems just and proper.

Submitted this the 28th day of October, 2021.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com

13

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                     SUPERIOR COURT DIVISION
COUNTY OF CABARRUS               Civ No:

ARTHUR HILL,              )
                          )
       Plaintiff, pro se,   )
                          )
   vs.                  )
                          )    **VERIFICATION**
Carvana, LLC. and      )
Bridgecrest Credit Company, LLC.  )
                          )
       Defendants.      )
                          )


     I, Arthur Hill, being first duly sworn, deposes and says
that he is the Plaintiff in this matter, that he has read and
understood this COMPLAINT and knows the contents to be true of
his own personal knowledge, except for those matters and things
set forth upon information and belief, and as to those matters
and things, he believes them to be true.

_____
(Sign in the Presence of the Notary Public)

Sworn to and subscribed before me this 28th day of
October , 2021 .

_____
Notary Public

My commission expires: MAY 10. 2026 .

NOTARY PUBLIC — SUGUEY PINEDA GOMEZ — CABARRUS COUNTY, NC

14

THIS IS A COPY
This is a copy view of
by the designated cus

**EXHIBIT**

**1**

# Retail Purchase Agreement
## – North Carolina –

| BUYER | ARTHUR B HILL |
|---|---|
| ADDRESS | 2849 TRESTLE CT SW |
| CITY, STATE, ZIP | CONCORD NC 28025 |
| PHONE(S) | RES. 9805211819 | BUS. |

| Year 2016 | Make BMW | Model 3 Series | Body 328i 4dr Sedan SULEV |
|---|---|---|---|

| Lic. Plate # | License Tab # | Expires | Mileage 35447 | Color Black |
|---|---|---|---|---|

VIN # WBA8E9G54GNT46394

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.

**Buyer(s) ("you") and Dealership ("we") agree** that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

### TRADE-IN VEHICLE #1

| Year 2005 | Make Suzuki | Model XL-7 | Body |
|---|---|---|---|

| Lic. Plate # | License Tab # | Expires | Mileage 172715 | Color BLACK |
|---|---|---|---|---|

VIN # JS3TY92V754106319

### TRADE-IN VEHICLE #2

| Year N/A | Make N/A | Model N/A | Body N/A |
|---|---|---|---|

| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |
|---|---|---|---|---|

VIN # N/A

_Arthur Hill_ _AH_
Buyer's Initials

Date 08/17/19        Phone 1-800-333-4554

Dealership CARVANA, LLC

Address 3631 SOUTH BLVD

City, State, Zip CHARLOTTE NC -2338

Stock Number 2000342348

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.**

| # | | |
|---|---|---|
| 1 | Selling price | $23,900.00 |
| 2 | Sales Tax | $711.00 |
| 3a | NC Registration Fee | $36.00 |
| 3b | Temporary Plate Fee | $1.00 |
| 3c | County Registration Fee | $15.00 |
| 3d | Title Fee | $52.00 |
| 4 | Subtotal (Selling Price + Delivery Fee + Fees + Taxes) | $24,715.00 |
| 5 | Trade-in Allowance | $200.00 |
| 6 | Estimated Pay-off | $0.00 |
| 7 | Net Trade Allowance (Allowance - Payoff) (If negative, enter $0 here and enter amount on Trade-In Balance Line) | $200.00 |
| 8 | Trade-In Balance (If applicable, this is the negative equity amount from your trade-in) | $0.00 |
| 9 | Cash Down Payment | $10,000.00 |
| 10 | Total Down Payment (Cash Down Payment + Net Trade Allowance) | $10,200.00 |
| 11 | Balance Due (Subtotal - Total Down Payment) | $14,515.00 |
| | | $14,515.00 |

**FINANCE CHARGE**
The dollar amount the credit will cost you

$ 1,783.23

If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

DocuSign Envelope ID: B2716B2B-C969-46D0-8^*7-749CED2DE1AC

THIS IS A COPY\
This is a copy view of the Authoritative Copy l\
by the designated custodian

> **NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

**Carvana Vehicle Return Program**

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:

1. You have not returned, exchanged, or swapped more than two (2) prior Vehicles to Carvana in connection with any Retail Purchase Agreements or Retail Installment Contracts associated with this transaction.
   i. If you have returned, exchanged, or swapped two (2) prior Vehicles in connection with this transaction, you will be given a one-time opportunity to decline or accept the third and final Vehicle either during the delivery or pick-up appointment unless otherwise approved by Carvana.

2. You alert Carvana by phone, text, email, or chat prior to 8pm EST on the 7th calendar day after you take delivery of the Vehicle. The day your Vehicle is delivered, regardless of delivery time, will count as the first day of your seven (7) day test own;

3. You return the Vehicle in one of two ways:
   i. Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pickup will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.
   ii. Outside of a Carvana service area: Carvana will arrange for transport of the Vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.

4. The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract executed between you and Carvana;

5. The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the Vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;

6. You have not driven it more than 400 miles;

7. The Vehicle is without damage or having been in an accident that occurred after you took delivery of the Vehicle;

8. If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/ or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

9. Any Trade-In vehicles with current liens which are involved in this transaction will be paid off once sale is complete and after the test own period ends. You should continue to make payments on liens if payment is due within your test own period. The lien holder of the Trade-In vehicle will reimburse you for any over-payment after the transaction is complete.

