| | |
|---|---|
| Arthur Hill,<br><br>   Plaintiff,<br><br> v.<br><br>Carvana, LLC and<br>Bridgecrest Credit Company, LLC,<br><br>   Defendants. | Civil Action No. 1:22-cv-00037 |

### MEMORANDUM IN SUPPORT OF DEFENDANTS CARVANA, LLC AND BRIDGECREST CREDIT COMPANY, LLC'S JOINT PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

Pursuant to 12(b)(6) of the Federal Rules of Civil Procedure and LR 7.3, by and through undersigned counsel, Defendants Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest," and together with Carvana, "Defendants") submit this Memorandum in Support of Defendants' Joint Partial Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion").

### INTRODUCTION

This is a civil action seeking damages for alleged issues arising out of Plaintiff's purchase of a 2016 BMW sedan (the "subject vehicle") from Carvana in August 2019. Now, more than two years after Plaintiff's purchase, Plaintiff seeks to recover damages related to fees and interest he paid related to the subject vehicle. First, Plaintiff seeks damages under the North Carolina Retail Installment Sales Act ("RISA") based on the alleged unlawful charge of $52.00 in fees for registration and tags for the subject vehicle, although he admits

in the Second Amended Complaint (the "SAC") that $20.00 of the $52.00 was owed (albeit for a different reason) and that a check for $31.00 was sent to him by Carvana which he rejected. Second, Plaintiff seeks to recover damages under the Federal Odometer Act ("FOA") based on the overstatement of 35 miles on the subject vehicle, which is considered immaterial under North Carolina law. Finally, Plaintiff seeks to recover damages under the Truth in Lending Act ("TILA") based on the alleged failure to refund him approximately $765.00 in interest when he paid off his loan on the subject vehicle, although he was not owed a refund because his loan was a simple interest loan.

For reasons discussed fully in this Memorandum below, Plaintiff's claims for violation of RISA (Count 2), FOA (Count 4), and TILA (Count 5) all fail as a matter of law and should be dismissed with prejudice. Plaintiff's RISA claim fails because RISA—which applies only to precomputed interest contracts—is not applicable to Plaintiff's simple interest loan transaction with Carvana. Further, Plaintiff's demand to Bridgecrest for a statement of account, rebate and refund was inadequate. Plaintiff's FOA claim is time-barred, and additionally fails because the alleged deviation in the odometer disclosure is insufficient to show an "intent to defraud." Plaintiff's TILA claim is also time-barred. Accordingly, Counts 2, 4, and 5 of the Second Amended Complaint ("SAC") fail and should be dismissed with prejudice.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiff alleges that on August 15, 2019, he electronically signed Carvana's Retail Purchase Agreement ("RPA") and Retail Installment Contract and Security Agreement ("Retail Installment Contract") for the purchase of the subject vehicle. (ECF No. 8, SAC ¶

2

8). Carvana provided Plaintiff with the RPA, Retail Installment Contract, and the Odometer Disclosure, among other documents, on August 17, 2019, the date of delivery of the subject vehicle. (*Id.*¶ 8-9). The RPA and Retail Installment Contract were also dated August 17, 2019. (*Id.* ¶ 8).

Plaintiff, however, also alleges that the RPA and Retail Installment Contract which he attaches to the SAC as Exhibit 1 and 2, respectively, are "[o]n information and belief . . . not documents that Plaintiff electronically signed on August 15, 2019." (*Id.* ¶ 54). Plaintiff alleges that "the signatures and initials that appear on [the RPA and Retail Installment Contract] couldn't have been made by the Plaintiff because, upon closer inspection, the signatures are different, even within the same document. (*Id.* ¶ 51). According to Plaintiff, the documents are "good forgeries." (*Id.* ¶ 54).

