IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ARTHUR HILL,                                )
                                            )
        Plaintiff, pro se,                  )
                                            )
vs.                                         )
                                            )   1:22-CV-00037
Carvana, LLC. and                           )
Bridgecrest Credit Company, LLC.            )
                                            )
        Defendants.                         )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS CARVANA, LLC AND BRIDGECREST CREDIT COMPANY, LLC MOTION TO DISMISS

Plaintiff hereby submits this memorandum in opposition to Defendants Motion To Dismiss Counts 2, 4 and 5 of the Second Amended Complaint.

### RELEVANT FACTUAL ALLEGATIONS

Plaintiff alleges that on August 15, 2019, he electronically signed a Retail Purchase Agreement ("RPA") and Retail Installment Contract and Security Agreement ("Contract") for the purchase of the subject vehicle. (ECF No. 8, SAC ¶ 8). On August 17, 2019, Carvana provided Plaintiff with a copy of a RPA, Contract, an Odometer Disclosure and other documents with signatures that appeared to be the Plaintiff and apparently signed by via DocuSign. (Id.¶ 8-9). The RPA and Contract were also dated August 17, 2019 although Plaintiff never signed any documents via DocuSign on that date. (Id. ¶ 8).

Plaintiff also alleges that the RPA and Contract which he attached to the SAC as Exhibit 1 and 2, respectively, are "[o]n information and belief . . . not documents that Plaintiff electronically signed on August 15, 2019." (Id. ¶ 54). Plaintiff alleges that "the signatures and

1

initials that appear on [the RPA and Contract] couldn't have been made by the Plaintiff because, upon closer inspection, the signatures are different, even within the same document. (Id. ¶ 51). According to Plaintiff, the documents are "good forgeries." (Id. ¶ 54). Plaintiff alleges that among other things, a Certificate of Completion from DocuSign would provide details about each signer of the documents, including the signer's IP address, a signature image and key event timestamps (Id. ¶ 46). Plaintiff further alleges upon information and belief that discovery (i.e. of the native Certification of Completion) would reveal that an employee or agent of Carvana forged the Plaintiff's signature on versions of the Contract and Retail Purchase Agreement. (Id. ¶ 49) Plaintiff alleges that discovery may also reveal that Carvana made material changes regarding terms between what Plaintiff actually signed on August 15, 2019 and the documents he was provided on August 17, 2019. (Id. ¶ 68)

Plaintiff alleges that he paid a $10,000 cash down payment, was provided a $200 credit from Carvana for his trade-in vehicle, and financed the remaining $14,515.00 for the purchase of the subject vehicle. (Id. ¶ 14). The terms of the loan as listed on the alleged forged documents included a 3.90% APR, a term of 72 months and a total finance charge of $1,783.23 for the term of the loan. (Id.) Plaintiff alleges that he paid his loan in full on September 22, 2021. (Id. ¶ 16). Plaintiff alleges that he paid a total of $1,005.62 in finance charges for the loan. (Id.)

Plaintiff alleges that the total purchase price of the subject vehicle included certain unlawful fees charged by Carvana. (Id. ¶ 25). First, Plaintiff alleges that he was charged $1.00 for a temporary plate fee that was neither provided to Plaintiff nor warranted since Plaintiff was transferring plates from his trade-in vehicle to the subject vehicle. (Id. ¶¶ 20, 25, 28). Second, Plaintiff alleges that he was unlawfully charged a NC registration fee of $36.00 instead of a

2

$20.00 registration transfer fee that was not charged or collected according to the forged RPA and Contract. (Id. ¶¶ 25, 30). Third, Plaintiff alleges that he was unlawfully charged a county registration fee of $15.00. (Id. ¶¶ 25, 27). Plaintiff alleges that, as a consequence of these allegedly unlawful fees charged by Carvana, he "paid additional amounts in finance charges on top of the unlawful fees under the Contract." (Id. ¶ 31). Further, Plaintiff alleges that, as part of a scheme to conceal amounts which were paid or not paid, Carvana removed the receipt to the registration for the subject vehicle which would have revealed that Carvana did not pay official fees totaling $52.00 but instead paid a $20.00 transfer plate fee. (Id. ¶¶ 34, 108). Plaintiff admits that Carvana sent him a check for $31.00 on December 1, 2021 well after the 10-day period of time to respond but Plaintiff refused to accept the check. (Id. ¶ 34).

