

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Case No: 22-CV-00037

| | | |
|---|---|---|
| ARTHUR HILL, | ) | |
| | ) | |
| Plaintiff, pro se, | ) | **PLAINTIFF ARTHUR HILL'S** |
| | ) | **MEMORANDUM OF LAW IN** |
| vs. | ) | **SUPPORT OF HIS MOTION** |
| | ) | **FOR PARTIAL SUMMARY** |
| Carvana, LLC. and | ) | **JUDGMENT** |
| Bridgecrest Credit Company, LLC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Arthur Hill ("Plaintiff"), pursuant to Local Rules 7.1 through 7.3 hereby submits this Memorandum of Law in Support of his Motion for Partial Summary Judgment as to all Counts against Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest" collectively "Defendants").

## I.   NATURE OF THE MATTER BEFORE THE COURT

This matter comes to the Court on Plaintiff's motion pursuant to Fed. R. Civ. P. 56(a) and regarding his Second Amended Complaint (ECF No. 8 ["SAC"]), for partial summary judgment regarding liability for Counts 2, 4 and 5.

## II.   STATEMENT OF RELEVANT FACTS

On August 15, 2019, Plaintiff visited carvana.com, found a 2016 BMW ("BMW") with VIN # WBA8E9G54GNT46394 and electronically signed, among other documents, a Retail Purchase Agreement ("RPA") and Retail Installment Contract and Security

1

Agreement ("Contract") and Odometer Disclosure ("Mileage Disclosure") for the purchase of the subject vehicle at a sales price of $23,900. (SAC ¶ 8, Exhibits 1, 2 & 10). Plaintiff was advised he did not need to print any of those signed documents and Carvana did not provide any documents regarding the transaction until two days later. (Id. ¶¶ 8-11, 49, Exhibit 3 pg 4) On August 17, 2019, Carvana provided Plaintiff with a copy of a RPA, Contract, Mileage Disclosure Statement and other documents with signatures that appeared to be the Plaintiff's and apparently signed electronically via DocuSign. (Id.¶ 8-9, Exhibits 1-2 & 10). The RPA, Contract and Mileage Disclosure Statement were dated August 17, 2019 although Plaintiff never signed any documents via DocuSign on that date. Each document containing a signature had a DocuSign envelope id printed in the top left corner. (Id.) During Plaintiff's in-person visit, he signed a document titled 'Dealer's Assignment Of Title To A Motor Vehicle' ("Title Assignment") using a wet signature. (Plt Aff ¶¶ 5-6; Exhibit 17). Plaintiff was not presented and he did not sign the BMW's original title, a title application ("MVR-1"), a power of attorney ("MVR-63") or any other power attorney during his visit. (Plt Aff ¶ 5) Plaintiff alleges all of the documents he was provided during his in-person visit and purportedly signed by him using DocuSign were forged. (SAC ¶¶ 41-69)

Plaintiff received a link to a Risk Based Pricing Notice via email on August 17 & 19 of 2019, two and four days respectively after he signed documents consummating the transaction. (Id. ¶¶ 10-11; Plt Aff ¶ 11)(See also notices attached hereto as "Exhibit 12"

2

and "Exhibit 13" respectively)[1]

The terms of the agreement as listed on the allegedly forged Contract's TILA disclosures included a 3.90% APR, a term of 72 months, amount financed of $14,515, down payment of $10,200 (included $200 for trade-in) and a total finance charge of $1,783.23 (SAC Exhibit 2 pg 1) The itemization of amount financed per the same document indicated $104 as the sum of charges and amounts paid to others on item "Y". (Id. Exhibit 2 pg 2) The RPA breaks down certain amounts that were allegedly paid to others in line items 3a-3d. (SAC Exhibit 1 pg 1) Line items 3a-3c were not due or paid to the DMV. (ECF No. 15 Exhibit B-C)

The odometer disclosure statement that was provided to the Plaintiff disclosed an actual mileage of 35,447. (Id. ¶ 35, Exhibit 10) A second odometer disclosure statement and unsigned title application produced during discovery in state court list a different mileage of 35,482. (SAC Exhibit 11; ECF No. 15 Exhibit B; Plt Aff ¶ 26) Plaintiff received the BMW registration card from Carvana in the mail in September 2019 and alleges that document did not include any receipt showing the fees that were paid or not paid to the DMV. (SAC Exhibit 8; Plt Aff ¶¶ 13, 23-25). During discovery in state court, Carvana produced a copy of the BMW registration card with a registration receipt. (ECF No. 15 Exhibit C; Plt Aff ¶¶ 23, 25-26).

