IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Case No: 22-CV-00037

ARTHUR HILL, )
)
Plaintiff, pro se, )
)
vs. )
)
Carvana, LLC. and )
Bridgecrest Credit Company, LLC. )
)
Defendants. )
)

## **DECLARATION OF ARTHUR HILL**

Under penalty of perjury and pursuant to 28 U.S.C. § 1746, Declarant, Arthur Hill, states that:

1. My name is Arthur Hill ("Plaintiff", "I", "My" or "Me") and I am the Plaintiff in the above-entitled legal action, above the age of 18 and fully competent to give testimony contained in this Declaration, all of which comes from my personal knowledge.

2. On August 15, 2019, I went to carvana.com and proceeded to purchase a 2016 BMW 328i ("BMW") with VIN # WBA8E9G54GNT46394. During the purchase process, I signed documents online which consisted of the following:

    a) Odometer Disclosure Statement

    b) Arbitration Agreement

    c) Buyers Guide

1

d) Retail Installment Contract and Security Agreement

e) Retail Purchase Agreement

f) Credit Reporting Notice

g) Carvana Limited Warranty

h) Certification that I was not in the process of filing or in active bankruptcy.

After I signed the aforementioned documents on August 15, 2019, I did not print them and Carvana did not send me copies of the documents I had just signed via email on that date. An email that I received from Carvana advised me that I needed to sign the documents but I didn't need to print the documents.

3. Shortly after signing aforementioned documents, I received an email indicating the purchase was approved and delivery of the BMW was scheduled for August 17, 2019 at Carvana's South Blvd Location in Charlotte, NC ("Carvana South Blvd") at 11:30 AM EST.

4. To have my registration plates transferred from my trade-in to the BMW, I emailed a copy of the registration for my trade-in vehicle to Carvana shortly after receiving the email indicating the purchase was approved. The registration was not expired.

5. When I arrived at Carvana South Blvd on August 17, 2019, I checked in at the lobby area and informed someone in the lobby apparently working for Carvana that I had arrived to pick up a vehicle. After some time, I was greeted by a representative of Carvana ("Carvana Rep") who asked me to follow her. After I arrived at the desk of the Carvana Rep, I handed her the title to my 2005 Suzuki ZL-7 ("Trade-in Title") and presented proof that I had added the BMW to my insurance. I was then asked to sign the Trade-in Title,

2

transferring ownership to Carvana, and a Dealer's Reassignment of Title to Motor Vehicle ("Title Assignment"), transferring title of the BMW to me. The Carvana Rep did not ask me to sign any other documents regarding the BMW during my visit with her nor was I provided a copy of any documents containing a wet signature when I left.

6. A true and accurate copy of the Title Assignment is attached hereto as **Exhibit 17**. I was first provided a copy of this document in response to discovery and it has a bates stamp that is apparently **CRVNA00019**.

7. After signing the two aforementioned documents, the Carvana Rep led me down to the BMW, at which time she removed the license plate from my trade-in vehicle, removed the dealer plate from the BMW and attached my trade-in vehicle plate to the BMW.

8. Prior to leaving Carvana, the Carvana Rep also provided me a large blue envelope that had Carvana printed on one side. She stated that it contained the documents I signed related to the purchase and other materials including a CarFax report. I left the Carvana South Blvd location promptly after receiving the blue document envelope and the keys to the BMW.

9. After arriving home on August 15, 2019 with the BMW, I briefly reviewed the documents contained in the blue Carvana envelope. I observed that each document with a signature contained the identical DocuSign Envelope ID which was printed across the top left corner of each page as B2716B28-C969-4600-8617-749CED2DE1AC and consisted of the following:

   1. Odometer Disclosure Statement
   2. Arbitration Agreement

3

Case 1:22-cv-00037-CCE-LPA Document 19 Filed 03/10/22 Page 3 of 10

3. Buyers Guide

4. Retail Installment Contract and Security Agreement

5. Retail Purchase Agreement

6. Credit Reporting Notice

7. Carvana Limited Warranty

8. Certification that I was not in the process of filing or in active bankruptcy.

Documents that I received which were not signed included a (1) CarFax report, (2) Vehicle Return Agreement, (3) information about Bridgecrest, (4) information about SilverRock and (5) a Title and Registration Guide for North Carolina.

