IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Case No: 22-CV-00037



ARTHUR HILL,                          )
                                      )
            Plaintiff, pro se,        )
                                      )
vs.                                   )
                                      )
Carvana, LLC. and                     )
Bridgecrest Credit Company, LLC.      )
                                      )
            Defendants.               )
_____)

## PLAINTIFF ARTHUR HILL'S RESPONSE IN OPPOSITION TO DEFENDANT CARVANA, LLC AND BRIDECREST CREDIT COMPANY, LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY

Plaintiff Arthur Hill ("Plaintiff"), hereby submits this Memorandum of Law in

Support of his Opposition to Defendant Carvana, LLC ("Carvana") and Bridgecrest Credit

Company, LLC's ("Bridgecrest" collectively "Defendants") cross-motion for Partial

Summary Judgment ("cross-motion") regarding Plaintiff's claims for violation of the North

Carolina Retail Installment Sales Act ("RISA") and Truth in Lending Act ("TILA") and

Reply to Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary

Judgment.

In support thereof, Plaintiff attaches a Supplemental Declaration of Arthur Hill

attached hereto as Attachment 1 (hereinafter "Hill Supl Dec"). Plaintiff has also requested

the Court take Judicial Notice which is filed contemporaneously herewith. Plaintiff further

1

states as follows in support:

**UNDISPUTED FACTUAL ALLEGATIONS RE: CROSS MOTION**

- On August 17, 2019, Carvana provided the Plaintiff an odometer disclosure which he purportedly signed via DocuSign. This document disclosed mileage of 35,447. (Second Amended Complaint ("SAC"), Ex. 10, ECF No. 8-10)

- In December of 2021, Plaintiff received a second odometer disclosure for the first time in response to discovery in state court which disclosed mileage of 34,482. Someone other than the Plaintiff forged Plaintiff's signature and printed his name on this document. (ECF. No. 8-9; Decl. of Arthur Hill ("Hill Dec."), ECF No. 19 ¶ 26(d))

- After the Plaintiff purchased a vehicle from Carvana, they mailed the Plaintiff a new vehicle registration card that had been altered to remove the receipt portion. (Ex. 8, ECF. No. 8-9; Hill Dec ¶¶ 23-24)

- In December 2021, Plaintiff first received a copy of the vehicle registration with the receipt portion when Carvana produced it during discovery in state court. (Ex. C, ECF No. 15; Hill Dec. ¶ 25)

- Prior to discovery in 2021, Carvana never provided Plaintiff any document that indicated he owed a $20 transfer plate fee or that they retained $52 in official fees instead of paying those fees to the DMV. (Hill Dec. ¶¶ 25, 26(c))

- The Retail Installment Sales Contract ("RPA") that was provided to the Plaintiff on August 17, 2019 did not disclose any $20 transfer plate fee or a $711

2

highway use tax was due to the DMV. The RPA disclosed that a $52 Title Fee, $36 NC Registration Fee, $1 Temporary Plate Fee and $15 County Registration Fee were due to the DMV. The $36 NC Registration Fee, $1 Temporary Plate Fee and $15 County Registration Fee were not due to the DMV and were retained by the Carvana. (Ex. 1 & 2, ECF No. 8-1 & 8-2; Ex. B-C, ECF No. 15-2 to 15-3)

- On October 14, 2021, Plaintiff requested a statement of account, which included any earned and unearned finance charges at bridgecrest.com. Neither Bridgecrest or Carvana have responded to Plaintiff's request. (Hill Dec. ¶¶ 15-16; Ex. 18, ECF No. 19-7)

- On October 14, 2021, Plaintiff requested a rebate at bridgecrest.com on. That request for rebate included a request to refund of any unearned amounts of finance charges and amounts listed on the RPA (line items 3a through 3c) if those amounts were not valid official fees for the state. Neither Bridgecrest or Carvana responded to the Plaintiff's request within 14 days (Hill Dec. ¶¶ 17-18; Ex. 19, ECF No. 19-8)

