UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Arthur Hill,<br><br>      Plaintiff,<br><br> v.<br><br>Carvana, LLC and<br>Bridgecrest Credit Company, LLC,<br><br>      Defendants. | Civil Action No. 1:22-cv-00037 |

**DEFENDANTS CARVANA, LLC AND BRIDGECREST CREDIT COMPANY, LLC'S REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Carvana, LLC ("Carvana") and Bridgecrest Credit Company, LLC ("Bridgecrest," and together with Carvana, "Defendants") hereby submit this Reply in Support of Defendants' Cross-Motion for Partial Summary Judgment, and respectfully show the Court as follows:

**ARGUMENT**

I. **SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS IS WARRANTED ON THE RISA CLAIM BECAUSE THE DEMANDS WERE NOT MADE ON THE SELLER OR ASSIGNEE AND NO REFUND WAS OWED.**

  A. **PLAINTIFF DID NOT MAKE A DEMAND ON THE PROPER PARTY AS REQUIRED BY RISA.**

The plain statutory language of the relevant statutes under North Carolina's Retail Installment Sales Act ("RISA") requires that Plaintiff make a demand on the seller. *See* N.C.G.S. §§ 25A-35, 25A-44(3). Seller is defined under RISA to mean "one regularly engaged in the business of selling goods or services" and "includes an **assignee** of the

1

seller's right to payment." *Id.* § 25A-6 (emphasis added). Although Plaintiff contends that Defendants violated RISA, Plaintiff has presented no admissible evidence showing that Bridgecrest (the only party to which Plaintiff made his demand for statement of account, rebate, and refund), is the seller or an assignee of Carvana as required by the statute. (*See* Defs.' Memo in Supp. of Cross-Mot. for Partial Summ. J., Ex. A, ECF No. 23-1 ¶¶ 1-4).

Plaintiff's argument that Carvana has admitted in other court proceedings that "Bridgecrest is a servicer and assignee of Carvana," and that the Court should take judicial notice of an order filed in a different case involving Bridgecrest, *McKie v. Bridgecrest Credit Company, LLC et al.*, No. 1:19-cv-00097-JRH-BKE (S.D. Ga., May 20, 2020), is meritless. (Pl.'s Resp. in Opp. to Defs.'s Cross-Mot. for Partial Summ. J. and Reply, ECF No. 28 at 3-4; Pl.'s Req. for Jud. Notice, Ex. 1, ECF No. 29-1)[1]. While Plaintiff does correctly cite the language from the order in *McKie*, the *McKie* court itself incorrectly cites to a contention not made by Bridgecrest in that case. The *McKie* court stated:

> Although not a signatory to the Arbitration Agreement, Defendant Bridgecrest contends it is Carvana's assignee and the servicer of the Contract. (Id. at 3, 4.)

(*Id.*) The *McKie* court then cites to Bridgecrest's motion to compel arbitration in support of its statement of this "fact," yet Bridgecrest's motion does not include any assertion that

---

[1] Plaintiff's request for judicial notice is also improper because he seeks to have this Court to take judicial notice of the factual findings of another court. *See In re Hunter*, 610 B.R. 479, 491 (Bankr. M.D.N.C. 2019). In further support thereof, Defendants incorporate their Response in Opposition to Plaintiff's Request for Judicial Notice filed contemporaneously herewith.