**Trade in Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

C100NC 8/1/18

DocuSign Envelope ID: B2716B2B-C969-46D0-8C17-749CED2DE1AC

This is a copy view of the Authoritative Copy
by the designated custodian

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.**

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the Carfax Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

**Liability Insurance:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer acknowledges receipt of a copy of this Agreement. This agreement supersedes any oral agreements or understandings. The agreement cannot be modified except by a written agreement signed by all of the parties. This agreement is not binding until accepted by an authorized representative of Carvana.**

Buyer _____

ARTHUR B HILL

Accepted By _____

Carvana

This is a copy view
This is a copy view
by the designated c[...]

**NC-102**

**EXHIBIT**

**2**

# Retail Installment Contract and Security Agreement
### (Consumer Credit Document)

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | ARTHUR B HILL | No. | 2000342348 |
| 3631 SOUTH BLVD | 2849 Trestle Ct Sw | Date | 08/17/19 |
| CHARLOTTE NC -2338 | CONCORD NC 28025 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $ 10,200.00 |
| 3.90 % | $ 1,783.23 | $ 14,515.00 | $ 16,298.23 | $ 26,498.23 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 227.00 | monthly beginning 09/17/19 |
| 1 | $ 181.23 | 08/17/25 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due. If you purchase the Vehicle for personal, family, household, or agricultural purposes the late charge will not exceed $6.00.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2016 | BMW | 3 Series | 328i 4dr Sedan SULEV | WBA8E9G54GNT46394 | 35447 |

☐ New
☒ Used
☐ Demo

Other:
N/A

## Description of Trade-In

| | | | |
|---|---|---|---|
| 2005 | Suzuki | XL-7 | JS3TY92V754106319 |
| N/A | N/A | N/A | N/A |

## Conditional Delivery

☒ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: N/A
N/A . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ 14,515.00 plus finance charges accruing on the unpaid balance at the rate of 3.90 % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at 3.90 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure.* You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

This is a copy view of the Authoritative Copy held by the designated custodian

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | **Cash Price** of Vehicle, etc. (incl. sales tax of $ 711.00 ) | $ | 24,611.00 |
| b. | Trade-in allowance | $ | 200.00 |
| c. | Less: Amount owing, paid to (includes k): N/A | $ | N/A |
| d. | Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ | 200.00 |
| e. | Cash payment | $ | 10,000.00 |
| f. | Manufacturer's rebate | $ | 0.00 |
| g. | Deferred down payment | $ | 0.00 |
| h. | Other down payment (describe) N/A | $ | N/A |
| i. | **Down Payment** (d+e+f+g+h) | $ | 10,200.00 |
| j. | **Unpaid balance of Cash Price** (a-i) | $ | 14,411.00 |
| k. | Financed trade-in balance (see line d) | $ | 0.00 |
| l. | Paid to public officials, including filing fees | $ | 104.00 |
| m. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| n. | Service Contract, paid to: N/A | $ | 0.00 |
| o. | To: N/A | $ | N/A |
| p. | To: N/A | $ | N/A |
| q. | To: N/A | $ | N/A |
| r. | To: N/A | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | **Total Other Charges/Amts Paid** (k thru x) | $ | 104.00 |
| z. | **Prepaid Finance Charge** | $ | 0.00 |
| aa. | **Amount Financed** (j+y-z) | $ | 14,515.00 |

We may retain or receive a portion of any amounts paid to others.

*[This area intentionally left blank.]*

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☐ None

Premium $ N/A           Term N/A

Insured N/A

**Credit Disability**

☐ Single  ☐ Joint  ☐ None

Premium $ N/A           Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A                                    N/A

By:                                        DOB

Date:

N/A                                    N/A

By:                                        DOB

Date:

N/A                                    N/A

By:                                        DOB

Date:

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ 1,000 . If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A
☐ $ N/A Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A
☐ N/A $ N/A

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage.

THIS IS A COPY
This is a copy view of the Authoritative Copy
by the designated custodian

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**

| Term | N/A months |
| --- | --- |
| Price | $ N/A |
| Coverage | N/A N/A |

☐ **Gap Waiver or Gap Coverage**

| Term | 72 months |
| --- | --- |
| Price | $ 0.00 |
| Coverage | |

☐ N/A

| Term | N/A |
| --- | --- |
| Price | $ N/A |
| Coverage | N/A |

| N/A | N/A |
| --- | --- |
| By: | Date |

| N/A | N/A |
| --- | --- |
| By: | Date |

| N/A | N/A |
| --- | --- |
| By: | Date |

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we", "us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration. You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25.00.

**Governing Law and Interpretation.** This Contract is governed by the law of North Carolina and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract (except as prohibited by law) if you fail to perform any obligation that you have undertaken in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the outstanding balance owing on the Contract at the time we begin a lawsuit to enforce and/or collect this Contract.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

Retail Installment Contract-NC Not for use in transactions secured by a dwelling.
Bankers Systems ™ VMP ®
Wolters Kluwer Financial Services  2015

Page 3 of 5

This is a copy view of the Authoritative Copy by the designated custodian

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- ◆ You must pay this Contract even if someone else has also signed it.
- ◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- ◆ We may release any security and you will still be obligated to pay this Contract.
- ◆ If we give up any of our rights, it will not affect your duty to pay this Contract.
- ◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property, to the extent permitted by law. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- ◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- ◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- ◆ You agree not to remove the Property from the U.S. without our prior written consent.
- ◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- ◆ You will pay all taxes and assessments on the Property as they become due.
- ◆ You will notify us with reasonable promptness of any loss or damage to the Property.
- ◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note. If you purchased the Vehicle primarily for personal, family, household, or agricultural purposes, the following notice applies:** NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**If you are buying a used vehicle:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Sí compra un vehículo usado:** La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| By: | Date |
| Signature of Third Party Owner (NOT the Buyer) | |

*[This area intentionally left blank.]*

Retail Installment Contract-NC Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services © 2015