Plaintiff alleges that he paid a $10,000 cash down payment, was provided a $200 credit from Carvana for his trade-in vehicle, and financed the remaining $14,515.00 for the purchase of the subject vehicle. (*Id.* ¶ 14). The terms of the loan included a 3.90% APR, a term of 72 months and a total finance charge of $1,783.23 for the term of the loan. (*Id.*) Plaintiff alleges that he paid his loan in full on September 22, 2021. (*Id.* ¶ 16). Plaintiff alleges that he paid a total of $1,005.62 in finance charges for the loan. (*Id.*)

Plaintiff alleges that the total purchase price of the subject vehicle included certain unlawful fees charged by Carvana. (*Id.* ¶ 25). First, Plaintiff alleges that he was charged $1.00 for a temporary plate fee that was neither provided to Plaintiff nor warranted since Plaintiff was transferring plates from his trade-in vehicle to the subject vehicle. (*Id.* ¶¶ 20, 25, 28). Second, Plaintiff alleges that he was unlawfully charged a NC registration fee of

3

$36.00 instead of a $20.00 registration transfer fee that Plaintiff admits he owed. (*Id.* ¶¶ 25, 30). Third, Plaintiff alleges that he was unlawfully charged a county registration fee of $15.00. (*Id.* ¶¶ 25, 27). Plaintiff alleges that, as a consequence of these allegedly unlawful fees charged by Carvana, he "paid additional amounts in finance charges on top of the unlawful fees under the Contract." (*Id.* ¶ 31). Further, Plaintiff alleges that Carvana removed the receipt to the registration for the subject vehicle which would have revealed that Carvana did not pay official fees totaling $52.00 but instead paid a $20.00 transfer plate fee. (*Id.* ¶¶ 34, 108). Plaintiff admits that Carvana sent him a check for $31.00 on December 1, 2021, which Plaintiff refused to accept. (*Id.* ¶ 34).

According to Plaintiff, on October 14, 2021, Plaintiff sent a message to Bridgecrest on Brigecrest.com requesting a statement of account. (*Id.* ¶ 36). Plaintiff alleges that on that same day he sent a second message to Bridgecrest on Bridgecest.com requesting a rebate and refund. (*Id.* ¶ 38). Plaintiff alleges that he is due a refund of approximately $765.40, excluding the above disputed official fees. (*Id.* ¶¶ 39-40). "This amount was determined using the Rule of 78's[.]" (*Id.* ¶ 40). Plaintiff alleges that he has not received a statement of account or rebate from Carvana or Bridgecrest. (*Id.* ¶¶ 37, 39).

Plaintiff also alleges that the Odometer Disclosure Statement provided to Plaintiff on August 17, 2019 indicated that the mileage on the subject vehicle was 34,447[1]; though, the mileage on a different Odometer Disclosure Statement indicated that the mileage on the subject vehicle was 35,482 miles. (*Id.* ¶ 35.) Plaintiff alleges that this new Odometer

---

[1] As discussed in more detail in this Memorandum, Plaintiff's Exhibit 10 to the SAC proves that this allegation is inaccurate.

4

Disclosure Statement was backdated, has Plaintiff's forged signature, and was not provided to Plaintiff until discovery in the state court for this case. (*Id.*)

## ARGUMENT

### I. STANDARD OF REVIEW

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion should only be granted if, after accepting the allegations in the complaint as true, the plaintiff cannot prove any set of facts in support of a claim that entitles him to relief." *Broxton v. McHugh*, No. 1:02CV389, 2002 WL 31942137, at *2 (M.D.N.C. Nov. 13, 2002) (citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999)). "While a pro se litigant's pleadings are liberally construed, a pro se complaint must still contain sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" *Adams v. Sw. Virginia Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 1965). *See also Jones v. Nationwide Advantage Mortg. Co.*, No. 1:17CV189, 2018 WL 1569835, at *5 (M.D.N.C. Mar. 27, 2018) (motion to dismiss granted where *pro se* plaintiff provided no allegations to support his claims); *Caldwell v. Callicut*, No. 1:11CV1146, 2014 WL 2999711, at *3 (M.D.N.C. July 2, 2014), *report and recommendation adopted sub nom. Caldwell v. Callicutt*, No. 1:11CV1146, 2014 WL 4265849 (M.D.N.C. Aug. 27, 2014) ("Despite a liberal construction given to Plaintiff's *pro se* amended complaint, it simply fails to adequately state a claim upon which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6).").