According to Plaintiff, on October 14, 2021, Plaintiff sent a message to Bridgecrest on Brigecrest.com requesting a statement of account. (Id. ¶ 36). Plaintiff alleges that on that same day he sent a second message to Bridgecrest on Bridgecest.com requesting a rebate and refund. (Id. ¶ 38). Plaintiff alleges that he is due a refund of approximately $765.40, excluding the above disputed official fees. (Id. ¶¶ 39-40). "This amount was determined using the Rule of 78's[.]" (Id. ¶ 40). Plaintiff alleges that he has not received a statement of account or rebate from Carvana or Bridgecrest. (Id. ¶¶ 37, 39).

Plaintiff also alleges that the Odometer Disclosure Statement provided to Plaintiff on August 17, 2019 indicated that the mileage on the subject vehicle was 34,447 [1]; though, the mileage on a different Odometer Disclosure Statement indicated that the mileage on the subject

---

[1] This was incorrectly stated due to a typo also resulting in a miscalculation of the difference alleged as 1,035 miles when it should have been stated as 35 miles difference.

3

vehicle was 35,482 miles. (Id. ¶ 35.) Plaintiff alleges that this new Disclosure Statement was backdated, has Plaintiff's forged signature, and was not provided to Plaintiff until discovery in the state court for this case. (Id.) Plaintiff states under Count 4 that this misrepresentation was reasonably calculated to directly affect Plaintiff's rights under a limited warranty purportedly signed by him. (Id. ¶ 99) The discovery of this second odometer disclosure was also accompanied by the discovery of two previously undisclosed title applications, including (a) **"Exhibit A"** attached to this response which was not presented to the Plaintiff for a signature on August 17, 2019, is forged and contains the mileage that was disclosed to the Plaintiff on August 17, 2019 and (b) **"Exhibit B"** attached to this response which was apparently created weeks after the transaction, is unsigned, contains a different odometer reading and was apparently sent to the DMV with a yet to be discovered forged signature.

## ARGUMENT

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) provides, in pertinent part, "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not have detailed factual allegations, but Rule 8 "requires more than labels and conclusions.... [A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Facial plausibility means that a "plaintiff pleads factual content that

4

Case 1:22-cv-00037-CCE-LPA Document 15 Filed 02/17/22 Page 4 of 14

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. That is, the court accepts facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff. *Venkatraman v. REI Sys.*, 417 F.3d 418, 420 (4th Cir.2005). (quoting *Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615 (E.D. Va. 2013)

## II. PLAINTIFF STATES A CLAIM UNDER THE RETAIL INSTALLMENT ACT BECAUSE N.C.G.S. § 25A-32 IS APPLICABLE AND PLAINTIFF PROVIDED A WRITTEN DEMAND AS REQUIRED UNDER N.C.G.S. § 25A-44.

The Defendants argue a Contract subject to Plaintiff's claims are not applicable to RISA's rebate and remedial provisions by side-stepping the definitions under N.C.G.S. § 25A generally. Regarding N.C.G.S. § 25A-44, the Defendants have focused on adding their own self-serving requirement that Plaintiff make a phone call in addition to his written request for a rebate. They also argue that N.C.G.S. § 25A-32 is based on whether a finance charge is calculated using simple interest loan or an obligation involving precomputed finance charges without attempting to cite, within the statute or North Carolina case law, how these so-called additional requirements are supported. A reading of the statute, contract language and North Carolina case law shows their position is without merit.

### A. N.C.G.S. § 25A-32 IS APPLICABLE AND A REBATE IS OWED

Although it is still unclear whether the terms of the Contract attached to the SAC as Exhibit 2 and the yet to be discovered Contract that the Plaintiff signed are the same, it is clear that this

5

case involves a "consumer credit sale" within the meaning of N.C. Gen. Stat. § 25A-2, and therefore, the provisions of Chapter 25A, entitled "Retail Installment Sales Act," are applicable. N.C. Gen. Stat. § 25A-2(a) (2017) ("a 'consumer credit sale' is a sale of goods or services in which (1) The seller is one who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit, (2) The buyer is a natural person, (3) The goods or services are purchased primarily for a personal, family, household or agricultural purpose, (4) Either the debt representing the price of the goods or services is payable in installments or a finance charge is imposed, and (5) The amount financed does not exceed seventy-five thousand dollars ($75,000)[.]").