---

[1] 12 CFR § 1022.73(c)(1)(i) provides that "In the case of a grant, extension, or other provision of closed-end credit, before consummation of the transaction, but not earlier than the time the decision to approve an application for, or a grant, extension, or other provision of, credit, is communicated to the consumer by the person required to provide the notice;" 12 CFR § 1022.73(c)(2) relates to certain automobile lending transactions and the timing of disclosures in section (c)(1)(i) applies. These provisions cannot be privately enforced.

Plaintiff made 25 monthly payments for a total of $5,675 and submitted the final quoted payoff amount of $9,845.62 on September 22, 2021. On or around October 12, 2021, Plaintiff received the BMW Title from the DMV, which indicated a mileage of 35,482 was reported to the DMV by Carvana. (*see* Title attached hereto as "Exhibit 16") On October 14, 2021, Plaintiff submitted written requests for both a statement of account and a rebate using the [Contact Us] feature at bridgecrest.com. (*see* Exhibits 18 and 19 respectively attached) Neither of the Defendants responded to the Plaintiff's requests within their respective time periods. (SAC ¶¶ 36-39)

### III. <u>QUESTIONS PRESENTED</u>

1. DID CARVANA AND BRIDGECREST VIOLATE RISA BY FAILING TO PROVIDE A REBATE AND STATEMENT OF ACCOUNT IN VIOLATION OF N.C.G.S. §§ 25A-44(3)-(4) AND 75-1.1?

2. DID CARVANA VIOLATE THE FEDERAL ODOMETER ACT WITH INTENT TO DEFRAUD?

3. DID CARVANA VIOLATE THE TRUTH IN LENDING ACT?

### IV. <u>ARGUMENT</u>

### <u>LEGAL STANDARD</u>

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Zahodnick v. International Bus. Machs. Corp.</u>, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

4

(1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires a trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. Celotex Corp., 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913; Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997).

1. **CARVANA AND BRIDGECREST VIOLATED RISA AND G.S. 75-1.1 BY FAILING TO PROVIDE A STATEMENT OF ACCOUNT AND REBATE IN ACCORDANCE WITH G.S. 25A-35 AND 25A-32.**

In order to show a violation of G.S. 25A-35 regarding a statement of account, Plaintiff must (1) prove that he requested a statement of account in writing that included finance charges and (2) Defendants did not provide a statement of account within 30 days. G.S. 25A-35 et seq. For a violation of G.S. 25A-32 in accordance with 25A-44(3), Plaintiff must (1) prove that he was due a refund of unauthorized amounts actually paid, (2) he

5

requested a rebate or refund in writing and (3) Defendants failed to provide a rebate within 10-days of his request. G.S. §§ 25A-32 et seq and 25A-44(3). *See* also Steed v. First Union National Bank, 58 N.C. App. 189, 293 S.E.2d 217 (N.C. Ct. App. 1982).

### a. Retail Installment Sales Act

This case involves a "consumer credit sale" within the meaning of N.C. Gen. Stat. § 25A-2, and therefore, the provisions of Chapter 25A, entitled "Retail Installment Sales Act," are applicable. Based on the plain language of G.S. § 25A-24(a)-(b), (1) Carvana and Bridgecrest are sellers, (2) Plaintiff is a buyer, (3) the subject vehicle is a good used for personal use, (4) the debt was payable in installments or a finance charge was imposed and (5) the amount financed did not exceed $75,000. Both Carvana and Bridgecrest, as a holder of the Contract or assignee of the Carvana, are subject to Plaintiff's claims. *See* Commercial Credit Equipment Corp. v. Thompson, 48 N.C. App. 594, 269 S.E.2d 286 (1980) (judgment on the pleadings was in error, where N.C. Gen. Stat. § 25A-25(a) applied, and the plaintiff, as assignee of the seller, was subject to the defendants' plea of fraud). Furthermore, the Contract includes the "NOTICE" from G.S. § 25A-25(b) as follows:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(SAC, Exhibit 2 pg 4) Other relevant portions of G.S. § 25A et seq are: G.S. §§ 25A-35 ("Statement of Account"), 25A-32 ("Rebates on prepayment"), 25A-44 ("Remedies and

6

penalties"), 25A-8 ("Finance Charge") and 25A-10 ("Official Fees").