10. True and accurate copies of the preceding (1) Retail Purchase Agreement, (2) Retail Installment Contract and Security Agreement and (3) Odometer Disclosure Statement are attached to ECF No. 8 as **Exhibits 1, 2 and 10** respectively. I did not notice anything unusual, suspicious or out of place about either of these documents.

11. On the morning of August 17, 2019, prior to going to Carvana South Blvd, I received an email from Carvana with the subject "An update on your recent application for credit". The body of the email contained the following text preceding a link with the words "GET MY NOTICE":

> Federal law requires we provide you notification of actions related to your recent application for credit. Your notification can be accessed through the link below and will provide additional information about your application and any associated credit decisions.

When I clicked the "GET MY NOTICE" link, a download of a pdf file named "riskbasedpricing-9662775.pdf" was triggered. I saved the file to my hard drive but

4

did not review it at that time. Two days later on August 19, 2019, I received another email that had the same email subject. When I clicked the "GET MY NOTICE" link in that email, a download of a pdf file named "riskbasedpricing-9685818.pdf" was triggered. I saved this file to my hard drive. True and accurate copies of these notices are attached hereto as **Exhibit 12** and **13** respectively.

12. On or around August 21, 2019, having reviewed the documents I received from Carvana in more detail, I opted out of the Arbitration Agreement that I had apparently signed via email per the instructions in that agreement. I did this because I believed Carvana violated the timing requirements for risk-based pricing notices and I did not want my rights to be limited in the event I had any other disputes with Carvana in the future.

13. On September 5, 2019, I received an email from Carvana stating that the registration for the BMW had been processed. I received the registration card in the mail within 1 week after that email and upon receipt, I placed it in the glovebox of the BMW. I didn't notice anything out of place or unusual about the registration card.

14. On September 22, 2021, I logged into bridgecrest.com and requested a payoff amount for the BMW. The quoted payoff amount was $9,845.62. I then submitted a payment of that amount online and received an email confirmation of 21446218 with a withdrawal date of 9/22/2021. The following morning, when I logged into bridgecrest.com to check the status, there was an indication that there was no longer an account due to payoff.

15. At approximately 7:56AM EST on October 14, 2021, I logged into bridgecrest.com

and requested a statement of account using the [Contact Us] feature of the website in accordance with North Carolina General Statute § 25A-35. I requested the inclusion of any earned and unearned finance charges that were paid as part of my request. A true and accurate account of my request in the form of a screen recording is attached hereto as EXHIBIT_18.mp4 on a CD and is referred to as **EXHIBIT 18**.

16. Neither Bridgecrest or Carvana responded to my request for a statement of account within 30 days and I still have not received a statement of account.

17. At approximately 8:14AM EST on October 14, 2021, I logged into bridgecrest.com and requested a rebate using the [Contact Us] feature of the website in accordance with North Carolina Statute § 25A-32. As part of my request, I specifically requested unearned amounts of finance charges and specifically requested a refund of any amounts on the Retail Purchase Agreement (line items 3a through 3c) if those amounts were not valid official fees for the state. I requested the inclusion of any earned and unearned finance charges that were paid in my request. Neither Bridgecrest or Carvana responded to my request for a rebate after waiting 14 days.

18. A true and accurate account of my request in the form of a screen recording is attached hereto as EXHIBIT_19.mp4 on a CD and is referred to as **EXHIBIT 19**.

19. On October 28, 2021, I filed the original three count complaint against Defendants in this case in the superior court division of Cabarrus County Court with claims for fraud, violation of the Retail Installment Sales Act and Unfair and Deceptive Practices. The complaint and summons were served on November 1, 2021. Both Defendants answered the Complaint on December 1, 2021, generally denying many of the material allegations.

The statement of facts regarding Retail Installment Sales Act did not change from the time the original complaint was filed in state court and when the second amended complaint was filed in federal court.

20. After the complaint was filed, I learned that Carvana had used DocuSign since 2017 during research of cases involving Carvana. During that research, I also researched DocuSign e-signature products and discovered that, although it appears a single signature would be created and used for signing documents, the documents that Carvana provided me had multiple signatures. This led me to believe that the documents I received were not the documents I had signed and that the signatures on the documents I was received which appeared to be my signature had been forged.