- Plaintiff received a $31 check from Carvana on December 2, 2021 but he rejected it. (Hill Dec. ¶ 22; ECF No. 8-9)

## **DISPUTED FACTUAL ALLEGATIONS**

- Defendants argue that Bridgecrest is not an assignee of Carvana. Plaintiff argues that Bridgecrest is a servicer and assignee of Carvana and regularly states on the record and in court proceedings that they are Carvana's servicer and assignee, including

3

cases in which they move to compel arbitration based on claims related to transactions entered into with Carvana. (*see* <u>McKie v. Bridgecrest Credit Co.</u>, CV 119-097 (S.D. Ga. May. 20, 2020)

- Carvana states that "In the RPA, Plaintiff agreed to pay allegedly improper state registration, temporary plate, and country registration fees, in the aggregate amount of $52. (Second Amended Complaint ("SAC"), Ex. 1, ECF No. 8-1). Plaintiff alleges that he signed a RPA and RIC on August 15, 2019 but the RPA and RIC he received from Carvana on August 17, 2019, which were attached to the SAC, were forged. (SAC ¶¶ 41-69, Ex. 1-2, ECF No. 8-1 to 8-2; Hill Dec. ¶¶ 20-21) (see also Ex. 1 pg 3 "Additional Terms of the Sales Agreement" which states "We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law.")

## ARGUMENT

The Court should take notice that Carvana has not responded to Plaintiff's arguments regarding the Federal Odometer Act. As a reason, they state that claim is moot. See Local Rule 7.3(k) ("The failure to file a brief or response within the time specified in this rule shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect.") Counsel for Defendant was provided a copy of Plaintiff's Motion for Reconsideration on April 8, 2022 which preceded the filing of the Defendants cross-motion. Furthermore, the Plaintiff's Motion for Partial Summary

4

Judgment and supporting affidavit were filed soon after Defendant's motion to dismiss. The Defendants have not provided any reasonable excuse for not responding to the Plaintiff's motion for partial summary judgment regarding his claim under the Federal Odometer Act.

## I. LEGAL STANDARD

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Zahodnick v. International Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires a trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. Celotex Corp., 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). When making the summary judgment determination the

5

court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913; Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997).

## II. CARVANA HAS NOT COME FORWARD WITH EVIDENCE TO CONTRADICT PLAINTIFF'S EVIDENCE THAT THEY FORGED AND CONCEALED A SECOND ODOMETER DISCLOSURE THAT WAS ONLY DISCLOSED DURING DISCOVERY IN STATE COURT.

In support of Plaintiff's motion for partial summary judgment regarding his federal odometer act claim, he submitted sworn statements that he first received the second odometer disclosure as well as an unsigned title application which demonstrated Carvana had misrepresented the mileage on the disclosure he had been given in 2019. He also indicated the second disclosure was forged. Plaintiff also submitted sworn statements that he also first received a forged title application and a forged power of attorney during discovery in 2021. Carvana has not submitted evidence, through affidavit or otherwise, that contradicts Plaintiff's sworn statements that he first received a second odometer disclosure during discovery in 2021 or that the document was forged. Nor have they contradicted Plaintiff's sworn statements that they forged a title application and a power attorney first revealed in 2021. Instead, they chose to not respond at all, resting on their belief that the Court will not consider the Plaintiff's arguments and declaration or that the Court will not reconsider its Order dismissing that claim. This should constitute waiver under Local Rule 7.3(k) as they have not articulated any excusable neglect for their failure to respond.