2

Bridgecrest is Carvana's assignee. (*See id. See also* Bridgecrest's motion filed in *McKie* which is attached hereto as **Exhibit A**). On the contrary, in *McKie*, Bridgecrest sought enforcement of the arbitration agreement solely on the grounds that it was Carvana's *servicer* of the loan contract in that case. (*See* Ex. A at 4 (The Arbitration Agreement "defines 'Us/We/Our' as 'Carvana, any purchaser, assignee **or servicer of the Contract** . . .") (emphasis in original)). Moreover, the *McKie* court also cited to a declaration submitted by Bridgecrest in support of its motion attesting to Bridgecrest's relationship with Carvana which states: "Bridgecrest Credit Company, LLC is the servicer of the loan set forth in the Retail Installment Contract. Bridgecrest Credit Company, LLC services Plaintiff's account, and Plaintiff's payments under the Contract are due to Bridgecrest Credit." (*See* Declaration of Tarq Haddad filed in *McKie* which is attached hereto as **Exhibit B**).[2] Exhibits A and B, referenced in the *McKie* order cited by Plaintiff, do not contradict but, instead, support Plaintiff's admission that Bridgecrest is merely the **servicer** of his account with Carvana. (ECF No. 23-1 ¶¶ 1-4). As such, Plaintiff's demand made to Bridgecrest was improper under the RISA statute. Accordingly, on this basis alone, Plaintiff's claims for violation of RISA must fail as a matter of law and summary judgment should be granted in favor of Carvana.

### B. PLAINTIFF IS NOT OWED A REFUND UNDER N.C.G.S. § 25A-44.

In addition to the demand defect, Plaintiff's RISA claims also substantively fail as a matter of law. Aside from Plaintiff's cursory argument that he is due a rebate for the

---

[2] Pursuant to Fed. R. Evid. 201, Defendants seek to introduce Exhibits A and B.

finance charges (*i.e.*, official fees) and interest he paid, Plaintiff does not address Carvana's contention that no rebate is due to Plaintiff under N.C.G.S. § 25A-32 because Plaintiff did not prepay any portion of the finance charge or pay any interest other than that which was actually earned through the date of prepayment under the terms of the Retail Installment Contract and Security Agreement ("RIC"). Moreover, the "finance charges" Plaintiff alleges he paid by virtue of the paying the official fees cannot form the basis of Plaintiff's claim because the official fees are **not** finance charges. *See White v. Diamond Motors, Inc.*, 962 F. Supp. 867, 872 (M.D. La. 1997) (holding the disputed fee for $61.67, which was the difference between the $38.33 actually paid for the license and the $100.00 charged as a license fee, was not a "finance charge," and as such, the defendant was entitled to judgment as a matter of law on the TILA claims). As such, Plaintiff was not owed a finance charge rebate under the RISA statute.

Plaintiff also contends that "Plaintiff was due a refund under § 25A-44." (ECF No. 28 at 11). The plain language of N.C.G.S. § 25A-44, however, shows that liability under the statute requires Plaintiff to have first made a demand for the refund on the seller:

> In the event the seller or an assignee of the seller (i) shall fail to make any rebate required by G.S. 25A-32 or G.S. 25A-36, (ii) shall charge and receive fees or charges in excess of those specifically authorized by this Chapter, or (iii) shall charge and receive sums not authorized by this Chapter, **the buyer shall** be entitled to **demand** and receive the rebate due and excessive or unauthorized charges.

N.C. Gen. Stat. Ann. § 25A-44(3) (emphasis added). Plaintiff did not make a demand for a refund on Carvana as discussed above, thus Plaintiff was not owed a rebate, and his RISA claims fail as a matter of law. Therefore, summary judgment should be granted in favor of Defendants on Plaintiff's RISA claims.

4

## II. SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS IS WARRANTED ON THE TILA CLAIM BECAUSE THE CLAIM IS BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS AND BECAUSE THE FEES CHARGED WERE NOT FINANCE CHANGES.

### A. PLAINTIFF'S TILA CLAIM IS BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS BECAUSE THERE IS NO EVIDENCE OF FRAUDULENT CONCEALMENT TO SUPPORT THE TOLLING OF THE ONE-YEAR STATUTE OF LIMITATIONS.