Page 4 of 5

This is a copy view of the Authoritative Copy
by the designated custodian

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

_Arthur Hill AH_     08/17/19

By: ARTHUR B HILL     Date

N/A     N/A

By:     Date

N/A     N/A

By:     Date

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

_Arthur Hill AH_     08/17/19

By: ARTHUR B HILL     Date

N/A     N/A

By:     Date

N/A     N/A

By:     Date

**Seller**

_[signature]_     08/17/19

By: CARVANA, LLC     Date

**Assignment.** This Contract and Security Agreement is assigned to
N/A

the Assignee, phone _____N/A_____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

N/A

By:     Date



| | |
|---|---|
| **From:** | ART HILL |
| **Sent:** | Thursday, August 15, 2019 7:01 PM |
| **To:** | Registration |
| **Subject:** | Re: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series |

Ok.  Thanks for the prompt response.

Get Outlook for Android

---

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of Registration <registration@carvana.com>
**Sent:** Thursday, August 15, 2019 6:56:56 PM
**To:** artbhill@hotmail.com <artbhill@hotmail.com>
**Subject:** RE: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series

Hi Arthur!

Thank you for taking the time to send in your registration card! I have updated your account to reflect your request to transfer of your license plates. At the time of delivery, you will receive a temporary operating plate which you will have to keep on your vehicle until you receive the updated paper registration in the mail.

Processing times can vary since our registration team has to process the transfer through the DMV. Once completed you will be able to move your old plate onto your new ride.

VERY IMPORTANT: In NC, it is required to keep the insurance active on the vehicle you are trading in until the registration transfer is complete, otherwise the DMV will not transfer the plate. If the registration is not active, you may obtain an FS1 form from your insurance company which needs to include the date the trade in vehicle was removed from the policy (this will ensure there were no lapses in insurance).

If you have any additional questions, please refer to our frequently asked questions section on our site! You can find that here: https://www.carvana.com/faq

Kind regards,

Alexa
Advocate II, Chat & Email
1930 W Rio Salado Pkwy /// Tempe AZ 85281
/// O: 800.333.4554 /// F: 866.221.3833

--------------- Original Message ---------------
From: ART HILL [artbhill@hotmail.com]
Sent: 8/15/2019 3:39 PM
To: registration@carvana.com
Cc: artbhill@hotmail.com
Subject: FW: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series

Hi, below states I can send a copy of my current registration to registration@carvana.com<mailto:registration@carvana.com> if I want to transfer my license plate.  I am attaching my current registration and request that my plate be transferred.   Please let me know if there's any other action I need to

1

take.

Thank you..

Arthur

Sent from Mail<https://go.microsoft.com/fwlink/?LinkId=550986> for Windows 10

_____

From: Carvana <CustomerAdvocate@Carvana.com>
Sent: Thursday, August 15, 2019 4:47:37 PM
To: artbhill@hotmail.com <artbhill@hotmail.com>
Subject: Your Carvana Order Confirmation: 2820057 for our 2016 BMW 3 Series


[Carvana - delivery to your door, 7 day test
own]<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv_7GpfwjIyi6T85hf4FS7jA7l7_2WxDlphhjZazPsIpg1XpPXAKPCltS
g-b0iEKnq79Xx25eyTraRnET4ygvZ0cF55Kr3TlYzBHeClEf9b_4O-
bR07LibXLGnCx_ARdBL7Sjd1OiYfWAQkrgIsEUDb8rzKgb2RwWmwDp3WyybTsjCrSFc_jWxA089ZS7hM4LThyghvvKT9fUR6
qgBdSPj8xn1JFg7HNgrNvc8UtaDTk9/Y06pJgT6s00fS064MQA0gXb>