5

## II. PLAINTIFF'S CLAIM FOR VIOLATION OF THE RETAIL INSTALLMENT SALES ACT FAILS BECAUSE N.C.G.S. § 25A-32 IS INAPPLICABLE AND PLAINTIFF DID NOT PROVIDE A PROPER WRITTEN DEMAND UNDER N.C.G.S § 25A-44.

Plaintiff's RISA claim is premised on Defendants' failure to provide Plaintiff with a rebate, a refund, and statement of account after Plaintiff sent a written demand. (SAC ¶¶ 79-85). Plaintiff seeks statutory damages under N.C.G.S. § 25A-44[2] for Defendants' conduct. (*Id.* ¶ 86). N.C.G.S. § 25A-44(3) provides:

> In the event the seller or an assignee of the seller (i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter, the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges. Ten days after receiving written request therefor, the seller shall be liable to the buyer for an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period.

Accepting Plaintiff's allegations as true for purposes of Defendants' Motion, Plaintiff's RISA claim fails for reasons discussed below.

### A. REBATE IS NOT OWED BECAUSE N.C.G.S. § 25A-32 IS INAPPLICABLE.

N.C.G.S § 25A-32 provides, "Notwithstanding any provision in a consumer credit installment sale contract to the contrary, any buyer may satisfy the debt in full at any time before maturity, and in so satisfying such debt, shall receive a rebate, the amount of which shall be computed under the 'rule of 78's,' as follows:

> 'The amount of such rebate shall represent as great a proportion of the finance charge (less a prepayment charge of ten percent (10%) of the unpaid balance, not to exceed

---

[2] Plaintiff cites to subsection 4; though, Defendants believe this was the result of a typographical error.

twenty-five dollars ($25.00)) as the sum of the periodical time balances after the date of prepayment in full bears to the sum of all the periodical time balances under the schedule of payments in the original contract.' No rebate is required if the amount thereof is less than one dollar ($1.00)."

The applicability of N.C.G.S § 25A-32 depends upon whether the transaction in question is a simple interest loan or an obligation involving precomputed finance charges[3]. *See Croysdale v. Franklin Sav. Ass'n*, 601 F.2d 1340, 1345 (7th Cir. 1979) (finding the statute requiring rebate disclosure inapplicable where prepayment did not result in the collection of unearned finance charges); *Martinez v. Idaho First Nat. Bank*, 509 F. Supp. 773, 779 (D. Idaho 1981), *rev'd on other grounds sub nom. Dixey v. Idaho First Nat. Bank*, 677 F.2d 749 (9th Cir. 1982) (finding the statute requiring rebate disclosure "inapplicable to a simple interest loan [because] no rebate of the finance charge occurs since only the interest actually earned is paid by the borrower").

---

[3] The Court in *Gantt v. Commonwealth Loan Co.* provides some background on precomputed interest contracts:
> It is common practice in the consumer lending business to precompute interest on loan transactions. The lender computes the total finance charge to be paid during the life of the loan, adds this to the principal, and divides this total among the periods in which payment is to be made to compute equal, periodic payments. This practice, while convenient in many ways, creates problems when the loan is prepaid. At any given time, the total obligation consists of both the outstanding principal and the portion of the finance charge that has not yet been earned by the lender.

573 F.2d 520, 524 (8th Cir. 1978) (internal quotations marks and citations omitted). Courts have expressly recognized two rebate methods used on precomputed interest contracts for unearned finance charges: (1) the Rule of 78's method and (2) the actuarial method. *Id.* at 524-25. N.C.G.S § 25A-32, like many other State statutes, authorizes the lender to compute refunds of prepaid interest under the Rule of 78's. *See, e.g.*, Cal. Civ. Code § 1803.3, Haw. Rev. Stat. Ann. § 412:9-306.