Plaintiff may assert a claim under RISA against a seller or assignee/holder of the instrument. N.C. Gen. Stat. § 25A-25 provides as follows:

> (a) In a consumer credit sale, a buyer may assert against the seller, assignee of the seller, or other holder of the instrument or instruments of indebtedness, any claims or defenses available against the original seller, and the buyer may not waive the right to assert these claims or defenses in connection with a consumer credit sales transaction. Affirmative recovery by the buyer on a claim asserted against an assignee of the seller or other holder of the instrument of indebtedness shall not exceed amounts paid by the buyer under the contract.
>
> (b) Every consumer credit sale contract shall contain the following provision in at least ten-point boldface font:
> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

N.C. Gen. Stat. § 25A-25(a)-(b).

Based on the plain language of G.S. § 25A-24(a)-(b), Carvana is a seller and Bridgecrest is a holder of a Contract or assignee of the seller, subject to Plaintiff's claims. *See Commercial Credit Equipment Corp. v. Thompson*, 48 N.C. App. 594, 269 S.E.2d 286 (1980) (judgment on the pleadings was in error, where N.C. Gen. Stat. § 25A-25(a) applied, and the plaintiff, as assignee of the seller, was subject to the defendants' plea of fraud). Furthermore, the Contract attached to the SAC includes the notice from G.S. § 25A-25(b).[2]

The Defendants argue that the applicability of N.C.G.S. § 25A-32 depends upon whether the transaction in question is a simple interest loan or an obligation involving precomputed finance charge. They argue that Plaintiff's demand for a rebate is futile which necessarily includes fraudulently obtained official fees that were not paid to the DMV. They can't point to the statute or to any North Carolina case law to support this argument because it would fail. Under the statute, what is relevant to this argument is whether "the debt representing the price of the goods or services is payable in installments or a finance charge is imposed, and the amount financed does not exceed seventy-five thousand dollars ($75,000)[.]" as seen under N.C.G.S. § 25A-2(a)(4)-(5). *See also Ford Motor Credit Co. v. McBride*, 257 N.C. App. 590, 811 S.E.2d 640 (N.C. Ct. App. 2018). The transaction in question meets all of the definitions under N.C.G.S. § 25A-2(a)(1)-(5). Unfortunately, at this stage, the actual APR and amount of finance charges that should have been in effect according to a Contract that the Plaintiff actually signed via DocuSign is still unknown. And as a result, the allegations regarding a rebate of unearned interest are based on documents that Plaintiff alleges are forged. Discovery could reveal that the APR was lower and the finance charges should have been less.

---

[2] *See* SAC. Exhibit 2, pg 4

7

Case 1:22-cv-00037-CCE-LPA Document 15 Filed 02/17/22 Page 7 of 14

Also relevant, which is not mentioned is a rebate of unlawfully collected and retained official fees as defined under N.C.G.S. § § 25A-10 and any interest collected on those fees. Plaintiff alleged Defendant charged, collected and retained certain fees for themselves while concealing the registration receipt that would have revealed this fact. These allegations are also alleged in support of Plaintiff's claim of fraud under Count 1 and support Plaintiff's argument that the 1-year statute of limitations should be tolled due to fraudulent concealment. Obviously, the rebate of unlawfully collected and retained official fees has nothing to do with whether a transaction involves simple interest or precomputed finance charge calculation. If a Court were to accept the Defendants argument that N.C.G.S. § 25A-32 is not applicable, the Court renders invalid the N.C.G.S. § 25A-44(3) provision stating in relevant part that "In the event the seller...shall charge and receive sums not authorized by this Chapter, the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges".

Simply put, whether the transaction in question is a simple interest loan or an obligation involving precomputed finance charge is inapplicable and the Defendants' argument to this point is not supported by the statute, North Carolina case law and is otherwise without merit. This claim is about more than unearned finance charges. The Court should reject this frivolous argument and find that any Contract containing the language seen in Exhibit 2 attached to the SAC is subject to the provisions of N.C.G.S. § 25A-32. As such, the SAC sufficiently states a claim for violation of N.C.G.S. § 25A-32.

### B. PLAINTIFF'S WRITTEN REQUEST FOR REBATE WAS SUFFICIENT UNDER N.C.G.S. § 25A-44 AND THE LAW DOES NOT REQUIRE MORE THAN A WRITTEN REQUEST.