### b. Unauthorized Official Fees and Finance Charges

Plaintiff found only one case involving 25A-35 and it was a default judgment in

State of North Carolina v. Alpha Finance Company (20-CVS-04181, Wake County

Superior Court).[2] Plaintiff can find no case law interpreting 25A-32 but the Court in Steed

faced interpretation of G.S. 25A-29 regarding default charges. The Court stated "While

we have found no cases on point interpreting this aspect of G.S. 25A-29, our Supreme

Court has held or stated in a number of cases under the usury statutes, see Chapter 24 of

our General Statutes, that usurious interest must first be paid before any recovery may be

had by the borrower. Kessing v. Mortgage Corp., 278 N.C. 523, 180 S.E.2d 823 (1971);

Clark v. Bank, 200 N.C. 635, 158 S.E. 96 (1931); Ripple v. Mortgage Corp., 193 N.C. 422,

137 S.E. 156 (1927). Accord, Equilease Corp. v. Hotel Corp., 42 N.C. App. 436, 256 S.E.2d

836 (1979); disc. rev. denied, 298 N.C. 568, 261 S.E.2d 121 (1979)." Steed v. First Union

National Bank, 58 N.C. App. 189, 293 S.E.2d 217 (N.C. Ct. App. 1982) The Court held

that the Plaintiff had no standing under RISA because, although they were charged default

charges, they didn't actually pay the default charges. In this case, it simply can't be

disputed that Plaintiff paid unauthorized official fees along with finance charges and thus

was owed, at a bare minimum, the unlawfully collected official fees and unearned finance

charges on those amounts. (*see* G.S. §§ 25A-8 and 25A-10)   G.S. § 25A-10(1) defines

---

[2] https://ncdoj.gov/wp-content/uploads/2021/05/Default-Judgment-and-Order.pdf

7

official fees as "Fees and charges prescribed by law *which actually are or will be paid to public officials* for determining the existence of or for perfecting, releasing, or satisfying a security interest related to a consumer credit sale". (emphasis added) G.S. 25A-8 defines finance charges as "... the sum of all charges payable directly or indirectly by the buyer and imposed by the seller as an incident to the extension of credit...". Here, the official fees in question were paid by the Plaintiff but not actually paid to public officials by Carvana so they were unauthorized official fees. These amounts were retained by the Defendants and as such, Plaintiff was due a refund of those amounts. And considering Plaintiff prepaid all official fees with a $10,000 down payment, Plaintiff was due a refund of any finance charges computed using all official fees, not just those which were not authorized. It is still unclear if discovery will reveal if Carvana materially changed terms from a yet to be disclosed Contract that Plaintiff actually signed.

### c. Refusal to provide Statement of Account and Rebate

It can't be disputed that Plaintiff requested a statement of account in writing as allowed under G.S. 25A-35(a) and (c). He also requested a rebate in writing in accordance with G.S. 25A-32 and 25A-44(3). Defendants had motive for refusing to provide a Statement of Account to the Plaintiff.[3] They would have been forced to reveal the truth about amounts that were paid or not paid to others on the Plaintiff's behalf, such as official fees. G.S. 25A-35(a) makes clear that Plaintiff "[shall] be entitled upon request ... to a

---

[3] Carvana also has motive to withhold production of DocuSign documents that will show whether Plaintiff actually signed the documents he alleged were forged or the documents the Plaintiff actually signed that were not forged.

8

statement of account" and that statement "[shall] contain ... (1) The itemized amounts paid

... on behalf of the buyer". Likewise, G.S. 25A-35(c) makes clear that "If the buyer

requests information . . . as to the amount of the finance charges, the seller [shall] provide

such information within 30 days". Likewise, G.S. 25A-44(3) states that ". . . the buyer

[shall] be entitled to demand and receive the rebate due and excessive or unauthorized

charges. Ten days after receiving written request therefor, the seller [shall] be liable to the

buyer for an amount equal to three times the sum of any rebate due and all improper charges

which have not been rebated or refunded within the 10-day period." A violation of G.S.