21. On November 15, 2021, I sent my first set of interrogatories ("1st Set Int") and production ("1st Req Prod") to Carvana through their registered agent. Around December 24, 2021, I received some documents responsive to requests for production which included some documents I had never seen prior to discovery. Most of the interrogatories were objected to and the responses were not verified by Carvana.

22. I received a check in the amount of $31 from Carvana on December 2, 2021 but I rejected the check because an accurate amount couldn't be verified due to the lack of a statement of account. I also believed that if they had responded within 10 days, the amount should have been at least $52 plus any finance charges calculated using official fees. A true and correct copy of the check I rejected is attached the ECF No. 8 as **Exhibit 9**.

23. On or around December 24, 2021, when I retrieved the registration card from the

BMW glovebox after receiving a copy of the registration card from Carvana in response to discovery, I noticed that the registration card I received in 2019 was not accompanied by a receipt similar to the receipt attached to the registration card that Carvana produced in discovery. A closer inspection of the one I received in 2019 revealed a barely noticeable perforated edge as if something had been removed from one side of the registration card. This was the first time that I realized the registration card I had received from Carvana did not include the receipt which they produced during discovery.

24. A true and accurate copy of the registration card I received from Carvana in September 2019 is attached to ECF No. 8 as **Exhibit 8**.

25. A true and accurate copy of the registration card I received from Carvana in response to discovery is attached to ECF No. 15 as **Exhibit C** and has a bates stamp of **CRVNA00017**.

26. When Carvana responded to my requests for production while this case was in state court, they also produced the following documents which were never offered for my signature when I visited Carvana on August 17, 2019 or provided to me prior to leaving Carvana with other documents:

   a) **Limited Power Of Attorney** with bates stamp **CRVNA00026**. My research revealed that this document is broader and materially different from a MVR-63 authorized for use by the DMV. I (1) did not sign this document or any MVR-63 during my in-person visit to Carvana, (2) first saw this document when it was produced in response to discovery in December 2021 and (3) was not provided a

copy of any power of attorney to keep during my in person visit to Carvana. A true and accurate copy of this document is attached hereto as **Exhibit 14**.

b) Title Application ("**MVR-1 #1**") with bates stamp of **CRVNA00020**. This document was dated 8/17/2019, does not contain my full legal name, supposedly signed me in the presence of a notary and disclosed a mileage of 35,447. I (1) did not sign any MVR-1 during my in-person visit and (2) first saw this document when it was produced in response to discovery in December 2021. A true and accurate copy of this document is attached as **Exhibit A** to ECF No. 15.

c) Title Application ("**MVR-1 #2**") with a bates stamp of **CRVNA00014**. This document appears to have been first created weeks after my visit to Carvana on 9/4/2019. It disclosed a mileage of 35,482 and was not signed by anyone even though I specifically requested documents that were sent to the DMV. I (1) was not present at Carvana's location on 9/4/2019 or any time after 8/17/2019, (2) never signed this document or authorized anyone else to sign it and (3) never saw this document until it was produced by Carvana in December 2021. A true and accurate copy of this document is attached as **Exhibit B** to ECF No. 15.

d) **Odometer Disclosure Statement #2** with bates stamp **CRVNA00024**. This document disclosed a different mileage of 35,482 and was supposedly signed by me on August 17, 2019. I (1) did not sign a second Odometer Disclosure Statement while present at Carvana's location, (2) never authorized anyone else to sign it on my behalf and (3) never saw this document until it was produced by Carvana in

December 2021. A true and accurate copy of this document is attached as **Exhibit 11** to ECF No. 8.

27. Based upon information I gathered from the 1st Req Prod responses along with my research of DocuSign's e-signature product, I amended the originally filed Complaint with consent on January 14, 2022 to include facts alleging documents were forged and added a claim under the Federal Odometer Act. The case was then removed to this Court on January 18, 2022 and the complaint was docketed under ECF No. 4.

28. After this case was removed to this Court and based upon further newly discovered information I gathered from the 1st Req Prod responses along with my research of the law regarding Truth In Lending Act disclosures, I filed a second amended complaint on January 21, 2022 to include a claim under the Truth In Lending Act. That complaint was docketed under ECF No. 8.

Further the affiant sayeth not.

I declare under penalty of perjury the forgoing is true and correct.

This 8th day of March, 2022.

*Arthur Hill*

Arthur Hill