6

Plaintiff alleged in his complaint that the second odometer disclosure was only revealed in discovery and was forged. (ECF No. 8 ¶ 35) The undisputed record evidence shows that a second odometer disclosure was only provided to the Plaintiff during discovery in 2021. (see Hill Dec. ¶ 26(d)) The second disclosure also shows signs that someone other than the Plaintiff spelled his name incorrectly. For example, the printed name appears to show someone apparently misspelled the Plaintiff's first name and then traced over the incorrect letter in an attempt to correct it.[1] Plaintiff has no problem spelling his own name. The document in question is also not a document that Carvana would accept a "pen and ink" signature per their own prior sworn testimony in Saddler. Considering the Plaintiff's motion for reconsideration (ECF No. 24-25) and request for judicial notice (ECF No. 26) involving Carvana's sworn statements regarding "pen and ink" signatures on specific documents, no reasonable person would believe Plaintiff signed a second disclosure. The Plaintiff provided credible evidence that Carvana provided a false statement of mileage on August 17, 2019 and concealed the actual mileage from the Plaintiff using forged and concealed documents.

As such, Plaintiff is entitled to summary judgment regarding his claim for violation of the Federal Odometer Act as argued in his motion and that part of Plaintiff's motion should be granted. Furthermore, the Court should ignore any attempt by Carvana to file a response or sur-reply regarding the odometer act claim given they purposely chose not to

---

[1] It appears to have been spelled Arthor or Arther initially.

7

respond at all.

## III. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE RISA CLAIMS BECAUSE PLAINTIFF'S DEMAND WAS SENT TO A CORRECT PARTY AND PLAINTIFF PAID UNAUTHORIZED AMOUNTS AND FINANCE CHARGES THAT WERE NOT REFUNDED.

Defendants now argue for the first time that "because there is no evidence that Bridgecrest is Carvana's assignee, or that Plaintiff demanded a statement of account or rebate from Carvana, Defendants are entitled to summary judgment on Plaintiff's RISA claims under §§ 25A-35 and 25A-44." [2] They do not produce any evidence, by affidavit or otherwise, that Bridgecrest is not Carvana's assignee or that Plaintiff would be required to send his demands to Carvana instead of Bridgecrest. And as demonstrated below, their argument is without merit and completely frivolous with no basis in fact.

### A. PLAINTIFF MADE A DEMAND TO A PROPER PARTY AS REQUIRED UNDER RISA BECAUSE BRIDGECREST WAS BOTH THE SERVICER AND ASSIGNEE.

Defendants argue that Bridgecrest is not a proper party for demand because they are not a "seller" as defined under the statute. They claim that "The only admissible evidence demonstrates that Bridgecrest is merely Carvana's servicer." They essentially argue that Plaintiff sent his demands to Bridgecrest, the servicer, rather than Carvana, the seller and they're both entitled to summary judgment. Plaintiff requested the Court take judicial which shows Defendants' argument is without merit. The public record will show that

---

[2] Interestingly, there is no evidence that Plaintiff ever sent a payment directly to Carvana yet Carvana received payments. And after payoff, Carvana sent the Plaintiff a letter acknowledging the payoff.

8

Bridgecrest is an assignee and servicer of Carvana. Thus, they fit squarely in the definition of "seller".

Seller is defined as follows under § 25A-6:

"Seller" means one regularly engaged in the business of selling goods or services. Unless otherwise provided, ***"seller" also means and includes an assignee of the seller's right to payment*** but use of the term does not itself impose on an assignee any obligation of the seller with respect to events occurring before the assignment. (1971, c. 796, s. 1.)

(N.C.G.S. § 25A-6) The plain language of 25A-6 indicates both Carvana and Bridgecrest fall under the definition of "seller". However, as the definition implies, Bridgecrest is excluded for claims involving events occurring before assignment, hence Bridgecrest is not implicated in any claim of Fraud, TILA or the Federal Odometer Act.