Plaintiff states in his Response, that "[Defendants] have not submitted any evidence, through affidavit or otherwise, to contradict Plaintiff's sworn statements that he first gained knowledge in 2021 during the course of discovery that Carvana retained or failed to disclose certain official fees due to the removal of the receipt from the vehicle registration card he had been provided." (ECF No. 28 at 13). Plaintiff also states, "Carvana has also not contradicted Plaintiff's sworn statements that he first gained knowledge of an unsigned title application in 2021 during the course of discovery which also contained the fees that were paid or not paid to the DMV." (*Id.* at 14). Defendants, however, are not obligated to offer **any** evidence to contradict when Plaintiff first discovered information relevant to the purported TILA violations. *See James v. Autumn Corp.*, No. 1:08CV777, 2009 WL 2171252, at *4 (M.D.N.C. July 20, 2009). Moreover, Defendants are not obligated to present any affirmative evidence at all and may meet its burden as the party seeking summary judgment by demonstrating that Plaintiff's evidence is insufficient to establish his claim.[3] *See id.*

---

[3] Although Plaintiff was the first party to move for summary judgment on the TILA claim, (ECF No. 17), Plaintiff now argues that the Court should deny Carvana's cross-motion for summary judgment on that same claim because Carvana "is still withholding evidence relevant to all claims and 'fraudulent concealment.'" (ECF No. 28 at 17). Discovery,

5

It is undisputed that Plaintiff's TILA claims was filed more than one-year after the transaction in question. (*See* ECF No. 8; Pl.'s Memo in Support of Mot. for Partial Summ. J., ECF No. 18). Thus, it is Plaintiff's burden to present evidence demonstrating that Carvana ***intentionally*** tried to mislead Plaintiff, such that a reasonable juror could find in favor of Plaintiff on his equitable tolling argument. *See Davis v. Beazer Homes, U.S.A. Inc.*, No. 1:08CV247, 2009 WL 3855935, at *3 (M.D.N.C. Nov. 17, 2009) ("The Fourth Circuit has formalized the doctrine of equitable tolling based on fraudulent concealment into a three-part test. A claimant must establish that (1) the party pleading the statute of limitations fraudulently concealed facts which are the basis of a claim, (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.") (citation omitted). The fact that Plaintiff contends he was unaware of the purported basis for his claim is insufficient to avoid summary judgment on statute of limitations grounds. Likewise, Plaintiff's evidence that Carvana did not provide Plaintiff with the receipt portion of the registration for the subject vehicle in 2019 is insufficient to establish Carvana **intended to defraud** the Plaintiff. (*See* Decl. of Arthur Hill, ECF No. 19 ¶ 23). *See Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 329 (M.D.N.C. 2002).

---

however, has not commenced in this action. Prior to removal to this Court, Carvana properly responded to (and objected when appropriate) discovery requests propounded by Plaintiff in the state court action. Notably, on December 20, 2021, the date of Carvana's responses to Plaintiff's first set of discovery requests, the operative complaint (Plaintiff's original complaint) did **not** include Plaintiff's TILA claim or any allegations of forgery whatsoever. (*See* Joint Notice of Removal, Ex. 1, ECF No. 1-1 at 156-169; Pl.'s Resp. in Opp. to Defs.'s Cross-Mot. for Partial Summ. J. and Reply, Exs. A-B, ECF Nos. 28-1-28-2). Thus, Plaintiff's contention that certain discovery requests, including Plaintiff's Request for Production No. 3 and Interrogatory No. 13, sought information relevant to Plaintiff's claims is inaccurate.

Plaintiff's assertion that "Carvana makes no effort whatsoever to explain how the Plaintiff, through reasonable diligence, could have discovered the violations in spite of their concealment," flips the summary judgment burden on its head. (ECF No. 28 at 14). Plaintiff's supposed inability to ascertain the allegedly concealed facts through the exercise of due diligence is one of the elements that **Plaintiff**, not Carvana, must present evidence on to create a genuine dispute regarding equitable tolling. *See Davis*, 2009 WL 3855935 at *3. Carvana met its burden by demonstrating that Plaintiff has not presented evidence on at least one of the elements necessary to establish equitable tolling—that Carvana fraudulently concealed facts which are the basis of the TILA claim. *See id.* For this reason, this Court should enter summary judgment in favor of Carvana on Plaintiff's TILA claim.