1-800-333-4554<http://go.carvana.com/dc/Jt3HDPE9L5J_f6SUwpoLdGAfcXuo42BnBChDsIIex4KFasTvyAE-
WmAfC5zNhEz2Va8MqxVOaivUSw_wcsbkR8aOHFwvPT49EbYT20sPajixSQkl6YKGmYY53HX_gng1HtlpOGm48EkWewWw
AYXuiPMI2WIMagBR12eLwy706PmJDS-SN5i0levSASoBJ9MwVmkjJZm6cR1E529FHaXlkidRXRbnANvjT3-
fv2ANQmTJTnn2Pr2XuP_cIxf8TrNc0gO27Fc70dgYDSE2XMDN_iuTUnUIo0RBTxpEpr6lG8qPpNC3wSoBzS6MQmBqkv7ZV0
Kj7lwBBZgw6etDJhZyl24NC1qHABhqWT7X-gQZ0PzsO-
HEdxBR55EVATBVXFnRnYzFcarOvuUUSgyJWMKyjAL0hjucOtcgd9k7y7rFjUKZ4HD54qs7PsuH84BOyGlB4PFphcFOpjr2mVR
oShnvwcT_ph8Yyn0Rl1rzLVA4pTAI8rKRRpuYGRaK6Y9bvf-
WDXzYypKziuHic4Mm3DSggujvXo09b2vGg3fZe7QLRPYd0ZfhYFzBdjJSHJfsCo9R6vGovA7L4RzY_KqwKmEoqIDjcH_cifwAxx
urk6iXOKXI67n64zqyQqrcDqlfejAv2V_LYpYt1s8fVIvU2gUKp0xZQSFR1rEayFU1aC6O7Oo3S5s3mEanGnQhXO7_JdcYNCePY
pALf_bWzbMZHlDOurV7WivBsX2V6l1P3U0B_R0moQN9JM0B4dTRZ3Tf5f37zkWYheJ7c1g61T5w5vB0ZZ-L8iQ38Xn4-
b6NGx38TeHeV7092SveI1I_ZGWEM5k5P94vwBdzEq9Osbay8bj0qVZmiU8WFWG4T912ZigQof_vdFbDX7_KOlZUadxIoML
On2lwXuySpnRQAh_xM-
SScKKPNruBQrrcNEpBddS9kEUvSVpqQY_8OCpSfzdDXildTv0rwGP2OFafjr1F1oLnQAeUjezNxvt_6gHtERMGfN2HDBKzgZSO
u969srrtWQkKzdx1FjIFCINalwFfJTzwbXGfks-mQHesB3e_YD1QARJnZM2mYN5CrVSGVg1KGYxzUGJW2Dz3o-
LhGDTkKZDIG8tMkevQD57jYpULar2H9sduBT7nwzmcOdmvwA_m5c8tMHiAwQd4fh5JgGyEyecu6t7t6bjAwXtuaic-
VNNZ_nehzvghh7bRP5Jjfp1dIpptnYsMtM3w4nDX4jgGKZcscLdENkAP54VpKZlLmjyhcTrvrWuxcZYWnTz5pP6aDhKveK-
Cin6ZHZWdnA99dLcaui22vrWQJIpwE3JEOc2E7Wf5N_5duUcYGc7csxf1KxC2frRZyZOuKjbQGM6_nn-
1BgqhdjiqW02AilxH3FEVb6Xn6raJcFeGBs3vg7p6iZ7tW_zHbc-e4CYTZHvQKuawqzNPXh6kg_ddllLFGvL94PcSL-
WcHHNsiveft33lBDjSZBrCvNaapph6xCFDLVCVN8cWAO2rrs6l10M_dsy3ETFhPiw88gKHPNEYYNh66kozpjTlPIvNO0j3yhe-
fqVC9NcwzrmuGr-yWGNFelZGhIpP6KwMGfzCz6Y6h-W3oynXXNosuLkQygKbRijjDt3lSZymVZDe_sJ9bam4o-HUyrQTt-
oc9m85iYiHWfrkyiu-
hxu_IKrVrHLo0gUxPlgCYmUHaBDNjNeB6XlIxi5VrCR2BAi8nJxJC_nQlbDUE05strApZlZbBdw4CsWIu87i3oVJxJQ_kcM378A0
oWmIh6xxwj36XX68yieLWajPBzi4wPOTGODTtFaVqPZpy-
6Nf1WlkkHObmhhOVPIzM0225U4jX11mIv0hSFCkVtrMUucxtRo-C9v_GuNA-QidWaKJuR4bBP_H-
EuTftEVxrMlVgwh93VCtCJEE4rLAQX-4d3hYekf4VI-rltBthvyBl--knkwupky-
EbqGzFHVPZp0ahmqsBEoDVDvtV_80kGKDC7_jQz2yYVPwHCIQuHbClFlAXHMV7P1gohn4hPZymcVo4Dd6Ac-
S98Qu6BY3DlXr8I55nT2lVgU_At9s7rn9FLghwZ780ZGgxDK0kNGiMVbeVwsb-
384jD1XoJj5qzsqkbmZcYCfcd_XxSPx3RyUa4hdS8ieOMoOxR2Xqa0D_H8Tm7n_Q0Ds-C-
CnwfZwHIQAkQdt47LbnCcSSenCt7o9iXij8lOisqcHBW5P2ek8ywXqFWGL4HZB9WPVZ61KeeJfH_Abe4AO1URfp1e1BOt1uk
DBYj9P1D1o_CV4lh_kc6ghz-
NWYc17uY2wpmdb7HidZRBQ_yHPz7JBjlpWzgg0mhgkadUByQ86WfcFjlz1Mqvtrs6RY1oC5e9jYA4JessVfS35ig3_cJq8aYCi0