Prepayment of an obligation that includes a precomputed finance charge "results in payment of interest for the entire term of the obligation" and "thus would result in payment of an unearned finance charge." *Croysdale*, 601 F.2d at 1345. "Frequently in this situation the practice is to give the debtor a rebate of unearned interest so that the finance charge reflects the actual term and amount of the loan." *Id.* In contrast to precomputed obligations, on prepayment of a loan that calculates interest on the basis of the unpaid balance of the debt, "only the remaining unpaid principal is collected." *Id.* Consequently, there is no "collection of unearned finance charges when the obligation is prepaid in full" and no rebate is due to the debtor. *Id.*

Here, Plaintiff alleges that the finance charge for the term of the loan was $1,783.23 and Plaintiff paid a total of $1,005.62 in finance changes. (SAC ¶¶ 14, 16). Page 1 of the Retail Installment Contract (under header "Sales Agreement"), attached to the SAC as Exhibit 2,[4] expressly states, "[y]ou promise to pay us the principal amount of $14,515.00 plus <u>finance charges accruing on the unpaid balance</u> at the rate of 3.90% per year from the date of this Contract until maturity." This language makes it clear that the Retail Installment Contract is not a precomputed interest contract. *See Croysdale*, 601 F.2d at 1345. Rather, the Retail Installment Contract bears all the indicia of a ***simple interest loan***.[5] "Simple

---

[4] Without converting a motion to dismiss into a motion for summary judgment, a court may consider documents attached to the complaint pursuant to Rule 10(c), which states, in pertinent part, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Escander v. McCarthy*, No. 5:20-CV-589-BR, 2021 WL 1298923, at *1 (E.D.N.C. Apr. 7, 2021) (citation omitted).

[5] "[T]he inclusion of the finance charge in the total of payments does not mean that the loan is not a simple interest loan." *Martinez*, 509 F. Supp. at 780. "Title 15 U.S.C.A. § 1639(a)(4) requires lenders to disclose the amount of the finance charge. This apparently

8

interest" means "interest is paid on the principal only and not on accumulated interest." Simple Interest, Black's Law Dictionary (11th ed. 2019). "Under a simple interest contract, the payments made by the borrower are applied first to accrued interest, as well as, other charges that are incidental to the debt, and thereafter to the principal balance. The interest is not compounded and the loan is not calculated on a monthly actuarial basis." *In re Peterson*, No. 05-15388-DWH, 2012 WL 4175008, at *5 (Bankr. N.D. Miss. Sept. 19, 2012). "If the consumer prepays a simple interest loan, he simply pays the unpaid balance of the principal plus the interest actually earned through the date of prepayment (plus any prepayment charge)." *Martinez*, 509 F. Supp. at 780. For simple interest loans, "no rebate of the finance charge occurs since only the interest actually earned is paid by the borrower." *Id.*

Plaintiff's contention that he is entitled to a rebate for the prepayment on the loan is based on a misunderstanding of the way that interest typically accrues on the principal due on any interest-bearing loan that charges simple interest. When a simple interest loan is paid off early, there is no rebate of the finance charge because interest is not paid in advance. *See id.* Since the Retail Installment Contract at issue here is a simple interest loan as opposed to a precomputed interest loan, Plaintiff has paid only the interest actually earned through the date of prepayment. *See id.* As a result, there is no rebate of unearned

---

is required regardless of whether the loan is a simple interest loan or is a precomputed finance charge loan. By including the amount of the finance charge in the total of payments, the defendant has merely informed the plaintiffs of the total cost of their simple interest loan assuming no prepayment, and assuming that all loan payments are timely received." *Id.*

9

interest owed to Plaintiff, thus making N.C.G.S § 25A-32 inapplicable. Thus, the remedy available under N.C.G.S. § 25A-44(3) for the failure to make any rebate required by N.C.G.S. 25A-32 would also not apply to Plaintiff. Consequently, Plaintiff's demand for rebate was futile.