The Defendants' argument regarding Plaintiff's demand for a rebate simply attempts to

write a new requirement into the statute, asking the Court to find that the Plaintiff must (1) submit his request in writing and (2) then comply with Defendants demands to make a phone call to discuss a closed account before they are legally obligated to respond to a written request. 25A-44 states in relevant part:

> In addition to remedies hereinbefore provided, the following remedies shall apply to consumer credit sales:
>
> . . .
>
> (3) In the event the seller or an assignee of the seller (i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter, the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges. Ten days after receiving written request therefor, the seller shall be liable to the buyer for an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 10-day period.

The language makes it clear that ". . .Ten days after receiving written request...the seller shall be liable. . .". Plaintiff was only required to submit his request in writing and as such, Plaintiff submitted a written request using the [Contact Us] method that Bridgecrest provided online. Nothing more was required of the Plaintiff to make his demand for a rebate, even if he sent his request via certified mail. The Defendants can't reasonably argue that using Bridgecrest's online method to request a rebate in writing was not a written demand sufficient to trigger requirements under N.C.G.S. § 25A-44.[3] Nothing in the statute requires a written request accompanied by a follow-up phone call at the behest of the Defendants. Defendants merely

---

[3] Plaintiff provided a screen recording of his written request for a rebate during discovery while this case was in state court. See https://drive.google.com/file/d/1HZ1ht8HKYqxvSwktNF-r7yJAL6VuwoSo/view?usp=sharing These are best viewed in full screen mode.

9

dismiss the written demand and argue that Plaintiff was required to take an additional step of making a phone call. Obviously, if the Defendants actually needed to speak with the Plaintiff, they had his contact information, including his phone number. They did not call the Plaintiff regarding any written request.

Plaintiff is not now nor was he ever required by law to make a phone call to follow-up on a written demand for a rebate and Defendants can't cite any provision under N.C.G.S. § 25A or North Carolina case law to support this argument. It is also obvious that if Defendant were successful in making this argument, the same argument could be made if the Plaintiff made a written request via certified mail. They could respond and demand that the Plaintiff contact Defendants by phone before they would respond…and until the Plaintiff took that additional step, they were, in their minds, not obliged to respond at all. The Court should reject this frivolous argument and find that the Plaintiff's allegation that he provided written request at bridgecrest.com was a sufficient without more to trigger the requirement for a response within a 10-day period and that Plaintiff has stated a claim upon which relief may be granted.

### C. PLAINTIFF DID NOT HAVE TO TAKE ANY ADDITIONAL STEPS IN ORDER TO RECEIVE A STATEMENT OF ACCOUNT BEYOND MAKING A WRITTEN REQUEST.

Similar to Plaintiff's argument in the preceding section, Plaintiff made a written request for a statement of account.[4] Defendants argue that Bridgecrest was not given the opportunity to provide the information requested by the Plaintiff and Plaintiff is not entitled to any relief for any alleged violation of N.C.G.S. § 25A-35. This argument is without merit. Defendants have had 4 months now to respond to this seemingly simple request and has refused to do so, even in

---

[4] https://drive.google.com/file/d/1GVY0yw1QLXy9Bxko0Wtb6nNk6VEi3n-5/view?usp=sharing

10

response to a discovery request.

Plaintiff included language in this request to trigger a response from Defendants in 30 days by asking them to "include an accounting of any earned and unearned finance charges that were paid". *See* N.C.G.S. § 25A-35(c). Defendants could have responded to the Plaintiff by providing a statement of account by November 15, 2021, 30 days after the request but they did not. They could have responded prior to answering the original complaint in state court on or around December 2, 2021, 45 days after the request but they did not. But as mentioned, Defendants still have not responded and provided a statement of account. As such, the Plaintiff has stated a claim for violation of N.C.G.S. § § 25A-35(c), which at least constitutes an unfair trade practice under G.S. 75-1.1 in accordance with G.S. 25A-44(4).

### III. PLAINTIFF'S CLAIM UNDER THE FEDERAL ODOMETER ACT ("FOA") IS NOT TIME BARRED AND THE FEDERAL "DISCOVERY RULE" APPLIES.

Defendants argue that Plaintiff's claim under FOA is time barred due to a two year statute of limitations. 49 U.S. Code § 32710(b) states:

> A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction. The action must be brought not later than 2 years after the claim accrues. The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person.