25A-35 or 25A-32 "[shall] constitute an unfair trade practice under G.S. 75-1.1". G.S.

25A-44(4). Plaintiff requested a statement and a refund of unauthorized amounts and

unearned finance charges.

     If Defendants had complied with Plaintiff's request for a statement of account, they

would have necessarily revealed that Carvana did not pay a $36 Registration Fee or $15

County Registration Fee to the DMV. That these fees were actually hidden finance

charges. It would have also revealed that Plaintiff paid interest on all official fees even

though he prepaid all fees by virtue of a $10,000 down payment and wouldn't have incurred

interest on official fees had he handled registration himself or paid entirely with cash.

Defendants not only refused to provide a statement within 30 days, they refused to respond

with a statement of account even over 4 months later, attempting instead to have the

Plaintiff's RISA claims dismissed under Fed. R. Civ. P. 12. (ECF No. 10-11 and 16) The

9

only actions taken regarding a rebate (perhaps hoping to avoid liability for fraud or RISA) involved a $31 check that Carvana sent about 47 days after Plaintiff's requests, of which the Plaintiff rightfully rejected. If the Plaintiff were not owed any rebate or refund, why would Carvana issue a check regarding some of the unlawfully charged and retained official fees. Defendants can't produce evidence showing Plaintiff did not pay unauthorized amounts; that they did not retain the unauthorized amounts with interest; or that they responded to the requests in the requisite time periods.

The Court could readily determine that Plaintiff (i) was owed a refund of unauthorized amounts actually paid, (ii) requested both a statement of account and rebate in writing and (iii) Defendants failed to act as required by law within the times allowed. As such, the Court should grant summary judgment in favor of the Plaintiff and hold Defendants liable for violating RISA under Count 2. The Court should also rule as a matter of law that their knowing and willful violations also constitute an unfair and deceptive practice in violation of G.S. § 75-1.1 in accordance with N.G.C.S. § 25A-44(4).

## 2. CARVANA VIOLATED THE FEDERAL ODOMETER ACT ("FOA") WITH INTENT TO DEFRAUD.

To show a claim under FOA, Plaintiff must prove (1) the Defendant violated the Act or its regulations, (2) with intent to defraud. Ryan v. Edwards, 592 F.2d 756, 761-62 (4th Cir. 1979). Plaintiff seeks $10,000 in statutory damages. See 49 USC 32710(a) ("A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000,

whichever is greater."). The FOA specifies that an "action must be brought not later than 2 years after the claim accrues." 49 U.S.C. § 32710(b). Plaintiff received an odometer disclosure on August 17, 2019 which means the statute of limitations would run on around August 17, 2021. Coincidentally, the underlying state case regarding 1:21-CV-00714 was filed on August 15, 2021, roughly 1 or 2 days before the statute of limitations would run, assuming equitable tolling isn't allowed due to fraudulent concealment.

This cause of action is based on the fraudulent intent of the seller. As such, the federal "discovery rule" applies. [W]here a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (quoting Bailey v. Glover, 88 U.S. 342, 21 Wall. 342, 22 L.Ed. 636 (1875)).

### a. Mileage Disclosure and Contradictions

At the time of online sale and in person delivery, Carvana required the Plaintiff to sign a number of forms, including an odometer disclosure statement ("Mileage Disclosure #1") and a document titled "Dealers Reassignment of Title To A Motor Vehicle" ("Title Assignment") respectively. (SAC Exhibit 10; Exhibit 17 attached hereto) Both documents contained the same mileage as other documents. Carvana did not present to or require

11

Plaintiff sign the car's original title as required by the Odometer Act. See 49 U.S.C. § 32075(a); 49 C.F.R. § 580.5. Plaintiff was provided a blue envelope prior to leaving Carvana which contained documents purportedly signed by him. Plaintiff reviewed these documents after he arrived home that same day and had no reason to suspect the documents were forged or that an odometer disclosure was not accurate. He learned two years later that the documents couldn't have been signed via DocuSign by him. Carvana has so far refused to produce evidence from DocuSign showing who signed the documents that were provided to the Plaintiff or produce the documents that were actually signed by the Plaintiff via DocuSign.