Neither Bridgecrest or Carvana can reasonably deny that Bridgecrest is both an assignee and servicer. All payments were made to Bridgecrest per Carvana's own instructions provided to the Plaintiff. If they were not the "assignee of the seller's right to payment", Carvana wouldn't have provided Plaintiff instructions on how to make payments to Bridgecrest. More significant, were the claims against Bridgecrest subject to arbitration, they'd argue Bridgecrest was Carvana's assignee and not surprisingly, the public record contradicts Defendants' arguments that Bridgecrest is not an assignee. In McKie v. Bridgecrest Credit Co., CV 119-097 (S.D. Ga. May. 20, 2020), Bridgecrest, the same Defendant in this case, sought to compel arbitration of the claims against it. That case involved a transaction between that plaintiff and Carvana. In the order granting

9

Bridgecrest's motion, the Court stated in relevant part: "Although not a signatory to the Arbitration Agreement, Defendant 'Bridgecrest contends it is Carvana's assignee and the servicer of the Contract... First, Defendant Bridgecrest is an assignee of Carvana and is servicing the loan under the Contract. See Credit Acceptance, 644 F. Supp. 2d at 956 (finding the Arbitration Agreement 'applies equally to Seller and Seller's assignee'). Second, the Arbitration Agreement covers Plaintiff's statutory claims against Defendant Bridgecrest because the claims relate to the Contract, collection of the amount Plaintiff owes Defendant Bridgecrest under the Contract, and the impending repossession." (*see* Ex. 1 of Plaintiff's Request for Judicial Notice filed contemporaneously herewith)

Clearly, the Defendants' arguments regarding Bridgecrest are not credible and frivolous, having no basis in fact for the same reasons they argued in <u>McKie</u>...because they are the "servicer and assignee". For the foregoing reasons, the arguments regarding Bridgecrest's status as an assignee and "seller" are misleading, frivolous and without merit. The Court should not consider this bogus argument and find Bridgecrest is a "seller" under RISA.

**B. <u>PLAINTIFF'S RISA CLAIM FOR REBATE UNDER § 25A-32 IS VALID BECAUSE A REBATE WAS OWED DUE TO THE CHARGING AND PAYMENT OF HIDDEN FINANCE CHARGES. ALTERNATIVELY, A REFUND WAS DUE UNDER § 25A-44 REGARDLESS OF § 25A-32.</u>**

Defendants argue that "Plaintiff's claim for a finance charge rebate under N.C.G.S. § 25A-32 fails because Plaintiff did not prepay any portion of his finance charge, and thus there is no rebate to provide." This argument fails and is without merit because Plaintiff,

10

at a bare minimum, (1) paid hidden finance charges up front in the form of unauthorized official fees, (2) paid additional finance charges on top of those unauthorized official fees given those fees were included in the amount financed and (3) paid additional interest on top of other official fees because Plaintiff prepaid all official fees by way of a $10,000 down payment. Since the Plaintiff paid unauthorized interest, he was due a rebate of that interest along with any unauthorized amounts and Defendants' motion for summary judgment regarding the same should be denied. Even if the Court finds § 25A-32 is not applicable in this case, Plaintiff was due a refund under § 25A-44. G.S. G.S. 25A-44(3) states:

> In the event the seller or an assignee of the seller *(i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter,* the buyer shall be entitled to demand and receive the rebate due and excessive or unauthorized charges. Ten days after receiving written request therefor, the seller shall be liable to the buyer for an amount equal to three times the sum of any rebate due and all improper charges which have not been rebated or refunded within the 0-day period.

G.S. 25A-44(3) The plain language of § 25A-44(3) clearly covers a demand for rebate of finance charges under G.S. 25A-32 as well as sums (i.e. official fees or finance charges) that were in excess of those authorized or sums that were charged and received but not authorized. There is no question that Plaintiff was charged and paid unauthorized finance charges and official fees which Defendants retained and did not refund. The record evidence shows that Carvana attempted to short change the Plaintiff with a $31 check about

11

47 days after the demand was made, but that check was rejected. (Ex. 9, ECF No. 8-9)