### B. THE OFFICIAL FEES ARE NOT FINANCE CHARGES UNDER TILA.

Plaintiff's argument that all official fees are not charged in both cash and credit transactions is unsupported by any evidence. (*See* ECF No. 28 at 17). Unlike (by way of example) a lien recordation fee, Carvana's charges for tag and/or plate, title and registration fees are independent of the nature of the transaction, whether cash or credit, as evidenced by the fact that these charges appear on both the RIC and Retail Purchase Agreement. (SAC, Exs. 1-2, ECF Nos. 8-1-8-2).

Plaintiff's admission that "none of the fees needed to be included in the disclosed finance charge" (ECF No. 28 at 18) actually supports Defendants' argument that the official fees are not finance charges under TILA. *See* 15 U.S.C. § 1638 (TILA requires a lender to disclose to a borrower, among other things, the amount financed, the finance

7

charge, the annual percentage rate, and the total sale price.); 15 U.S.C. § 1605(a) (Under TILA, a "finance charge" is any charge "imposed directly or indirectly by the creditor as an incident to the extension of credit," but it "does not include charges of a type payable in a comparable cash transaction."). The fact that Carvana included only some of the official fees and not all under Line L of the TILA disclosure's "Itemization of Amount Financed" on page 2 of the RIC is inconsequential because the fact remains that Carvana, as admitted by Plaintiff, was not required to disclose these charges because they are not finance charges. (*See* ECF No. 28 at 17; ECF No. 8-2 at 2). Further, the $711 highway use tax Plaintiff contends was not disclosed under Line L – and was not required to be disclosed as admitted by Plaintiff – can be found under Line A of the TILA's disclosure's "Cash Price of Vehicle, etc. (incl. sales tax of $711.00)" on page 2 of the RIC. (ECF No. 8-2 at 2).

Plaintiff reliance on *Compton v. Altavista Motors, Inc.*, 121 F. Supp. 2d 932 (W.D. Va. 2000), is misplaced. In *Compton*, it was undisputed that the $120 processing fee in question was mandatory only for credit customers, and not for cash customers. *Compton*, 121 F. Supp. 2d at 937. Thus, the fee in *Compton* did not qualify for the statutory exclusion in TILA's definition of a "finance charge." *Id.*; *see also* 15 U.S.C. 1605(a) ("The finance charge does not include charges of a type payable in a comparable cash transaction."). In the instant case, however, the charges for tag/plate, title, and registration are required for credit ***and*** cash purchasers alike, and the official fees Plaintiff contends he was overcharged was sent back to Plaintiff in the form of a check which Plaintiff rejected. (*See* ECF No. 19 ¶ 22).

*White v. Diamond Motors, Inc.*, 962 F. Supp. 867 (M.D. La. 1997) is more analogous to the facts and circumstances of this case, and should be followed. In *White*, the dealer's TILA disclosure included a $100 charge for "License" as part of the amount financed, though it was undisputed that only $38.33 of the $100 fee was actually paid to the state as a license fee. *White*, 962 F. Supp. at 869. The $100 fee was a "'flat fee' designed to cover a bundle of services associated with licensing and titling the vehicle, including title and license fees paid to the State of Louisiana, fees for notarizing various documents, and documentation fees retained by [the dealer]." *Id.* Further, the $100 fee applied to both cash and credit customers who elected to have the dealer obtain a motor vehicle certificate of title and license plate for the customer. *Id.* at 781. The plaintiffs in *White* argued that the dealer violated TILA by "failing to include $61.67 (the difference between the $38.33 actually paid for the license and the $100.00 charged as a license fee) in the 'finance charge'" and "overstat[ing] the amount financed . . . by including and disclosing in the disclosed Amount Financed (in the itemization of Amount Financed portion of [the plaintiffs'] consumer credit sales contract) a license fee of $100.00, when only $38.33 of the $100.00 fee was actually paid to the State as a license fee." *Id.* at 869. The Court rejected that argument, which is the same argument Plaintiff advances here. Instead, the *White* court held that the dealer did **not** violate TILA because the $100 fee was charged in comparable cash and credit transactions and "[t]herefore, **none of the $100 fee, including the disputed $61.67, is a "finance charge."** *Id.* at 871. The court further held, "[s]ince all of the alleged TILA violations are "dependent upon the $61.67 being labeled a

9

'finance charge,' and since the Court has concluded the amount is not a 'finance charge, [the dealer] is entitled to a judgment as a matter of law.'" *Id.* at 872.