Vz9TTIFRFq6BmzSbntEStOBrlRm1Z4XtHEtKgJLb7BIpWxNomOJKaBejPnbGksbCJuNkwVuSt7T6uiORFwza-
5EsaQY9NEr6_RFKmp-dxbZb9ec5gu0sxPi--kD4DjRDKieyL2qMI3bOMlJuI2HmQ-
rbqqxWXR8ojXvr2kMLkEf3PaZbPdo6GCZi0EIjXoj0tiI9toTIfOWQkFsF7qjiYddi-
9BkhqP2viAd5f6b9jvQuMjpXb7JsPGpfXaLXpdNulkb0Jg4v5P39JFZif6C8z0gMm0XQL_4qzOHJxZzm637fHkEu1Py6jtju91zeJ
d_tfbiLEjB5b88syV0ZZZqqHFSLqNabOmlT3T4Pu5LsiAkEICU8OCXABg8uJF7pw64svKS8KUztUAqkOeP29GcJlTfSWJ5JqLnfos
GuW2Z6M3R_EBJRJ-
yMmjkvplPeloNR_VY2d7AS136l2LvF8f1pvQ0ZB05iOIqOJk_lYE5Ow_DEKPxA2TpmP3BIs9pgsJnhTNX5F1lTpq1XEylqk7V1Ka
uIaNILh3tkdrsuJiWMS8-
q8flZFLl7tlwtYBEjvpmcPKtQoqcXdi4E_6mG4u5IK8p8YQFxkIOofgiUlbGghqQV5u2yuCYvIK7VE0UTqlSCQCUzQ7ZRfaGtyDd
oo-2IB68173HiCk0eo-oA-
DQjiklVxJoakadJw40ufZQD84OqzKgrUusKrF5q3D3IzMN9pir6yV2LJqjLtS8mf922B5yr4AE0YmxEInOXw2RDef4PNlAxCaOpL
ZDPLlDQfzpfpL49WSkkgjE8nxHjNIjZGZyknWf5tERlfgmpT45mHXcMYEl5ViuWpZzp7kC2DBBpX9h04grNoV3ac4r4RW4gLpo
UqMxoE8Gowy68xydmwk0gsLHMVeWzD9UmoTO7RkKQJEUYF_yKAC37zgh4gHEy6S2loYWENLtuX3UsrwDfJ77KP4oKDc8t
nrjhzhxlpFbFYICxCR46GCxgPI_mYg1nq7rwoPKJLvs_34ANtcgBZcTGH6QWmsfrqtJ-39biQmdXkIgrKPvg6OoE3TB-
j0HkiBOcP-grmdt9tzcTIV8r5boZUE1NzWA6rfWnfNkUSr7nXlQMgSq24rVW6zyv98QY7pjOvPtL143gtOuSD3-
H5IIpsCW99ktF4YwA3Uj3AY0XiuxZIIsWjunQK3EseMtzdPLJp6f--
qvEYBK3sqKuoNPsV_IngmbafKTlXPDzy90bMVTy5NMQ2cQnQwDJ0TaKRuclSMtNzsqOcYJ3_nW1AW_e06MkZQG50o1bhL
wbcpbqMfloHekw-_zM3vSlzT4LwAk2fYEBfLkSS59jX5EYhGcvx0hJqItl7Is04_aoXMlqimV2UGUHiWuG0JSXH_ZJIn-
AQA7c0c45ggEVF9U6iQ2NGwixd_V4pwmpZZ-J99-2Ggthxhx3K8sPqp57AY7lXp6Ea8dFyN5K8B-
IyNrbmaC86j4sjihxniqtxhB8Se_kgr6Zhced7Zw53nCwfX5vka0uZ_nPOwpFU_HgMabRk_onX9rt9Cn0tf-
xNru968kbCMNJW27hqsKJNTPSHR9H0oxt-UEWaJagyBN1tlKHJT-dUMaYSYKQUkZfUquHyj-MQItsJg2zz9w3ER1P3NRafZ-
eql7iA9NSelyfIQP1yxlLORlPX-0zgcyBT8v7uLgs6>
Available 8am–9pm EST

Congratulations ARTHUR!
This is your official confirmation to let you know your vehicle is on it's way. Your purchase information and documents
have been reviewed and approved!

Please see below for your order details and requirements for pickup.

Thank you for choosing Carvana—the new way to buy a car!

Your confirmation number is: 2820057

[2016 BMW 3
Series]<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxAuXolzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApX
QoQL4b9TXhfR-
Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7QI8R5GCZdI1heevq1gLjKrq8hMzfzANKuWzHPwvdl9HX2MEJMNrrBgKc6D8i0
2wo4eANYInbFXh25y1CrO-AEvNIGila_68bUI_EA7M1iBM7wnCeacRh4dEEsMEfhX-
BAeJV21LCVXT8DUUL6Ngvn672yLOLe6rGGgA==/Y06pJgT6s00fS064MQA0gXb>
2016 BMW 3 Series
$24,515
VIEW YOUR ORDER
PAGE<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxAuXolzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApX
QoQL4b9TXhfR-
Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7QI8R5GCZdI1heevq1gLjKrq8hMzfzANKuWzHPwvdl9HX2MEJMNrrBgKc6D8i0
2wo4eANYInbFXh25y1CrO-AEvNIGila_68bUI_EA7M1iBM7wnCeacRh4dEEsMEfhX-
BAeJV21LCVXT8DUUL6Ngvn672yLOLe6rGGgA==/Y06pJgT6s00fS064MQA0gXb>

Pickup Address
3631 South Blvd Charlotte NC, 28209<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-
OPci38Azt9xgCRUZV0o8F4WdSoZTxdHLDkzsiRbK08-F52mL5hiBR5fIGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-

lvrp0Hsi2tbRdzKFxLzRFYnynCWvCQ7A==/Y06pJgT6s00fS064MQA0gXb>
Get Directions<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-
OPci38Azt9xgCRUZVOo8F4WdSoZTxdHLDkzsiRbK08-F52mL5hiBR5flGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-
lvrp0Hsi2tbRdzKFxLzRFYnynCWvCQ7A==/Y06pJgT6s00fS064MQA0gXb>
Pickup Date / Time
Saturday, August 17, 2019
11:30 AM local time

[map]<http://go.carvana.com/dc/Mrv_hxtRECjDkd0Ykq7qcApb-OPci38Azt9xgCRUZVOo8F4WdSoZTxdHLDkzsiRbK08-
F52mL5hiBR5flGo-VOtBxOa5fBzHDNtBGkxbm1mjnNuAHEcRY-
lvrp0Hsi2tbRdzKFxLzRFYnynCWvCQ7A==/Y06pJgT6s00fS064MQA0gXb>


Important Requirements for Pickup

Please have the below items ready at pickup in order to take possession of your new vehicle

Contracts:

  *  Ensure you have Signed Contracts
Online<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxAuXolzeEDwYUYcqGCrMKm0MEsJ7VrfAEUAV0fWGTvH_ApX
QoQL4b9TXhfR-
Gg7J7F3F2tO0lYT4MMMKcsw7NjHVgruDu7QI8R5GCZdI1heTaz_0_B38m85ChHsEOncPCXs4ZWDtGcYNjEywH30RatbWP5
LjmuHtEWOiURyi9ZPAXXswXjhTlmUSTbdR80EJeyFxKoTmGCE--nnwbvvxl0=/Y06pJgT6s00fS064MQA0gXb> prior to
delivery. You do not have to print anything, just be sure to sign electronically.