### B. REFUND AND REBATE NOT OWED BECAUSE PLAINTIFF DID NOT PROVIDE PROPER WRITTEN DEMAND UNDER N.C.G.S. § 25A-44.

In addition to the rebate discussed above , Plaintiff also alleges that he is entitled to a refund of $52.00 in allegedly unlawful fees charged by Carvana for registration and tags for the subject vehicle, and as a result, "paid additional amounts in finance charges on top of the unlawful fees under the Contract." (SAC ¶ 31). Notwithstanding, Plaintiff also alleges that $20.00 of the $52.00 was owed for a registration transfer fee and that Carvana sent Plaintiff a check for $31.00 which he rejected. (SAC ¶¶ 30, 34). Plaintiff alleges that on October 14, 2021 at 8:14 a.m. EST, while logged into Bridgecrest.com and using the [Contact Us] feature of the Bridgecrest website, he sent the following demand for a refund and rebate:

> "Regarding the installment contract involving VIN # WBA8E9G54GNT46394, please accept this as a formal written demand for refund or rebate of any 1) unearned amounts of finance charges due to prepayment of the installment contract prior to its maturity and 2) refund of any amounts that were included on page 1 of the Retail Purchase Agreement (3a through 3c) if those amounts were not valid official fees for the state, not required for the transaction or that were required but the amount was in excess of the amount required.
>
> As for item 2) above, please include any finance charges that were paid on those amounts.
>
> Item 1) above is made in accordance with North Carolina General Statute § 25A-32."

(SAC ¶ 38). The statutory penalties available under N.C.G.S § 25A-44 are only available when the seller or assignee fails to pay any rebate or refund due within a 10-day period, and what is clear from Plaintiff's emails with Bridgecrest is that Plaintiff sent his demand to the Bridgecrest email for the purpose of "trigger[ing]" the "statutory penalties[.]" (S*ee* Ex. A)[6] (email labeled "Exhibit 14").

In a reply email, Bridgecrest informed Plaintiff that "We value the privacy and security of your information. In order to assist with your request, please contact Customer Service at the number below and a representative will be happy to assist you. ***Please note that specifics of [Plaintiff's] account cannot be discussed via email or live chat***" and directed Plaintiff to contact Bridgecrest's Customer Service by phone to complete his request. (*Id.*) Plaintiff continued to send messages to the Bridgecrest email and continued to get the same response requiring Plaintiff to call in to obtain the requested information. (*See id.*) Moreover, Plaintiff never contacted Bridgecrest by phone to verify discuss his account and complete the request. (*See id.*) Plaintiff knew that he was required to contact

---

[6] In Plaintiff's Brief in Support of Plaintiff's Motion for Partial Summary Judgement that he filed on December 3, 2021 in state court (subsequently withdrawn by Plaintiff on December 8, 2021), (*See* ECF No. 1, Joint Notice of Removal, Ex. 1), Plaintiff attached emails exchanged with Bridgecrest regarding the demands he made to Bridgecrest on December 3, 2021. Because Plaintiff's demands are central to Plaintiff's claim for violation for RISA, Defendants attach the emails introduced by Plaintiff (labeled Exhibits 11-16 by Plaintiff) as Defendants' **Exhibit A**. *See In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461, 469 (M.D.N.C. 2004) ("[T]he court may consider documents extraneous to the complaint if they are "integral to and explicitly relied on in the complaint" and if the authenticity of the documents is not in issue."); *In re USEC Sec. Litig.*, 190 F. Supp. 2d 808, 814–15 (D. Md. 2002), *aff'd and remanded sub nom. Cohen v. USEC, Inc.*, 70 F. App'x 679 (4th Cir. 2003) ("In considering [a motion to dismiss], the Court will consider the facts stated in the complaint, as well as the documents referred to in the complaint and relied upon by plaintiff in bringing the action.").

Bridgecrest by phone to obtain the information requested, however, he did not but instead continued to send messages in a blatant attempt to "trigger[]" the "statutory penalties[.]" (S*ee id.*) (email labeled "Exhibit 14"). Because Plaintiff failed to call in to Bridgecrest to verify his identity, Bridgecrest was not given an opportunity to provide the information requested by Plaintiff. For this reason, Plaintiff's demand was insufficient under N.C.G.S § 25A-44. Consequently, Plaintiff is not entitled to the statutory penalty of "three times the sum of any rebate due and all improper charges which have not been rebated or refund." N.C.G.S § 25A-44.