Because a claim under FOA is based on the fraudulent intent of the seller, the federal "discovery rule" applies. [W]here a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it

11

from the knowledge of the other party." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (quoting *Bailey v. Glover*, 88 U.S. 342, 21 Wall. 342, 22 L.Ed. 636 (1875)). The cause of action does not accrue until the time that the Plaintiff "discovered, or had failed in reasonable diligence to discover, the alleged deception." *Id.*

In this case, Plaintiff had no other document in his possession to have actual or constructive knowledge of a different mileage until 2021. Plaintiff alleges that he received an odometer disclosure on August 17, 2019 which stated the actual mileage was 35,447. (SAC ¶ 35) Plaintiff also alleges that during discovery, Carvana produced another odometer disclosure which was allegedly forged, backdated and shows a different mileage of 35,482.[5] *Id.* He further alleges that there was intent to defraud the Plaintiff regarding a warranty. *Id.* Based upon the allegations of the SAC, the statute of limitations began to run upon discovery of the other mileage in December 2021. As such, the Plaintiff has stated a claim upon which relief may be granted and the Court should deny the Defendants motion to dismiss the Plaintiff's FOA claim based on a statute of limitations defense.

### IV. PLAINTIFF STATES A CLAIM UNDER THE TRUTH IN LENDING ACT ("TILA") AND THE STATUTE OF LIMITATIONS SHOULD BE TOLLED DUE TO FRAUDULENT CONCEALMENT

Similar to the Plaintiff's FOA claim, the Court should deny Defendant's motion to

---

[5] Plaintiff misstated the mile difference, alleging a 1,035 different instead of a 35-mile difference. Exhibit 11 attached to the FAC has what appears to be a wet signature yet Carvana did not present that document for Plaintiff's signature on August 17, 2019 nor provide Plaintiff a copy of the inconsistent document until December 2021. Every document with a signature provided to the Plaintiff in 2019 was apparently signed via DocuSign. Similarly, Carvana also produced an unsigned MVR-1 Title Application during discovery, apparently created weeks after the BMW purchase. The second MVR-1 has the same odometer reading as the odometer disclosure first provided in 2021 during discovery. Presumably, the second MVR-1 was sent to the DMV and also contains yet another forged signature, although Carvana has yet to produce a signed copy of that document.

dismiss Plaintiff's TILA based on a statute of limitations defense at this stage because Plaintiff has alleged fraudulent concealment of information that could have provided actual or constructive knowledge that Carvana charged, collected but did not pay certain official fees to the DMV. That same information would have also revealed that Carvana paid a $20 fee that was never disclosed. Had Carvana provided what appears to be the receipt portion of the BMW registration in 2019, as seen in **"Exhibit C"** attached to this response, Plaintiff would have had constructive or actual knowledge of amounts that Carvana paid or did not pay to the DMV. As such, the Court should deny the Defendants motion to dismiss the Plaintiff's TILA claim at this staged based upon allegations that Carvana actively concealed the very information that would have made Plaintiff aware of their actions in 2019 instead of 2021.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss Counts 2, 4 and 5 of the Plaintiff's SAC and order Defendants to answer the SAC in its entirety.

Submitted, this the 15th day of February, 2022.

*Arthur Hill*
Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing and Exhibits A, B & C were served upon the following attorneys via email.

| Ashia Crooms-Carpenter<br>Nelson Mullins Riley & Scarborough LLP<br>301 South College Street, Suite 2300<br>Charlotte, NC 28202<br>Email: ashia.carpenter@nelsonmullins.com<br>Phone: 704.377.4814 | Paul T. Collins<br>Nelson Mullins Riley & Scarborough LLP<br>1320 Main Street, 17th Floor<br>Columbia, SC 29201<br>Email: paul.collins@nelsonmullins.com<br>Phone: 803.799.2000 |
|---|---|
| Kadeisha West<br>Nelson Mullins Riley & Scarborough LLP<br>201 17th Street, 17th Floor<br>Atlanta, GA 30363<br>Email: kadeisha.west@nelsonmullins.com<br>Phone: 404.322.6000 | |

This the 15th day of February, 2022.

*Arthur Hill*
Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

14

Case 1:22-cv-00037-CCE-LPA Document 15 Filed 02/17/22 Page 14 of 14