During discovery in state court, Carvana produced a limited power of attorney ("LPOA") which was purportedly signed by the Plaintiff in 2019. On its face, it is obvious that the LPOA is not an official, secured MVR-63 form issued by the State of North Carolina as required by the Odometer Act, *see* 49 C.F.R. § 580.4. It is also lacking an attorney name, lacks Plaintiff's full legal name and was never provided to the Plaintiff.[4] It appears to have been created in response to this lawsuit for the purpose of suggesting that the Plaintiff provided Carvana authorization to engage in actions contrary to his best interests, including among other things, forging documents like contracts, odometer disclosures and title applications.

---

[4] See Exhibit 14. This document appears to be one created and maintained at DealerTrack found at below URL:
https://us.dealertrack.com/wp-content/uploads/sites/2/2020/08/Limited-Dual-POA.pdf
But see official MVR-63 ("power of attorney") form found at below URL:
https://www.ncdot.gov/dmv/downloads/Documents/MVR-63.pdf

Case 1:22-cv-00037-CCE-LPA   Document 18   Filed 03/10/22   Page 12 of 25

Carvana also produced a contradictory mileage disclosure ("Mileage Disclosure #2") in response to discovery. (SAC Exhibit 11) Unlike Mileage Disclosure #1, the later was purportedly signed by the Plaintiff using a wet signature, thus it would have no audit trail to show who signed it and when it was signed. Plaintiff only signed a mileage disclosure statement electronically via DocuSign on August 15, 2019. Since at least 2017, Carvana required documents such as the Mileage Disclosure to be electronically signed via DocuSign. In <u>Saddler v. Carvana, LLC</u>, CASE NO 4:20CV105 HEA (E.D. Mo. Aug. 11, 2020), Carvana stated under penalty of perjury that "*Since its inception, Carvana's business practice is not to accept pen and ink signatures on its sales contracts other documents presented to the customer electronically. Since 2017, Carvana exclusively utilized the DocuSign application for these processes.*" (internal quotations omitted) (Id. Doc 17-1 ¶ 20 ["Declaration of Joshua Brown"]) Carvana went on to produce a DocuSign Certificate of Completion to show the plaintiff in <u>Saddler</u> signed an Odometer Disclosure Statement on a specific date and time from a specific IP Address with the same signature contained on all signed documents. (Id. Exhibit D pg 60) In this case, Carvana can't produce evidence that Plaintiff viewed or signed Mileage Disclosure #2, thus Plaintiff couldn't have discovered there was a discrepancy in 2019 based on it. They claim instead that Plaintiff apparently should have been suspicious of the mileage before he left Carvana with the vehicle. Apparently, he should have uncovered the discrepancy by removing the documents he had just received from the blue envelope and compared the mileage on

13

documents he received to the actual mileage on the vehicle. (*see* ECF No. 16 pg 5) This argument is without merit and unreasonable at best.

Carvana also produced two contradictory title applications during discovery, neither of which were in Plaintiff's possession prior to that. The first ("Title Application #1") was purportedly signed in-person by the Plaintiff on August 17, 2019 and the mileage was consistent with what was disclosed to him. The second ("Title Application #2") was apparently created weeks later on September 4, 2019 and appears to be the official secured form issued by the State of North Carolina as required by the Odometer Act, *see* 49 C.F.R. § 580.4. It should be obvious that the second couldn't have been seen or signed by the Plaintiff so it was likely forged (or accompanied by other forged documents) before being sent to the DMV. Forging of the title application is also a crime in this state. *See* G.S. § 20-71(a). So it makes sense for Carvana to manufacture a LPOA as a defense to suit, suggesting they had the authority to create and sign title applications or other documents without Plaintiff's knowledge. In essence, the Plaintiff could not have discovered the mileage discrepancy using any title application in 2019 and Carvana couldn't produce evidence to the contrary.