Defendants can't reasonably argue that they can unlawfully charge and retain "official fees" or other amounts and no rebate would be due. First, the Defendants do not deny that Plaintiff paid and they retained the unauthorized amounts as alleged...they attempt to twist the facts, falsely claiming that Plaintiff agreed to pay unauthorized amounts based on the allegedly forged documents without offering any admissible evidence. (see second bullet at RELEVANT FACTUAL ALLEGATIONS of the cross-motion). Even if Plaintiff had signed the RPA, the documents contradict their argument. Under a section entitled [*Additional Terms of the Sales Agreement*] of the RPA on page 3, it clearly states "We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law.". (Ex. 1 pg 3, ECF No. 8-1) As such, even if the document was not forged, Carvana has brought Plaintiff's attention to a clear claim for breach of an agreement claim that is not yet raised in the SAC, given they charged and collected finance charges and fees that were not permitted under state law. Second, Defendants don't deny that Plaintiff demanded a rebate...instead, they claim that Bridgecrest was not an assignee or seller even though Bridgecrest is an assignee and seller. Finally, Defendants do not dispute nor provide any evidence that they did provide a proper rebate or refund (or a statement of account) in the requisite time periods because they did not and still have not...instead, they claim they don't have to provide a rebate and Plaintiff is owed nothing. Their arguments all fail

12

outright for the statement of account. As for a rebate, as long as the Plaintiff (1) was charged and actually paid unauthorized amounts or amounts in excess of those authorized, (2) requested a rebate according to the 25A-32 or as provided in 25A-44 and (3) Defendants failed to provide a proper rebate or refund within the requisite time period, Defendants are liable to the Plaintiff under RISA. As a result, the Court should deny Defendants' motion for summary judgment and grant Plaintiff's motion for summary judgment as to liability as requested in Plaintiff's motion for partial summary judgment.

## III. PLAINTIFF'S TILA CLAIM IS NOT TIME BARRED AND THE DISPUTED FEES WERE CLEARLY HIDDEN "FINANCE CHARGES".

### A. THERE IS CREDIBLE UNDISPUTED EVIDENCE THAT TILA'S ONE 1-YEAR STATUE OF LIMITATIONS WAS TOLLED.

Were it not for the removal of case 1:21-CV-00714 to this Court which caught the attention of WSOC-TV and a chance encounter with an investigative reporter at WSOC-TV, this case would not exist. (*see* Hill Supl Dec.) Plaintiff has offered credible evidence that Carvana concealed facts that were the basis of Plaintiff's claim under TILA. Carvana claims the Plaintiff relies on inadmissible evidence in his Memorandum. They have not submitted any evidence, through affidavit or otherwise, to contradict Plaintiff's sworn statements that he first gained knowledge in 2021 during the course of discovery that Carvana retained or failed to disclose certain official fees due to the removal of the receipt from the vehicle registration card he had been provided. (Hill Dec. ¶ 23; ECF No. 8-8) That receipt, attached as Ex. C to ECF No. 15, would have revealed information relevant

13

to the TILA violations in September 2019. Carvana has also not contradicted Plaintiff's sworn statements that he first gained knowledge of an unsigned title application in 2021 during the course of discovery which also contained the fees that were paid or not paid to the DMV. (Hill Dec. ¶ 26(c); Ex. B, ECF No. 15) That document would have also revealed information relevant to the TILA violations in September 2019 as well as a violation of the federal odometer act. Carvana makes no effort whatsoever to explain how the Plaintiff, through reasonable diligence, could have discovered the violations in spite of their concealment. Carvana is also withholding additional evidence regarding the TILA claim, further obstructing Plaintiff's discovery of the terms he agreed to (documents he signed versus documents he alleged were forged via DocuSign). That withheld evidence may also reveal additional violations of TILA, including whether Carvana increased the APR. Bottom line is, Carvana has not contradicted Plaintiff's sworn statements and makes no attempt whatsoever to argue or show how Plaintiff could have uncovered the TILA violations prior to 2021. The Court should therefore deny Defendant's motion for summary judgment based on "fraudulent concealment" doctrine as Plaintiff argued in his own motion.