Based on the holding in *White*, the only relevant inquiry for this Court is whether Plaintiff has presented evidence that would allow a reasonable juror to conclude the $104 fee charged by Carvana is only charged to customers who finance their vehicle purchase, and is not charged in a "comparable cash transaction." Plaintiff has not; nor could he as the $104 fee is plainly included in the Retail Purchase Agreement, and not only the financing agreement. (*See* ECF No. 8 ¶¶ 25, 30; Suppl. Decl. of Arthur Hill, ECF No. 28-3 ¶ 7). For this additional reason, the Court should grant summary judgment in favor of Carvana on Plaintiff's TILA claims.

## **CONCLUSION**[4]

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion for Partial Summary Judgment on Plaintiff's claims under the North Carolina Retail Installment Sales Act (Count 2) and the Federal Truth in Lending Act (Count 5) under Rule 56 of the Federal Rules of Civil Procedure.

---

[4] The Court's Order Granting Carvana's Motion to Dismiss the Plaintiff's Federal Odometer Act ("FOA") claim mooted Plaintiff's Motion for Summary Judgment on that claim. *See Watkins v. Soprema, Inc.*, No. 1:12-CV-318-MR-DLH, 2014 WL 1281055, at *1 (W.D.N.C. Mar. 27, 2014) (where the plaintiff's motion to dismiss a defendant was granted; thus making that defendant's motion for summary judgment moot); *see also Everhart v. United States*, No. 5:03-CR-00034-RLV-1, 2013 WL 1246798, at *1 (W.D.N.C. Mar. 27, 2013) (holding that "the granting of Respondent's motion to dismiss rendered Petitioner's motion for summary judgment moot").

Dated this 3rd day of May, 2022.        Respectfully submitted,

*/s/Ashia Crooms-Carpenter*
Ashia Crooms-Carpenter
N.C. Bar No. 54342
NELSON MULLINS RILEY &
SCARBOROUGH LLP
ashia.carpenter@nelsonmullins.com
301 South College Street / 23rd Floor
Charlotte, NC 28202
Phone: (704) 417-3000
Fax: (704) 377-4814

***Attorney for Carvana, LLC and Bridgecrest Credit Company, LLC***

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rules 7.3(d)(1) and 56.1(c) of the Rules of this Court, I certify that DEFENDANTS CARVANA, LLC AND BRIDGECREST CREDIT COMPANY, LLC'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, which was prepared using Times New Roman 13-point typeface, contains 2,895 words, excluding the parts of the document that are exempted by Rule 7.3(d)(1). This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.


Dated this 3rd day of May 2022.

/s/Ashia Crooms-Carpenter
Ashia Crooms-Carpenter
N.C. Bar No. 54342
NELSON MULLINS RILEY &
SCARBOROUGH LLP
ashia.carpenter@nelsonmullins.com
301 South College Street / 23rd Floor
Charlotte, NC 28202
Phone: (704) 417-3000
Fax: (704) 377-4814

*Attorney for Carvana, LLC and Bridgecrest Credit Company, LLC*

**CERTIFICATE OF SERVICE**

      I, Ashia Crooms-Carpenter, hereby certify that, on May 3, 2022 a true and correct copy of the foregoing was served upon Arthur Hill using the Court's CM/ECF system:

    Arthur Hill
    2849 Trestle Court SW
    Concord, NC 28025
    *Pro Se Plaintiff*

                                       */s/Ashia Crooms-Carpenter*
                                       **Attorney for Carvana, LLC and**
                                       **Bridgecrest Credit Company, LLC**