Other Required Items:

  *  Valid driver's license
  *  Updated proof of insurance for the new vehicle. Coverage must be active/effective on or before the date of delivery
and must last for at least 45 days. Digital copies of your insurance card are accepted.


Frequently Asked Questions

Can I examine the car before taking possession?
You will be able to go over the vehicle's features, ask any questions and take your purchase for a quick test spin.

When will funds withdraw?
After you sign the title and registration paperwork we will withdraw the funds for your down payment. It may take 4-6
days for funds to clear.

How do I transfer my license plate?
Please send a copy of your current registration to
registration@carvana.com<http://go.carvana.com/l0b6hAS0MpsU664f0J0QX0g>. See
additional  FAQ<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv402Y_J_eiojcqX7pYKpQ7Eucriyy7ED2vO2hSDV28z_3
XJKAuoZI86TkPyhLCy2552yZKoM8SkbK84vyqdUVqwQ18kEw1_rCCVElJvqcm9qRUMOBzN1VBL632NMRbEhMP4UHTF2blG
ggoRghhZcR-
z_z0StgfTlVXiKGw7p4qsb1jXYJ5m_mHSFlXtrtdLMDaR6tC58J8m3R5aXjhmYERRk=/Y06pJgT6s00fS064MQA0gXb>.

More FAQ
»<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvxSRRuEjvZdTrETnQ65HqGkWq9RcQpd3loKIbnXFjT7buWEWt2TwCg
K3Pj9ywci4HAiqJrCvHCw179Ts16NJC5JwpkJRlDgnY1a8ZEoRqzvKONSIJkdMtGnupON8gn4ESzYFmiVqEDalFxvFyMls9ZLoj-

Qb77wCGrcxu0DC-DZYnGiCurq8xzLE-3lB87MIfA==/Y06pJgT6s00fS064MQA0gXb>

Disclaimer: Carvana makes every effort to fulfill our scheduled delivery / pickup dates to ensure that our customers receive the best car buying experience possible. However, there are times where unexpected transport delays or inclement weather can impact these timeframes. These instances are rare, and we do everything possible to avoid these situations. Should a delay arise, our Customer Advocates will promptly reach out to discuss alternate arrangements.

[Learn About Carvana Care]<http://go.carvana.com/wQSX6p6AM00g0sbS60f4f0J>

© 2019  Carvana.com<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv1kbUrBKp-aFbkC_jmJfS7TK1ePz04hxyx9GMGS341SVXu-xwKjnW7GGspRvXHJN53TpTc_4XmzXgbS36u0p0A6bL6w2wZLMxxt7ZdWeA7-OOg4RfNOhPtY_uqSr1GCND_gIOSbA6DKDIVso7rf0gLMwGv-W7YtdgZFxMvpox6E0QXrpoV79zjBfsuUwgW5fttRYTVYPbOVf2r80maXUaTJJXhz47JA-9w0QmSDkK0UX/Y06pJgT6s00fS064MQA0gXb>. All Rights Reserved.
1930 W Rio Salado Pkwy, Tempe, AZ 85281<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv1kbUrBKp-aFbkC_jmJfS7TK1ePz04hxyx9GMGS341SVXu-xwKjnW7GGspRvXHJN53TpTc_4XmzXgbS36u0p0A6bL6w2wZLMxxt7ZdWeA7-OOg4RfNOhPtY_uqSr1GCND_gIOSbA6DKDIVso7rf0gLMwGv-W7YtdgZFxMvpox6E0QXrpoV79zjBfsuUwgW5fttRYTVYPbOVf2r80maXUaTJJXhz47JA-9w0QmSDkK0UX/Y06pJgT6s00fS064MQA0gXb>. You received this email because you are registered on Carvana's mailing list with the email address artbhill@hotmail.com<http://go.carvana.com/dc/8UOiyWTS_7EImXYJ-4AAZRqNkEZkT0iJvyvxPUK9oU=/Y06pJgT6s00fS064MQA0gXb>.
Privacy Policy<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHv0sEWfB1rIkLsy1sc5HcnTdGppiSjyjDaQiV0oGZ0LGtv85uypPN2LKPw3N4S9NbogcPjQEQP3OHmdr7BDTnUdFxKULivE_s50wv5bvJ0l4DWYf5PlvRjYo_dzWtCyfedUO7SKuRSwmyn4c1HkF9A0zkdYbTQdGFR86tB1NAxX0g-YdM3pZJa6M8VWpBsLbM5AnZ8u-gtUBaAKNmXLapeSHbUWz6lH2bRP7rBwT1TXkeZI1NdbZvxyjeXtt82zcQ9g==/Y06pJgT6s00fS064MQA0gXb> | Terms of Service<http://go.carvana.com/dc/Sj1fy5d9len95c5PURLHvyV8OvvM8x9FyLlsjCkQoeLdE1G4WEYt4SxebyzI4qW4He3fAEioU2qtRPRVCNEnoZvZTsSf2EC6-G3NNhJ2toJWXAQugDxCYN6rQRyU12wlo33p_Q0XjWyDGNUXYeQLUBcUFBSr8f3ltht_AYC9bcDuRgbs-uH_uBl_OKgb0zNSl3uQCtfr-Gnxky720uTz1NrxVNsLPyTohu8_dPxHkehK1ZqFO9nYSaSyXQ-R0iDMgJDZeG-iSPvFkvKi60E2Rg==/Y06pJgT6s00fS064MQA0gXb> | Unsubscribe<http://go.carvana.com/dc/QTNnB-185RKm3d24UEzMDsESEhrFHVVClHf2ZU3c1f8oRoKPvq4hGlz_VGY63KymHcNAh8C0mbbXeMHjKpOFDT_4aAef2aWYMoyOfGfuBCkpFDMfJZ_CwO4y8N21WoZ6lmEPXUJsgJVIgoVqqYn0HwZkP48zxu0277lsbGcKX13x1g5WJMIbhnost8zX8SNLatHTfFFxob75vPuUxS9h4M7zwb4jDplnAl-0IolWDRwXdxyH49LEx213Nv72DJH08T4Zh77HJTQu8sc_8QqNvCqOPTSBkbhmRmFww90jjUc=/Y06pJgT6s00fS064MQA0gXb>