### C. **PLAINTIFF DID NOT FOLLOW BRIDGECREST'S INSTRUCTIONS IN ORDER TO RECEIVE A STATEMENT OF ACCOUNT.**

Plaintiff alleges that on October 14, 2021, he sent a written request for a statement of account to Bridgecrest while logged into Bridgrecrest.com. (SAC ¶ 36). Plaintiff alleges that Defendants have not provided Plaintiff with a statement of account. (*Id.* ¶ 37). N.C.G.S § 25A-35 authorizes the buyer to request a statement of account from the seller one time during each 12-month period following execution of a consumer credit installment sale contract and when the buyer repays the debt early. For the same reasons discussed above, Bridgecrest was not given the opportunity to provide the information requested by Plaintiff. Accordingly, Plaintiff is not entitled to any relief for any alleged violation of N.C.G.S § 25A-35.

## III. PLAINTIFF'S CLAIM FOR VIOLATION OF THE FEDERAL ODOMETER ACT IS BARRED BY THE 2-YEAR STATUTE OF LIMITATIONS AND ALSO SUBSTANTIVELY FAILS.

Plaintiff's FOA claim is time-barred and should be dismissed. The FOA requires that persons transferring ownership of a motor vehicle disclose to the transferee, in writing, the "cumulative mileage registered on the odometer." 49 U.S.C. § 32705(a)(1)(A). The FOA prohibits the transferor from making false statements to the transferee surrounding the required mileage disclosures. *See* 49 U.S.C. § 32705(a)(2). "[Courts] have interpreted this prohibition to mean that FOA is violated when the mileage specified on the disclosure statement fails to correspond with the vehicle's actual number of miles traveled, even if the stated mileage does correspond to the odometer reading at the time of sale." *Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F. App'x 622, 630 (4th Cir. 2008) (citation omitted). Further, civil liability arises under the FOA only if a person violating the Act did so with "intent to defraud" and the action for the alleged violation is brought within two years after the claim accrues. 49 U.S.C. § 32710.

Plaintiff alleges that he took possession of the subject vehicle on August 17, 2019. (SAC ¶ 8). Plaintiff, however, did not commence this action until October 28, 2021 and did not add his claim for violation of FOA until January 21, 2022 with the filing of the SAC—more than two years after Plaintiff's claim for violation of the FOA accrued. Further, Plaintiff alleges that the Odometer Disclosure Statement that he "purportedly" signed on August 15, 2019 and that is dated August 17, 2019 (the date of delivery of the subject vehicle), indicated the subject vehicle had 34,447 miles (the "First Odometer Disclosure Statement"). (*Id.* ¶ 35). Plaintiff attaches the First Odometer Disclosure

13

Statement as Exhibit 10 to the SAC. What is clear from Plaintiff's Exhibit 10, however, is that the mileage on the subject vehicle was actually **35**,447, not 34,447.[7] (SAC, Ex. 10). The second Odometer Disclosure Statement, that Plaintiff attaches as Exhibit 11 to the SAC, has Plaintiff's wet signature, the printed date of August 17, 2019, and indicates mileage on the subject vehicle was 35,482 (the "Second Odometer Disclosure Statement"). (SAC, Ex. 11).

Assuming Plaintiff's allegation that Plaintiff was not aware of the Second Odometer Disclosure Statement until discovery is true (though it is not because Plaintiff signed it), equitable tolling of the 2-year statute of limitations is not appropriate because Plaintiff failed to allege that he did not have sufficient inquiry notice of his FOA claim. *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 331 (M.D.N.C. 2002) (In order to properly plead equitable tolling, a plaintiff must properly allege "the presence of due diligence on [the plaintiff's] behalf in discovery of any claim that they may have been able to assert . . . Because of this requirement, a plaintiff cannot take advantage of equitable tolling if 'a reasonable person would be aware of the possibility of the claim,' even if the defendant acted fraudulently.") (citation omitted). Plaintiff does not allege that the odometer was altered in any way, and therefore Plaintiff would have been able to see for himself the actual mileage on the subject vehicle at the time it was delivered to him on August 17, 2019. Plaintiff's conclusory allegation that Carvana fraudulently concealed its actions is not

---

[7] On January 21, 2022, Plaintiff sent an email to counsel for Defendants wherein he acknowledged this error. Plaintiff, however, has not sought leave to amend the SAC to remove the false allegation or remove the FOA claim altogether.