### b. Carvana's Fraudulent Intent

It can't be disputed that Carvana had actual knowledge of the mileage difference no later than September 4, 2019 when they submitted Title Application #2 and paid fees (minus those unlawfully charged) to the DMV for title and registration. It is also reasonable

14

to conclude that Plaintiff wouldn't have been aware of that document in 2019 unless Carvana provided a copy to the Plaintiff once they were aware of the discrepancy. They did not and for good reason. If Carvana had revealed Title Application #2 in 2019, Plaintiff would have gained knowledge of facts giving rise to a FOA claim as well as a claim of fraud regarding the official fees. This claim would have been part of 1:21-CV-00714 when first filed in state court.

Constructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud under the statute. Nieto v. Pence, supra. (quoting Ryan v. Edwards, 592 F.2d 756 (4th Cir. 1979)) Actual knowledge of tampering is not required for a dealer to be held liable. (Id.) Furthermore, "[O]nce a dealer has notice of grounds for suspecting an odometer's inaccuracy, the law imposes on him a duty of further inquiry. The dealer must then investigate the facts in order to ascertain whether the odometer's mileage reading is reliable, before certifying it as such; or, if he chooses not to do this, then he is legally bound to inform the customer that he suspects the odometer is incorrect and that it should not be relied upon. See 15 U.S.C. § 1988(a); 49 C.F.R. §§ 580.4, 580.6; Nieto v. Pence, 578 F.2d 640, 642 (5th Cir. 1978); Tusa v. Omaha Auto Auction, Inc., 712 F.2d 1248, 1252-54 (8th Cir. 1983)."[5] Carvana didn't contact the Plaintiff to inform him that the odometer disclosure he received was incorrect. Nor did they offer an updated warranty

---

[5] The former 15 U.S.C. § 1988 is now at 49 U.S.C. § 32705(a)(4) and 49 U.S.C. § 32706(d)(1)(A) (in concert with 49 C.F.R. Part 580). Case precedent under the Title 15 statutes was unaffected by the move to Title 49.

to account for any discrepancy. They apparently sent a forged Title Application with the correct mileage to the DMV without Plaintiff's knowledge. Plaintiff gained constructive knowledge due to receiving the car's title in October 2021 and actual knowledge from documents received in response to discovery two months after that. The Court or trier of fact can reasonably infer an intent to defraud, based on the totality of the circumstances. Such inferences are inevitable, because the "wrongdoer's intent to defraud is ordinarily proved by circumstantial evidence." Id., 712 F.2d at 1253. For the foregoing reasons, the Court should hold that the Plaintiff gained knowledge of the mileage discrepancy no earlier than October 2021 when he received the car's title from the DMV. It should also grant summary judgment in Plaintiff's favor, finding Carvana liable for violating the Federal Odometer Act with intent to defraud under Count 4.

### 3. CARVANA VIOLATED THE TRUTH IN LENDING ACT ("TILA").

The Truth In Lending Act ("TILA") was enacted to protect consumers in credit transactions. Congress stated that its purpose in creating TILA was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . and to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a). Creditors must make specific disclosures as a part of the process of extending credit to customers. 15 U.S.C. § 1638(a). These disclosures include the amount financed, itemization of the amount financed, the total number of payments, finance charges, the annual percentage rate, and the identity of

16

the creditor. See id. Courts are to construe the terms of the TILA broadly. See, e.g., Nigh v. Koons Buick Pontiac GMC, Inc., 143 F. Supp. 2d 535, 547 (E.D. Va. 2001), aff'd, 319 F.3d 119 (4th Cir. 2003), overruled on other grounds by 125 S.Ct. 460 (2004).

The Fourth Circuit has held that "[t]o ensure that the consumer is protected, as Congress envisioned, requires that the provisions of [TILA] and the regulations implementing it be absolutely complied with and strictly enforced." Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983). Any failure to accurately make the required disclosures under TILA, and according to the accompanying Regulation Z, results in a technical violation requiring no proof of deception or actual damages to obtain its statutory remedies. See id.; Walker v. College Toyota, Inc., 399 F. Supp. 778 (W.D. Va. 1974). 15 U.S.C. § 1640(e) provides that any action for monetary damages under TILA can "be brought . . . within one year from the date of the occurrence of the violation". The Plaintiff was provided the documents on August 17, 2019 hence the statute would run by August 17, 2020 unless the statute of limitations was equitably tolled.