a. **CARVANA HAS REFUSED TO PRODUCE ANY EVIDENCE THAT PLAINTIFF SIGNED THE RIC, RPA OR ANY OTHER DOCUMENT THAT WAS PURPORTEDLY SIGNED VIA DOCUSIGN.**

Plaintiff has expressly repudiated all of the documents that he was provided which were purportedly signed by him using DocuSign. In his effort to discover who actually

14

signed those documents in his request for production ("Plt RFP"), Plaintiff requested a

DocuSign "Certificate of Completion" from Carvana regarding the RIC that he was

provided as follows:

**Request No. 3:**

Produce a true and accurate copy of the DocuSign certificate of completion for the Contract.

**Response to Request No. 3:**

Carvana objects to Request No. 3 because it references the term "Contract" which is defined as Exhibit B attached to the Complaint yet there is no such document.. Carvana further objects to this Request because it seeks information that is not relevant to the claims or defenses of any party, particularly considering the Court has not yet ruled on Plaintiff's Motion for Amend Complaint filed on December 9, 2021 wherein Plaintiff has added allegations regarding purported forgery of his signature.

(see attached Exhibit A, Carvana's Responses to Plaintiff's Request for Production) Plt

RFP No. 3 was reasonably calculated to lead to discoverable evidence regarding

"fraudulent concealment" as well as the claims for Fraud and RISA at that time. It was

also reasonably calculated to lead to discoverable evidence regarding the TILA claim

which was added after removal to this Court. And lastly, it was reasonably calculated to

lead to discoverable evidence that Plaintiff's signature was forged. Plaintiff also

propounded interrogatories ("Plt Inter") to determine which agents or employees of

Carvana added, edited, deleted, uploaded or signed any of the documents that were

provided to the Plaintiff and Carvana objected as seen below:

**Interrogatory No. 13:**

15

Regarding the documents provided to the Plaintiff on August 17, 2019, please state the name and title or position of each agent or employee of Carvana who added, edited, deleted, uploaded or signed any of the documents?

## Response to Interrogatory No. 13:

Carvana objects to Interrogatory No. 13 because it seeks the discovery of information that is not relevant to the claims or defenses of any party, particularly considering that the Court has yet ruled on Plaintiff's Motion for Amend Complaint filed on December 9, 2021 wherein Plaintiff has added allegations regarding purported forgery of his signature. Subject to and without waiver of these objections, Carvana states that the signor of any of the documents provided to Plaintiff on August 17, 2019 is apparent on the face of the documents, which speaks for itself.

(see attached Exhibit B, Carvana's Responses to Plaintiff's First Set of Interrogatories - "unverified") Plt Inter No. 13 was reasonably calculated to lead to the discovery of who may have knowledge regarding all of the Plaintiff's claims, including "fraudulent concealment", RISA and Fraud.[3] And Plt RFP No. 1 sought all documents that were reviewed in answering the Plaintiff's interrogatories. (Ex. A, Request No. 1) Nothing was produced to show that Plaintiff signed any of the documents he was provided, including any documents that should have been reviewed in answering Plt Inter No. 13 above.

If Carvana actually had evidence to rebut Plaintiff's allegation that the RIC (ECF No. 8-2), RPA (ECF No. 8-1) and Odometer Disclosure (ECF No. 8-10) were forged, they are fully aware of how to provide evidence of non-repudiation using a Certification of Completion from DocuSign just as they did in Saddler. (Saddler v. Carvana, LLC, CASE NO 4:20CV105 HEA (E.D. Mo. Aug. 11, 2020))(see Ex. 2 of Plaintiff's Request for

---

[3] Plaintiff will still seek discovery of information already objected to after a scheduling order is entered and ask the Court to overrule the objection in due course if Carvana continues to withhold it.

Judicial Notice filed contemporaneously herewith)[4](see also ECF No. 26) Given Carvana is still withholding evidence relevant to all claims and "fraudulent concealment", and for the reasons argued in the Plaintiff's own motion, the Court should deny Carvana's cross-motion for summary judgment regarding TILA.