<http://go.carvana.com/x0A00g0J4ib6M6Q0V6psSXf>
ref:_00DG0jqBp._5001M1P4hfm:ref

# STATE OF NORTH CAROLINA
## REGISTRATION CARD

| NC LIC NUMBER<br>TZZ5120 | PLT EXP DATE<br>10/31/19 | INSPECTION DUE<br>10/31/19 |
|---|---|---|
| VEHICLE ID #<br>JS3TY92V754106319 | | GROSS WT |
| MAKE/SERIES<br>SUZI | TITLE<br>777338051787144 | EQUIP # |
| SHIPPING WEIGHT | STYLE<br>MP | YEAR<br>2005 | FUEL<br>G | TOTAL FEE<br>36.00 |

| CLASSIFICATION<br>PRIVATE/PASS VEH | | VEHICLE BRAND |
|---|---|---|
| CUSTOMER ID # OWNER 1<br>000028684552 | CUSTOMER ID # OWNER 2 | COUNTY<br>CABAR |

ARTHUR BERNARD HILL

2849 TRESTLE CT SW
CONCORD  NC  28025-6038

FOLD HERE - DO NOT TEAR

S23 - STANDARD FIRE INSURANCE CO
INSURANCE COMPANY AUTHORIZED IN NC

9899386211011
POLICY NUMBER



JS3TY92V754106319

EXHIBIT

4

tabbies

Form 38
(Rev. 01/14)

NORTH CAROLINA DEPARTMENT OF MOTOR VEHICLES    DEALER # 007712

**30-DAY TE...** **...JRARY MARKER RECEIPT**

NUMBER  25235691

EXHIBIT
5

| DATE OF SALE | VOID IF ALTERED | RECEIPT EXPIRES 30 DAYS AFTER SALE DATE |
|---|---|---|
| 8-17-19 | | |

| PURCHASER | | |
|---|---|---|
| Arthur Hill | | |

| STREET, RFD | CITY |
|---|---|
| 28491 Trestle Ct SW | Concord |

| NAME OF COMPANY AFFORDING LIABILITY INSURANCE | POLICY NUMBER |
|---|---|
| | |

| MAKE, YEAR, STYLE | SERIAL NO. |
|---|---|
| BMW 2016 Sedan | WBA8E9G54GNT46394 |

| TITLE AND LICENSE FEES COLLECTED BY DEALER: $ | GROSS WEIGHT FOR WHICH TRUCK OR TRACTOR IS TO BE LICENSED |
|---|---|
| | |

| CHECK PLATE CLASSIFICATION | ☐ PRIVATE CARRIER ☐ FOR HIRE CARRIER | ☐ FARM TRUCK ☐ SPECIAL MOBILE EQUIPMENT | ☐ OTHER, SPECIFY |
|---|---|---|---|

I, the undersigned, do hereby certify that the rules and regulations governing the issuance of 30-day Temporary Markers have been fully complied with.

DEALER  CARVANA llc    By: _____

ADDRESS  3631 south blvd charlotte NC 28214

This copy must be given to purchaser with corresponding 30-day temporary marker.



# Receipt

**NC DMV Registration Renewal & Property Tax**

# Total Paid: $92.40

Payment Date: 10/31/2018 5:55:10 PM

Thank you for your payment. Please retain this receipt for your records. This confirmation is not a registration document.
Your new registration card will be mailed within 7 days.

## Questions

**Vehicle Property Tax Questions**

Property tax questions can be addressed to CABARRUS County.

**Registration Renewal Questions**

Registration questions can be addressed to NC DMV.

- Call 919-715-7000

## Your Info.

**Name:** ARTHUR BERNARD HILL
**Address:**
    **Residence:** 2849 TRESTLE CT SW
    **Mailing:** 2849 TRESTLE CT SW
    **Vehicle Location:** 2849 TRESTLE CT SW

**Total Owed:** $92.40
**Vehicle:**
    **Desc:** SUZI
    **VIN:** JS3TY92V754106319
    **License Plate:** TZZ5120
    **Title:** 777338051787144
**Note:**

## Fees

### Registration
1 Itemized Details:

| Description | Fee |
| --- | --- |
| PLT: TZZ5120 | $36.00 |
| **Total Registration Fee:** | **$36.00** |

### Vehicle Property Tax
3 Itemized Details: Appraised Value $3,450.00

| Taxing Districts | Tax Rate per $100 Value | Fee |
| --- | --- | --- |
| CABARRUS COUNTY TAX | | $24.84 |
| CONCORD CITY TAX | | $16.56 |
| CONCORD CITY TAX VFEE | | $15.00 |
| | **Total Property Tax:** | **$56.40** |



| From: | myNCDMV <admin@payitgov.com> |
| --- | --- |
| Sent: | Friday, October 18, 2019 11:34 AM |
| To: | artbhill@hotmail.com |
| Subject: | Thanks for your payment |



## Your Receipt

Thanks for your payment with **myNCDMV**.