14

sufficient to avoid application of the statute of limitations. *See Stephens v. Bank of Am. Home Loans, Inc.*, No. 5:16-CV-660-F, 2017 WL 384315, at *6 (E.D.N.C. Jan. 25, 2017) ("[M]erely intoning the word 'fraudulently' in a complaint [as Plaintiffs do here] is not sufficient to raise the defense of equitable tolling.").

Further, the SAC and exhibits attached thereto, at most, show that the odometer disclosure was misstated by only **35 miles**, not 1,035 as Plaintiff alleges. Accordingly, this deviation lacks materiality and, as a result, is consequently insufficient to show an "intent to defraud" as required by 49 U.S.C. § 32710(a). *See Gavin v. Koons Buick Pontiac GMC, Inc.*, 28 F. App'x 220, 223 (4th Cir. 2002). There is no rational basis for defrauding a consumer by overstating the odometer by 35 miles. Moreover, pursuant to the North Carolina Title and License Manual, a reference guide for dealers issued by the North Carolina Division of Motor Vehicles, a discrepancy of less than 1,000 miles is acceptable. *See* North Carolina Title and License Manual § 1, ch. 4 at p. 2 (15th ed. 2018), attached hereto as **Exhibit B**, *available at* https://connect.ncdot.gov/business/dmv/dmv%20documents/nc%20title%20manual.pdf.).[8] The purpose of the FOA is to "prohibit tampering with motor vehicle odometers" (49 U.S.C. § 32701(b)(1)); "to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers" (49 U.S.C. §

---

[8] "[T]he court can consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting a motion to dismiss into one for summary judgment." *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019) (internal quotation marks and citations omitted). Further, "[t]he court may take judicial notice of public documents and government documents because their sources cannot reasonably be questioned." *Id.* at 573 (internal quotation marks and citations omitted).

15

32701(b)(2)); and "to protect consumers from unscrupulous dealers who were intentionally trying to conceal a vehicle's mileage and take advantage of unsuspecting buyers who were relying upon those disclosures in assessing the safety and reliability of a vehicle" (*Tripp*, 290 F. App'x at 632). The facts and circumstances of this case do not present that situation. A 35-mile discrepancy does not affect any determination as to the vehicle's safety, reliability, or value. The SAC is also devoid of any allegations whatsoever regarding the operability of the odometer.

In short, Plaintiff's claim under FOA is barred by the 2-year statute of limitations. In addition to being time barred, Plaintiff's FOA claim fails because the immateriality of the difference in miles stated on the odometer disclosures is insufficient to show an "intent to defraud." Accordingly, Plaintiff's allegations do not assert a claim for violation of FOA against Carvana.

### D. PLAINTIFF'S CLAIM FOR VIOLATION OF THE TRUTH IN LENDING ACT IS BARRED BY THE 1-YEAR STATUTE OF LIMITATIONS.

Plaintiff's TILA claim is also time-barred and should be dismissed. TILA requires borrowers to assert a claim "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Here, the alleged violation occurred on August 17, 2019, when Carvana and Plaintiff executed the Retail Installment Contract. Plaintiff did not commence this action until October 28, 2021 and did not add his claim for violation of TILA until January 14, 2022 with the filing of the First Amended Complaint. Although Plaintiff alleges that the 1-year statute of limitations should be equitably tolled because "Carvana fraudulently concealed their misrepresentations by withholding documents that would have

16

Case 1:22-cv-00037-CCE-LPA   Document 11   Filed 02/02/22   Page 16 of 20

revealed" the alleged TILA violation, (SAC ¶ 27), Plaintiff is, again, mistaken. While fraudulent concealment tolls a federal statute of limitations, "'[m]erely intoning the word "fraudulently" in a complaint [as Plaintiff does here] is not sufficient to raise the defense' of equitable tolling." *Stephens*, 2017 WL 384315 at *6 (citation omitted). Further, "mere silence, or one's unwillingness to divulge one's allegedly wrongful activities, does not by itself establish fraudulent concealment." *Mullinax*, 199 F. Supp. 2d at 329 (internal quotation marks and citation omitted) (holding that despite the plaintiff's conclusory allegations that the defendant fraudulently concealed kickback schemes, the plaintiff failed to meet all elements of equitable tolling where "[a]t most, the kickback methods allegedly used by [the defendant], if proved, could demonstrate that [the defendant] tried to hide these activities, but it does not demonstrate evidence of the type of affirmative effort to mislead which is usually required and present to justify a finding of fraudulent concealment").

Here, Plaintiff has alleged no facts demonstrating entitlement to equitable tolling. At most, the alleged withholding of documents by Carvana, if proved, could demonstrate that Carvana tried to hide the actual fees paid to public officials, but it does not demonstrate evidence of the type of affirmative effort to fraudulently mislead Plaintiff. *See id.* As a result, this element of equitable tolling is not properly plead and in light of this deficiency, Plaintiff has not properly stated an actionable claim for violation of TILA.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss, with prejudice, Count 2 of Plaintiff's SAC, and Carvana respectfully requests that this Court

17

also dismiss, with prejudice, Counts 4 and 5 of Plaintiff's SAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[9]

Dated this 2nd day of February, 2022.    Respectfully submitted,

/s/Ashia Crooms-Carpenter
Ashia Crooms-Carpenter
N.C. Bar No. 54342
NELSON MULLINS RILEY &
SCARBOROUGH LLP
ashia.carpenter@nelsonmullins.com
301 South College Street / 23rd Floor
Charlotte, NC 28202
Phone: (704) 417-3000
Fax: (704) 377-4814

*Attorney for Carvana, LLC and Bridgecrest Credit Company, LLC*

---

[9] In this case, dismissal with prejudice is warranted. *See Brown v. Gibson*, No. 4:17-CV-180-FL, 2019 WL 7194069, at *8 (E.D.N.C. July 1, 2019) (The Court granted motion to dismiss in favor of the moving defendants where the pro se plaintiff's claims were "subject in the first instance to dismissal as time barred," the pro se plaintiff made "multiple prior amendments to the complaint," and "successive amendments and suggested factual allegations in response to motion to dismiss do not cure the defects in plaintiff's claims.")

## Certificate of Compliance

Pursuant to Local Rule 7.3(d)(1) of the Rules of this Court, I certify that Defendants Carvana, LLC and Bridgecrest Credit Company, LLC's Memorandum in Support of Joint Partial Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6), which was prepared using Times New Roman 13-point typeface, contains 5,064 words, excluding the parts of the document that are exempted by Rule 7.3(d)(1). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 2nd day of February 2022.

                                                              */s/Ashia Crooms-Carpenter*
Ashia Crooms-Carpenter
N.C. Bar No. 54342
NELSON MULLINS RILEY & SCARBOROUGH LLP
ashia.carpenter@nelsonmullins.com
301 South College Street / 23rd Floor
Charlotte, NC 28202
Phone: (704) 417-3000
Fax: (704) 377-4814

***Attorney for Carvana, LLC and Bridgecrest Credit Company, LLC***

## CERTIFICATE OF SERVICE

I, Ashia Crooms-Carpenter, hereby certify that, on February 2, 2022 a true and correct copy of the foregoing was served upon Arthur Hill using the Court's CM/ECF system:

Arthur Hill
2849 Trestle Court SW
Concord, NC 28025
***Pro Se Plaintiff***

*/s/Ashia Crooms-Carpenter*
***Attorney for Carvana, LLC and***
***Bridgecrest Credit Company, LLC***