### a. Equitable Tolling Due to Fraudulent Concealment

The essence of a fraudulent concealment claim is that the plaintiff "has been induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass." Chao v. Virginia Department of Transportation, 291 F.3d 276, 283 (4th Cir. 2002) (citing Irwin v. Department of Veterans, 498 U.S. 89, 96 (1990). When the doctrine of fraudulent concealment is invoked, the statute of limitations period does not begin to run

17

until the Plaintiff discovers the fraud. *See* <u>Supermarket of Marlington Inc. v. Meadow Gold Diaries, Inc.</u>, 71 F.3d 119, 122 (4th Cir. 1995). To invoke the doctrine as a ground for equitable tolling, a plaintiff must demonstrate three elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." (Id.)

As to the first element of the Fourth Circuit's test, i.e., whether there is evidence constituting fraudulent concealment of the TILA claim itself, the Fourth Circuit has clearly held that to satisfy the first element, a plaintiff must provide evidence of "affirmative acts of concealment" of the TILA violation by Defendants. (citing <u>Texas v. Construction Co.</u>, 851 F.2d 1526, 1532 (5ᵗʰ Cir. 1988)). It is now settled that plaintiff's proof may include acts of concealment involved in the TILA violation itself. *See* Id. Otherwise, the Fourth Circuit noted, considering "only those acts of concealment completed subsequent in time to the wrong" would lead to "indefensible results." Id. (citing <u>Allan Construction</u>, 851 F.2d at 1532).

This case involves Carvana's exploitation of the general public's lack of knowledge regarding which official fees are applicable and the amount of official fees that may be charged. Apparently, this practice isn't limited to the Plaintiff or this state. Reporting on its accomplishments for 2020, the Consumer Protection Division of the Office of the Attorney General for Georgia stated the following regarding Carvana, LLC:

18

"Attorney General Carr alleged that Carvana, an online used car dealership, consistently misrepresented the amount of money required by government entities for vehicle title and registration. For instance, the Georgia Department of Revenue ("DOR") charges $18 for title fees and $20 for standard tags. Carvana's sales documents, however, charged fees that ranged from $50 to $65, and sometimes more, and characterized these fees as those "paid to public officials . . ."

*See* https://consumer.georgia.gov/organization/about-us/accomplishments-division

Carvana used a similar method in this case, but instead of charging more for fees that were actually due and pocketing the difference, Carvana charged and retained fees that were not due with interest.

### b. Concealment of Hidden Finance Charges

Under TILA, a "finance charge" is any charge "imposed directly or indirectly by the creditor as an incident to the extension of credit," but it "does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a); see also 12 C.F.R. § 226.4(a). The reason is that such charges cannot be considered as having been imposed "as an incident to the extension of credit." To prevail under this provision of TILA, a plaintiff must provide evidence that a fee was incident to the extension of credit and not charged in comparable cash transactions. See Polk v. Crown Auto, Inc., 228 F.3d 541, 542 (4th Cir. 2000) (Polk II); see also Alston v. Crown Auto, Inc., 224 F.3d 332, 334 (4th Cir. 2000).

As shown by record evidence, Carvana indicated that $104 was being paid to others in its TILA disclosure's Itemization of Amount Financed on line item "L". And within that amount, the RPA indicated line items 3a-3c were due. It now can't be disputed that those three items were not due or paid to others but were instead retained by Carvana with

19

interest. These fees and interest aren't typical in a cash transaction and Plaintiff wouldn't have incurred either if he handled title and registration himself. As such, at least $52 of the fees could have only been incident to the extension of credit and amounted to a hidden finance charge that was not disclosed. Not only was this deception self-concealing, Plaintiff alleges that Carvana undertook additional affirmative acts that fraudulently concealed the truth regarding what they paid to others, including (1) removing the receipt from a registration card and then later (2) refusing the provide a statement of account. The steps Plaintiff undertook to uncover the truth over two years later is not something a reasonably diligent person should be expected to undertake.

First, to conceal their fraud regarding the 1$ Temporary Plate Fee, Carvana misrepresented the purpose of a 30-day temporary marker, claiming that its purpose was for proof of registration until Plaintiff received his new registration card. Plaintiff had no reason to doubt this, considering he didn't yet have registration for the BMW. In truth, the 30-day marker could not be used as registration because there was no corresponding temporary plate provided or attached to the BMW. As Plaintiff learned in 2021, the issuance of a temporary plate was forbidden by law. *See* 19A N.C. Admin. Code 3D.0221(b)(6)). This deceptive act of fraud was self-concealing in nature. Although Carvana did not provide a receipt with the registration card, that receipt wouldn't have revealed anything about a temporary plate fee as it was not paid directly to the DMV for

20

this transaction. Short of Carvana's outright admission to their misrepresentation, only legal research could have uncovered this deception.

Second, Carvana didn't reveal a $20 transfer plate was due and paid. They disclosed and retained a $36 NC and $15 Country Registration Fees which were supposedly paid to others. They concealed this in part by removing the registration receipt when they sent the vehicle registration card to the Plaintiff in September 2019. That receipt would have revealed a total of $783 rather than $104 was paid to the DMV. It would have revealed registration fees were not paid as well. And it would have revealed the Transfer Plate fee, although not disclosed, was paid to the DMV. The alteration of the registration card prior to sending it to the Plaintiff is considered a criminal offense in this state. See N.C.G.S. § 20-71(a). This is also why this claim was not part of 1:21-CV-00714 and was only added to this case immediately after removal to this Court.

Third, as mentioned earlier, even if the Plaintiff had received the missing registration receipt in 2019, the $1 Temporary Plate Fee wouldn't have appeared on it. Short of Carvana outright admitting this fee was unlawful without inquiry from the Plaintiff, he wouldn't have known without legal research. During Plaintiff's 2021 investigation into a state action that resulted in ban of Carvana in Wake County, Plaintiff uncovered the laws surrounding the issuance of a temporary plates. This alone is how Plaintiff was able determine that the fee was unlawful and immediately reported it to the

21

Theft Bureau of the DMV. Again, no reasonably diligent person would be expected to conduct this type of legal research to uncover fraud.

Lastly, as discussed herein under RISA arguments, Defendants did not to respond to Plaintiff's request for a statement of account two years later and still has not, allowing them both to continue concealing the truth about finance charges and the true amounts sent to others.

In the end, Carvana succeeded in concealing the fact that they collected and retained seemingly valid official fees with interest for over 2 years and Plaintiff's only suspicions were triggered by gaining knowledge of and investigating a ban of their operations in Wake County. As such, the Court should find that the statute of limitations should be equitably tolled due to fraudulent concealment by Carvana. Furthermore, as the Court can readily determine that there was at least one violation regarding Carvana's TILA disclosures that was not apparent on the face of a Contract or RPA provided to the Plaintiff, it should grant summary judgment in favor of the Plaintiff as to liability for Count 5.

**IN CONCLUSION,** for the foregoing reasons, the Plaintiff believes there are no genuine issues of material facts regarding Counts 2, 4 and 5 for finding liability. Plaintiff respectfully asks the Court for an order granting partial summary judgment in his favor regarding liability as those 3 claims. Additionally, pursuant to Fed. R. Civ. P. 56(g), Plaintiff requests that the Court enter an order stating any material fact that is not genuinely in dispute and treat the facts as established in the case.

22

Respectfully submitted this the 8th day of *March*, 2022.

*Arthur Hill*

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
***Plaintiff, pro se***

23

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.3(d)(1) of the Rules of this Court, I certify that Plaintiff Arthur Hill's Memorandum in Support In Support Of Motion For Partial Summary Judgment pursuant to Rule 56(a), which was prepared using Times New Roman 13-point typeface, contains 6044 words, including the parts of the document that are excepted by Rule 7.3(d)(1). This certificate was prepared in reliance on the word-count function of the word-processing system "Microsoft Word" used to the prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

This the 8th day of March, 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
***Plaintiff, pro se***

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **Memorandum in Support of Motion for Partial Summary Judgment** and **Plaintiff's Affidavit in Support with exhibits** were served upon the following attorneys by e-mail:

Ashia Crooms-Carpenter
Nelson Mullins Riley & Scarborough LLP
301 South College Street, Suite 2300
Charlotte, NC 28202
Email: ashia.carpenter@nelsonmullins.com
Phone: 704.377.4814

This the 8th day of March, 2022.

_Arthur Hill_
Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
***Plaintiff, pro se***

25