### b. CARVANA'S ARGUMENT THAT THEY WOULD HAVE CHARGED UNAUTHORIZED OFFICIAL FEES WHETHER THE PLAINTIFF PAID IN CASH OR FINANCED DOES NOT MEAN THE UNAUTHORIZED FEES ARE NOT HIDDEN FINANCE CHARGES.

As mentioned, the record is devoid of any credible evidence that Plaintiff signed any document via DocuSign or agreed to pay any unauthorized official fees that were retained by Carvana. Without citing any admissible evidence, Defendants state in conclusory fashion that the mere fact that the unauthorized official fees appear on both the allegedly forged RIC and the RPA is evidence that official fees are charges of a type applicable to both credit and cash purchasers. Defendants don't identify which official fees would be charged in both types of transactions. Regardless, this argument is without merit if it stands for the proposition that all official fees are in fact charged in both types of transactions. They rely on Tripp v. Charlie Falk's Auto Wholesale Inc., 290 F. App'x 622, 628 (4th Cir. 2008) Tripp does not support their arguments. The Court should start its analysis with the definition of "finance charges" under TILA. The TILA requires that a dealer disclose the finance charge to a credit customer. See 15 U.S.C. § 1638(a)(3). The

---

[4] This document is page 60 regarding Exhibit 1 attached to Plaintiff's Request for Judicial Notice (ECF No. 26). It was excluded from that request due to relevance.

Act defines the finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." Id. § 1605(a). Certain charges are excluded from the finance charge. Section 1605(d) states in relevant part:

> (d) Items exempted from computation of finance charge in all credit transactions
>       If any of the following items is itemized and disclosed in accordance with the regulations of the Bureau in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction: (1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

15 U.S.C. § 1605(d)  Based on the plain language of the text, any of the itemized and disclosed "official fees" payable to others at issue in the case would be exempted if they were actually paid to public officials while those that were retained must be disclosed in the finance charge. Fees that must be disclosed as finance charges can't be included in the amount financed. First, it can't be disputed that the official fees that should have been charged in both credit and cash purchases in Plaintiff's case were as follows: **(1)** $52 Title Fee, **(2)** $20 Plate Transfer Fee, and **(3)** $711 Highway Use Tax. The 3 aforementioned fees were paid by the Plaintiff and sent to the DMV as proven by record evidence, although not all of these fees were properly disclosed, and the Transfer Plate Fee wasn't disclosed at all. Hence, none of these fees needed to be included in the disclosed finance charge. It is still worth noting that item (2) was not disclosed at all and item (3) was not disclosed in the itemization of "amounts paid to others". Next, some of the "official fees" relevant here were not authorized by state law due to a plate transfer. They were disclosed as being paid

18

to others but were in fact retained by Carvana. Interest was also collected on those amounts as well since they were included in the amount financed. Those fees included the following: **(1)** $36 NC Registration Fee, **(2)** $1 Temporary Plate Fee; and **(3)** $15 County Registration Fee. Since it is undisputed that these 3 fees were not paid to public officials, they should have been included in the finance charge and excluded from the amount financed.[5] As such Carvana violated the disclosure requirements regarding the finance charge. They also misrepresented the APR and amount financed in violation of TILA.

Defendants' reliance on Tripp is misplaced as that case does not support a conclusion that unauthorized official fees would also be charged in a cash purchase. Furthermore, they present no admissible evidence that they also charge and retain unauthorized official fees in cash transactions. Compton is similar to this case and may be instructive to the Court. (Compton v. Altavista Motors, Inc., 121 F. Supp. 2d 932 (W.D. Va. 2000)) The Court found that "Altavista made an itemized disclosure of the amount financed, thus triggering the TILA requirement of accurate disclosure of 'amounts paid to others.' In the blank labeled 'Total Other charges/Amounts Pd. to Others' on the credit contract, Altavista marked 'N/A.' However, other documents produced during the deal show that Altavista in fact collected $380 from Compton for GAP insurance, at least $215 of which it paid to an insurance company on Compton's behalf." (Id.) The Court then found and held that "the disclosure made by Altavista in its itemization of the amount

---

[5] All official fees were paid in advance but were still included in the amount financed.

19

financed was inaccurate and in violation of the TILA." (Id.) Similarly, Carvana made an itemization of the amount financed triggering the TILA requirement for accurate disclosure of the "amounts paid to others." In this case, Carvana disclosed $104 was paid to others. Here, as was the case in Compton, other documents, which were only produced in discovery, show that $52 of the $104 disclosed were retained by Carvana and the "amount paid to others" excluded the $711 highway use tax and a $20 transfer plate fee. Carvana clearly violated the disclosure requirements by misrepresenting the amounts paid to others. *See* also Jones v. Bill Heard Chevrolet, Inc., 212 F.3d 1356, 1361 (11th Cir. 2000) (finding a TILA violation based on inaccurate disclosure of amounts paid to others).[6] The Court should disregard Defendants' argument that unauthorized official fees would also be charged in cash transactions in their attempt to side-step the definition of "finance charge" and its exclusions. As it is clear that Carvana violated TILA disclosure requirements, there are no issues of material fact in dispute as to liability and the Court should deny the cross-motion and grant Plaintiff's motion for partial summary judgment regarding liability only against Carvana.

## IV. CONCLUSION

In conclusion and for the reasons above and in Plaintiff's motion, the Court should deny the Defendants' cross-motion regarding TILA and RISA. The Court should grant Plaintiff's motion for partial summary judgment as to liability for TILA against Carvana

---

[6] Cited in Compton.

because the Court can readily determine that (a) Carvana has not contradicted record evidence that Plaintiff first became aware of the TILA violations in 2021 and (b) they failed to make accurate disclosures of "amounts paid to others" in violation of TILA. Likewise, the Court should grant Plaintiff's motion for liability and deny Defendants cross-motion regarding RISA as the evidence demonstrates that Plaintiff did in fact pay unauthorized amounts that should have been refunded (under 25A-32 or 25A-44). Defendants failed to provide Plaintiff a statement of account or refund of unauthorized amounts within the requisite time periods. Finally, the Court should grant Plaintiff's motion for partial summary judgment as to liability against Carvana on his Federal Odometer Act claim because the undisputed evidence shows that Carvana misrepresented the mileage and forged or otherwise concealed documents that revealed the true mileage.

Respectfully submitted this the 16th day of April, 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.3(d)(1) of the Rules of this Court, I certify that PLAINTIFF ARTHUR HILL'S RESPONSE IN OPPOSITION TO DEFENDANT CARVANA, LLC AND BRIDECREST CREDIT COMPANY, LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY, pursuant to Rule 56(a), which was prepared using Times New Roman 13-point typeface, contains 5,619 words, including the parts of the document that are excepted by Rule 7.3(d)(1). This certificate was prepared in reliance on the word-count function of the word-processing system "Microsoft Word" used to the prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

This the 16th day of April, 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **PLAINTIFF ARTHUR HILL'S RESPONSE IN OPPOSITION TO DEFENDANT CARVANA, LLC AND BRIDECREST CREDIT COMPANY, LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY, Supplemental Declaration of Arthur Hill** as Attachment 1 and **Plaintiff's Request For Judicial Notice In Support** were served upon the following attorneys by e-mail:

Ashia Crooms-Carpenter
Nelson Mullins Riley & Scarborough LLP
301 South College Street, Suite 2300
Charlotte, NC 28202
Email: ashia.carpenter@nelsonmullins.com
Phone: 704.377.4814

This the 16th day of April, 2022.

Arthur Hill
2849 Trestle CT SW
Concord, NC 28025
Phone: 980.521.1819
Email: artbhill@hotmail.com
*Plaintiff, pro se*

23