---

## Payment Summary

| Vehicle Renewal | **$324.15** |
| --- | --- |

2016 Bmw 328 I Sulev

| | |
| --- | --- |
| Vehicle Information | BMW |
| Title Number | 77386919247075Y |
| VIN | WBA8E9G54GNT46394 |
| Make | BMW |
| Model | 328 I SULEV |
| Year | 2016 |
| License Plate | TZZ5120 |
| Plate Background | First in Flight |
| Plate Code | PVA |
| Plate Category | PRIVATE AUTO |
| Mailing Address | 2849 TRESTLE CT SW CONCORD, NC 280256038 |
| Situs County | Cabarrus |
| Appraised Value | $21,160.00 |
| Property Tax Fees | |
| CABARRUS COUNTY TAX | $156.58 |
| CONCORD CITY TAX | $101.57 |

1

| CONCORD CITY TAX VFEE | $30.00 |
|---|---|
| Registration Fees | $36.00 |

ARTHUR

MasterCard ending in 2710

Paid on October 18, 2019 11:34 AM

Confirmation Number f4e2b371-fdd4-4319-bea6-868da480b055

| Subtotal | $324.15 |
|---|---|
| Transaction Fee | $3.00 |

| **Payment Total** | **$327.15** |
|---|---|

### Vehicle Renewal

Please retain this receipt for your records. This confirmation is not a registration document. Your new registration card will be mailed within 7 to 10 days. For property tax questions, please contact your county tax office.

Official Receipt State of North Carolina. For more information, please visit the North Carolina Division of Motor Vehicles site at ncdot.gov/dmv. Or email North Carolina Division of Motor Vehicles at https://apps.ncdot.gov/contactus/Home/PostComment?unit=DMV_VR

Get help from PayIt Support
© 2019 myNCDMV

21 CVS 03755

# STATE OF NORTH CAROLINA

CABARRUS _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name And Address Of Plaintiff 1 |
| --- |
| ARTHUR HILL |
| 2849 TRESTLE CT SW |
| CONCORD, NC 28025 |

FILED

2021 OCT 28 · A 11: 33

CABARRUS COUNTY C.S.C.

BY_____ MA

| Name And Address Of Plaintiff 2 |
| --- |

# GENERAL
# CIVIL ACTION COVER SHEET

☒ INITIAL FILING ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

### VERSUS

| Name And Address Of Defendant 1 |
| --- |
| CARVANA, LLC |
| c/o Registered Agent |
| 2626 Glenwood Avenue Suite 550 |
| Raleigh, NC 27608 |

Summons Submitted ☒ Yes ☐ No

| Name And Address Of Defendant 2 |
| --- |
| Bridgecrest Credit Company, LLC |
| c/o Registered Agent |
| 2626 Glenwood Avenue Suite 550 |
| Raleigh, NC 27608 |

Summons Submitted ☒ Yes ☐ No

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)

ARTHUR HILL
2849 TRESTLE CT SW
CONCORD, NC 28025

| Telephone No. | Cellular Telephone No. |
| --- | --- |
| | 980-521-1819 |

| NC Attorney Bar No. | Attorney Email Address |
| --- | --- |
| N/A | ARTBHILL@HOTMAIL.COM |

☒ Initial Appearance in Case ☐ Change of Address

| Name Of Firm | Fax No. |
| --- | --- |
| N/A | |

Counsel For
☐ All Plaintiffs ☒ All Defendants ☐ Only: (list party(ies) represented)

☐ Jury Demanded In Pleading ☐ Complex Litigation ☐ Stipulate to Arbitration

## TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

(Over)

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

☐ Administrative Appeal (ADMA)
☐ Appointment Of Receiver (APRC)
☐ Attachment/Garnishment (ATTC)
☐ Claim And Delivery (CLMD)
☐ Collection On Account (ACCT)
☐ Condemnation (CNDM)
☐ Contract (CNTR)
☐ Discovery Scheduling Order (DSCH)
☐ Injunction (INJU)

☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
☐ Medical Malpractice (MDML)
☐ Minor Settlement (MSTL)
☒ Money Owed (MNYO)
☐ Negligence - Motor Vehicle (MVNG)
☐ Negligence - Other (NEGO)
☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
☐ Possession Of Personal Property (POPP)

☐ Product Liability (PROD)
☐ Real Property (RLPR)
☐ Specific Performance (SPPR)
☒ Other *(specify and list each separately)* Fraud, Retail Installment Sales Act, Unfair and Deceptive Practices

| *Date* | *Signature Of Attorney/Party* |
|---|---|
| | |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

# STATE OF NORTH CAROLINA

CABARRUS _____ County

| | |
|---|---|
| | ▶ |

*lo.*

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Name Of Plaintiff*
ARTHUR HILL

*Address*
2849 TRESTLE CT SW

*City, State, Zip*
CONCORD, NC, 28025

**VERSUS**

*Name Of Defendant(s)*
Carvana, LLC
Bridgecrest Credit Company, LLC

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Carvana, LLC | Bridgecrest Credit Company, LLC |
| c/o Registered Agent | c/o Registered Agent |
| 2626 Glenwood Avenue Suite 550 | 2626 Glenwood Avenue Suite 550 |
| Raleigh, NC 27608 | Raleigh, NC 27608 |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* 10-28-21 | *Time* 11:33 ☒ AM ☐ PM |
|---|---|---|
| | *Signature* M Minette | |
| 2849 Trestle CT SW | | |
| Concord            NC       28025 | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| | |
| Date Of Return | County Of Sheriff |
| | |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts